# Exhibit 1



## *Retirement Matters Accumulation Product*℠
**Massachusetts Mutual Life Insurance Company**

| | |
|---|---|
| *Contractholder* | TRUSTEE OF GOLDEN STAR, INC. |
| *Contract Number* | RMAP 80864 |
| *Contract Effective Date* | July 1, 1999 is the Effective Date of this Contract, and Contract Anniversaries will occur on each July 1 thereafter. |

In accordance with and subject to the terms and conditions of this Contract, the Contractholder agrees to pay Contributions and Massachusetts Mutual Life Insurance Company (MassMutual) agrees to pay the benefits provided hereunder with respect to Golden Star, Inc. & Saunders 401(k) Plan.

| | |
|---|---|
| *State of Issue* | This Contract is delivered in Missouri and is subject to its laws. |
| *Guaranteed Interest Rate* | The initial Guaranteed Interest Rate is 5.00% and is more fully described in Section 1.08. |

This Contract is executed at the Home Office of MassMutual in Springfield, Massachusetts.

The provisions in this document fully form this Contract as if entirely stated over these signatures:

*Ann F. Lomely*
Secretary

*R J O'Connell*
President

CERTAIN PAYMENTS AND VALUES PROVIDED BY THIS CONTRACT WILL INCREASE OR DECREASE AND ARE NOT GUARANTEED AS TO A FIXED DOLLAR AMOUNT BUT ARE BASED ON INVESTMENT EXPERIENCE OF A SEPARATE INVESTMENT ACCOUNT. THE VALUE OF THE GUARANTEED INTEREST ACCOUNT MAINTAINED FOR THIS CONTRACT AND PAYMENTS BASED ON THIS VALUE MAY VARY UPON DISCONTINUANCE OF CONTRIBUTIONS.

*Group Annuity Contract*
*Non-Participating Retirement Annuities*
*Form No. GP 5505*

Massachusetts Mutual Life Insurance Company and affiliated insurance companies ◆ Springfield MA 01111-0001 ◆ (413) 788-8411

Residents of this state who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Missouri Life and Disability Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers; care in selecting companies that are well-managed and financially stable.

The Missouri Life and Disability Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Disability Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

The Missouri Life and Health Insurance Guaranty Association
4310 Madison Avenue
Kansas City, MO 64111

Missouri Division of Insurance
PO Box 690
Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Disability Insurance Guaranty Association Act. Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the Guaranty Association.

Generally, persons will be covered ●hey live in this state, and hold a life or ●lth insurance contract or annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when -

1.) The person is eligible for protection under the laws of another state;
2.) The person purchased the insurance from a company that was not authorized to do business in this state;
3.) The policy is issued by an organization which is not a member insurer of the association; or
4.) The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustees). The Act also limits the amount the Association is obligated to pay persons on various policies. The Association does not pay more than the amount of the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. Fr health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract, the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

**APPENDIX TWO**
**NOTICE**

This policy or contract is not covered by the Missouri Life and Health Insurance Guaranty Association. If the company providing this policy or contract is unable to meet its obligation by reason of insolvency or financial impairment, the fund(s) of the Missouri Life and Health Insurance Guaranty Association will not be available to protect the policy or contract holder or his/her beneficiaries, payees or assignees.

# *Table of Contents*

## *1. Definitions*

Page

| | | |
|---|---|---|
| 1.01 | Accumulated Withdrawals | 5 |
| 1.02 | Benefit Limit | 5 |
| 1.03 | Book Value | 5 |
| 1.04 | Business Day | 5 |
| 1.05 | Code | 5 |
| 1.06 | Contract Year | 5 |
| 1.07 | Guaranteed Interest Account | 6 |
| 1.08 | Guaranteed Interest Rate | 6 |
| 1.09 | Holding Account Rate | 6 |
| 1.10 | Liquidation Value | 6 |
| 1.11 | Plan | 8 |
| 1.12 | Separate Investment Accounts | 9 |
| 1.13 | A Contractholder's Share in the Separate Investment Accounts | 9 |
| 1.14 | Surrender Charge | 10 |
| 1.15 | Termination of Employment | 10 |
| 1.16 | Valuation Date | 11 |

## *2. Contributions and Accounts*

| | | | |
|---|---|---|---|
| 2.01 | Contributions | | 12 |
| 2.02 | Allocation of Contributions and Withdrawal of Amounts in the Guaranteed Interest and Separate Investment Accounts | | 13 |
| | A. | Allocation of Contributions | 13 |
| | B. | Withdrawal of Amounts in the Guaranteed Interest and Separate Investment Accounts | 14 |

2.03    Operation of the Guaranteed Interest Account ............................................................ 14

    A.    Guaranteed Interest Account ............................................................................ 14

    B.    Credits to the Guaranteed Interest Account ..................................................... 14

    C.    Withdrawals from the Guaranteed Interest Account ......................................... 15

2.04    Operation of a Contractholder's Share in the Separate Investment Account and Separate Investment Account Deposits and Withdrawals .................................................. 20

    A.    Operation of a Contractholder's Share in the Separate Investment Account ............ 20

    B.    Deposits to Separate Investment Accounts ....................................................... 21

    C.    Withdrawals from Separate Investment Accounts ............................................. 21

## 3. Annuities

3.01    Purchase of Annuity ..................................................................................... 27

3.02    Annuity Forms ............................................................................................. 27

3.03    Annuity Purchase Rates ................................................................................ 28

## 4. Discontinuance of Contributions

4.01    Method of Discontinuance of Contributions ................................................... 29

4.02    Effect of Discontinuance of Contributions ..................................................... 30

    A.    Contributions ................................................................................................ 30

    B.    Election of Liquidation Option ....................................................................... 30

    C.    A Contractholder's Share in the Separate Investment Accounts ........................ 31

4.03    Liquidation Options ...................................................................................... 31

    A.    Book Value Payment Option .......................................................................... 31

    B.    Annuity Purchase Option ............................................................................... 32

    C.    Liquidation Value Payment Option ................................................................ 32

## 5. General Provisions

| | | |
|---|---|---|
| 5.01 | Regulatory Compliance | 34 |
| 5.02 | Individual Certificates | 34 |
| 5.03 | Facility of Payment | 34 |
| 5.04 | Assignment | 34 |
| 5.05 | Annuity Payments | 34 |
| 5.06 | Responsibility for Funding Vehicle | 35 |
| 5.07 | Entire Contract | 35 |
| 5.08 | Termination of Contract | 35 |
| 5.09 | Form and Gender | 35 |
| 5.10 | Misstatements and Adjustments | 35 |
| 5.11 | Amendment | 35 |
| 5.12 | Modification | 35 |
| 5.13 | Basis of Reserves | 36 |
| 5.14 | Evidence of Survival | 36 |
| 5.15 | Nondiversion of Benefits | 36 |
| 5.16 | Designation of Beneficiary | 36 |
| 5.17 | Deferral of Separate Investment Account Withdrawals | 37 |
| 5.18 | Notice | 37 |
| 5.19 | Limitation of Liability | 37 |
| 5.20 | Information Required by MassMutual | 37 |
| 5.21 | Grace Period | 37 |
| 5.22 | Relationship of the Separate Investment Accounts and the Contract to the Assets of MassMutual | 37 |

# 1. Definitions

**1.01 Accumulated Withdrawals**

As of any date, Accumulated Withdrawals are the sum of the amounts withdrawn during the portion of the Contract Year preceding such date in accordance with Paragraphs (i), (v), (viii) and (x) of Section 2.03C and Paragraphs (i), (v), (viii) and (xiii) of Section 2.04C.

**1.02 Benefit Limits**

As of any date in the first Contract Year, the Benefit Limit is 20% of the Contributions made to the Contract prior to such date.

As of any date in each other Contract Year, the Benefit Limit is 20% of the sum of:

(a)     the amount of the Guaranteed Interest Account on the last day of the preceding Contract Year, and

(b)     the amount of a Contractholder's share in the Separate Investment Accounts on the last Valuation Date in the preceding Contract Year.

There is no Benefit Limit for Plans that are fully funded by this Contract with MassMutual.

**1.03 Book Value**

All Contributions to date plus interest credited at the guaranteed interest rate reduced by withdrawals to date.

**1.04 Business Day**

A day on which the New York Stock Exchange is open for business.

**1.05 Code**

The Internal Revenue Code of 1986, as amended.

**1.06 Contract Year**

The period beginning with either the Effective Date or any Contract Anniversary and ending on the day before the next Contract Anniversary.

| | |
|---|---|
| *1.07* **Guaranteed Interest Account** | The Guaranteed Interest Account is an account maintained to determine the Contractholder's interest in MassMutual's general investment account. Amounts in the Guaranteed Interest Account are credited with the Guaranteed Interest Rate. |
| *1.08* **Guaranteed Interest Rate** | The Guaranteed Interest Rate is an effective annual rate of interest and is credited at the equivalent daily rate.

The initial Guaranteed Interest Rate is stated on the cover page of this Contract. With respect to each calendar year beginning after the Effective Date of this Contract, MassMutual will establish prospectively a minimum Guaranteed Interest Rate applicable to each such year. The minimum Guaranteed Interest Rate will not be less than 3%. |
| *1.09* **Holding Account Rate** | The Holding Account Rate is based on the net yield being realized by MassMutual's pooled Separate Investment Account G whose underlying assets are primarily invested in short-term, interest bearing instruments. The net yield is determined as the annual rate of return after adjustments for investment expenses, duration from issue to maturity date, maturity par values for each asset, and the assumption that reinvestment will be made by purchase of identical assets.

The Holding Account Rate is an effective annual rate and is credited at the equivalent daily rate. The rate is reviewed weekly and reset at least as frequently as quarterly, but no more frequently than weekly. |
| *1.10* **Liquidation Value** | The Liquidation Value is determined by multiplying the amount of the Guaranteed Interest Account by the Liquidation Factor determined as of the date of Discontinuance of Contributions. The Liquidation Formula is used to determine the Liquidation Factor. Any revision of the formula will become effective with respect to this Contract ninety days after the Contractholder is given Notice of the intended revision and when such revised formula is filed with the Secretary and the appropriate state insurance department. During such ninety day period, the Contractholder may discontinue the contract in accordance with Section 4 of this contract. A copy of the revised formula will be furnished to the Contractholder.

The Liquidation Formula takes into consideration the following:

(a)    the interest rate being earned by the investments underlying the Guaranteed Interest Account determined, without regard to capital gains and losses, in accordance with MassMutual's procedures for contracts in the same class as this Contract, |

(b)   the assumed interest rate, obtainable by MassMutual with respect to new investments, determined without regard to capital gains and losses, and

(c)   an assumed relationship of the difference between (a) and (b) and the rate at which investments become subject to reinvestment.

The rates entering into the Liquidation Formula, the methods employed in the computation, and any amount determined by the application of the formula will be deemed conclusive.

The Liquidation Formula is the same as a serial bond valuation formula for a bond which repays its original principal in (r) level annual installments, pays interest annually at the rate (j) on the outstanding principal, and is being valued to yield the rate (i).

The Liquidation Formula is:

$$a/r + (1-a/r) \times (j/i) = \text{liquidation factor}$$

where

$i =$   the assumed new money rate. Used for this rate is the Moody's Baa Corporate Bond Yield Average for the latest calendar month for which such yield has been published prior to the date as of which the Liquidation Value is being determined, reduced according to MassMutual's dividend interest rate practices for determining the (j) rates being used by MassMutual for pension account funds.

$j =$   the experience rate for the Contract. It is determined as the weighted average of the investment year interest rates being used by MassMutual for pension account funds, where such weighted average reflects the distribution to the various investment years of contracts in the same class as this Contract.

$a =$   the present value of an immediate annuity of $1 per year for r years with interest at the rate (i).

$$a = \frac{1 - [1/(1+i)]^r}{i}$$

$r =$   The number of years to maturity of a serial bond whose duration is equal to that of the General Investment Account assets underlying the class of contracts to which this Contract is assigned.

The Liquidation Formula yields the following liquidation factors for various values of i and j. For purposes of the example, r is held fixed at ten years.

| | 6.00% | 7.00% | 8.00% | .00% | 10.00% | 11.00% |
|---|---|---|---|---|---|---|
| 6.00% | 100.00% | 95.75% | 91.78% | 88.06% | 84.58% | 81.32% |
| 7.00% | 104.40% | 100.00% | 95.89% | 92.04% | 88.43% | 85.05% |
| 8.00% | 108.80% | 104.25% | 100.00% | 96.02% | 92.29% | 88.79% |
| 9.00% | 113.20% | 108.50% | 104.11% | 100.00% | 96.15% | 92.53% |
| 10.00% | 117.60% | 112.76% | 108.23% | 103.98% | 100.00% | 96.26% |
| 11.00% | 122.00% | 117.01% | 112.34% | 107.96% | 103.86% | 100.00% |

## 1.11 Plan

The Golden Star, Inc. & Saunders 401(k) Plan as in effect on the Effective Date of this Contract and each amendment thereto of which MassMutual has received a true copy, except as herein provided. The term Plan, as used under this Contract, shall include such other plans of the Contractholder or plans maintained for other companies as MassMutual and the Contractholder may agree in writing to include under this Contract. Each and every term, provision and condition of this Contract will apply separately with respect to each plan maintained hereunder.

The Contractholder shall not adopt any change in Plan operation, including changes in investment allocation which can reasonably be shown to affect the financial experience of MassMutual or other contractholders in the same class of contract, or any change in Plan administrative procedures or any Plan amendment without prior written approval from MassMutual. In order that the adoption of any such proposed change in Plan operation or administrative procedures or of any such proposed Plan amendment receive MassMutual approval, the Contractholder shall provide MassMutual with written notice at least sixty days in advance of the effective date of such proposed change or proposed amendment. The notice shall include a description of the proposed changes in Plan operation or administrative procedures' or a copy of the proposed Plan amendment.

MassMutual shall have forty-five days from the date of receipt of the notice to approve the proposed change in Plan operation or administrative procedures or the proposed Plan amendment, as requested. If MassMutual determines that the proposed change in Plan operation or administrative procedures or the proposed Plan amendment would adversely affect MassMutual's administrative procedures or the financial experience of MassMutual or other contractholders with contracts in the same class as this Contract, MassMutual shall either:

A.    approve such changes or amendment, subject to agreement between the Contractholder and MassMutual, including agreement to any amendment to this Contract that is deemed necessary as a result of the change or amendment; or

disapprove such changes or amendment if MassMutual and the Contractholder are unable to reach agreement, including agreement upon any amendment to this Contract, that MassMutual deems necessary. If MassMutual and the Contractholder are unable to reach agreement with respect to such changes or amendment, the contract may be discontinued by MassMutual in accordance with Section 4 of this Contract.

Failure to provide MassMutual with timely notice of any change in Plan operation, any change in Plan administrative procedures or any Plan amendment constitutes a breach of contractual obligations. If such breach occurs, MassMutual retains the right at the time MassMutual becomes aware of such breach to discontinue the contract pursuant to Section 4.

## 1.12 Separate Investment Accounts

MassMutual, under the laws of Massachusetts, has established and will maintain a series of pooled separate investment accounts, which are sometimes referred to herein as Separate Investment Account(s). Descriptions of the Separate Investment Accounts available under this Contract are found in a separate schedule attached to this Contract.

The Contractholder may select or change the Separate Investment Accounts to be used under this Contract by written request to MassMutual, subject to the provisions of Section 2.04.

## 1.13 A Contractholder's Share in the Separate Investment Account

A Contractholder's share in the Separate Investment Account is the amount of the Contractholder's interest in a Separate Investment Account. This interest is measured in units. The Contractholder's share in a Separate Investment Account is equal to the number of units owned by the Contractholder times the Unit Value of the Separate Investment Account on any Valuation Date.

## 1.14 Surrender Charge

The Surrender Charge is determined in accordance with the following schedule:

| Contract Year | Surrender Charge |
|---|---|
| 1 | 0% |
| 2 | 0 |
| 3 | 0 |
| 4 | 0 |
| 5 | 0 |
| 6 | 0 |
| 7 | 0 |
| 8 | 0 |
| 9 and thereafter | 0 |

If funds are transferred to this Contract from other applicable MassMutual contracts holding assets attributable to the Plan or another plan previously maintained by the Contractholder or any entity affiliated therewith, the Surrender Charge applied under this Contract shall commence with the applicable contract year in the surrender charge schedule of such MassMutual contracts, as necessary, and as determined by an actuary of MassMutual, based on the weighted average of the issue date of the original applicable contracts.

The Surrender Charge may be applied to certain withdrawals as further described under this contract.

## 1.15 Termination of Employment

Prior to the date of Discontinuance of Contributions, for purposes of this Contract, benefit payments to be made with respect to a bona fide termination of employment will be paid at book value from the Guaranteed Interest Account. A bona fide termination of employment means the cessation of an employment relationship with an employer or multiple employer or the termination of membership in an employee organization sponsoring the Plan. A bona fide termination of employment also includes retirement, death or disability but does not include:

A.    temporary absence;

B.    change in position or other occurrence qualifying as a temporary break in service under the Plan;

C.    transfer or other change of position resulting in employment by an entity controlling, controlled by, or under other common control with the employer; or,

D.     cessation of an employment relationship resulting from a reorganization, merger, layoffs, or the sale or discontinuance of all or any part of the Plan sponsor's business.

If any withdrawal is a result of the removal from the Plan of one or more groups or classifications of Plan participants, Plan termination or partial Plan termination, other employer initiated event or any reason under A through D above, the amount payable from the Guaranteed Interest Account by MassMutual will be paid under Section 4.03A. The date of withdrawal will be considered the date of Discontinuance of Contributions for the purpose of establishing the payments to be made under this Section 1.15.

At the Contractholder's election, the Liquidation Value of the amount withdrawn from the Guaranteed Interest Account after any reduction by the Surrender Charge, if applicable, shall be paid in lieu of payments under Section 4.03A. The Liquidation Value will be determined by the liquidation formula set forth in Section 1.10. The date of withdrawal will be considered the date of Discontinuance of Contributions in the formula.

The amount of withdrawal under this Paragraph will be reduced by the Surrender Charge if the Accumulated Withdrawals are equal to or greater than the Benefit Limit. If the Accumulated Withdrawals are less than the Benefit Limit, any portion of a withdrawal under this Paragraph that is greater than the difference between the Accumulated Withdrawals and the Benefit Limit will be reduced by the Surrender Charge. After any reduction by the Surrender Charge, amounts withdrawn in accordance with this Paragraph will be multiplied by the liquidation factor and the resulting amount will be paid to, or as directed by, the Contractholder. Any Surrender Charge will be retained by MassMutual.

De minimus partial withdrawals from the Guaranteed Interest Account are permitted once per calendar year at book value. De minimus means a withdrawal amount less than the lower of: 5% of the Guaranteed Interest Account, and $150,000.

**1.16  Valuation Date**     Any Business Day on which the amount of the Guaranteed Interest Account and the Unit Value for each Separate Investment Account is determined by MassMutual.

## 2.    Contributions and Accounts

### 2.01   Contributions

The required Contributions to MassMutual for credit to this Contract are as follows:

Each contribution made to the Plan will be paid to MassMutual. The amount paid to MassMutual may, however, be reduced by the amount of any premiums due with respect to life insurance policies owned by the Contractholder.

Each Contribution shall be due and payable at the Home Office of MassMutual in Springfield, Massachusetts, as soon as is administratively feasible following the date it is made under the Plan, but in no event later than permitted under the applicable regulations.

Only on the basis of a written agreement between MassMutual and the Contractholder may the sum of the amount of a Contractholder's share in the Separate Investment Accounts and the Guaranteed Interest Account be less than the aggregate of the assets of the Plan (disregarding the cash surrender values of any life insurance policies owned by the Contractholder and the outstanding balance of any loans made by the Plan to Plan participants).

Unless otherwise provided in this Section or with the mutual agreement of MassMutual and the Contractholder may the Contribution include amounts which are attributable to:

A. a transfer or rollover of assets on or after the Effective Date of this Contract from a plan other than the Plan specified in Section 1.11.

B. the addition of groups or categories of employees to whom the Plan or its provisions permitting investments under this Contract have been extended after the Effective Date of this Contract.

C. transfers on or after the Effective Date of this Contract from an individual retirement account or an individual retirement annuity, as described in Section 408 of the Code.

D. contributions in any Contract Year in excess of the maximum tax-deductible amount allowed by the Internal Revenue Service and in accordance with the Plan.

E. repayments of loans made by the Plan to Participants not based on a level, amortized schedule and prepayments to the Plan of principal on loans made by the Plan to Participants.

Moreover, only with the mutual agreement of MassMutual and the Contractholder may the Contributions in any Contract Year differ from those stated above.

**2.02 Allocation of Contributions and Withdrawal of Amounts in the Guaranteed Interest and Separate Investment Accounts**

A. Allocation of Contributions

The Contractholder will provide MassMutual with a notice relating to Contributions for investment under this Contract. The notice will direct MassMutual to deposit the Contributions to the account or accounts maintained under this Contract. Contributions will be deposited to the account or accounts as directed no later than the tenth Valuation Date following the date of receipt of such notice by MassMutual. Contributions awaiting allocation will be credited with interest in accordance with the following paragraph.

If the Contractholder fails to provide MassMutual with a notice relating to the allocation of a Contribution, the Contribution will be deposited in Separate Investment Account G no later than the first Valuation Date following the date of receipt by MassMutual and will remain in Separate Investment Account G until the date such notice is received by MassMutual. If the Contractholder fails to provide MassMutual with a notice relating to the allocation of a Contribution, MassMutual reserves the right to return the Contribution to the Contractholder.

B.  Withdrawal of Amounts in the Guaranteed Interest and Separate Investment Accounts

   (i)  Withdrawals from the Guaranteed Interest Account will be made by MassMutual no later than the tenth Business Day following date of the receipt of written notice from the Contractholder.

        Withdrawals from a Separate Investment Account will be made by MassMutual no later than the tenth Valuation Date following the receipt of written notice from the Contractholder.

        Amounts withdrawn from an account will be paid as soon as administratively feasible.

   (ii)  Amounts withdrawn from an account that are to be transferred to a Separate Investment Account will be deposited in such account on the Valuation Date on which the withdrawal is made.

        Amounts withdrawn from a Separate Investment Account that are to be transferred to the Guaranteed Interest Account will be deposited in such account on the Valuation Date on which the withdrawal is made.

## 2.03 Operation of the Guaranteed Interest Account

A.  Guaranteed Interest Account

The amount of the Guaranteed Interest Account at any time is equal to the total of the amounts credited to the account less the total of the amounts withdrawn from the account.

B.  Credits to the Guaranteed Interest Account

   (i)  All Contributions paid under this Contract that are allocated to the Guaranteed Interest Account and all amounts transferred to the Guaranteed Interest Account from other accounts will be credited to the Guaranteed Interest Account.

   (ii)  On and prior to the date of Discontinuance of Contributions, interest will be credited to the Guaranteed Interest Account at an effective annual rate equal to the Guaranteed Interest Rate.

C.    Withdrawals from the Guaranteed Interest Account

Prior to the date of Discontinuance of Contributions, withdrawals will be made from the Guaranteed Interest Account as hereinafter provided:

In the event that Plan funds are held or invested outside of this contract, the Guaranteed Interest Account will fund withdrawals equal to its prorata share of the Plan's Fixed Fund option unless an alternative arrangement is agreed to by MassMutual.

(i)    All retirement and termination benefits payable under the Plan from amounts in the Guaranteed Interest Account will be withdrawn from the account.

(ii)    Death benefits payable under the Plan from amounts in the Guaranteed Interest Account will be withdrawn from the account and paid to, or as directed by, the Contractholder.

(iii)    Eligible disability benefits payable under the Plan from amounts in the Guaranteed Interest Account will be withdrawn from the account and paid to, or as directed by, the Contractholder.

For the purposes of this Paragraph (iii), a disability benefit is an eligible disability benefit

(a)    if the Plan participant is entitled to disability benefits under the federal Social Security Act, or

(b)    as determined under the Plan.

(iv)    Considerations for annuities to be purchased in accordance with Section 3 from amounts in the Guaranteed Interest Account will be withdrawn from the account.

(v)    Sums equal to or derived from loans to be made to participants in the Plan from amounts in the Guaranteed Interest Account will be withdrawn from the account.

(vi)    Amounts in the Guaranteed Interest Account that are to be transferred to a different investment fund available under the Plan as a result of Plan participant direction will be withdrawn from the Guaranteed Interest Account.

Withdrawals under this Paragraph are subject to the following limitations:

(a)    Withdrawals under this Paragraph and under Paragraph (vi) of Section 2.04C must be made on the same day; and

(b)    The Contractholder agrees not to offer an investment fund which MassMutual considers to be a competing fund, unless MassMutual gives its prior written consent.

(c)    The withdrawal amounts under this Paragraph may be limited to 20% of the Guaranteed Interest Account balance during each Contract Year, unless otherwise agreed to by MassMutual.

Form No. GP 5505-16

(vii) Premiums for life insurance policies issued by MassMutual (or any of its subsidiary companies) and owned by the Contractholder that are payable from amounts in the Guaranteed Interest Account will be withdrawn from the account and paid to, or as directed by, the Contractholder.

(viii) Sums equal to or derived from premiums for life insurance policies (issued by an insurance company other than MassMutual or any of its subsidiary companies) owned by the Contractholder that are payable from amounts in the Guaranteed Interest Account will be withdrawn from the account.

(ix) Expenses of the Plan that are payable from amounts in the Guaranteed Interest Account will be withdrawn therefrom, unless alternate means of payment of expenses are agreed to by MassMutual.

(x) Benefits payable from amounts in the Guaranteed Interest Account that qualify as hardship distributions under the Plan and under Section 401(k)(2)(B)(i)(IV) of the Code, or that qualify as distributions on account of an unforeseeable emergency under the Plan and any other applicable provision of the Code, will be withdrawn from the account.

(xi)    Amounts in the Guaranteed Interest Account that are mandated to be distributed from the Plan as a result of the failure by the Plan of certain tests required under law will be withdrawn from the account.

(xii)    An Asset Charge at an effective annual rate will be applied to assets applicable to the Guaranteed Interest Account maintained with respect to this Contract as of the Valuation Date preceding the date such charge is determined. The Asset Charge will be based upon the Contractholder's total assets under this Contract, as set forth below:

| Asset Charge Applicable To: | Asset Charge: |
|---|---|
| Total Assets less than or equal to $500,000 | 1.20% |
| Total Assets greater than $500,000 but less than or equal to $1,000,000 | 1.00% |
| Total Assets greater than $1,000,000 but less than or equal to $2,000,000 | 0.85% |
| Total Assets greater than $2,000,000 but less than or equal to $5,000,000 | 0.70% |
| Total Assets greater than $5,000,000 | 0.65% |

The Asset Charge may be modified by mutual agreement between MassMutual and the Contractholder at any Contract Anniversary upon Notice to the Contractholder at least thirty-one days prior to the effective date of such change. In no event will the Asset Charge be modified before the first day of the second calendar year following the calendar year in which the effective date occurs.

If a withdrawal under Paragraph (i) or (iv) of this Section 2.03C is due to a partial termination of the Plan as determined under Section 411(d)(3)(A) of the Code or if a withdrawal under Paragraph (vi) of this Section 2.03C is to be transferred to a Plan investment fund not included under this Contract, the amount payable from the Guaranteed Interest Account by MassMutual will be paid under Section 4.03A. The date of withdrawal will be considered the date of Discontinuance of Contributions in that Section for the purpose of establishing the payments to be made.

At the Contractholder's election, the Liquidation Value of the amount withdrawn from the Guaranteed Interest Account shall be paid under Section 4.03B or 4.03C in lieu of payments under Section 4.03A. The Liquidation Value will be determined by the Liquidation Formula set forth in Section 1.10. The date of withdrawal will be considered the date of Discontinuance of Contributions. If the amount of the withdrawal exceeds the Liquidation Value, the difference will be retained by MassMutual.

Upon written request made by MassMutual to the Contractholder, payments of benefits under this contract will be contingent upon receipt of written documentation from the participants and/or the Contractholder substantiating the nature of the benefit withdrawals and the timing thereof.

A.    Operation of a Contractholder's share in the Separate Investment Accounts

**2.04**     *Operation of a Contractholder's Share in the Separate Investment Account and Separate Investment Account Deposits and Withdrawals*

MassMutual will maintain a Contractholder's share in the Separate Investment Account to determine, as hereinafter provided, the amount of the Contractholder's interest in each Separate Investment Account, which amount is not guaranteed as to either principal or a stated rate of investment return.

On the Valuation Date on which an amount is deposited in a Separate Investment Account in accordance with Section 2.04B, such amount will be divided by the Unit Value on the preceding Valuation Date and the quotient so determined will be the number of units to be credited to a Contractholder's share in the Separate Investment Account.

On the Valuation Date on which an amount is to be withdrawn from a Separate Investment Account in accordance with Section 2.04C, except Paragraphs (xi) and (xii) thereof, such amount will be divided by the Unit Value on the preceding Valuation Date, and the quotient so determined will be the number of units to be debited to a Contractholder's share in the Separate Investment Account

On each Valuation Date, the dollar amount of a Contractholder's interest in a Separate Investment Account will be equal to the Unit Value multiplied by the number of units in a Contractholder's share in the Separate Investment Account.

For the purposes of this Section 2.04A, the terms "Unit Value" and "Market Value" have the following meanings:

Unit Value –   Market Value divided by the total number of units outstanding in the Separate Investment Account before adjustment for deposits and withdrawals on the Valuation Date.

Market Value – The total Market Value of each Separate Investment Account is determined by computing the value of the total assets held in such Separate Investment Account and deducting total accrued liabilities. The value of a Separate Investment Account equals cash plus accrued investment income on a Valuation Date minus any outside custodial service provider fee plus the value of securities based on the closing prices of such securities on the Valuation Date. If the value of any investment is not readily determinable, it will be valued by MassMutual using accepted practices and applicable laws and regulations.

MassMutual determines the total Market Value before making deposits and withdrawals, but after any investment management fees, separate account service fees and outside custodial service provider fees are deducted.

B.  Deposits to Separate Investment Accounts

(i)   Contributions allocated to a Separate Investment Account will be deposited in the account.

(ii)  Amounts withdrawn from the Guaranteed Interest Account that are to be transferred to a Separate Investment Account will be deposited in such Separate Investment Account.

(iii) Amounts withdrawn from a Separate Investment Account that are to be transferred to another Separate Investment Account will be deposited in such account.

C.  Withdrawals from Separate Investment Accounts

No withdrawal from a Separate Investment Account may exceed the amount of a Contractholder's share in the Separate Investment Account. Prior to the date of Discontinuance of Contributions, withdrawals shall be made from the Separate Investment Accounts as hereinafter provided. Withdrawals are subject to the provisions of Section 5.17.

(i)   All retirement and termination benefits payable under the Plan from amounts in a Separate Investment Account will be withdrawn from the account.

(ii)      Death benefits payable under the Plan from amounts in a Separate Investment Account will be withdrawn from the account and paid to, or as directed by, the Contractholder.

(iii)      Eligible disability benefits payable under the Plan from amounts in a Separate Investment Account will be withdrawn from the account and paid to, or as directed by, the Contractholder.

For the purposes of this Paragraph (iii), a disability benefit is an eligible disability benefit

(a)      if the Plan participant is entitled to disability benefits under the federal Social Security Act, or

(b)      as determined under the Plan.

(iv)      Considerations for annuities to be purchased in accordance with Section 3 from amounts in a Separate Investment Account will be withdrawn from the account.

(v)      Sums equal to or derived from loans to be made to participants in the Plan from amounts in a Separate Investment Account will be withdrawn from the account.

(vi)  Amounts in a Separate Investment Account that are to be transferred to another account under this Contract as a result of Plan participant direction will be withdrawn from the Account.

Withdrawals under this Paragraph are subject to the following limitations:

(a)  Withdrawals under this Paragraph and under Paragraph (vi) of Section 2.03C must be made on the same day; and

(b)  The Contractholder agrees not to offer an investment fund which MassMutual considers to be a competing fund, unless MassMutual gives its prior written consent.

(vii)  Premiums for life insurance policies issued by MassMutual (or any of its subsidiary companies) and owned by the Contractholder that are payable from amounts in a Separate Investment Account will be withdrawn from the account and paid to, or as directed by, the Contractholder.

(viii)  Sums equal to or derived from premiums for life insurance policies (issued by an insurance company other than MassMutual or any of its subsidiary companies) owned by the Contractholder that are payable from amounts in a Separate Investment Account will be withdrawn from the account.

(ix)     Except as provided in Paragraphs (xi) and (xii), expenses of the Plan that are payable from amounts in a Separate Investment Account will be withdrawn from the account and paid to the Contractholder unless other means are agreed to by MassMutual.

(x)     An Asset Charge at an effective annual rate will be applied to assets applicable to the Contractholder's share in the Separate Investment Account maintained with respect to this Contract as of the Valuation Date preceding the date such charge is determined. The Asset Charge will be based upon the Contractholder's total assets under this Contract, as set forth below:

| Asset Charge Applicable To: | Asset Charge: |
|---|---|
| Total Assets less than or equal to $500,000 | 1.20% |
| Total Assets greater than $500,000 but less than or equal to $1,000,000 | 1.00% |
| Total Assets greater than $1,000,000 but less than or equal to $2,000,000 | 0.85% |
| Total Assets greater than $2,000,000 but less than or equal to $5,000,000 | 0.70% |
| Total Assets greater than $5,000,000 | 0.65% |

The Asset Charge may be modified by mutual agreement between MassMutual and the Contractholder at any Contract Anniversary upon Notice to the Contractholder at least thirty-one day prior to the effective date of such change. In no event will the Asset charge be modified before the first day of the second calendar year following the calendar year in which the effective date occurs.

(xi)   MassMutual may withdraw a separate investment account management fee from each Separate Investment Account. This fee will be at a daily rate which on an annual basis does not exceed 1.0% of the average daily Market Value of the applicable Separate Investment Account.

(xii)  For each asset allocation account, alternative equity account and access separate investment account, MassMutual may withdraw an additional fee for ancillary separate account services. This fee will be at a daily rate which on an annual basis does not exceed 1.0% of the average daily Market Value of the applicable Separate Investment Account.

(xiii) Benefits payable from amounts in the Separate Investment Account that qualify as hardship distributions under the Plan and under Section 401(k)(2)(B)(i)(IV) of the Code, or that qualify as distributions on account of an unforeseeable emergency under the Plan and any other applicable provision of the Code, will be withdrawn from the account.

(xiv) Amounts in a Separate Investment Account that are mandated to be distributed from the Plan as a result of the failure by the Plan of certain tests required under law will be withdrawn from such account.

If a withdrawal under Paragraph (i) or (iv) of this Section 2.04C is due to a partial termination of the Plan as defined under Section 411(d)(3)(A) of the Code, the amount withdrawn will be reduced by the Surrender Charge and will be paid to the Contractholder or applied in accordance with Section 3.

Upon written request made by MassMutual to the Contractholder, payments of benefits under this contract will be contingent upon receipt of written documentation from the participants and/or the Contractholder substantiating the nature of the benefit withdrawals and the timing thereof.

# 3. Annuities

## 3.01 Purchase of Annuity

A. The Contractholder may purchase an annuity for any person entitled to an annuity under the Plan by filing a notice stating:

(i) the annuity form in which such annuity is to be paid;

(ii) the annuity commencement date; and,

(iii) the name, Social Security number, date of birth, and address of the person or persons to whom payment may be made.

Such notice is to be filed at the Home Office of MassMutual on or prior to the date the annuity is to be purchased and prior to the date of Discontinuance of Contributions.

B. MassMutual will apply to the purchase of the annuity the amount by which (i) exceeds (ii), where

(i) is the amount determined in accordance with Paragraph (iv) of Section 2.03C and/or Paragraph (iv) of Section 2.04C, and

(ii) is the sum of administrative expenses applicable to the purchase of the annuity and any State premium tax liability due with respect to the purchase of the annuity.

The amount of such annuity will be determined by MassMutual in accordance with Section 3.03 and the annuity form elected. The amount of such annuity will not be less than can be provided by MassMutual at time of purchase under contracts in the same class as this Contract.

## 3.02 Annuity Forms

Any form of annuity customarily provided by MassMutual under its group annuity contracts may be provided under this Contract.

Any annuity which, under the terms of the Plan, is the actuarial equivalent of a stated annuity will have the same present value on the date payment commences as the stated annuity. If the Plan does not provide for the determination of actuarial equivalence, the present value will be determined on the basis of the 1983 Group Annuity Mortality Table male rates with ages set back four years and interest at 6% for immediate annuities and 5% for deferred annuities.

## 3.03 *Annuity Purchase Rates*

The minimum amounts of annuity which may be purchased under this Contract are based on the 1983 Group Annuity Mortality Table male rates with ages set back six years, at 4% interest for immediate annuities and 3% interest for deferred annuities and a loading of 2% of the net rate. Examples of the minimum monthly amounts of life annuity (commencing immediately) which can be provided by $1000 of net consideration are as follows:

| Age of Person at Date of Purchase | Amount of Annuity |
|---|---|
| 55 | $4.83 |
| 60 | 5.29 |
| 65 | 5.93 |
| 70 | 6.84 |
| 75 | 8.11 |

Amounts of annuity for other ages and other annuity forms will be furnished upon request.

# 4. Discontinuance of Contributions

**4.01 Method of Discontinuance of Contributions**

Discontinuance of Contributions under this Contract will occur if -

(a) the Contractholder gives written notice to MassMutual that Contributions to the Contract are being discontinued, in which event the date of Discontinuance of Contributions will be the Business Day following the date such notice is received by MassMutual or the Business Day specified in such notice, whichever is later; or

(b) Contributions made in accordance with Section 2.01 are less than $5,000 with respect to each of three consecutive Contract Years and MassMutual gives written notice to the Contractholder that the Discontinuance of Contributions will occur as of the date specified in such notice, such date to be not earlier than the thirty-second day after the date such notice is mailed by MassMutual; or

(c) the Plan does not satisfy the requirements of Section 401(a) or any other applicable provision of the Code and MassMutual gives written notice to the Contractholder that the Discontinuance of Contributions will occur as of the date specified in such notice, such date not to be earlier than the tenth day after the date such notice is mailed by MassMutual; or

(d) the Contractholder does not satisfy the requirements of Section 2.01 and MassMutual gives written notice to the Contractholder that the Discontinuance of Contributions will occur as of the date specified in such notice, such date not to be earlier than the tenth day after the date such notice is mailed by MassMutual; or

(e) the sum of the withdrawals made in accordance with Section 2.03C during any Contract Year exceeds 50% of the amount of the Guaranteed Interest Account on the first Valuation Date in such year and MassMutual gives written notice to the Contractholder that the Discontinuance of Contributions will occur as of the date specified in such notice, such date not to be earlier than the thirty-second day after the date such notice is mailed by MassMutual; or

(f) the Internal Revenue Service determines that the Plan has terminated and MassMutual gives written notice to the Contractholder that the Discontinuance of Contributions will occur as of the date specified in such notice, such date not to be earlier than the tenth day after the date such notice is mailed by MassMutual; or



(g)    the Contractholder adopts any change in plan operation, including changes in investment allocation, which MassMutual determines would adversely affect MassMutual's administrative procedures or the financial experience of MassMutual or other Contractholders in the same class of contract, or the Contractholder adopts any change in Plan administrative procedures or any plan amendment without the mutual agreement of MassMutual and the Contractholder pursuant to Section 1.17.

(h)    Assets held under this Contract are less than $10,000 on or after the third contract anniversary and MassMutual gives written notice to the Contractholder that the Discontinuance of Contributions will occur as of the date specified in such notice, such date not to be earlier than the thirty-second day after the date such notice is mailed by MassMutual; or

(i)    MassMutual gives written notice of Discontinuance of Contributions to the Contractholder, in which event the date of Discontinuance of Contributions shall not be earlier than 90 days after the date such notice is mailed by MassMutual.

---

**4.02    *Effect of Discontinuance of Contributions***

A.    Contributions

On and after the date of Discontinuance of Contributions, no Contributions will be payable to or be accepted by MassMutual.

B.    Election of Liquidation Option

On or before the date of Discontinuance of Contributions the Contractholder will give MassMutual written notice of its election of one of the liquidation options applicable to the Guaranteed Interest Account which are:

a.    Book Value Payment Option

b.    Annuity Purchase Option

c.    Liquidation Value Payment Option

If the Contractholder fails to give MassMutual written notice of its election of one of the Liquidation Options described in Section 4.03, the Contractholder will be considered to have elected the Book Value Payment Option described in Section 4.03A.

---

C.  A Contractholder's share in the Separate Investment Account

Except as provided in the following paragraph and in Section 5.17, MassMutual will withdraw the amount of a Contractholder's share in the Separate Investment Accounts from the corresponding Separate Investment Account on the date of Discontinuance of Contributions.

Amounts withdrawn from a Separate Investment Account will be reduced by the Surrender Charge. The resulting amount will be applied under the Liquidation Option described in Section 4.03B if that option has been elected by the Contractholder; otherwise, the resulting amount will be paid to the Contractholder.

Until the amounts so withdrawn from a Separate Investment Account are applied or paid in accordance with the preceding paragraph, any Separate Investment Account amounts not paid on the Date of Discontinuance, other than withdrawals deferred in accordance with Section 5.17, will be maintained under this Contract in the manner determined by MassMutual until the date of application or payment is made.

---

## 4.03  *Liquidation Options*

A.  Book Value Payment Option

If this option is elected in accordance with Section 4.02B, the amount of the Guaranteed Interest Account will be withdrawn from the account as of the date of Discontinuance of Contributions. The amount withdrawn will be reduced by the Surrender Charge and the resulting amount will be paid to the Contractholder in six equal installments. The first installment will be paid not later than six months after the date of Discontinuance of Contributions. Additional installments will be paid on each of the first five annual anniversaries of the date of Discontinuance of Contributions. Any amount not paid on the date of Discontinuance of Contributions will be credited with interest at an effective annual rate equal to the Guaranteed Interest Rate on the date of Discontinuance of Contributions reduced by 1.5%. Such rate shall not be less than 3.00%.

Benefit payments will not be made during the installment payment period.

B. Annuity Purchase Option

If this option is elected in accordance with Section 4.02B, the amount of the Guaranteed Interest Account will be withdrawn from the account as of the date of Discontinuance of Contributions. The amount withdrawn will be reduced by the Surrender Charge and the Liquidation Value of the resulting amount and the amount determined pursuant to Section 4.02C will be utilized to purchase an annuity for each participant in the Plan in accordance with the provisions thereof.

The basis for the purchase of an annuity is determined in accordance with Section 3.

C. Liquidation Value Payment Option

If this option is elected in accordance with Section 4.02B, the amount of the Guaranteed Interest Account will be withdrawn from the account as of the date of Discontinuance of Contributions. The amount withdrawn will be reduced by the Surrender Charge and the Liquidation Value of the resulting amount will be paid to the Contractholder in one sum.

If the amount to be paid is greater than $1.5 million, MassMutual reserves the right to make payments in installments at four-week intervals. Each installment is limited to $1.5 million or, if greater, ten percent of the total amount to be paid. The first payment will be made not later than six months after the date of Discontinuance of Contributions.

Any amount not paid on the date of Discontinuance of Contributions will be credited with interest at the Holding Account Rate.

## 5. General Provisions

| | | |
|---|---|---|
| **5.01** | **Regulatory Compliance** | The Contract, the Plan and the administration of both will continually comply with Section 3(a)(2) of the Securities Act of 1933, the Internal Revenue Code and the Employee Retirement Income Security Act of 1974, as amended as applicable. |

MassMutual reserves the right to request that the Contractholder certify that any amount paid to a trustee or insurance company, under the terms of this Contract, is to be used to provide benefits for those employees who would be entitled to benefits under the Plan that in the opinion of the Contractholder, meets the applicable requirements of Section 401(a) or 403(a) of the Code or in the case of a government plan, 414(d) of the Code as supplemented by Section 3(a)(2) of the Securities Act of 1933, or any other applicable provision of the Code. MassMutual will rely conclusively on such certification and is not liable for any omission or inaccuracy in such certification.

**5.02 Individual Certificates**

MassMutual will issue to the Contractholder for delivery to each person for whom an annuity is purchased under this Contract an individual Certificate outlining the benefits to which such person is entitled hereunder.

The word "Certificate" as used herein includes Certificate Riders, if any.

**5.03 Facility of Payment**

If any person is, in the opinion of MassMutual, legally or physically incapable of giving a valid receipt and discharge for any payment under an annuity purchased hereunder, MassMutual may, at its option, make payment thereof to the person or persons who, in its opinion, are caring for and supporting such payee until claim is made by a duly appointed guardian or other legal representative of such payee. Payments to such person or persons will constitute a complete discharge of the liability of MassMutual to the extent of such payments, and it will assume no responsibility for the proper application of the money so paid.

**5.04 Assignment**

No assignment of this Contract will be effective or valid unless: 1) the original or a true copy of the assignment has been received at MassMutual's Home Office; and 2) MassMutual has consented in writing to the assignment. MassMutual will assume no responsibility for the validity of any such assignment. MassMutual will not unreasonably withhold its consent to an assignment.

| 5.05 | *Annuity Payments* | Other than for the purposes of Section 5.03, payments under an annuity purchased under this Contract cannot be made to a person other than a participant in the Plan, his joint annuitant, his beneficiary, or a trustee or other designated alternate payee, unless permitted by law and with the written consent of the Contractholder. |
|------|-----|-----|
| 5.06 | *Responsibility for Funding Vehicle* | The Contractholder is solely responsible for the selection of this Contract as the funding vehicle appropriate for the Plan. |
| ·5.07 | *Entire Contract* | This Contract, Schedule of Separate Investment Accounts, and the application of the Contractholder constitutes the entire Contract between MassMutual and the Contractholder. |
| 5.08 | *Termination of Contract* | This Contract will terminate at the end of the first day that MassMutual fulfills all its duties and obligations under this Contract. |
| 5.09 | *Form and Gender* | Wherever the context of this Contract requires, the singular includes the plural, the plural the singular, the masculine the feminine. |
| 5.10 | *Misstatements and Adjustments* | If it is found that any annuity payment under this Contract is incorrect because of a misstatement of any relevant fact including, but not limited to, age or the amount of credit under the Plan, the amount of annuity will be equitably adjusted on the basis of the correct facts. Any adjustment in accordance with this Section will take into consideration any overpayments or underpayments previously made. |
| 5.11 | *Amendment* | This Contract may be amended at any time by written agreement between MassMutual and the Contractholder without the consent of any person receiving, or entitled to receive, annuity payments under this Contract. No such amendment will affect the amount or the terms of any annuity purchased prior to the effective date of such amendment. |

| | | |
|---|---|---|
| *5.12* | *Modification* | MassMutual may modify this Contract at any time to comply with applicable law with Notice to the Contractholder at least thirty-one days prior to the effective date and subject to the following conditions: |

(a)      A modification may not affect the amount or terms of any annuity purchased prior to the effective date of the modification.

(b)      A modification may not reduce any existing Guaranteed Interest Rate.

| | | |
|---|---|---|
| *5.13* | *Basis of Reserves* | MassMutual will hold reserves under this Contract equal to the minimum required by law. Reserves for any annuities purchased in accordance with this Contract will be at least equal to the minimum required by law. |

| | | |
|---|---|---|
| *5.14* | *Evidence of Survival* | MassMutual has the right to require evidence that any person entitled to receive annuity payments under this Contract is alive on the date a payment is due. |

| | | |
|---|---|---|
| *5.15* | *Nondiversion of Benefits* | Prior to the satisfaction of all liabilities with respect to participants in the Plan, their joint annuitants, their beneficiaries, or other designated alternate payees, funds maintained with respect to this Contract will only be used for the exclusive benefit of the participants, their joint annuitants, their beneficiaries, or other designated alternate payees and for payment of Plan expenses. |

| | | |
|---|---|---|
| *5.16* | *Designation of Beneficiary* | Each Plan participant for whom an annuity has been purchased hereunder will have the right to designate a beneficiary at any time by filing written notice with MassMutual on forms furnished by or satisfactory to MassMutual. Any change in beneficiary will become effective only upon receipt by MassMutual of such notice. Upon receipt by MassMutual of such notice, the change will relate back to and take effect as of the date the participant signed such request, whether or not the participant is living at the time MassMutual receives such notice, but without prejudice to MassMutual on account of any payment made by MassMutual before such notice will have been received. |

If there is no designated beneficiary living upon the death of a participant when any benefit hereunder shall be payable to a beneficiary, then such benefit will be payable to such participant's executors or administrators, provided that MassMutual may, at its option, but without any obligation to do so, pay such benefit as follows:

> To the participant's spouse, if living; if not living, to the participant's surviving children, equally; if none survives, to the participant's surviving parents, equally; if neither survives, to the participant's surviving brothers and sisters, equally.

**5.17**  **_Deferral of Separate Investment Account Withdrawals_**

If there is an emergency such as an interruption in the normal operation of banks or securities exchanges that makes the sale of, liquidation of, or receipt of payment for securities impractical, MassMutual may defer withdrawals from the applicable Separate Investment Accounts. Deferred withdrawals will be made within a reasonable period of time after the end of the emergency.

**5.18**  **_Notice_**

Any notice required by the provisions of this Contract to be given to the Contractholder will be sent by mail to the Contractholder at the address last designated by the Contractholder. Any notice required by the provisions of this Contract to be given to MassMutual will be sent by mail to MassMutual at its Home Office in Springfield, Massachusetts.

**5.19**  **_Limitation of Liability_**

MassMutual will be liable for any Withdrawal from this Contract only to the extent of the Liquidation Value of the Guaranteed Interest Account, the Liquidation Value of all funds held under this Contract outside of the Separate Investment Accounts and Guaranteed Interest Accounts, and Market Value of the Contractholder's share applicable to the Separate Investment Accounts maintained with respect to this Contract, less estimated expenses which include a charge for assets held under the Contract and the expense of any services provided, is sufficient therefor at the time such withdrawal is to be made.

**5.20**  **_Information Required by MassMutual_**

If requested by MassMutual, the Contractholder agrees to provide MassMutual with the latest Form 5500, or other required forms, filed with the Internal Revenue Service or the Department of Labor.

The Contractholder will notify MassMutual in writing if there is a termination or a partial termination of the Plan.

MassMutual has the right to inspect any Plan documents or records it reasonably deems necessary to insure compliance with pertinent legislation, or that is relevant to MassMutual's financial or operational experience under the terms of this Contract.

## 5.21 Grace Period

A period of thirty-one days will be granted for the payment of any Contributions due MassMutual under this Contract.

## 5.22 Relation of the Separate Investment Accounts and the Contract to the Assets of MassMutual

The amount attributable to each Separate Investment Account is assigned to and is part of those assets of MassMutual that make up the Separate Investment Accounts. MassMutual has exclusive and absolute ownership and control of the assets of the Separate Investment Accounts and will not be, and does not hold itself out to be, a trustee with respect to those assets. Only MassMutual will have any individual, legal, or equitable ownership of any investments or assets of the Separate Investment Accounts or other assets of MassMutual.

The records and accounts maintained by MassMutual for this Contract and any other group annuity contract which provide for the allocation of certain amounts paid under such contracts to the Separate Investment Accounts do not indicate ownership of any portion of the Separate Investment Accounts or other assets of MassMutual by any holder of a group annuity contract issued by MassMutual, the employer if not the Contractholder, or any employee of the employer. All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including, but not limited to, the discontinuance of a Separate Investment Account. The assets of the Separate Investment Accounts may be invested, wholly or partly, in securities, including the shares of any investment company registered under the Investment Company Act of 1940. In exercise of its sole discretion, MassMutual may from time to time, hire an investment adviser registered under the Investment Advisers Act of 1940 to assist in the investment of assets.

The amount equal to the reserves and other Contract liabilities with respect to those portions of the Separate Investment Accounts attributable to this Contract will not be chargeable with liabilities from any other business MassMutual conducts.

## *Schedule of Separate Investment Accounts*

MassMutual, under the laws of Massachusetts, has established and maintains the following pooled separate investment accounts which are sometimes referred to herein as Separate Investment Account(s):

Separate Investment Account A:  invested primarily in common stocks.

Separate Investment Account SC  This account is invested primarily in the common stocks and equity securities of smaller companies which offer potential for long-term growth.

Separate Investment Account E:  invested primarily in publicly traded bonds.

Separate Investment Account F:  invested primarily in short-term public and private fixed income instruments.

Separate Investment Account G:  invested primarily in short-term, interest bearing investments.

Separate Investment Account I:  invested primarily in common stocks of companies domiciled in foreign countries with no more than 25% of its assets invested in common stock of the United States and Canada.

Separate Investment Account L  This account is invested primarily in the common stocks and securities convertible into common stocks of companies which offer better than average prospects for long-term growth.

Separate Investment Account M  invested primarily in common stocks, publicly traded bonds, and short-term interest bearing instruments.

Separate Investment Account P  This account is invested in fixed income instruments.

Separate Investment Account Q  This account is invested primarily in the common stocks and other equity securities having capitalizations in the range of companies included in the S&P Mid Cap 400 Index.

Separate Investment Account S:  invested primarily in common stocks of corporations with small market capitalization.

Separate Investment Account U:     invested primarily in cash, United States Treasury or Agency securities, and other investments that are issued or guaranteed by the United States Government, its agencies and instrumentalities.

Separate Investment Account X:     invested primarily in common stocks in the Standard & Poor's 500 Index.

MassMutual, under the laws of Massachusetts, has also established and maintains a series of the following groups of pooled separate investment accounts which are comprised of the following Separate Investment Account(s):

## Asset Allocation Accounts

The asset allocation accounts, consisting of:

Separate Investment Account BC:     invested primarily in common stocks, publicly traded bonds and short-term interest bearing investments with a primary focus on income and capital preservation.

Separate Investment Account BP:     invested primarily in common stocks, publicly traded bonds and short-term interest bearing investments with a primary focus on achieving growth through a balance of income and capital appreciation.

Separate Investment Account BA:     invested primarily in common stocks, publicly traded bonds and short-term interest bearing investments with a primary focus on capital appreciation.

Separate Investment Account BE:     invested primarily in foreign and domestic common stocks, including small capitalization common stocks.

## Alternative Equity Accounts

The alternative equity accounts, consisting of:

Separate Investment Account NF:     invested primarily in common stocks of foreign and domestic companies with market capitalizations at the time of investment by the Fund of up to $1.5 billion.

Separate Investment Account NL:     seeks long-term growth of capital by investing in common stocks of high quality, rapidly growing companies that will generate above-average returns over the long term.

Separate Investment Account NM:     seeks long-term growth of capital by investing in a diversified portfolio of equity securities of micro cap companies with market capitalizations under $150 million.

Separate Investment Account NQ:     seeks long-term growth of capital through investment primarily in common stocks and other equity securities.

| | |
|---|---|
| Separate Investment Account NS: | invested primarily in small to mid-sized companies that seek long-term capital appreciation. |
| Separate Investment Account NV: | invested primarily in common stocks of established companies that seek long-term capital appreciation. |
| Separate Investment Account N1 | This account is invested primarily in common stocks with the flexibility to utilize convertible securities and bonds to enhance income. |
| Separate Investment Account N2 | This account is invested primarily in mid-to-large-capitalization common stocks with a focus on capital appreciation. |
| Separate Investment Account N3 | This account is invested primarily in small-to-mid-capitalization common stocks with a focus on emerging companies and industries. |
| Separate Investment Account N5 | This account is invested primarily in equity securities, such as common stocks, that seek a high total return (which includes current income and capital appreciation in the value of its shares). |
| Separate Investment Account N6 | This account is invested primarily in securities (primarily equity securities) of companies believed by the Manager to be undervalued in the marketplace in relation to factors such as the companies' assets, earnings, growth potential and cash flows. |
| Separate Investment Account N7 | This account is invested primarily in a diversified portfolio of common stocks, bonds and cash equivalents, the proportions of which will vary based upon management's assessment of the relative values of each investment under prevailing market conditions. |
| Separate Investment Account N8 | This account is invested in a diversified portfolio of fixed income securities to achieve a high level of current income. |
| Separate Investment Account N9 | This account is invested primarily in high yield securities to achieve high level of current income. |
| Separate Investment Account NC | This account is invested primarily in common stocks of U.S. or foreign growth-type companies. |
| Separate Investment Account ND | This account is invested primarily in common stocks of foreign and domestic companies. |
| Separate Investment Account NE | This account is invested primarily in companies that have not yet been discovered by the market. The current emphasis is on companies with market capitalizations of up to $200 million. This account also seeks companies that are between their start-up and emerging -growth phases that are poised for rapid growth. The account attempts to diversify in a variety of companies and industries in an effort to lower the volatility of the portfolio. |

*Access Separate Investment Accounts*

Each Access Separate Investment Account will invest primarily in shares of one or more investment companies registered under the Investment Company Act of 1940. The Access Separate Investment Accounts consist of:

Separate Investment Account W0: Seeks growth over time by investing in common stocks of larger companies considered by management to have better than average prospects for appreciation.

Separate Investment Account W1: This account seeks growth of capital over the long term by investing primarily in a diversified portfolio of common stocks of well known and established companies.

Separate Investment Account W3: This account seeks income by investing primarily in income-producing equity securities, considering the potential for capital appreciation. This account seeks yield exceeding the S&P 500. Considered to be conservative among growth and income funds.

Separate Investment Account W5: This account invests in a diversified array of equity groups both nationally and internationally and monitors this mix of equity portfolios. This account seeks to achieve long-term growth of capital and growth of income by investing primarily in a diversified group of equity mutual funds. Current income is a secondary objective. The allocation decisions are made according to the outlook economy, financial markets and relative valuations of the underlying mutual funds.

Separate Investment Account W7: This account follows an aggressive investment strategy, but invests in medium-size companies.

Separate Investment Account W8: This account seeks long-term capital appreciation by investing primarily in common of established U.S. companies.

Separate Investment Account W9: This account seeks long-term capital appreciation by investing in common stocks of medium sized growth companies.

**RMAP RECEIPT OF CONTRACT**

RMAP NEW BUSINESS
JUL 20 1999
TOM BURKE

Contractholder Legal Name:  TRUSTEE OF GOLDEN STAR, INC.

Contract Number:  RMAP 80864

I acknowledge that I received the above numbered contract on the date of this receipt.

Authorized Signature (Trustee or Plan Sponsor):

_____

Date: July 8, 1999

# APPLICATION FOR GROUP ANNUITY CONTRACT

### to

## MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
### (MassMutual)

### Springfield, Massachusetts

Application is hereby made for a Group Annuity Contract providing benefits for eligible employees of

*Golden Star Inc.*
(Applicant)

Said Contract will be prepared by MassMutual on Form No. GP 5472 and designated as Group Annuity Contract No. GP 5472, the terms and conditions of which have been mutually agreed upon by the Applicant and MassMutual.

It is understood and agreed that this Application will become a part of the Contract hereby applied for and that this Application supersedes and replaces any prior application for said Contract.

I, the undersigned, have read and understood the underwriting rules and proposal material explaining the terms and conditions of the Group Annuity Contract herein applied for and any applicable prospectus prior to signing the Application and entering into this Contract.

In the event this prospect does not meet the underwriting rules of the Group Annuity Contract, MassMutual has the right to decline the Application.

**ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY OR OTHER PERSON, SUBMITS AN APPLICATION FOR INSURANCE OR FILES A CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF INSURANCE FRAUD, WHICH IS A CRIME.**

Signed at *Kansas City, Mo*, this *7* day of *May*, 1999.
(Location)

*Golden Star Inc.*
(Complete Legal Name of Applicant)

By *[signature]* Trustee
[Signature and Title] or [Trustee]

---

For Information of MassMutual:

*Michael Goss*
(Soliciting Agent or Broker)

*[signature]*
(Signature of Resident Agent Where Required
by Law if other than Soliciting Agent or Broker)

*Form GP 5474a*