IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GOLDEN STAR INC., <br> Plan Administrator of the Golden Star Associates' 401(k) Plan and the Golden Star Bargaining Associates' 401(k) Plan, <br> On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MASS MUTUAL LIFE INSURANCE CO., <br><br> Defendant. | CIVIL ACTION <br> NO: 3:11-CV-30235-MAP <br><br><br><br><br><br><br><br><br><br><br><br><br><br> January 27, 2012 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE JURY DEMAND**

Plaintiff, Golden Star Inc. ("Plaintiff" or "GSI"), individually and on behalf of the class it seeks to represent ("Class"), respectfully submits this Memorandum of Law in Opposition to the Motion to Strike Plaintiff's Jury Demand (the "Motion" or "Motion to Strike") filed by Defendant, Mass Mutual Life Insurance Co. ("Defendant" or "MassMutual").[1]

---

[1] Although Defendant also filed a Partial Motion to Dismiss Plaintiff's Complaint, in light of the ruling of the Honorable Janet C. Hall of the United States District Court for the District of Connecticut in *Healthcare Strategies, Inc. v. ING Life Insurance & Annuity Co.*, Civil Action No. 3:11-cv-282 (JCH)(the "*ING Action Decision*") dated January 18, 2012, by Stipulation and proposed Order dated January 25, 2012, which was filed with the Court, Plaintiff and Defendant agreed that the claims for which Defendant had sought dismissal should be withdrawn and dismissed with prejudice. In light of the parties' Stipulation, the Court need only address Defendant's Motion to Strike Plaintiff's Jury Demand.

## I. INTRODUCTION

This action concerns the attempt by MassMutual to take advantage of, and profit as a result of, its fiduciary relationship with retirement savings plans. The allegations in Plaintiff's Complaint demonstrate that MassMutual used, and continues to use, its fiduciary position to generate revenue for itself, in the form of "revenue sharing payments" from mutual funds, while earning other unlawful compensation. *See* Complaint at ¶¶ 1-8. The revenue sharing payments that MassMutual receives for its own benefit amount to kickbacks in violation of, *inter alia*, the prohibited transaction rules of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001 *et seq.* (*i.e.*, ERISA §§ 404 and 406(b), 29 U.S.C. §§ 1104 and 1106(b)), as well as ERISA's fiduciary rules (*i.e.*, ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B)). *Id.* at ¶ 1. These kickback payments at issue are essentially part of a pay-to-play scheme in which MassMutual receives payments from mutual funds in the form of 12b-1 fees, administration fees, service fees, sub-transfer agent fees and/or similar fees (the "revenue sharing payments") in return for providing the mutual funds with access to its retirement plan customers, including its 401(k) plan customers. *Id.* at ¶ 2.[2]

---

[2] MassMutual uses its ownership and control over separate accounts in which its retirement plan customers' investments are placed to negotiate for the receipt of these revenue sharing payments from mutual funds, and the revenue sharing payments have the effect of increasing the expense ratios of the mutual funds, which expenses are deducted directly from the assets of the separate accounts. *Id.* at ¶ 3. The revenue sharing payments are based, in whole or in part, on a percentage of the retirement plans' investments in a mutual fund that are delivered to it by MassMutual and/or based on the magnitude of the investments by such retirement plans in the mutual fund. *Id.* at ¶ 4. While the revenue sharing payments are often internally described by service providers, such as MassMutual, as "services fees" and reimbursement for expenses incurred in providing services for, to or on behalf of the mutual funds, the amount of the revenue sharing payments bears absolutely no relationship to the cost or value of any such services. *Id.* at ¶ 5. The services provided by MassMutual that may incidentally benefit mutual funds (beyond pure and simple access to retirement plan customers -- referred to sometimes as pay-to-play,

In the face of these powerful claims,[3] MassMutual seeks to strike Plaintiff's well-founded jury demand. As explained below, however, applicable law teaches that Plaintiff has a right to jury trial with respect to those legal claims asserted and remedies sought in this ERISA class action. That is why Plaintiff's Complaint seeks a jury trial on those issues so triable. *See* Complaint at Jury Demand.

## II. ARGUMENT

MassMutual argues that Plaintiff's request for a jury trial on those issues so triable should be stricken. In so arguing, Defendant attempts to frame the issue as simple and straightforward when, as explained below, that simply is not the case. Plaintiff alleges that, *inter alia*, MassMutual, as a fiduciary of the Plans, breached its fiduciary duty of trust, and expressly violated ERISA's strict prohibited transaction rules, by accepting revenue sharing kickbacks from mutual funds that MassMutual itself carefully selected for inclusion on its platform of potential investments by the Plans. In particular, ERISA § 406(b)(3) expressly precludes a fiduciary from receiving "any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. §

---

shelf-space or kickback arrangements) are actually services that MassMutual has historically provided to its retirement plan customers as a necessary part of its business, in return for fees directly collected by it from such customers, and these fees generally did not change as a result of MassMutual's receipt of the revenue sharing kickbacks from the mutual funds. *Id.* at ¶ 6. MassMutual's receipt of the revenue sharing payments at issue violates ERISA's prohibited transaction and fiduciary duty rules and should not be countenanced since the receipt of such payments places MassMutual in a conflicted position in which the interests of its retirement plan customers can be and are sacrificed in the interest of MassMutual earning, among other things, greater profits through the receipt of revenue sharing payments. *Id.* at ¶ 7.

[3] It bears noting that, in its Partial Motion to Dismiss (which, as noted above, has been obviated by the parties' Stipulation dated January 25, 2011), MassMutual did not challenge the sufficiency of Plaintiff's core allegations regarding its revenue sharing practices.

1106(b)(3). Yet, what MassMutual plainly did satisfies all the elements of ERISA § 406(b)(3) -- it structured arrangements with the mutual funds that enabled it to receive consideration and profit from transactions involving Plan assets under its control and authority. These actions by MassMutual are precisely the reason ERISA's prohibited transaction rules were enacted in the first place -- to supplement ERISA's core fiduciary requirements by expressly precluding fiduciaries from structuring self-serving transactions that improperly utilize plan assets under its control and authority to pad the fiduciaries' own account.

Significantly, for purposes of determining whether a right to jury trial vests in the Complaint, this action was brought under the authority of ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and for relief under ERISA § 409(a). *See* Complaint at ¶ 10. ERISA § 409(a) specifically provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of this Act [29 U.S.C. §1111].

The breaching fiduciary under ERISA § 409(a) must, therefore, restore losses to the Plans and/or any profits which have been made through the improper use of plan assets resulting from its ERISA violations. The Plans also are entitled to any additional equitable or remedial relief that the Court may deem appropriate. As the Complaint makes clear, Plaintiff seeks a monetary recovery for the Plans from MassMutual for engaging in prohibited, self-dealing transactions that violate ERISA.

In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court expressly held that ERISA creates both legal and equitable causes of action and remedies. *Great-West* specifically emphasized that claims seeking to force a defendant to pay over a sum of money to the plaintiff are paradigmatically legal. Prior to *Great-West*, certain courts had denied plaintiffs the right to a jury trial on their ERISA claims based on their conclusion that ERISA was exclusively equitable because it was derived, in part, from trust law. After *Great-West*, as Defendant's Motion to Strike consistently fails to appreciate, this assumption no longer holds true.

In *Great-West*, the Supreme Court held that where, as here, an ERISA plaintiff seeks a monetary recovery that does not exclusively fall within the narrow definition of "equitable restitution," the relief is inherently legal. 534 U.S. at 221. In *Great-West*, an ERISA plan paid the medical expenses of the defendant, a participant in an ERISA group health plan. The participant then separately recovered the medical expenses from a tortfeasor without reimbursing the plan. The administrator of the ERISA plan filed suit to recoup the medical expenses from the defendant/participant, claiming an entitlement under the express, written terms of the group health plan. The *Great-West* Court held that the ERISA administrator could not maintain this action because it was brought under ERISA § 502(a)(3), where remedies are limited to "other appropriate equitable relief." *Id.* The Court in *Great-West* rejected the ERISA administrator's attempt to preserve the claim by characterizing its claims as seeking equitable relief. In so holding, the *Great-West* Court persuasively explained as follows:

> Almost invariably … suits seeking (whether by judgment, injunction, or declaration) to compel the defendants to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since

>they seek no more than compensation for loss resulting from the defendants'
>breach of legal duty. And money damages are, of course, the classic form of legal
>relief.

*Great-West*, 534 U.S. at 210 (quotations omitted, ellipses in original). The *Great-West* Court went on to reject the administrator's attempts to characterize the relief as equitable restitution because it was not seeking the return of a specific fund in the beneficiary's possession, *Id.* at 212-14, or to characterize the relief as an injunction or any other form of equitable relief. *Id.* at 211, 219-20. Since the plaintiff's suit in *Great-West*, in essence, was one for money against the defendant, the Court held that it was a legal claim. *Id.* at 221.

Courts revisiting the jury trial issue in light of *Great-West* have concluded that ERISA claims seeking legal relief must be tried to a jury under established principles of Seventh Amendment jurisprudence. Significantly, the Second Circuit Court of Appeals in *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005), applied the principles enunciated in *Great-West* in upholding the right to a jury trial in a claim for breach of fiduciary duty in which the plaintiffs sought monetary relief from the defendants. Although *Periera* was not an ERISA case, it is respectfully submitted that the Second Circuit's holding in *Periera* indicates that the right to a jury trial under *Great-West* would apply equally to an ERISA fiduciary breach claim.

In *Periera*, the Second Circuit squarely addressed whether a claim for fiduciary breach was one that should be tried before a jury in light of the holding in *Great-West*. Acknowledging that *Great-West* had indeed "reconfigured the legal landscape of restitution," *Periera*, 413 F.3d at 340, the *Periera* Court first analyzed the Supreme Court's two-prong test for determining whether an action was a legal or an equitable claim. Where a statute, such as ERISA, is silent on the right to a jury trial, courts employ a two-part inquiry to determine whether a right to trial by

jury exists under the Seventh Amendment. *Tull v. United States*, 481 U.S. 412, 417 (1987). First, the court determines whether the action is more similar to cases that were traditionally tried to courts of law as opposed to courts of equity. *Id.* Then, the court examines whether the remedy sought is more legal than equitable in nature. *Id.* "The second step of this analysis is more important than the first." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). Focusing on the second part of the *Granfinanciera* test (*i.e.*, the nature of the relief sought), the Second Circuit in *Periera* concluded that "it was compelled to read *Great-West* as broadly as it was written," *Periera*, at 340, and, as such, a fiduciary breach claim seeking a monetary recovery was clearly a legal action under *Great-West* principles, requiring that the case be tried to a jury under the Seventh Amendment.

Following *Great-West*, even in Circuits that previously had denied jury trials in ERISA cases, courts have held that ERISA plaintiffs are entitled to trial by jury where the relief they are seeking is essentially money damages. For example, the Honorable Michael B. Mukasey specifically explained that cases denying a jury trial because ERISA has its origins in trust law are no longer controlling because they "antedate the Supreme Court's decision in *Great-West*." *Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932 at *34 (S.D.N.Y. Mar. 20, 2003); *see also Kirse v. McCullough*, No. 04-1067-CV-W-SOW, 2005 U.S. Dist. LEXIS 17023 (W.D. Mo. May 12, 2005) (in light of *Great-West*, plaintiffs had right to jury trial for legal claims under § 502(a)(2)).

Both the courts in *Bona* and *Kirse* held that, in light of the Supreme Court's ruling in *Great-West*, where, as here, a claim seeks money damages, it is quintessentially legal. *Great-West*, 534 U.S. at 210; *see also Rhodes v. Piggly Wiggly Ala. Distrib. Co., Inc.*, 741 F.

Supp. 1542, 1544-46 (N.D. Ala. 1990) (holding that ERISA claims seeking legal relief must be tried to jury after extensive historical analysis of Seventh Amendment). In *Bona*, Judge Mukasey applied the Seventh Amendment analysis from *Granfinanciera*, and concluded that ERISA claims for money damages under ERISA §§ 502(a)(2) and 409(a) must be tried to a jury. In so holding, Judge Mukasey reasoned, two years before the Second Circuit did likewise in *Periera*, that, even though the first *Granfinanciera* factor (whether breach of fiduciary duty was traditionally tried to courts of law) "weighs against a jury trial," the second, more important prong of the test -- "determin[ing] whether [the remedy sought] is legal or equitable" -- weighed in favor of a jury trial because, under the Supreme Court's analysis in *Great-West*, plaintiffs seek legal relief from the trustee. *Bona*, 2003 WL 1395932 at * 35. This same conclusion was reached in *Kirse*, as well as in *Lamberty v. Premier Millwork & Lumber Co.*, 329 F. Supp. 2d 737, 745 (E.D. Va. 2004) (holding that "plaintiff is constitutionally entitled to trial by jury" and reasoning "while the overall ERISA action is equitable in nature, the particular issues involved in that action may be legal [and] [s]uch appears to be the case here, as plaintiff's suit to recover what is due and owing under a benefits plan essentially presents an action at law to recover a legal entitlement"). Thus, there can be no serious question that Plaintiff's jury demand is proper.

MassMutual, in its Motion to Strike, ignores *Great-West*, as well as *Periera*; choosing, instead, to principally cite cases that either pre-date *Great-West* or were brought under sections of ERISA other than ERISA §§ 502(a)(2) and 409(a) alleging fiduciary breach. First, Defendant's reliance upon *Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 54 (1st Cir. 2000) (holding that "the district court did not err ... in denying [plaintiff's] demand for a jury trial"); and *Dudley Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co.*, 302 F.3d 1, 5 (1st Cir. 2002)

(holding that ERISA preempts state law), is misplaced because *Hampers* predates *Great West* and *Dudley* explicitly did not consider whether a right to jury trial could attach because it was not before the Court. *See Dudley*, 302 F.3d at 2, n.3. Likewise, *Stout v. GTE Prods. Corp.*, 618 F. Supp. 444, 445 (D. Me. 1995); and *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund*, 933 F. Supp. 1124, 1147 (D. Mass. 1996), also pre-date *Great West* and, therefore, offer little support for Defendant's cause. Moreover, as explained below, the dicta and reasoning in *Jackson* actually supports Plaintiff's position since it recognizes that non-restitutionary damages (which are included in the relief explicitly sought in the Complaint, including compensatory damages, *see* Plaintiff's Complaint at ¶ 10), constitutes a legal remedy for which the right to jury trial traditionally attaches. Second, MassMutual's citations to *Kenney v. State St. Corp.*, No. 09-10750, 2011 WL 4344452, at * 8 (D. Mass. Sept. 15, 2011) ("Kenney's demand for a jury trial and claims for equitable relief pursuant to ERISA § 502(a)(3) are stricken"); *Pepicelli v. Fall River Shirt Co., Inc.*, No. 07-11770, 2010 WL 3749453, at *3 (D. Mass. Sept. 21, 2010)(in which the complaint sought payment for unpaid contributions under ERISA § 502(a)(3) alone, *see Pepicelli* Complaint at ¶ 1); *Gammel v. Prudential Ins. Co. of Am.*, 502 F. Supp. 2d 167, 172 (D. Mass. 2007)(in which relief was sought under ERISA §§ 502(a)(1)&(3)); *Lopez v. AstraZeneca Pharm. LP*, No. 05-1285, 2006 WL 508095, at *5 (D.P.R. Mar. 1, 2006)(seeking relief under ERISA § 502(a)(1)(B)), are entirely misplaced because none of these cases address a prayer for relief under ERISA § 502(a)(2) or even discusses *Great West*. For these reasons, the cases cited by MassMutual from this Circuit and elsewhere offer little, if any, support for its position. Rather, these cases all address Section 502(a)(1) cases (regarding actions by a participant or beneficiary) or Section 502(a)(3) cases (where a fiduciary is limited to seeking to

enjoin a practice and/or obtain other appropriate equitable relief). Obviously, since a Section 502(a)(1) case could not be brought by Plaintiff and a Section 502(a)(3) case only pertains to equitable relief to which the right to jury trial could not attach, these cases, which are cited by MassMutual in an attempt to convince this Court that this jury trial question is a matter of settled law, do not withstand careful scrutiny. Instead, the cases relied upon by MassMutual only serve to confirm that MassMutual's argument and analysis is overbroad and, ultimately, unpersuasive. Third and finally, unlike *Great-West*, none of the authorities cited by MassMutual is binding on this Court. MassMutual simply parrots the same concept throughout its papers -- that no jury trial is available because ERISA claims were derived from the law of trusts and, thus, are always equitable in nature -- which the Supreme Court and Second Circuit have now expressly rejected in *Great-West* and *Periera*. In light of *Great-West* and *Periera*, at best, MassMutual's "analysis" is incomplete and unpersuasive. Plaintiff respectfully submits that, in light of this authority, it is now clear that ERISA claims seeking legal, monetary relief must be tried to a jury.[4]

Although no court in the First Circuit Court of Appeals has directly addressed this issue since *Great-West*, in *Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund*, 933 F.Supp. 1124, 1147-48 (D. Mass.1996), *citing Borst v. Chevron Corp.*, 36 F.3d 1308, 1323–24 (5th Cir.1994), *cert. denied*, 514 U.S. 1066, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995), this Court

---

[4]At the very minimum, as the Honorable Janet C. Hall and the Honorable Alfred V. Covello of the United States District Court for the District of Connecticut held in cases similar to the instant action, *see ING Action Decision* at 9-12 (Exhibit "A"); and *Phones Plus, Inc. v. Hartford Financial Services Group, Inc.*, Civil No. 3:06-CV-1835(AVC)(September 30, 2008)(slip opinion), a true and correct copy of which is attached as Exhibit "B," the Court should hold that Plaintiff is entitled to a jury trial to the extent it seeks damages to the Plans. *Id.* at 10-11. These decisions establish that, at the very minimum, certain of the claims asserted by Plaintiff are legal in nature and that a right to jury trial, therefore, attaches. *See* Complaint at ¶ 10.

implicitly acknowledged the logic of *Great-West* and *Pereira*, when it noted that a right to jury trial typically exists where, as here, damages are sought in a Complaint: "[t]hat monetary relief is sought also does not mandate a jury trial as Jackson requests restitution rather than damages."[5] In this case, as MassMutual's Motion to Strike seeks to avoid and transparently ignores, the Complaint explicitly seeks an award of, among other things, non-restitutionary damages. *See* Complaint at ¶¶ 9-10, 104-105, 109, 113 and Prayer for Relief.[6]

---

[5] The decision and reasoning in *Jackson* also can only be properly understood within the context that, based upon pre-*Great West* jurisprudence, the Court in *Jackson* concluded that "ERISA actions are equitable and therefore no right to trial by jury is provided by statute or the Seventh Amendment to the Constitution." *Jackson* at 1147. That is essentially the position that MassMutual proposes that the Court adopt in this case. But, as explained above, such a holding directly contradicts the Supreme Court's holding in *Great West* that ERISA implicates both legal and equitable claims. *See also* AmJur Pensions § 808 ("Right to jury trial")("Actions under ERISA may be entitled to a jury trial where a particular ERISA claim is legal in nature").

[6] Defendant's predicate assertion that "there is no right to a jury trial where, as here, GSI seeks only equitable relief," *see* MassMutual's Memorandum of Law at 11, *citing Curtis v. Loether*, 415 U.S. 189, 191-93 (1974), simply does not square with the actual averments of the Complaint and its consistent prayer for legal damages, as well as other appropriate relief.

## III. CONCLUSION

For all of the reasons explained above, Plaintiff respectfully submits that Defendant's Motion to Strike Plaintiff's Jury Demand should be denied.

Dated: January 27, 2012                    Respectfully submitted,

/s/ Michelle H. Blauner
Michelle H. Blauner
Charles E. Tompkins
Shapiro Haber & Urmy LLP
53 State Street
Boston MA, 02109
Telephone: (617) 439 3939
Facsimile: (617) 439 0134
Email: mblauner@shulaw.com
         ctompkins@shulaw.com

John M. Edgar
John F. Edgar
Edgar Law Firm LLC
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: jme@edgarlawfirm.com
         jfe@edgardlawfirm.com

James E. Miller
Laurie Rubinow
Karen M. Leser-Grenon
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
         lrubinow@sfmslaw.com
         kleser@sfmslaw.com

Ronald S. Kravitz
Liner Grode Stein Yankelevitz Sunshine
Regenstreif & Taylor LLP
199 Fremont St., 20th Fl.
San Francisco, CA 94105
Telephone: (415) 489-7700
Facsimile:   (415) 489-7701
Email: rkravitz@linerlaw.com

Attorneys for Plaintiff
and the Proposed Class

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 27, 2012.

                                       **/s/ Michelle H. Blauner**
                                         Michelle H. Blauner