UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION


...........................
**Golden Star, Inc.**          .
                              .          Civil No.
    v.                        .          **11-30235-MAP**
                              .
**Mass Mutual Life Insurance**.
...........................


Before the Honorable Michael A. Ponsor,
United States District Judge,
Motion Hearing Held on **April 4, 2012**.



<u>APPEARANCES</u>:


For the plaintiff:  James E. Miller, Laurie Rubinow, 65
     Main Street, Chester, CT 06412-1311.

Ronald Kravitz, 199 Fremont Street, 20th Floor, San
     Francisco, CA 94105-2255.

For the defendant:  Mark B. Blocker, One South Dearborn,
     Chicago, IL 60603.

Bernadette Harrigan, 1295 State Street, Springfield, MA
     01101.

John Pucci, 1500 Main Street, Suite 2700, PO Box 15507,
     Springfield, MA 0115-5507.


Alice Moran, CSR, RPR, RMR
Official Federal Court Reporter
300 State Street, Room 303D
Springfield, MA 01105
Tel: (413)731-0086  Fax: (413)737-7333
alice.moran@verizon.net

INDEX

| Witness Name: | Direct | Cross | Redirect | Re-cross |
|---|---|---|---|---|

None

| Plaintiffs' Exhibits: | | | | Page |
|---|---|---|---|---|

None

| Defendant's Exhibits: | | | | Page |
|---|---|---|---|---|

None

**(Court commenced at 11:09.)**

THE CLERK:  Your Honor, this is Golden Star

versus Mass Mutual Life, Civil Action 11-30235.

THE COURT:  We are here -- well, you were

originally going to be here for argument on the motion to

dismiss and to strike.  The motion to dismiss has been

resolved as I understand it, as I'll describe on the

record in just a minute, and so what we are really just

here for today is a motion to strike.

What I'd like to do is have counsel introduce

themselves for the record, and then I'd like to see if I

can't tee the issue up here and then we'll be able to move

pretty promptly to the actual issue.

Just so that plaintiffs' counsel can brace itself,

I'm going to switch the ordinary order of argument.

Ordinarily the moving party would lead off, but I think I

have a few more questions for the plaintiff than I do for

the defendant and so, for reasons that I'll describe in a

minute, I'm going to be asking the nonmoving party here,

the plaintiff, to argue first.

I'm going to start with Mr. Pucci and if you'd

introduce yourself for the record.

MR. PUCCI:  John Pucci for MassMutual, Your

Honor.

THE COURT:  All right.

1          MR. BLOCKER:  Good morning, Your Honor.  Mark

2     Blocker on behalf of the defendant MassMutaul.  Can I

3     introduce two other people, Your Honor?

4          THE COURT:  Of course.

5          MR. BLOCKER:  With us in the courtroom are

6     Bernadette Harrigan from MassMtuaul.  She's an in-house

7     lawyer at MassMutaul and Suzanna Marcus who's an in-house

8     paralegal.

9          THE COURT:  Welcome.  Good to have you here.

10         And for plaintiff?

11         MR. MILLER:  Good morning, Your Honor.  James

12     Miller for the plaintiff Golden Star, and along with me is

13     Ronald Kravitz and Laurie Rubinow.

14         THE COURT:  Very good.  Here's the background of

15     the case in crude summary as I understand it.

16         This is a class action, or at least a punitive class

17     action, being brought by Golden Star against defendant

18     MassMutual alleging that MassMutual breached its fiduciary

19     duty and engaged in prohibited transactions under the

20     Employee Retirement Income Security Act, known fondly as

21     ERISA.

22         Originally the plaintiffs' claims were based on three

23     types of investment options:  Mutual funds, the so-called

24     Guaranteed Interest Account, GIA, and the Capital

25     Preservation Account, the CPA.  The defendant responded to

1    the complaint with a motion to dismiss the claims offered

2    based upon the GIA and the CPA and also moved to strike

3    the plaintiffs' jury demand.

4        The parties entered into a stipulation a short time

5    ago in which the plaintiff stipulated to the dismissal of

6    the GPA -- sorry -- GIA and CPA claims, and those are now

7    out of the case and they won't be a distraction.

8        What is left then is the issue of the plaintiffs'

9    entitlement to a jury trial which plunges us into an

10   interesting analysis of the distinction between legal and

11   equitable remedies and whether what we have here is

12   essentially an equitable case, a case based on equity, or

13   whether it's legal in nature.

14       As you know, if it's equitable, the plaintiff is

15   stuck with me.  And if it's legal, you get a jury.  So the

16   area has been in flux a bit.

17       The background of the case factually, or at least

18   based on the allegations, is that MassMutual provides a

19   menu of investment options for individuals or entities

20   like Golden Star and the entity like Golden Star can

21   select options to offer employees and then employees

22   decide how to allocate their 401(k) contributions among

23   different investment options.

24       When the plans invest money into a mutual fund, the

25   mutual fund charges a fee which is called an expense ratio

1    that's deducted from the money that the plan invests.  So

2    there's a little bit less than what you put up that

3    actually goes into the investment because it's deducted

4    for this expense fee, and then the mutual funds themselves

5    compensate MassMutual through what the plaintiff refers to

6    as "revenue sharing payments."

7         The plaintiffs allege that the mutual funds make

8    payments to the defendant through these revenue sharing

9    payments that result in higher expenses for the plaintiff

10   and the employees in the form of these expense ratios.

11        So the plaintiff basically says that MassMutual is

12   misbehaving through these charges for its services which

13   then increase the amounts of money the plaintiffs have to

14   pay in order to put in place these investments for their

15   401(k)s.

16        The plaintiff in Count 1 alleges that the class

17   members suffered losses and damages, and that this was a

18   breach of fiduciary duty on the part of MassMutual and

19   they want to restore these losses under Section 502(a)(2)

20   and 409(a) of ERISA, and in Count 2 -- what I just

21   described was Count 1.

22        In Count 2 the plaintiff wants to compel the

23   defendant to credit back and disgorge and make restitution

24   of revenue sharing payments and other improper

25   compensation that it received again under 502(a) and

409(a).

In Count 3 the plaintiff argues that if the defendant is not a fiduciary, it is liable for all recoverable damages and relief as a non-fiduciary that knowingly participated in a breach of trust, and I'm quoting from paragraph 113 of the complaint. The plaintiff demands a jury trial as to all claims so triable.

So the plaintiffs' got a problem with me for two reasons, a practical problem. First of all, I don't know how often I have dismissed jury claims in ERISA cases. I'm just used to doing it. It says ERISA, no jury claim; ERISA, no jury claim; ERISA, no jury claim. It's so easy, so quick, so simple, and so that's what my instinct is.

The second thing is we do have one case, the *Kenney* case, from the First Circuit from about -- from this district from about a year ago with a magistrate judge making a report and recommendation, adopted by my colleague, Judge Casper, finding that even under 502(a)(2) there is no right to a jury trial.

Generally speaking, I don't like to create conflicts with my colleagues in the law within this district. I have done it and I probably will do it again when there's an important matter of principle at stake, or where I think my colleague has completely jumped the tracks and there's a lot of authority, or almost unanimous authority,

1   against whatever my dear colleague has done.

2       Here the case law is kind of all over the place.

3   It's kind of a mess under 502(a).  There are authorities

4   that seem to be going different ways based upon this

5   recent Supreme Court decisional law that you've both

6   cited, and specifically that is the *Great-West* case which

7   has this interesting discussion of the distinction between

8   legal and equitable remedies and then the more recent

9   *Amara* decision which just came out about a year ago.

10      Different district court judges have held that 502(a)

11  is strictly non-jury and there are district court

12  opinions, I think in Connecticut, the southern district of

13  New York, and various other places, which have held that

14  you can get a jury trial under 502(a).  So there's a

15  scattering of district court decisions that go different

16  ways.

17      There seems to be -- the heart of the analysis seems

18  to be that there's a two-step analysis:  One is a little

19  bit of a law school kind of analysis which is a hundred

20  years ago would this have been in the courts of equity or

21  would this have been in the law courts, and so you try to

22  pigeonhole it and put yourself back in the brain of Lord

23  Coke or somebody like that and try to figure out which

24  court this would be in.

25      Then the second analysis is, what's the nature of the

remedy?  Is this really a legal breach of contract type
remedy, which is sort of classically legal?  Or is this a
restitution type remedy, which tends to be more equitable?

Different judges have played around with that in
different ways, and so we're here this morning with a
little bit perhaps of an edge that the plaintiff has to
deal with from me, which can certainly be dealt with.

I come in very often with a certain, I don't know,
landscape of my mind which changes after I've heard oral
argument, but that's what's going on in my mind.

I think I've probably done as good a summary as I can
of the background, and I'm happy to hear from counsel now.
Tell me why you think the motion to strike should be
denied and then I will let the plaintiff respond.  I'm
sorry, I'll let the defendant respond.  Tell me why the
defendant's motion to strike should be denied and then I
will hear from the defendant.

MR. MILLER:  Thank you, Your Honor.

I guess I think from a procedural posture the case is
in an interesting point because I think standing here now,
and Mr. Blocker and I have had a similar case we've
opposed each other, standing here now MassMutual argues
that, in essence, what we are seeking is disgorgement or
restitution.

And candidly, Your Honor, as the case proceeds, it

1     would be our intent to seek that as the prime remedy with

2     respect to the prohibited transaction claim, and I think

3     Your Honor would be likely, after discovery, to conclude

4     that a disgorgement remedy or a restitution remedy would

5     be equitable in the context in which we would be seeking

6     that relief.

7          However, based on some past experience and reading

8     the tea leaves a bit, I suspect that later in the case

9     MassMutual will argue that disgorgement is not an

10    appropriate remedy under Section 409, and that instead all

11    that the plaintiffs should be able to seek is some kind of

12    economic damage, to the extent that it can prove that an

13    economic damage was suffered.  And that I anticipate

14    MassMutual will argue that although revenue sharing

15    payments may have been made, that the plans indirectly

16    benefited from those payments by paying lower fees

17    directly to MassMutual.

18         Our response will be that, among other things, that

19    the payments are prohibited in nature and that therefore

20    disgorgement would be the remedy, and then in that

21    instance I think Your Honor would conclude likely that it

22    was an equitable remedy and therefore that there was no

23    jury trial.

24         However, as we enumerate in paragraphs I think it's

25    9, 10, 104, 105, 109, 113 and in our prayer for relief, we

1    also allege that we can make a claim for money damages,

2    and depending upon the arguments that the Court may or may

3    not accept with respect to the appropriate relief under

4    409 in this case based upon the facts of the case, I

5    certainly hope it won't occur, but I can imagine a

6    situation where Your Honor determines that the appropriate

7    remedy is more in the nature of money damages, and unlike

8    Section 501(a) and 501(a)(3), which speak to specific

9    kinds of relief, as Your Honor knows, 502(a)(2) refers to

10   Section 409, and 409, in addition to referring to losses

11   and profits, also refers to other equitable and remedial

12   relief.

13        And in terms of remedial relief candidly, Your Honor,

14   we researched it and not found a lot of decision about

15   what remedial relief means as opposed to general relief,

16   but I think in reading the words of 409, remedial relief

17   must be something beyond equitable relief.

18        So I think Your Honor will have in his power the

19   ability to order that there could be a variety of

20   different damages that would be appropriate based on the

21   facts and the evidence developed in the case, and that

22   that remedial relief would include what would generally be

23   considered to be legal damages as opposed to restitution

24   or disgorgement.

25             THE COURT:  Now let me insert a question to make

1   sure I follow you.  There may be an easy way to handle

2   this.

3       What I'm inferring from what you're saying is

4   something along these lines:  Yes, it may very well be and

5   we, as plaintiffs, may very well prefer to get an

6   exclusively equitable remedy and we hope to convince you,

7   the judge, to give us that remedy and if that is a remedy

8   which makes our clients whole, we're perfectly happy to

9   try this as an equitable case non-jury.

10      But lurking in the case, depending on how the legal

11  analysis develops, how discovery goes perhaps, how I might

12  craft the case in my own mind, there may be buried within

13  your allegations a claim for a legal remedy, and you don't

14  want to have that possibility snuffed out at this stage by

15  having me make a firm determination that you are never

16  under any circumstances entitled to a jury trial.

17      So one of the ways I could do that -- there's two

18  ways I can think of that I can do that.  I can deny the

19  motion to strike the jury claim without prejudice and let

20  you go on down the road for awhile and there will be, I

21  presume, a motion for summary judgment that will be filed

22  at some point.

23      There will be discovery that will be taken and you

24  can shake the case out and you can see how much of the

25  crud falls out and how much of the wheat is really still

1    in the sifter and when you get there, you can say, okay,

2    well, it looks like what we've got here is an equitable

3    case.  Fine.  Go ahead and get rid of our jury trial.

4    But, on the other hand, if there's some kernels of things

5    that are still left in the strainer that would provide you

6    with a legal remedy, you want to hold the possibility of a

7    jury trial.

8        So I could deny their motion without prejudice.  On

9    the other hand, I could allow their motion and I could say

10   on the record I'll be happy to entertain a motion for

11   reconsideration later on depending on how things shake

12   out.

13       The jury question doesn't really have to be tackled

14   until we're ready to try the case and put some witnesses

15   in the box, which will be probably more than a couple of

16   months from now.  You'll need some time to get ready and

17   so I have either one of those options.  If I allow the

18   motion, it's always subject to reconsideration.  If I deny

19   it without prejudice, they can always put it in front of

20   me again.

21            MR. MILLER:  I think that's precisely right,

22   Your Honor.  I can't recall a time where I've argued in

23   court for a denial without prejudice but I think we'd

24   obviously prefer that result in part because we wouldn't

25   be outwardly losing.  But, in addition, we do think that

1   based on the allegations in the complaint there is

2   sufficient reason to believe that we may be able to

3   establish legal damages.

4       Then speaking just briefly, Your Honor, to the *Kenney*

5   case, you know, I apologize, Your Honor, we stated in our

6   brief it was only a 502(a)(3) case but in fact Mr. Blocker

7   is correct that we were only reading the district court's

8   decision which addressed that and the magistrate judge's

9   decision did address 502(a)(2).  But in that case I think

10  it could be read in a limited manner because, one,

11  although it discusses *Great-West*, it doesn't discuss

12  *Great-West* in the context of whether a distinction has

13  been drawn between legal and equitable remedies that may

14  be available under ERISA.

15      In addition, in the *Kenney* case it specifically

16  focuses on the nature of the relief being sought and

17  determines that it's entirely restitutionary in nature.

18      One case that we did discover recently that I would

19  be happy -- I have copies to bring up to Your Honor and

20  I've already shared it with Mr. Blocker, it's not an ERSIA

21  case so I want to preface it with that.  The name of the

22  case is *Sergeant v. McKinstry* and it was decided March 21,

23  2012 by the Eastern District of Kentucky and the citation

24  is 2012, West Law 967056.

25      It's a case about the liability of a chief

1    restructuring officer in the context of a bankruptcy of a

2    coal company, but in that context it engages in an

3    extensive analysis of whether or not a jury trial should

4    be permitted with respect to claims that it analogizes to

5    claims under the law of trusts, and in that context it

6    discusses *Great-West* in some detail on star page 23.

7         In essence, it holds that although, and I'm

8    paraphrasing, although *Great-West* is not a Seventh

9    Amendment case, its discussion of when money is an

10   equitable remedy for ERISA extends to the Seventh

11   Amendment context, it is both rely on the same two-step

12   inquiry.  Then the court goes on to perform that Seventh

13   Amendment inquiry and determine that a right to jury trial

14   lies because the claims in that case are not determined to

15   be purely restitutionary.

16        The distinction that the *Sergeant* case draws is that

17   a restitutionary case in the equitable context requires

18   that specific funds be both traceable to and in the

19   possession of the defendant.  And here, to the extent the

20   Court determines that that was the sole equitable remedy,

21   for example under Section 409, I'm fairly certain that

22   although MassMutual had possession of the revenue sharing

23   payments since, among other things, it's a publicly-traded

24   company, it may no longer have possession of those funds.

25             THE COURT:  Right.

1          MR. MILLER:  And it may put us into the context

2     of a damages analysis and in our case we probably would

3     argue for disgorgement and candidly I think that would

4     probably ultimately be determined to be equitable as well,

5     but it goes back to my first point that we do think Your

6     Honor may determine, especially if it accepts some of

7     MassMutual's arguments later, that our claims for damages

8     are more legal in nature than equitable in nature.

9          THE COURT:  So just one final point and then I'm

10    going to hear from counsel for MassMutual.

11          One of the things you seem to be hinting at, or not

12    really so much even hinting at, is that you might get --

13    I'm being a little florid here -- you might get

14    double-crossed by MassMutual in the sense that they would

15    say you don't have a right to a jury trial and then later

16    on during the case, maybe in the context of a motion for

17    summary judgment, nudge you into the legal area after

18    having stripped you of your right to a jury trial and you

19    want to be able to at least keep that open if you end up

20    -- you may walk over from the equitable side of the court

21    to the legal side of the court on your own power, but you

22    also might get shoved over there by MassMutual based upon

23    their subsequent arguments.  And if you do find yourself

24    over there, you want to be able to stand up in front of a

25    jury if you're in that world rather than rely strictly on

1 equity.

2     MR. MILLER:  Yes, Your Honor.

3     THE COURT:  Okay.  Let me hear then from counsel

4 for MassMutual.  I guess one of the things I'm interested

5 in here is whether there really is all that much at stake

6 at this point.

7   If I allow your motion to strike the jury trial, it's

8 subject to reconsideration later if it turns out that the

9 case has more of a legal complexion than a equitable one.

10 If I deny your motion without prejudice, you could raise

11 it again without having to do much more than dive into

12 your word processor and reprint the memo and off you go.

13 And if it was the case it was purely equitable, of course,

14 you wouldn't be forced to try your case in front of a

15 jury.

16     MR. BLOCKER:  Let me answer that question first,

17 Your Honor.  What's at stake?  We do think the right

18 outcome here is to strike the jury demand.  As Your Honor

19 has already noted, almost every court in this district has

20 done exactly the same thing.  That's your instinct and

21 it's an instinct for a good reason.  That's what most

22 cases hold is the appropriate outcome regardless of what

23 section you bring your claim of Section 502.  So we think

24 on the state of the law as it stands today and the way the

25 case is pled it should be granted.

1      I really think, Your Honor, that while I agree with

2  you the case law is somewhat of a mess, I guess I'd make

3  two observations:  One is it's not a mess in this

4  district.

5      So an opinion that lights the fire or suggests to

6  other parties that they can bring claims and have a jury

7  demand would just create confusion, but the second, and I

8  think more important, point is this.  I think while

9  there's confusion in the law, I think you can get to the

10 same outcome no matter which way you go with respect to

11 *Great-West*.

12     I really think there's two ways to analysis our

13 motion and either way you get to a grant, and that is the

14 reason I think your instinct is always to say jury trial

15 in an ERISA case, you know, that's out the window is

16 because traditionally courts have always said that ERISA's

17 antecedents, the source of ERISA law, is trust law which

18 is equitable, and so courts have always said, at least

19 prior to *Great-West*, that there is no right to a jury

20 trial for any type of ERISA case.

21     That was true of every First Circuit case before

22 *Great-West* was decided.  It was true of every district

23 court case that was decided before *Great-West*.

24     So if you follow that traditional route and think

25 that *Great-West* made no impact, I think there's no basis

1    to find that whatever is going to happen down the road is

2    going to change the fact that what they're pleading is

3    equitable.

4         But then if you move to the other side of the ledger

5    and say, okay, if what I believe -- what if Your Honor

6    believes that *Great-West* did make some sort of impact or

7    somehow changed the law with respect to whether jury trial

8    rights are available?  The answer is I think you'd still

9    grant our motion to dismiss because at the end of the day

10   what *Great-West* says is there's two types of restitution:

11   There's legal restitution and there's equitable

12   restitution.

13        Equitable restitution is one where you're either

14   seeking dollars that are in the possession of the

15   defendant or some specifically identifiable funds, and no

16   matter which way you cut it, that's what the plaintiffs

17   are seeking here.

18        If you look in their complaint, now that we've

19   eliminated the GIA and CPA aspects of the case, this is

20   all about revenue sharing, and to put their complaint in

21   very simple terms they say you took revenue sharing

22   payments from mutual funds -- and Your Honor's rendition

23   was extremely accurate with respect to how revenue sharing

24   works -- but MassMutual took those payments from mutual

25   funds.  They are specifically identifiable to these plans,

1    according to the plaintiffs, and, therefore, they are the
2    classic form of restitutionary relief of equitable
3    restitution.
4        So even if you were to apply or import the *Great-West*
5    analysis, which doesn't have anything to do with a jury
6    trial right, obviously it was dealing with a different
7    issue, but even if you thought, like some district courts
8    have, that it does make some sort of difference with
9    respect to jury trial rights, the facts of this case, the
10   way they're pled, suggests that you should grant our
11   motion.  That there's never going to be a legal claim in
12   this case.
13       I guess to clean up this a little bit, the two
14   primary cases that the plaintiffs rely on are the Second
15   Circuit case in *Pereira*, which I'm probably pronouncing
16   wrong, and then *Bona v. Barasch* decision which Your Honor
17   alluded to from the southern district of New York.
18       I would say, Your Honor, those decisions, whether or
19   not they reached the right result, they're entirely
20   consistent with what we are saying about this case, and
21   that is that if you have a specifically identifiable set
22   of funds, like you do here, that you would find it's
23   equitable.  But in *Bona v. Barasch* the court found there
24   wasn't a specifically identifiable set of funds and
25   therefore held that was a legal claim.

1       In the *Pereira* case, which had to do with whether

2   certain officers in the company caused a bankruptcy, again

3   the court said, well, you're not seeking any specifically

4   identifiable funds, plaintiff, and so that is a legal

5   claim.

6           THE COURT:  What's the -- is there a distinction

7   between specifically identifiable funds and a measure of

8   damages?

9       In other words, I'm looking at Count 3 where the

10  plaintiff seems to be pleading in the alternative that if

11  your client is not a fiduciary, it's liable as a

12  non-fiduciary for participating in a breach of trust.

13          MR. BLOCKER:  Yes.

14          THE COURT:  And the measure of damages, or at

15  least one of the pits of calculation that the jury or I

16  might go through in determining damages, if we ever get

17  there, which I'm sure you're confident we won't but

18  they're confident that they will, at some point we will

19  get there, and so it's not a question of you've got $4.25

20  in your pocket, give me my $4.25 back.  That was supposed

21  to go to me.

22      It's a way of saying, well, how much did the

23  plaintiffs lose as a result of the misbehavior of

24  MassMutual and you calculate it by figuring out what the

25  revenue sharing was and maybe there are other things that

1    would be in there.

2         So it's not really so much restitution anymore as it

3    is a way of measuring damages, and when you get to that,

4    it begins to acquire more of a legal smell than an

5    equitable smell.

6              MR. BLOCKER:  Well, I can take the counts one by

7    one, Your Honor.  You should ask Mr. Miller this, but my

8    sense from the pleadings was that there is really not a

9    dispute with respect to Count 2 and Count 3; that those

10   are equitable and that there's no jury trial right.

11        The reason that there's not a jury trial right under

12   the prohibited transactions claim is Mr. Miller just told

13   you that what they want there is disgorgement.  So to me

14   that's the easiest one of all the claims in the case.

15        But with respect to Count 3, the alternative claim,

16   the Supreme Court said, and I forget the name of the case,

17   it's *State Street Bank* I think, but we cited it in

18   footnote one to our reply belief, that that claim can only

19   be brought under Section 502(a)(3) which only permits

20   various forms of equitable relief.

21        So you can ask Mr. Miller to confirm this, but I

22   don't think there's any dispute that Counts 2 and 3 are

23   equitable claims.  There's no jury trial right.  I think

24   the only battleground here, the only legitimate

25   battleground, I should say, is whether there's a jury

1    trial right that attaches to their claim for a fiduciary

2    duty.

3              THE COURT:  Okay.

4              MR. BLOCKER:  At the end of the day, Your Honor,

5    to answer your question about whether it's a measure of

6    relief or it's a type of relief, at the end of the day if

7    you're going to take *Great-West* seriously, if *Great-West*

8    matters to this analysis, I don't think it matters whether

9    it's a measure of relief or a form of relief.

10       I think ultimately, and the Supreme Court has said

11   many times, the label you attach to what you're seeking

12   doesn't matter.  That's the *Dairy Queen v. Wood* case.  The

13   label doesn't matter.

14       Mr. Miller and the plaintiffs can call it

15   compensatory damages, losses.  They can put whatever legal

16   label they want on it, but at the end of the day if you

17   look at the complaint, what they're really seeking is they

18   want the revenue sharing or some of the revenue sharing

19   payments that MassMutual got, they want them back, and

20   that's sort of their classic equitable restitution.

21             THE COURT:  Let me ask maybe one and possibly

22   two more questions, but one question is there's a

23   suggestion, which I pursued with counsel for the

24   plaintiff, that they're worried that MassMutal is going to

25   sort of play gotcha with them.

1    That MassMutual is going to say this is purely

2  equitable, purely equitable, and then you get a little bit

3  further down the line and you'll try to kick out the

4  equitable claims and say, a-ha, all that's left is legal

5  claims and MassMutaul is going to change customs and put

6  on its legal outfit and that the plaintiffs are going to

7  be prejudiced to some extent as a result of being perhaps

8  elbowed into the legal realm.

9    Do you have any reassurance for the plaintiffs on

10  that, or what's your response to that concern?

11         MR. BLOCKER:  Your Honor, I can't -- I cannot

12  envision -- I know theoretically that's a possibility.  I

13  can't envision the arguments that would be made that would

14  cause us to say, a-ha, gotcha, you can't recover any sort

15  of equitable relief.  But Your Honor is the judge and if

16  something like that happens down the line and that

17  MassMutal takes some position that you think is

18  inconsistent with its position with respect to the jury

19  demand, I mean, I assume the plaintiffs could always argue

20  for changed circumstances and come back in and ask for

21  your ruling on the jury trial issue to be reconsidered.

22    But to me that seems like an awfully theoretical

23  dispute because at the end of the day, like I said, this

24  case, now that those other two pieces have been slimed

25  out, it's about revenue sharing and they want the revenue

1     sharing payments back.  They, according to the plaintiffs,

2     are identifiable set of funds and that's sort of

3     classically what is equitable relief.

4          So I can't -- you know, it's too theoretical for me

5     to say down the line that I know exactly what positions

6     we're going to be taking and what plaintiffs will perceive

7     as consistent or inconsistent, but if something happens

8     down the line and they think it's inconsistent, they can

9     always take it up with Your Honor and we'll respond.

10                   THE COURT:  Okay.  Thank you.

11                   MR. BLOCKER:  Thank you.

12                   THE COURT:  Did you have anything that you

13    wanted to follow up with just for a minute or two for the

14    plaintiffs?

15                   MR. MILLER:  Just a few brief points.  Would

16    Your Honor prefer that I speak here?

17                   THE COURT:  Either place, wherever you're most

18    comfortable.

19                   MR. MILLER:  Thank you.  I have the paper out

20    and if I try to move it --

21                   THE COURT:  I understand.

22                   MR. MILLER:  I just have a couple of points.

23    Mr. Blocker indicated that he thought that we were not

24    seeking a jury trial with respect to Counts 2 and 3.  In

25    short, he's right with respect to Count 3, not correct

1    with respect to Count 2.

2        I think that they've persuasively argued that a

3    non-fiduciary claim would only arise under (a)(3). We're

4    not arguing that there's a right to a jury trial under

5    (a)(3). However, we are pursuing relief with respect to

6    the prohibitive transaction under (a)(2) and under Section

7    409 so we think the same analysis would apply with respect

8    to Counts 1 and 2.

9        THE COURT: There's a painful irony that I

10   managed to picked as my example of the case in which it

11   would most likely be a jury case the one that you have

12   both agreed is definitely not a jury case. One shot out

13   of three at getting that one right and I certainly didn't

14   do it.

15       MR. MILLER: Your Honor, I do think that Mr.

16   Blocker's argument though was helpful in clarifying a few

17   points.

18       First, he indicated that the law with respect to

19   restitution, equitable restitution relates to either funds

20   that are in a defendant's possession or traceable, but if

21   you look at page 214 of *Great-West*, it specifically says

22   that "For restitution to lie in equity, the action

23   generally must seek not to impose personal liability but

24   to restore to the plaintiff particular funds or property

25   in the defendant's possession."

1    So that's one concern that we have is that if there's
2  a requirement that the funds are in their possession, then
3  I assume that -- Mr. Blocker is a very good lawyer -- he
4  will argue that the funds are no longer in their
5  possession and therefore it's not a matter of equitable
6  restitution.  The same distinction is drawn by the court
7  in *Sergeant*, and I will provide Your Honor with copies of
8  that case.

9    Then in the context of Mr. Blocker's argument he
10  mentioned that we will be seeking either all the revenue
11  sharing payments, which is certainly our preference and I
12  think effectively conceded that that would be an equitable
13  remedy, unless there's some intervening change in the law,
14  but he said or some part of the revenue sharing payments.

15    And that begs the question, well, if it's some part
16  of the revenue sharing payments, then we're not talking
17  about restitution that would be equitable.  We're talking
18  about what I would view as being a money damage
19  calculation based upon arguments with respect to the
20  economic harm that were suffered by the plaintiff and the
21  punitive class.

22    We think that we could make persuasive arguments to
23  Your Honor, if Your Honor accepts that narrowing of the
24  case in some way, that that's really a loss profits
25  analysis or an analysis that would not be a remedy that

1   would traditionally lie in equity but would lie in the

2   law, and under Section 409 we believe it's quite clear,

3   because of the references to losses, profits, equitable,

4   and to remedial relief, that there are provisions for both

5   equitable and legal relief in that section.

6           THE COURT:  All right.  Well, it's kind of

7   interesting to think about what it means for funds to be

8   in the possession of the defendant, what possession means.

9       It reminds me of -- I had a civil procedure professor

10  at law school, James William Moore, the guy who did

11  Moore's Federal Procedure, a short little guy, and he

12  always used to say scornfully to us "that most lawyers

13  would not know how to replevy a pig."

14      The other equitable remedy is if somebody takes your

15  pig and you want your pig back, that may be equitable.

16  He's got your pig and you want your pig back.  If he takes

17  your pig and he eats it and you want money damages because

18  he took your pig, maybe that's a legal remedy, and I don't

19  know how money works nowadays.

20      I really don't think that the $4.95, four singles,

21  three-quarters and two dimes, is still in the possession

22  of MassMutual.  The funds go into some general account and

23  they get sifted around and so on, and yet you can still

24  have equitable remedies under those circumstances.

25      It's not a physical object anymore.  It's money --

1    it's numbers that are zipping back and forth between

2    computers and so on.  So it's hard to know what we mean by

3    having money in the possession of the defendant.

4         Well, this is what I'm going to do.  I'm going to

5    allow the motion to strike because I'm 51 percent sure

6    that that's probably the right ruling here, and 51 percent

7    sure that you'll probably both be comfortable with that

8    ruling ultimately.

9         It's more in line with our circuit and district court

10   law, but I'm also going to add -- and my words are now

11   going into the transcript -- I will be happy to entertain

12   a motion to reconsider that ruling if, as the case

13   develops, either as a result of any shift in position by

14   the defendant, anything that evolves during discovery, any

15   analysis that I may make in response to a motion for

16   summary judgment.

17        If, in response to any of those things or anything

18   else that I'm not thinking of at this moment, the case

19   slides over into the legal arena and the plaintiff becomes

20   entitled to a jury trial, I will be happy to entertain a

21   motion to reconsider my ruling striking the jury trial,

22   but at least we can put that behind us for now and we will

23   see where the case goes.

24        As long as I have you here, I don't know if you've

25   had a Rule 16 conference yet.

1        MR. MILLER:  We have not, Your Honor.

2        THE COURT:  I can save you a trip here and we

3    can talk now about setting up a preliminary schedule for

4    discovery that would lead you a few months down the road

5    and get you started, and then I would issue this schedule

6    which I hope we'll be able to agree to here in writing and

7    then turn you over to Magistrate Neiman to supervise that

8    process as it goes forward.

9        What I'm thinking of is dates for provision of

10   automatic discovery, if it hasn't been supplied yet, dates

11   for service of interrogatories and requests for production

12   and responses to them, dates for completion of at least

13   non-expert depositions, and if you have an idea about

14   that, even expert depositions, and then a date for you to

15   appear before Judge Neiman for some kind of a status

16   conference to talk about motions for summary judgment, if

17   there are to be any, final pretrial conference, and trial.

18       How does that sound?

19       MR. BLOCKER:  Judge, we're happy to do it either

20   way.  Can I make a suggestion to Your Honor?

21       THE COURT:  Uh-huh.

22       MR. BLOCKER:  We actually have been able to work

23   quite well with Mr. Miller's firm in the past and not had

24   a lot of disputes.  My sense is if we sat down between us

25   and put together a schedule, we can come up with something

1     that's a little more considered and acceptable to Your

2     Honor and submit it to you fairly promptly.

3               THE COURT:  I'm happy with that.  If you can

4     come up something that you agree on, we can adopt it or

5     I'll adopt it and that will be the schedule.  I may

6     twiddle it a little bit, but you won't have to come back

7     here in person for another conference.  It's expensive for

8     your clients and a long way for some of you to come, and

9     that's fine with me rather than doing it here off the tops

10    of your heads.

11         Do you think you can get me something within the next

12    week or ten days?

13              MR. MILLER:  Absolutely, Your Honor.  We've

14    already supplied draft discovery requests and had some

15    preliminary discussions about electronic discovery so I

16    don't anticipate any difficulty.

17              THE COURT:  Okay.  So here's what I will

18    suggest.  This is April 4th.  If you can get me a proposed

19    schedule by a week from Friday, Friday the 13th, is that

20    all right?

21         Okay.  So April 13th, proposed schedule and assuming

22    that it's something that you can agree on that will take

23    you fairly deep into the process, I will adopt it and you

24    will be on your way.

25              Meanwhile, I'm going to allow the motion -- I'm going

1    to deny the motion to dismiss as moot.  I'm going to allow

2    the motion to strike the jury trial subject to

3    reconsideration if developments warrant it.

4        Yes, Mr. Pucci.

5            MR. PUCCI:  Your Honor, just one point, if I

6    may?  You mentioned Judge Neiman.  Historically I've not

7    been able to practice in front of Judge Neiman.

8        Now, I'd be happy to have that reconsidered because

9    I've now moved firms.  I previously had been associated

10   with him.  We had been partners briefly together many

11   years ago, but he also happened to be my landlord at my

12   old firm and so on the basis that we paid him regularly in

13   rent --

14           THE COURT:  Don't get on his bad side about

15   that.

16           MR. PUCCI:  -- it didn't seem appropriate to

17   appear in front of him, but if that has changed because of

18   my movement down to Bulkley Richardson, I would be

19   delighted to practice in front of him again.

20           THE COURT:  I appreciate you bringing that to my

21   attention.  What I'm going to do probably is just inquire

22   informally of Judge Neiman whether he's more comfortable

23   sticking with how he's done it up to now.

24       I appreciate your reminding me of that, and it's not

25   a big problem.  If he's going to feel inappropriate for

1    him to recuse himself, then I will have the pleasure of

2    seeing you myself and we'll stay in touch with you that

3    way.  All right.  Good.  So there we are.

4        I'm going to repeat myself again.  The motion to

5    dismiss is denied as moot.  The motion to strike is

6    allowed subject to reconsideration if appropriate.  I'll

7    have a proposed schedule from you by April 13th.  I will

8    digest it and probably reissue it, either reissue it or

9    adopt it as an order of the court, and I'll inquire of

10   Judge Neiman, Mr. Pucci, whether he -- that's going to be

11   probably of general value anyway to get that wrinkle

12   ironed out.

13       MR. BLOCKER:  Judge, just one housekeeping

14   detail now that our motion has actually been ruled on,

15   when we submit the order, should we also include a date

16   for our response to the pleading, our answer?

17       THE COURT:  That's right.  This is just a motion

18   to dismiss so you haven't filed an answer yet.  Yes, you

19   should get that in there as well.

20       MR. BLOCKER:  Okay.

21       THE COURT:  Thank you very much.  Have a safe

22   trip back.  I appreciate your being here.  It's a very

23   interesting little law school like conundrum and I enjoyed

24   reading your memos.  Thank you very much.

25   **(Court recessed at 11:53.)**

```
 1                    C E R T I F I C A T E

 2

 3

 4        I, Alice Moran, Official Federal Court Reporter for

 5   the United States District Court for the District of

 6   Massachusetts, do hereby certify that the foregoing is a

 7   correct transcript from the record of proceedings in the

 8   above-entitled matter.

 9

10

11

12                      /s/ Alice Moran

13                _____

14                 Dated April 19, 2012

15              Alice Moran, CSR, RPR, RMR

16              Official Federal Court Reporter

17               300 State Street, Room 303D

18                 Springfield, MA 01105

19                     413-731-0086

20                alice.moran@verizon.net

21

22

23

24

25
```