# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GOLDEN STAR, INC., | : | CIVIL ACTION |
| Plan Administrator of the Golden Star | : | NO: 3:11-CV-30235-JLT |
| Associates' 401(k) Plan and the Golden Star | : | |
| Bargaining Associates' 401(k) Plan, | : | CLASS ACTION |
| On Behalf of Itself and All Others | : | |
| Similarly Situated, | : | **LEAVE TO FILE GRANTED** |
| | : | **BY ORDER DATED** |
| Plaintiff, | : | **MAY 21, 2013** |
| | : | |
| vs. | : | **REDACTED VERSION** |
| | : | |
| MASS MUTUAL LIFE INSURANCE CO., | : | |
| | : | |
| Defendant. | : | December 18, 2013 |

---

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, MASS MUTUAL LIFE INSURANCE COMPANY, REGARDING DEFENDANT'S FIDUCIARY STATUS

---

Michelle H. Blauner
Shapiro Haber & Urmy LLP
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
Email: mblauner@shulaw.com

James E. Miller
Laurie Rubinow
Kolin C. Tang
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
        lrubinow@sfmslaw.com
        ktang@sfmslaw.com

John M. Edgar
John F. Edgar
Edgar Law Firm LLC
1032 Pennsylvania Avenue
Kansas City, MO  64105
Telephone: (816) 531-0033
Facsimile:  (816) 531-3322
Email: jme@edgarlawfirm.com
        jfe@edgarlawfirm.com

Ronald S. Kravitz
Liner Grode Stein Yankelevitz Sunshine
Regenstreif & Taylor LLP
One California St., Suite 900
San Francisco, CA  94111
Telephone: (415) 489-7761
Facsimile: (800) 708-1354
Email: rkravitz@linerlaw.com

## Table of Contents

I. INTRODUCTION AND FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.     Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.     MassMutual's Receipt Of RSPs Violates The DOL's Specific And
        Longstanding Guidance On Practices Deemed Acceptable In 1997. . . . . . . . . . . . . 8

    C.     MassMutual Acts As A Fiduciary When It Negotiates For And
        Receives The RSPs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.     MassMutual's Exercise Of Authority And Control Over The
            Separate Accounts It Owns And Through Which It Invests
            The Plans' Assets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.     MassMutual's Discretionary Authority In The Administration
            Of The Separate Accounts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.     MassMutual's Authority Or Responsibility To Render Investment
            Advice For A Fee Or Other Compensation. . . . . . . . . . . . . . . . . . . . . 15

        4.     MassMutual's Discretionary Authority To Add, Delete, Or
            Substitute The Mutual Funds Available To The Separate Accounts. . . . . . . 16

        5.     MassMutual's Exercise Of That Discretionary Authority To Add, Delete,
            Or Substitute Funds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        6.     MassMutual's Exercise Of Discretionary Authority To Re-Invest The
            Mutual Fund Dividends Generated By The Separate Accounts. . . . . . . . . . 21

        7.     MassMutual's Discretionary Authority To Self-Determine And Draw
            Its Own Compensation Directly From The Separate Accounts. . . . . . . . . 22

        8.     MassMutual's Exercise Of Its Discretionary Authority To
            Self-Determine And Draw Its Own Compensation Directly From The
            Separate Accounts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        9.     MassMutual's Exercise Of Its Discretionary Authority And Control Not
            To Offer, Purchase Or Substitute Institutional And Other Lower Cost
            Share Classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## Table of Authorities

### Cases

*Agway, Inc., Employees' 401(k) Thrift Investment Plan v. Magnuson,*
  No. 5:03-CV-1060, 2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006)............................ 2

*Beddall v. State St. Bank & Trust Co.,*
  137 F.3d 12 (1st Cir. 1998)............................................. 12

*Bendaoud v. Hodgson,*
  578 F. Supp. 2d 257 (D. Mass. 2008)................................... 19

*Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin*
  *Assocs., Inc.,* 237 F.3d 270 (3d Cir. 2001)................................ 11

*Blatt v. Marshall and Lassman,*
  812 F.2d 810 (2d Cir. 1987)............................................ 14

*Boston Children's Heart Found., Inc. v. Nadal-Ginard,*
  Civil Action No. 93-12539, 1994 U.S. Dist. LEXIS 21766 (D. Mass. Dec. 15, 1994)........... 2

*Bouboulis v. Transp. Workers Union of Am.,*
  442 F.3d 55 (2d Cir. 2006).......................................... 13, 23

*Briscoe v. Fine,*
  444 F.3d 478 (6th Cir. 2006).......................................... 11

*Chao v. Day,*
  436 F.3d 234 (D.C. Cir. 2006)......................................... 11

*Charters v. John Hancock Life Ins. Co.,*
  583 F.Supp.2d 189 (D.Mass. 2008)........................... 1, 5, 14, 17-18, 22

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,*
  474 F.3d 463 (7th Cir. 2008).......................................... 17

*Coldesina v. Est. of Simper,*
  407 F.3d 1126 (10th Cir. 2005)........................................ 11

*Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.,*
  No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008)................... 14, 19

*Cottrill v. Sparrow, Johnson & Ursillo, Inc.,*
  74 F.3d 20 (1st Cir. 1996)............................................ 22

*Cutaiar v. Marshall*,
  590 F.2d 523 (3d Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*F.H. Krear & Co. v. Nineteen Named Trs.*,
  810 F.2d 1250 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Frommert v. Conkright*,
  433 F.3d 254 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Garside v. Osco Drug, Inc.*,
  895 F.2d 46 (1st Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Glass Dimensions, Inc. v. State Street Bank & Trust Co.*,
  285 F.R.D. 169, 180 (D.Mass. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-7, 13, 14

*Haddock v. Nationwide Financial Services, Inc.*,
  419 F. Supp. 2d 156 (D. Conn. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

*Haddock v. Nationwide Fin. Servs.*,
  262 F.R.D. 97 (D. Conn. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hasbro, Inc. v. Serafino*,
  168 F.R.D. 99 (D. Mass. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Healthcare Strategies, Inc. v. ING Life Insurance & Annuity Co.*,
  2012 U.S. Dist. LEXIS 184544 (D.Conn. Sept. 27, 2012). . . . . . . . . . . . . . . . . . . . . . . . 1

*Healthcare Strategies, Inc. v. ING Life Ins. and Annuity Co.*,
  2013 WL 4446919, 2013 U.S. Dist. LEXIS 120456 (D. Conn. Aug. 5, 2013). . . . 12, 14, 15, 17, 22

*Hecker v. Deere & Co.*,
  569 F.3d 708 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Herman v. NationsBank Trust Co.*,
  126 F.3d 1354 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Howard v. Shay*,
  100 F.3d 1484 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re State Street Bank and Trust Co. ERISA Litig.*,
  579 F. Supp. 2d 512 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*LaRue v. DeWolff, Boberg & Assocs., Inc.,*
  552 U.S. 248 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Leimkuehler v. Am. United Life Ins. Co.,*
  713 F.3d 905 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

*Leigh v. Engle,*
  727 F.2d 113 (7th 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Livick v. Gillette Co.,*
  524 F.3d 24 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*LoPresti v. Terwilliger,*
  126 F.3d 34 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lowen v. Tower Asset Management, Inc.,*
  829 F.2d 1209, 1215-16 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Mack Boring and Parts v. Meeker Sharkey Moffitt, Actuarial Consultants of New Jersey,*
  930 F.2d 267 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mesnick v. Gen. Elec. Co.,*
  950 F.2d 816 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Midwest Community Health Serv., Inc. v. American United Life Ins. Co.,*
  255 F.3d 374 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pegram v. Herdrich,*
  530 U.S. 211 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pension Benefit Guar. Corp. v. Morin,*
  No. Civ. 99-246-P-C, 2000 WL 760737 (D. Me. April 24, 2000). . . . . . . . . . . . . . . . . . . 6, 7

*Renfro v. Unisys Corp.,*
  671 F.3d 314 (3d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Santana v. Deluxe Corp.,*
  920 F. Supp. 249 (D. Mass. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Santomenno v. John Hancock Life Ins. Co.,*
  2013 WL 3864395 (D.N.J. July 24, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Seaway Food Town, Inc. v. Med. Mut. of Ohio,*
  347 F.3d 610 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Varity Corp. v. Howe,*
516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*W.E. Aubuchon Co., Inc. v. BeneFirst, LLC,*
661 F. Supp. 2d 37 (D. Mass. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Zang v. Paychex, Inc.,*
728 F.Supp.2d 261 (W.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


**Statutes, Regulations and Rules**

29 U.S.C. § 1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 12-14

29 U.S.C. § 1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 1106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20

29 C.F.R. § 2550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 19

**Other Authorities**

*In re Frost Nat'l Bank,*
DOL Opinion 97-15 A, 1997 ERISA LEXIS 18 (May 22, 1997) . . . . . . . . . . . . . 2, 4, 7, 17, 19, 20

*In re Aetna Insurance Company,*
Opinion No. 97-16A, Pens. Plan Guide (CCH) P 19,986O,
1997 WL 277979 (May 22, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13, 16, 18

Gunz & Jennings, *A Proactive Proposal for Self-Regulation of the Actuarial Profession: A*
*Means of Avoiding the Audit Profession's Post-Enron Regulatory Fate,*
48 Am. Bus. L.J. 641 (Winter 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Muir, *Fiduciary Status As an Employer Shield: The Perversity of ERISA Fiduciary Law,*
2 U. Pa. J. Lab. & Empl. L. 391 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

SEC, *Franklin Advisers and Franklin Templeton Distributors to Pay $20 Million to Settle*
*Charges Related to Use of Brokerage Commissions to Pay for Shelf Space,*
Press Release (Dec. 13, 2004), *available at* http://www.sec.gov/news/press/2004-168.htm.) . . . . 17

Plaintiff, Golden Star, Inc. ("Plaintiff" or "GSI"), in its capacity as Plan Administrator of the Golden Star Administrative Associates' 401(k) Plan and the Golden Star Bargaining Associates' 401(k) Plan (individually and collectively, the "GSI Plan" or the "Plan"), respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgment ("Motion") of Defendant, Mass Mutual Life Insurance Co. ("MassMutual" or "Defendant"), regarding its status as a fiduciary vis-a-vis the GSI Plan. As explained below, MassMutual's Motion constitutes pure sophistry.

## I.   INTRODUCTION AND FACTUAL BACKGROUND

This action arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and relates to MassMutual's practice of exploiting its contractual authority over the assets and administration of the GSI Plan, as well as its other retirement plan clients in the proposed class (the "Plans"), to generate additional, extra-contractual compensation for itself through revenue sharing payments ("RSPs") from mutual fund companies. MassMutual's Motion misstates applicable law and ignores the actual facts of record, including facts establishing that material issues of fact exist that require a trial on the merits. Moreover, under the authorities of *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 931 F. Supp. 2d 296 (D. Mass. 2013), *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008), *Haddock v. Nationwide Fin. Serv. Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006), and *Healthcare Strategies, Inc. v. ING Life Ins. and Annuity Co.*, Civil Action No. 11-002820-WGY, 2013 U.S. Dist. LEXIS 120456 (D. Conn. Aug. 5, 2013) (Young, J., by designation), which address similar circumstances, it is apparent that Defendant's Motion should be denied.

As explained below and in Plaintiff's accompanying Response and Counter-Statement of

Material Facts of Record ("RCS"),[1] MassMutual's Statement of Material Facts, despite its title, largely consists of immaterial and misleading "facts," many of which are not supported by the record citations attributed to them or any evidence in the record. In sum, the RCS establishes that the disputed issues of material fact in this case render consideration of any summary judgment completely inappropriate.

As Defendant's Motion ignores, this case is about MassMutual's lucrative 401k business based on critical violations of ERISA. MassMutual is a fiduciary that uses its fiduciary status to engage in the prohibited transactions at issue in this case ("PTs").[2] Indeed, despite all of MassMutual's protestations, ██████████████████████████████████████████ ████████████████████████████████ (RCS, ¶¶ 75, 81, 85.)[3] The GSI Plan and the other

---

[1] Plaintiff incorporates by reference its RCS, which facts are referenced in response to MassMutual's arguments in this Memorandum in the context of the arguments raised by MassMutual.

[2] Plaintiff's principal claim is that MassMutual's RSP practices result in prohibited transactions proscribed by ERISA § 406, 29 U.S.C. § 1106; *see Boston Children's Heart Found., Inc. v. Nadal-Ginard*, Civil Action No. 93-12539, 1994 U.S. Dist. LEXIS 21766, at *11 (D. Mass. Dec. 15, 1994) ("Federal courts have interpreted 29 U.S.C. § 1106(b) as stating a *per se* prohibition, with liability to be imposed on all transactions in which there is such a conflict of interest, even where there is 'no taint of scandal, no hint of self-dealing, no trace of bad faith'" (citing *Cutaiar v. Marshall*, 590 F.2d 523, 528 (3d Cir. 1979); *Leigh v. Engle*, 727 F.2d 113, 126 (7th 1984); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209 (2d Cir. 1987)). A prohibited transaction under ERISA § 406(b) automatically constitutes a breach of fiduciary duties under ERISA § 404, 29 U.S.C. § 1104. *See, e.g., Leigh*, 727 F.2d at 123; *Agway, Inc., Employees' 401(k) Thrift Investment Plan v. Magnuson*, No. 5:03-CV-1060, 2006 WL 2934391, at *21 (N.D.N.Y. Oct. 12, 2006); *see generally* Gunz & Jennings, *A Proactive Proposal for Self-Regulation of the Actuarial Profession: A Means of Avoiding the Audit Profession's Post-Enron Regulatory Fate*, 48 Am. Bus. L.J. 641, at 665 (Winter 2011) ("the legislative decision to prohibit those transactions was not one for judicial review when the statutory language and the legislative history both pointed to absolute, not discretionary, prohibitions on certain type of transactions").

[3] One of MassMutual's arguments is that it cannot be a fiduciary with respect to the RSPs generated by the investment options – despite the fact that it constantly changes the overall investment options – because "all the decisions about the investment options offered by the GSI Plans were made by GSI and its outside advisors, without any input from MassMutual." This, of course, is not correct. *See, e.g., DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) ("although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability *for assembling (an imprudent menu in the first instance)*") (emphasis added). Moreover, this very argument was explicitly rejected in the *Frost Letter. Frost Letter*, 1997 ERISA LEXIS 18, at 11, n. 9 (*"the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) [participant self-directed] plan is a fiduciary function* which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan") (emphasis added).

Plans contract with MassMutual for administrative services which include, *inter alia*, providing

and maintaining an investment platform for the Plans. (RCS, ¶¶ 5, 30, 49, 51-52, 64, 74, 98-99,

117-118.)



(RCS, ¶¶ 5, 8, 24, 32, 49, 51, 99.)

(RCS, ¶¶ 5, 49, 65, 74.)   As a matter of law,

MassMutual is a fiduciary with respect to the Separate Accounts since it owns them and the

retirement assets contained in the Separate Accounts, including the GSI Plan's assets. (RCS, ¶¶

5, 13, 16, 49, 62, 65, 72, 74-75, 93, 116.)



(RCS, ¶¶

81, 85.)

(RCS, ¶¶ 5, 23, 25, 94, 100, 111.)

The GSI Plan, like the other Plans, agreed to compensate MassMutual for its services

through direct fees assessed by MassMutual from the plan assets in the form of daily asset

charges based on a percentage of GSI Plan assets, a per-participant fee, and Separate Account

fees at MassMutual's discretion.  (RCS, ¶ 21.)

(RCS, ¶¶ 19, 21, 45, 103.)



(RCS, ¶¶ 13, 16, 19, 21, 45, 103, 119.)[4]

Unlike other service providers that use RSPs as a dollar-for-dollar offset against expenses that retirement plans would otherwise pay, as sanctioned by the Department of Labor ("DOL") in an Advisory Opinion, *In re Frost Nat'l Bank*, DOL Opinion 97-15 A, 1997 ERISA LEXIS 18 (May 22, 1997) (the "*Frost Letter*"). (RCS, ¶ 22), ¶¶ 22, 88, 109.) Thus, any suggestion by MassMutual that it somehow complies with the *Frost Letter* is simply wrong.[5]

---

4: Plaintiff's representatives specifically testified that they never were told about the existence of RSPs. (RCS, ¶ 19.) Moreover, any alleged "disclosures" are immaterial to MassMutual's fiduciary status vis-a-vis the GSI Plan.

5 The Honorable Michael A. Ponsor noted regarding the *Frost Letter* and MassMutual:

I read a lot of government letters and this one is unbelievably easy to read even for somebody who doesn't know anything about this. Ms. Briggs, [the author of the *Frost Letter*,] I don't know who she is but I hope they gave her a tremendous bonus because she did a terrific job on this letter.

The letter identifies an obvious conflict of interest that lies as a potential in this flow of funds among these entities because, of course, if MassMutual is getting money from the mutual funds to pay it for the monies that its clients like Golden Star invest in the mutual funds, there's problem A [*sic*] that MassMutual might be more interested in referring its clients to funds that were making these payments and not all funds do.

And there also is a problem that the mutual funds charge Golden Star and other 401(k) plans certain fees and the mutual funds might be tempted to jack up their fees to the 401(k) plans to give themselves more money to kickback to MassMutual and therefore get MassMutual to steer the investments into particular mutual funds. So that's a problem. We can all see that. That's not too hard to discern.

\*   \*   \*

They take money that they get kicked back.... Now why they don't just not take any money from the mutual funds and get the fees from the 401(k) plans is a mystery that's beyond me. You can just eliminate the whole problem if you're going through all this....

Now, the problem here apparently is that MassMutual is not able – well, MassMutual has to base its payments to its clients and calculate them based on historical revenue flows, and apparently

(continued...)

Prior to transferring this case to this Court, Judge Ponsor ordered the parties to brief the *sole* issue of whether MassMutual is a fiduciary to the GSI Plan. Contrary to MassMutual's mischaracterization, Judge Ponsor's Order did not narrow the issue to whether MassMutual is a fiduciary to the GSI Plan "with respect to revenue sharing." Rather, the issue was whether MassMutual is *ever* a fiduciary to the GSI Plan, as both Judge Ponsor's Order and the hearing transcript attests.[6] Moreover, MassMutual clearly understood the actual scope of Judge Ponsor's Order when it served discovery focused on MassMutual's status as a fiduciary vis-a-vis the GSI Plan. (RCS, ¶ 123)

As its Motion makes clear, MassMutual has retreated from its previous untenable position as part of a desperate attempt to justify its meritless Motion.[7] The absurdity and immateriality of

---

(...continued)

> sometimes ... it under-credits the deduction from the fees and the 401(k) plan gets burned. ***MassMutual is getting more money back from the mutual funds than it gives to the particular client.***

[Hr. Transcript, Dkt No. 101, 8:3-10:1] (emphasis added). Thus, as Judge Ponsor specifically recognized, MassMutual cannot credibly claim compliance with the *Frost Letter*.

> [6]Here is the question posed provocatively: Why shouldn't I deny the motion for class certification without prejudice and have you submit a motion for summary judgment on the substantive issue of whether MassMutual is a fiduciary of Golden Star? MassMutual's position is we are not a fiduciary of Golden Star.

[Hr. Transcript, Dkt No. 101, 11:6-12]; [Dkt. No. 105] ("The Court will hold a hearing on Defendant's Motion for Summary Judgment with respect to its alleged fiduciary status under ERISA on January 16, 2014 @ 2 p.m."). Indeed, Defendant's counsel vigorously denied Plaintiff's counsel's attempt to narrow that issue during the hearing:

> [Defendant's Counsel]: To answer Mr. Miller's point that somehow we have conceded that we are a fiduciary because of our administration over the separate account, most decidedly we have not. . . we're not a fiduciary here in any sense of the word.

[Dkt No. 101, 18:12-21; 23:7-24:3]

> [7]It bears noting, however, that, yet again, MassMutual has violated Local Rule 7.1(a)(2) by failing to meet and confer. This failure constitutes adequate grounds to deny the Motion. *See Hasbro, Inc. v. Serafino*, 168 F.R.D. 99 (D. Mass. 1996). The violation is hardly immaterial since a pre-filing discussion regarding MassMutual's disregard of Judge Ponsor's explicit instructions regarding the scope of briefing likely would have benefitted the partes. Simply put, if MassMutual was going to file a brief in contravention of Judge Ponsor's explicit instructions, at a minimum, it should have conferred with Plaintiff before doing so, especially given the specific local civil rule on the subject.

the false construct that MassMutual has attempted to create, in disregard of Judge Ponsor's instructions, is highlighted by the fact that, in a PT case such as this, the scope of Section 406(b) of ERISA defines whether a fiduciary is wearing its fiduciary hat in connection with the challenged conduct. As described herein, MassMutual is clearly acting as a fiduciary in connection with the RSPs (which constitute plan assets) since MassMutual is dealing with the assets of the GSI Plan in its own interest and accepting consideration from third parties (the mutual funds) in connection with a transaction involving plan assets. *Haddock*, 419 F. Supp. 2d at 170; *Charters*, 583 F. Supp. 2d at 200.[8]

Moreover, as detailed below, there are at least nine (9) different, but related reasons, why MassMutual's discretionary authority, control and practices render it a fiduciary to the GSI Plan under ERISA in connection with its receipt of the RSPs at issue, including the fact that MassMutual clearly has discretionary authority over its compensation as it relates to RSPs, which conduct, as detailed in the Court's recent decision in *Glass Dimensions, Inc.*, renders it a fiduciary with respect to such compensation:

When an entity enters into a contract with an ERISA plan and the contract gives

---

[8] If MassMutual is a fiduciary to the GSI Plan in any way, Section 406(b) of ERISA provides substantial guidance as to when and if MassMutual is wearing its fiduciary hat when negotiating for *or receiving* the RSPs under *Pegram v. Herdrich*, 530 U.S. 211 (2000) ("ERISA . . . require[s] . . . that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions"): "A fiduciary with respect to a plan shall not– (1) deal with the assets of the plan in his own interest or for his own account, [or] (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b). Simply put, since the RSPs involve MassMutual self-dealing with plan assets and receiving consideration for its own account in connection with transactions involving assets of the plan, it becomes quite clear that MassMutual was wearing its fiduciary hat when it receive the prohibited payments at issue. When a trustee who enters into a deal in which he, she, or it profits using plan assets, the trustee obviously is wearing a fiduciary hat under a Section 406(b) analysis. That is why courts in the First Circuit have recognized the burden shifting outlined in the seminal case, *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d at 1213, in which the Court held that a fiduciary charged with a prohibited transaction bears the burden of proving by clear and convincing evidence that the compensation at issue was unrelated to transactions involving plan assets. *See Pension Benefit Guar. Corp. v. Morin*, No. Civ. 99-246-P-C, 2000 WL 760737, at *4 (D. Me. April 24, 2000) ("a fiduciary engaging in a transaction claimed to be within section 1106 has the burden of proving his allegation that the transaction falls within one or more of the section 1008 exceptions") (*citing Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *Lowen*, *supra*). Here, of course, ██████████████████████. (RCS, ¶¶ 65, 97, 110)

the entity discretion in making decisions regarding the plan or its assets, the entity may become a fiduciary with respect to those decisions. *For instance, if a contract gives an entity discretion and control over the factors that determine the amount of its compensation, the entity becomes an ERISA fiduciary with respect to is compensation.*

931 F. Supp. 2d at 304 (emphasis added).  Here, ██████████████████████████████████████████████████████████████████████████████

██████ (RCS, ¶¶ 5, 17, 19, 22, 51, 55, 97, 117.)  The evidence also demonstrates that,

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*(Id.)*, thereby rendering it a fiduciary with respect to its compensation.  Thus, under *Glass Dimensions*, MassMutual is a fiduciary with respect to all of the compensation that it receives, including the challenged RSPs.  *(Id.)*  On that basis alone, summary judgment is inappropriate.[9]

## II.  ARGUMENT

### A.  Standard Of Review

As the Court explained in *Glass Dimensions*,

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." [Citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).] The movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [Citing Fed. R. Civ. P. 56(a).]

---

[9]MassMutual's three main arguments denying its fiduciary status are that: (1) there is no evidence that MassMutual ever exercised its contractual authority with respect to the GSI Plan assets; (2) that the only applicable measure of fiduciary status in this action is subsection (i) of ERISA Section 3(21)(A)'s definition of fiduciary and not subsection (iii), which concerns plan administration, because the allegations purportedly only relate to the investment of plan assets; and (3) the remaining theories of fiduciary status do not pertain to MassMutual's receipt of RSPs. As explained below, these arguments have no merit. First, ███████████████████████████ ████████████████████████████; second, MassMutual's absurd limitation of its potential fiduciary status to subsection (i) of ERISA Section 3(21)(A), ████████ ███████████████████████████████████████████████████████, belies both a plain reading of the statutory language and countless consistent interpretations of the scope of subsection (iii), including by this Court; and third, each of the reasons presented as to why MassMutual is a fiduciary with respect to the GSI Plan is directly connected to MassMutual's receipt of RSPs. Thus, the Court can summarily deny the Motion.

*Glass Dimensions, Inc.*, 931 F. Supp. 2d at 302. And, MassMutual bears the burden of proving

by clear and convincing evidence that it is entitled to summary judgment in this PT case. *Lowen,*

*supra* at 1213; *Morin, supra* at * 4. Applying these standards, it is clear that MassMutual's

Motion should be denied.

**B.      MassMutual's Receipt Of RSPs Violates The DOL's Specific And**
**         Longstanding Guidance On Practices Deemed Acceptable In 1997**

In 1997, the DOL approved of service providers' receipt of RSPs in two limited

circumstances and provided substantial guidance to providers, such as MassMutual, as to the

manner in which RSPs could permissibly be accepted. *See Frost Letter, supra; In re Aetna*

*Insurance Company*, Opinion No. 97-16A, Pens. Plan Guide (CCH) P 19,986O, 1997 WL

277979 (May 22, 1997) (the "*Aetna Letter*"). Any suggestion by MassMutual that its conduct

complies with that of the *Frost Letter* and the *Aetna Letter* cannot withstand cursory scrutiny.

In the *Frost Letter*, the DOL approved a fiduciary's receipt of RSPs in the following

delimited circumstances:

> [T]he terms of Frost's *fee arrangements with the mutual fund families will be*
> *fully disclosed to the Plans*. In addition, Frost's trustee agreement with a Plan will
> be structured so that any 12b-1 or subtransfer agent fees received by Frost that are
> attributable to the Plan's investment in a mutual fund will be used to benefit the
> Plan. Pursuant to the particular agreement with each Plan, Frost will offset such
> fees, *on a dollar-for-dollar basis*, against the trustee fee that the Plan is obligated
> to pay Frost or against the recordkeeping fee that the Plan is obligated to pay to a
> third-party recordkeeper; or Frost will credit the Plan directly with the fees it
> receives based on the investment of Plan assets in the mutual fund.  The trustee
> agreement will provide that, *to the extent that Frost receives fees from mutual*
> *funds in connection with the Plan's investments that are in excess of the fee*
> *that the Plan owes to Frost*, the Plan will be entitled to the excess amount.

*Id.* at * 2 (emphasis added). Here, ███████████████████████████████████

██████████████████████ (RCS, ¶ 103),[10] ████████████████████████████████████

███████████████ (RCS, ¶ 22) and ████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████ (RCS, ¶ 22, 88, 109.)  Thus, MassMutual has no basis to suggest

that it complies with the DOL's guidance.  Moreover, the *Frost Letter* essentially establishes

MassMutual's fiduciary status: "[y]our submission indicates, however, that Frost *reserves the*

*right to add or remove mutual fund families that it makes available to Plans* [and] [u]nder

these circumstances, we are unable to conclude that Frost would not *exercise any discretionary*

*authority or control to cause the Plans to invest in mutual funds that pay a fee or other*

*compensation to Frost.*" *Id.* at * 3 (*citing* "the [DOL]'s position as expressed in the preamble to

the final regulation regarding participant-directed individual account plans (ERISA section

404(c) plans)), 57 Fed. Reg. 46906, 46924 n. 27 (Oct. 13, 1992): [in which] '... the [DOL] points

out that *the act of limiting or designating investment options which are intended to constitute*

*all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function* which,

whether achieved through fiduciary designation or express plan language, is not a direct or

necessary result of any participant direction of such plan.'" (Emphasis added.)  Here,

█████████████████████████████████████████████████████████████████████

███████████████████████████████████ thereby rendering it a fiduciary

with respect to the GSI Plan.

_____

[10]Indeed, ███████████████████████████████████████████████████████████ (*Id.*)

Likewise, in the *Aetna Letter*, the DOL's opinion sets forth specific requirements that must be complied with in order for a service provider, such as MassMutual, not to be deemed a fiduciary. Here, however, ███████████████████████████████████████

███████████████[11] In sum, MassMutual's clear disregard of the seminal guidance on this subject from the DOL establishes its liability.

### C.   MassMutual Acts As A Fiduciary To The GSI Plan When It Negotiates For And Receives The RSPs

ERISA Section 3(21)(A) defines a fiduciary as:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A)(i)-(iii). Under ERISA, "a fiduciary is defined functionally" such that "a party not identified as a plan fiduciary can become one." *Livick v. Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008). Accordingly, fiduciary status should be "broadly construed." *Frommert v. Conkright*, 433 F.3d 254, 271 (2d Cir. 2006). MassMutual was acting as a fiduciary to the GSI Plan when it received the RSPs for at least nine (9) related reasons.

---

[11] 

(RCS, ¶ 51.)

1.   **MassMutual's Exercise Of Authority And Control Over The Separate Accounts It Owns And Through Which It Invests The Plans' Assets**

The investments of the GSI Plan are held in Separate Accounts in the name of MassMutual, which are administered, controlled, and managed by MassMutual, as the GAC expressly makes clear:

> ... *MassMutual has exclusive and absolute ownership and control of the assets in the Separate Investment Accounts....* Only MassMutual will have any individual, legal, or equitable ownership of any investments or assets of the Separate Investment Accounts....
>
> .... *All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including, but not limited to, the discontinuance of a Separate Investment Account.* The assets of the Separate Investment Accounts may be invested, wholly or partly, in securities, including the shares of any investment company registered under the Investment Company Act of 1940. *In exercise of its sole discretion, MassMutual may from time to time, hire an investment advisor registered under the Investment Advisors Act of 1940 to assist in the investment of assets.*

(RCS ¶ 5) (emphasis added).[12]

Under the second portion of subsection (i) of ERISA Section 3(21)(A), "a person is a fiduciary with respect to a plan to the extent (i) he . . . exercises *any* authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).  No "discretion" is necessary.[13]  This is consistent with congressional intent to impose *per se*

---

[12] ████████████████████████████████████████████████████████

██ (RCS, ¶¶ 65-77 .)  *See also In re State Street Bank and Trust Co. ERISA Litig.*, 579 F. Supp. 2d 512, 518-19 (S.D.N.Y. 2008) (Due to its ownership of separate accounts, Prudential was a fiduciary with standing to assert claims on behalf of retirement plans against mutual fund companies arising from improper investments made through separate accounts).

[13] *See, e.g., Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 913 (7th Cir. 2013) ("A number of our sister circuits have taken note of this distinction and concluded that discretionary control is not required with regard to the management or disposition of plan assets. [citations.] We agree with them that this reading is most faithful to the language of the statute, and we now make explicit that insofar as 'management or disposition of assets' is concerned, there is no separate requirement of discretionary authority or control"); *Briscoe v. Fine*, 444 F.3d 478, 492-94 (6th Cir. 2006); *Chao v. Day*, 436 F.3d 234, 237-38 (D.C. Cir. 2006); *Coldesina v. Est. of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997); *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 273 (3d Cir. 2001).

fiduciary status on any insurance company holding plan assets in separate accounts.[14]

### 2.    MassMutual's Discretionary Authority In The Administration Of The Separate Accounts

Under subsection (iii) of ERISA Section 3(21)(A), "a person is a fiduciary with respect to

a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the

administration of such plan." 29 U.S.C. § 1002(21)(A)(iii).  While the term "administration" is

not defined under ERISA, "the Supreme Court [has] looked to common law, assuming that

Congress was drawing from the body of law that gave meaning to terms such as 'fiduciary' and

'administration' when enacting ERISA.'" *Healthcare Strategies, Inc.*, 2013 U.S. Dist. LEXIS

120456, at *25 (*citing Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996)).  And in *Varity Corp.*,

"the Supreme Court concluded that trust administration means acting with those 'powers as are

necessary or appropriate for the carrying out of the purposes' of the trust." *Id.*

This broad interpretation comports with the DOL's regulations, which state that an

insurer is a fiduciary with respect to a separate account because it administers the account:

*"ERISA requires insurers, in administering separate accounts, to act solely in the interest of*

*the plan's participants and beneficiaries; prohibits self-dealing and conflicts of interest; and*

---

[14]Congress exempted certain financial arrangements from giving rise to a fiduciary duty by excluding them from the definition of "plan assets" in 29 U.S.C. § 1101(b)(2). But Congress omitted assets held in separate accounts from this exemption, and expressly provided that funds held in separate accounts are "plan assets." *Id.* Thus, *it is black letter ERISA law that an insurance company owner of a separate account such as MassMutual is a fiduciary. See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18-21 (1st Cir. 1998).  And whereas the appellant in *Leimkuehler* failed to connect RSPs to the separate accounts, here ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (RCS, ¶ 18.)  Accordingly, MassMutual is a fiduciary to the GSI Plan and its other retirement plan clients because MassMutual exercises authority and control over the disposition of Plan assets in the Separate Accounts. *See Leimkuehler*, 713 F.3d at 913 (finding service provider a fiduciary with respect to the separate accounts containing plan assets because of its authority and control over the separate accounts); *Mack Boring and Parts v. Meeker Sharkey Moffitt*, 930 F.2d 267, 275 (3d Cir. 1991); 29 C.F.R. § 2550.401c-1(d)(2)(c) ("In general, an insurer is subject to ERISA's fiduciary responsibility provisions with respect to the assets of a separate account . . . to the extent that the investment performance of such assets is passed directly through to the plan policyholders").

*requires insurers to adhere to a prudent standard of care.*" 29 C.F.R. § 2550.401c-1(d)(2)(c).[15]

This DOL regulation recognizes (a) that an insurer is involved in the administration of the

separate accounts, thereby placing it squarely under the regulation of Section 1002(21)(A)(iii),

which renders the insurer a fiduciary if it possesses discretion, "*whether exercised or not*";[16] and

(b) the importance of prohibiting *self-dealing and conflicts of interest* of the kind that exists in

this case due to MassMutual's receipt of RSPs.

MassMutual's main defense is that subsection (iii) is inapplicable to Plaintiff's claims.

MassMutual argues that "Congress plainly meant for 'management or disposition of assets' and

'plan administration to mean different things" and then asserts that if they meant the same, then

"the exercise requirement would be rendered meaningless." In essence, MassMutual is arguing

that the coverage of subsection (i) and subsection (iii) must be mutually exclusive -- an

unsupportable interpretation belied by all relevant authorities, including this Court's decision in

*Glass Dimensions*. As *Bouboulis* aptly explained, the actual difference between the subsections

is that "[s]ubsection one imposes fiduciary status on those who exercise discretionary authority,

*regardless of whether such authority was ever granted*, [while] [s]ubsection three describes

those individuals who have actually been granted discretionary authority, *regardless of whether*

*such authority is ever exercised*." 442 F.3d at 63 (emphasis added). Thus, while subsection (i)

and (iii) may have overlapping coverage, that truth does not render the subsections "superfluous,

---

[15] *See also Aetna Letter* (recognizing that administration is inherent in the operation of the separate accounts in stating that "ALIC receives fees for administration and management of the GACs, including the separate accounts maintained in connection with the GACs"). Indeed, counsel for MassMutual essentially conceded that Defendant is involved in plan administration. [Hr. Transcript, Dkt No. 101, at 23:7-9.]

[16] *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006); *see Midwest Community Health Serv., Inc. v. American United Life Ins. Co.*, 255 F.3d 374, 377 (7th Cir. 2001) (holding that life insurer that issued group annuity contract was ERISA fiduciary since contracts were plan assets and the insurer had discretionary authority, whether exercised or not, with respect to contracts); *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1367 (11th Cir. 1997) ("One participant might lose part of the value of his stake in the unallocated share pool due to another participant's imprudent decision or non-decision").

void, or insignificant." This common-sense interpretation fits with the "functional"

interpretation of a fiduciary under ERISA and Congress' intent to provide broad protection.[17]

Meanwhile, MassMutual's narrow interpretation also contradicts this Court's own explanation

that "if a contract gives an entity discretion and control over the facts that determine the amount

of its compensation, the entity becomes an ERISA fiduciary with respect to its compensation."

*Glass Dimensions, Inc.*, 931 F. Supp. 2d at 304.[18]

MassMutual does not argue (because it cannot) that its receipt of RSPs is unrelated to its

discretionary authority over its administration of the Separate Accounts for the GSI Plan and its

concomitant fiduciary status under subsection (iii) of ERISA Section 3(21)(A). Instead,

MassMutual desperately argues that its discretionary authority over its own compensation would

not be covered by subsection (iii)'s definition of "administration" because it does not pertain to a

"benefits determination" -- even though that construction of "administration" conflicts with the

opinion of the expert that MassMutual attempted to rely upon at class certification.[19] Likewise,

MassMutual's argument that the investment platform it provides to the GSI Plan participants is

unrelated to "carrying out the plan purpose" and thus does not implicate the "administration" of

---

[17]*See Blatt v. Marshall and Lassman*, 812 F.2d 810, 812 (2d Cir. 1987) ("The definition includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title") (quoting H.R. Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 4639, 5038, 5103).

[18]Citing *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987); *Charters*, 583 F. Supp. 2d at 197 (citing cases); *Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*, No. 07-11344-GAO, 2008 WL 4457861, at *4 (D. Mass. Sept. 30, 2008) (citing cases).

[19]Notably, Defendant's own expert (at class certification), Dana Muir, makes clear that MassMutual was involved in asset administration when it determined and retained the right to make changes in the investment options made available to the Plans, including the right to substitute the Plans' 401(k) investments in one mutual fund into another. *See* Muir, *Fiduciary Status As an Employer Shield: The Perversity of ERISA Fiduciary Law*, 2 U. Pa. J. Lab. & Empl. L. 391,405-409, 421 (2000) (distinguishing between benefit administration and asset administration, stating that, with respect to asset administration, as here, "pension plan actors tended to act wrongfully at the aggregate level and with respect to the corpus of the trust" through "inadequate funding, making inappropriate investments, or self-dealing" and stating that "[t]he prohibited transactions provisions [of ERISA] serve as another constraint on self-interested fiduciary behavior in *asset administration*") (emphasis added).

the GSI Plan is baseless.  *See Healthcare Strategies, Inc.*, 2013 U.S. Dist. LEXIS 120456, at *26

(finding that defendant is a fiduciary under subsection (iii) because "...contractual authority to

change investment options in order to 'accomplish the purpose' of the plan . . . appears - by the

very terms of the contract - to grant ... authority in the plan's administration").[20]  Accordingly,

MassMutual is plainly a fiduciary with respect to the Separate Accounts under subsection (iii) of

ERISA Section 3(21)(A) when it receives the RSPs.

3.    **MassMutual's Authority Or Responsibility To Render Investment Advice For A Fee Or Other Compensation**

Subsection (ii) of ERISA Section 3(21)(A) provides that "a person is a fiduciary with

respect to a plan to the extent . . . (ii) he renders investment advice for a fee or other

compensation, direct or indirect, with respect to any moneys or other property of such plan, or

has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii).  MassMutual clearly

has such "authority or responsibility" under the GAC:

> **.... All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including, but not limited to, the discontinuance of a Separate Investment Account.**  The assets of the Separate Investment Accounts may be invested, wholly or partly, in securities, including the shares of any investment company registered under the Investment Company Act of 1940.  **In exercise of its sole discretion, MassMutual may from time to time, hire an investment advisor registered under the Investment Advisors Act of 1940 to assist in the investment of assets.**

(RCS, ¶ 74) (emphasis added).



(RCS, ¶¶ 56, 101, 117.)  Finally, MassMutual does not deny that it

---

[20]Moreover, subsection (iii) is not limited to the "named" fiduciary administrator, which would actually render subsection (iii) superfluous.  *See Livick*, 524 F.3d at 29 ("a party not identified as a plan fiduciary can become one"); *Healthcare Strategies, Inc.*, 2013 U.S. Dist. LEXIS 120456, at *24 ("Limiting the fiduciaries of a plan administration to the named administrator of the plan does away with subsection three of ERISA's fiduciary definition. [citation] Further, this argument ignores the functional nature of that definition").



(RCS, ¶¶ 56-58.)

(RCS, ¶¶ 5, 17, 21-22, 55, 97, 111, 117),

(RCS, ¶ 85.)  Accordingly, MassMutual also is plainly a fiduciary with respect to the Separate Accounts

under subsection (ii) of ERISA Section 3(21)(A) when it receives the RSPs.

### 4.   MassMutual's Discretionary Authority To Add, Delete, Or Substitute The Mutual Funds Available To The Separate Accounts

As detailed in the GAC, MassMutual maintains complete discretionary authority to

substitute, eliminate, and add funds within its Separate Accounts.  Thus,

(RCS, ¶ 79.)

(RCS, ¶¶ 51, 80),[21]                                                    is the essence of

---

[21]The *Aetna Letter* specifically instructed that an entity that retained the right to add, delete, or substitute an investment option can only rid itself of fiduciary status if "the appropriate plan fiduciary in fact makes the decision to accept or reject the change." *Aetna Letter*, 1997 ERISA LEXIS 17, at *15.  For that to be possible, there must be a contractual duty whereby the "appropriate plan fiduciary" is "provided advanced notice of the change, including any changes of the fees received, and afforded a reasonable period of time within which to decide whether to accept or reject the change and, in the event of a rejection, secure a new service provider." *Id.*

(RCS, ¶¶ 51, 80.)

(continued...)

discretionary authority and is sufficient to confer fiduciary status regarding MassMutual's

selection of funds to be on the Plan menu.[22]

Again, since MassMutual does not argue that its receipt of RSPs is unrelated to its

fiduciary status arising out of subsection (iii) of ERISA Section 3(21)(A), MassMutual has failed

to meet its burden.[23]   MassMutual's receipt of RSPs is, of course, intimately related to the menu

of investment options that it offers the GSI Plan ███████████████████████

████████████████████████ (RCS, ¶¶ 5, 13-18.)[24]

### 5.     MassMutual's Exercise Of That Discretionary Authority To Add, Delete, Change, or Substitute Funds

MassMutual is also a fiduciary under 29 U.S.C. § 1002(21)(A)(i) because it exercised that

---

(...continued)

████████████████████████████████████████
██ (RCS, ¶¶ 82, 98.)

[22]*See Charters*, 583 F. Supp. 2d at 199 (holding that insurer's "ability to substitute investment options also rendered it a fiduciary of the [p]lan" because the plan "did not have a meaningful opportunity to reject substitutions"); *Haddock v. Nationwide Fin. Servs.*, 262 F.R.D. 97, 108 n.6 (D. Conn. 2009) ("Nationwide has 'final authority'; the defendants have the power to permit or veto an investment option without the Trustees' input"), *vacated on other grounds*, 460 Fed. Appx. 26 (2d Cir. 2012), *renewed motion granted*, 2013 U.S. Dist. LEXIS 127116 (Sept. 6, 2013); *Healthcare Strategies, Inc.*, 2013 U.S. Dist. LEXIS 120456, at *25 (finding that defendant insurance company's "discretionary authority to change the funds available to 401(k) plans supports fiduciary status"); *Aetna Letter*, 1997 ERISA LEXIS 17, at *14-*16.

[23]*See, e.g., Frost Letter*, 1997 ERISA LEXIS 18, at *11 n.9; *Haddock*, 262 F.R.D. at 108 n.6; *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2008). In *Caremark*, the 7th Circuit Court of Appeals found that the defendant pharmaceutical benefits management company's control over the drug list was purely "ministerial" because it only "adds and removes drugs from the list as new drugs become available" and the plaintiff named plan administrator "was the final arbiter of the content of the formulary and any drug-switching decisions." *Caremark, Inc.*, 474 F.3d at 466; *see also Blatt*, 812 F.2d at 812 ("ministerial functions include the application of rules determining eligibility for participation, calculation of services and benefits, and collection of contributions"). Applied here, MassMutual's control over the product menu would only be ministerial if MassMutual "adds and removes [investment options] as new [investment options] become available" and GSI was "the final arbiter of the content of the [applicable product menu] and any [investment option]-switching decisions." MassMutual has presented no evidence that this is the case because MassMutual does retain the final discretionary authority of the product menu and only adds certain investment options.

[24]Receiving RSPs in exchange for availability on the investment menu, *i.e.* shelf space, is a clear breach of an ERISA fiduciary's duties because it creates an obvious conflict of interest for the fiduciary's duty to ensure the integrity of the investment options, as Judge Ponsor noted. [Hr. Transcript, Dkt No. 101, 8:6-34.] Indeed, the SEC found in the retail mutual fund investment context that broker-dealers who accepted RSPs are required to disclose that conflict of interest when selling to retail investors. *See, e.g.*, SEC, *Franklin Advisers and Franklin Templeton Distributors to Pay $20 Million to Settle Charges Related to Use of Brokerage Commissions to Pay for Shelf Space*, Press Release (Dec. 13, 2004), *available at* http://www.sec.gov/news/press/2004-168.htm.)

contractual authority to ███████████████████████████████████

███████████████████ *See, e.g., Charters v. John Hancock Life Ins. Co.*, 534 F. Supp. 2d

at 172 ("Hancock has a contractual right to substitute or delete mutual funds from its 'menu' . . .

such an arrangement gives Hancock authority or control over the disposition of Plan assets");

*Haddock*, 419 F. Supp. 2d at 165 ("Nationwide may be a fiduciary to the extent that it exercises

authority or control over plan assets by determining and altering which mutual funds are

available for the Plans' and participants' investments"); (RCS, ¶¶ 8, 51-52.) 

███████████████████████████ (RCS, ¶ 51.)[25]  Just as

consent is vitiated if uninformed, without full disclosure, the GSI Plan could not make the

"actual decision" necessary to relieve MassMutual of its final authority.[26]  And distinct from the

authorities it cites, ████████████████████████████████████

█████████████[27]

    With respect to the Limited Menu, MassMutual ██████████████

████████████████████ (RCS, ¶¶ 5, 84.)  As the *Frost Letter*, which

MassMutual curiously relies upon, explains: ***"the act of limiting or designating investment***

---

[25]*Aetna Letter*, 1997 ERISA LEXIS 17, at \*15 ("the fiduciary must be provided advance notice of the change, ***including any changes in the fees received***") (emphasis added);

[26]*See Aetna Letter*, 1997 ERISA LEXIS 17, at \*15 (service provider "would not become a fiduciary solely as a result of deleting or substituting an Unrelated Fund under such circumstances, ***provided that the actual decision to accept or reject the change in Funds is made by the Plan Fiduciary***") (emphasis added).

[27]*Compare* (Resp. ¶63) ("All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including, but not limited to, the discontinuance of a Separate Investment Account") *with W.E. Aubuchon Co., Inc. v. BeneFirst, LLC*, 661 F. Supp. 2d 37, 53 (D. Mass. 2009) (named fiduciary retained "final authority and responsibility for the Benefit Plan and its operations" in its "Administrative Services Agreement," *i.e.* contract with service provider); *Santana v. Deluxe Corp.*, 920 F. Supp. 249, 254 (D. Mass. 1996) ("Under the contract, all contested or doubtful claims are referred to Deluxe for ultimate determination"); *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009) ("the Trust Agreement gives Deere, not Fidelity Trust, the final say").

***options which are intended to constitute all or part of the investment universe of an ERISA***

***404(c) [participant self-directed] plan is a fiduciary function*** which, whether achieved through

fiduciary designation or express plan language, is not a direct or necessary result of any

participant direction of such plan." *Frost Letter*, 1997 ERISA LEXIS 18, at *11 n.9. Thus,

MassMutual's fiduciary status arising from its final discretionary authority over the investments

offered to the GSI Plan is not discharged simply because Plaintiff and other parties decide which

investment options to choose from the menu that MassMutual has itself established and

maintained.[28]

None of the authorities cited by MassMutual contradict the core principle that any "final

discretionary authority" confers fiduciary status; rather, they iterate a simple principle – in it of

itself, assembling an overall menu of investment options does not create fiduciary status.[29] Here,

MassMutual does not dispute that it has the final discretionary authority of the overall menu, and

that █████████████████████████████████████████████████████████

---

[28]*See* 29 C.F.R. § 2550.404c-1(d)(2)(iv) ("Paragraph d(2)(i) [which provides that a beneficiary does not become a fiduciary when he or she directs his or her investment] does not serve to relieve a fiduciary from its duty to select and monitor any service provider or designated investment alternative offered under the plan"); *DiFelice*, 497 F.3d at 418 n.3 ("although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability ***for assembling an imprudent menu in the first instance***") (emphasis added); *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 271 (D. Mass. 2008) ("although Plan participants directing their investments in a defined contribution plan must bear some risk of loss [citation], fiduciaries may still be held liable 'for assembling an imprudent menu' of investment choices").

[29]*See Leimkuehler*, 713 F.3d at 912 (confirming only that "standing alone, the act of selecting both funds and their share classes for inclusion on a menu of investment options offered to 401(k) plan customers does not transform a provider of annuities into a functional fiduciary"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 323 (3d Cir. 2011) (as a directed trustee, "Fidelity had no contractual authority to control the mix and range of investment options, to veto Unisys's selections, or to constrain Unisys from including other investment options in the plan administered by an entity other than Fidelity"); *Santomenno v. John Hancock Life Ins. Co.*, 2:10-CV-01655 WJM, 2013 WL 3864395, at *7 (D.N.J. July 24, 2013) ("A provider does not incur fiduciary status simply because it offers a 'big menu' of investment options from which a trustee selects a 'small menu' for her plan"); *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 272 (W.D.N.Y. 2010) ("Paychex's mere creation and offering of a menu or lineup of funds cannot legally or logically give rise to fiduciary status"); *Columbia Air Servs., Inc.*, 2008 WL 4457861, at *5 ("FMTC's having 'directed Plaintiff to a list of available investment options,' even if it could be thought to have involved a discretionary act, occurred during the formation of the relationship, not in the discharge of FMTC's duties under its directed trusteeship").

—

███████████████████████  Instead, MassMutual attempts to frame the issue as all-or-nothing;

either changing the overall menu *always* renders the service provider a fiduciary, or it *never*

renders the service provider a fiduciary.  This self-serving construction ignores the fundamental

principles of fiduciary status under the first part of subsection (i) of ERISA Section 3(21)(A)

 To satisfy its fiduciary responsibilities, MassMutual obviously is required to ensure that

there are no conflicts-of-interest (or potential conflicts) that could compromise the integrity of

including those investment options in the Limited Menu.  Indeed, ████████████████████

████████████████████████████████



(RCS, ¶¶ 81, 85 (emphasis added).)  Unfortunately, MassMutual plainly does not ensure that its

selection of mutual funds on the Limited Menu is free of the taint of conflicting interests -- which

is the impetus of this action.  And, again, ██████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████  (RCS, ¶¶ 8, 13-18, 46, 89.)

 To the extent that MassMutual relies upon the *Frost Letter* for the proposition that

MassMutual's receipt of RSPs does not implicate its fiduciary duties arising from its final

discretionary control over the investment universe, it is gravely mistaken.  In the *Frost Letter*, the

DOL did not find that the inquiring trustee bank, Frost, was "not act[ing] in a fiduciary capacity

when accepting revenue sharing because it did not cause plans to invest in specific mutual

funds;" rather, the DOL found that Frost "would not be dealing with the assets of the plans in its

own interest or for its own account, or receiving payments for its own personal account in

violation of section 406(b)(1) or (b)(3)" because the RSPs would be "used to benefit the Plans,

either as a dollar-for-dollar offset against the fees the Plans would be obligated to pay . . . or as

amounts credited directly to the Plans." 1997 ERISA LEXIS 18, at *12. Thus, the DOL actually

held Frost as a fiduciary with respect to its receipt of RSPs because ERISA Sections 406(b)(1) or

(b)(3) *only apply to fiduciaries. See* 29 U.S.C. § 1106(b). Applied here, the inescapable result is

that MassMutual is a fiduciary and that it is in violation of ERISA Sections 406(b)(1) and (b)(3)

**6.     MassMutual's Exercise Of Discretionary Authority To Re-Invest The Mutual Fund Dividends Generated By The Separate Accounts**

(RCS, ¶¶ 23, 53, 100.) This unilateral investment decision by Mass Mutual is made for the plan

participants. Of course,

(RCS, ¶ 18.)

MassMutual's arguments that it would be unwise to not reinvest the cash dividends is

unavailing because

███████████████████████ [30] Fundamentally, by deciding what is most beneficial

for the Plans and their participants, MassMutual is assuming a fiduciary role.  Finally,

MassMutual's position that plan participants are "always free to rebalance their investment

holdings" is complete hogwash; under that logic, Plaintiff can simply allocate the GSI Plan assets

however it wishes without any fiduciary liability if there are any losses -- the Plans always would

be free to "rebalance" those investments if they so choose after Defendant allocates their

retirement assets.[31]

> **7.     MassMutual's Discretionary Authority To Self-Determine And Draw
> Its Own Compensation Directly From The Separate Accounts**

Although a service provider does not become a fiduciary for receiving agreed-upon *fixed*

fees, as this Court has recognized, "if a contract gives an entity discretion and control over the

factors that determine the amount of its compensation, the entity becomes an ERISA fiduciary

with respect to its compensation." *Glass Dimensions, Inc.*, 931 F. Supp. 2d at 304.[32]  Under the

GAC, 

(RCS, ¶¶ 101,

117.)  This is precisely the type of final discretionary authority that the Court found in *Glass*

---

[30]*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), which MassMutual cites, actually
supports Plaintiff's position. There, a participant alleged that his employer never carried out directions regarding
changes to the investments of his individual account; here, ████████████████████████████████████ *Id.* at 250-51.

[31]In *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20 (1st Cir. 1996), the First Circuit Court of
Appeals held that a party that "effected" an investment authorized by a retirement plan trustee could not be found a
fiduciary on that basis. Here, in contrast, MassMutual received no such authorization from either Plaintiff or the
plan participants to reinvest dividends.

[32]*See, e.g.*, *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d at 197 ("In each of these cases [where
the service provider was found not to be a fiduciary], however, the insurance companies exercised no discretionary
authority with respect to their fees ... As explained above, [the insurance company here] did exercise discretion over
the amount of its compensation by unilaterally setting the administrative maintenance charge"); *Healthcare
Strategies, Inc.*, 2013 U.S. Dist. LEXIS 120456, at *20 ("an entity could become an ERISA fiduciary if its contract
with a 401(k) plan gave it 'control over factors that determine ... its compensation'").

*Dimensions* to be sufficient to. *Id.* at 304 (sufficient evidence that State Street was a fiduciary where initial contracts give it discretion to set its fee anywhere form 0% to 50%)



(RCS, ¶¶ 17, 21-22.)

### 8. MassMutual's Exercise Of Its Discretionary Authority To Self-Determine And Draw Its Own Compensation Directly From The Separate Accounts

In addition to being a fiduciary with respect to its compensation under subsection (iii) of ERISA Section 3(21)(A), MassMutual is also a fiduciary with respect to its compensation under subsection (i) of ERISA Section 3(21)(A) because it actually exercised discretionary authority to set its own compensation.

RCS, ¶ 84.)

(RCS, ¶ 108.)[33]

is false and misses the point for three reasons.  First,

(RCS, ¶ 111.)  Second,

---

[33]Indeed,

(RCS, ¶¶ 59-60.)  Thus, MassMutual has exercised its discretionary authority to set its own compensation.

██████████████████████████████████████████

████████████ renders it a fiduciary with respect to that compensation because it

"exercise[d] discretionary authority [over the RSPs], regardless of whether such authority was

ever granted." *Bouboulis*, 442 F.3d at 63.  Finally, the ████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████ (RCS, ¶ 21.)

> **9.   MassMutual Exercise Of Discretionary Authority And Control Not To Offer, Purchase, Or Substitute Institutional And Other Lower Cost Share Classes**

Mutual funds generally offer different classes of shares, with the ████████████████

█████████████████████████████████████████████████████████ (RCS, ¶¶ 5,

13, 99, 106-108, 110-115.) ████████████████████████████████████████

██████████████████████████████ (*Id.*)

Although the GAC does not specify which party has the authority to decide which share class a

Separate Account could use, MassMutual ███████████████████████████████████

████ (*Id.*) ████████████████████████████████████████

████████████████████████████

████ (*Id.*) ███████████████████████████████████

██████████████████████████████████████████

██████████████ (*Id.*)  By exercising final authority over which share classes to make available to

the GSI Plan, MassMutual is a fiduciary with respect to that selection, which is inextricably

linked to its receipt of RSPs.

III.    **CONCLUSION**

For all the reasons explained above, Plaintiff, Golden Star, respectfully requests that the

Court deny MassMutual's Motion.

Dated: December 18, 2013                         Respectfully submitted,

                                                 /s/ Laurie Rubinow
                                                 James E. Miller (*admitted pro hac vice*)
                                                 Laurie Rubinow (*admitted pro hac vice*)
                                                 Karen M. Leser-Grenon (*admitted pro hac vice*)
                                                 Shepherd Finkelman Miller & Shah, LLP
                                                 65 Main Street
                                                 Chester, CT 06412
                                                 Telephone: (860) 526-1100
                                                 Facsimile: (860) 526-1120
                                                 Email: jmiller@sfmslaw.com
                                                        lrubinow@sfmslaw.com
                                                        kleser@sfmslaw.com

                                                 John M. Edgar
                                                 John F. Edgar
                                                 Edgar Law Firm LLC
                                                 1032 Pennsylvania Avenue
                                                 Kansas City, MO 64105
                                                 Telephone: (816) 531-0033
                                                 Facsimile: (816) 531-3322
                                                 Email: jme@edgarlawfirm.com
                                                        jfe@edgarlawfirm.com

                                                 Ronald S. Kravitz
                                                 Liner Grode Stein Yankelevitz Sunshine
                                                 Regenstreif & Taylor LLP
                                                 One California St., Suite 900
                                                 San Francisco, CA 94111
                                                 Telephone: (415) 489-7761
                                                 Facsimile: (800) 708-1354
                                                 Email: rkravitz@linerlaw.com

Michelle H. Blauner, BBO #549049
Shapiro Haber & Urmy LLP
53 State Street
Boston MA, 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
Email: mblauner@shulaw.com

Attorneys for Plaintiff
and the Proposed Class

## CERTIFICATE OF SERVICE

I hereby certify that, on December 18, 2013, a true and correct copy of Plaintiff's unredacted Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, the supporting Declaration of Kolin C. Tang and accompanying Exhibits and this Certificate of Service, were served via electronic and first-class mail, postage prepaid, on all counsel of record. In addition, I hereby certify that I caused a redacted version of Plaintiff's Memorandum of Law to be electronically filed with the Clerk of Court on this date using the CM/ECF system, which will send notification of such filing to all parties so registered. Finally, I hereby certify that I have caused to be filed a Notice of Manual Filing to be electronically filed with the Clerk of Court on this date using the CM/ECF system, which will send notification of such filing to all parties so registered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 18th day of December, 2013

/s/ Laurie Rubinow