## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GOLDEN STAR, INC.,       )
Plan Administrator of the Golden Star       )
Administrative Associates' 401(k) Plan and       )
Golden Star Bargaining Associates' 401(k)       )    Case No. 3:11-30235-PBS
Plan, on Behalf of Itself and All Others       )
Similarly Situated,       )    Hon. Patti B. Saris
      )
      Plaintiff,       )    **LEAVE TO FILE GRANTED**
      )    **BY ORDER DATED**
   v.       )    **JANUARY 17, 2014**
      )
MASS MUTUAL LIFE INSURANCE CO.,       )
      )    **FILED UNDER SEAL**
      Defendant.       )

## MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY'S REPLY
## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT ON THE ISSUE OF
## WHETHER IT ACTS AS A FIDUCIARY WITH RESPECT TO REVENUE SHARING

# TABLE OF CONTENTS

Page

INTRODUCTION .......................................................................................................................................1

ARGUMENT.............................................................................................................................................2

I.     PLAINTIFF'S SUBSECTION (i) THEORIES FAIL BECAUSE
MASSMUTUAL NEVER EXERCISED ITS POWERS WITH RESPECT TO
THE GSI PLAN. ................................................................................................................................2

    A.     Use Of "Separate Accounts" Does Not Make MassMutual A Fiduciary. ...............3

    B.     MassMutual Did Not Exercise Any Power To Add Or Delete Funds
From The Plan Menu. ............................................................................................................5

    C.     MassMutual Has Always Followed The Directions Of GSI And Its Plan
Participants In Reinvesting Mutual Fund Dividends. ..............................................7

    D.     Plaintiff's Claim Of Self-Determining Compensation Fails Because
There Is No Evidence That MassMutual Ever Increased The Amount
Of Revenue Sharing With Respect To The GSI Plan. ...............................................8

    E.     Limiting Available Share Classes On The Overall Menu Is Not A
Fiduciary Act. ..........................................................................................................................9

II.    PLAINTIFF'S SUBSECTION (iii) ARGUMENTS ARE MERITLESS AND
FACTUALLY IRRELEVANT.........................................................................................................10

    A.     Plaintiff's Attempt To Interpret Subsection (iii) As A Catchall That
Creates Fiduciary Duty Out Of Unexercised Subsection (i) Powers Is
Groundless. ...........................................................................................................................10

    B.     The Powers That Plaintiff Claims Create Fiduciary Status Under
Subsection (iii) Are Not Related To MassMutual's Receipt Of Revenue
Sharing. ...................................................................................................................................13

III.   MassMutual does not qualify as a fiduciary under subsection (ii). ...................................14

CONCLUSION........................................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beddall v. State St. Bank & Trust Co.*,
137 F.3d 12 (1st Cir. 1998)..................................................................................................1, 4

*Cottrill v. Sparrow, Johnson & Ursillo, Inc.*,
74 F.3d 20 (1st Cir. 1996)........................................................................................................7

*DiFelice v. U.S. Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) ...................................................................................................6

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
No. 11-00282, 2013 WL 4446919 (D. Conn. Aug. 9, 2013)............................................12, 13

*Leimkuehler v. American United Life Insurance Co.*,
713 F.3d 905 (7th Cir. 2013) ...............................................................................................4, 9

*Pegram v. Herdrich*,
530 U.S. 211 (2000)..................................................................................................................1

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)...........................................................................................................11, 12

**STATUTES**

29 U.S.C. § 1002(3)(16) .............................................................................................................11

29 U.S.C. § 1002(21)(A)..................................................................................................10, 11, 13

**OTHER AUTHORITIES**

29 C.F.R. § 2510.3-21(c)(1)(ii)(B) .............................................................................................14

Mass. Gen. Law. 175 § 132G ........................................................................................................3

Opinion Letter 97-08A, 1997 ERISA LEXIS 10 (Mar. 14, 1997) ..............................................5, 7

Opinion Letter 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997)...................................................5

Opinion Letter 2003-09A, 2003 ERISA LEXIS 11 (June 25, 2003)...............................................4

## INTRODUCTION

Plaintiff's Opposition suffers from three basic defects, each of which exposes its inability
to defeat summary judgment. First, the Opposition answers the wrong question. Plaintiff
contends that Judge Ponsor wanted the parties to brief the issue of "whether MassMutual is *ever*
a fiduciary to the GSI Plan" rather than whether it acts as a fiduciary with respect to revenue
sharing. (Opp. at 5.)[1] But it is inconceivable that Judge Ponsor could have wanted such briefing
because "fiduciary status [under ERISA] is not an all or nothing proposition." *Beddall v. State
St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998). Rather, fiduciary status depends on
"whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function)
when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).
Accordingly, the only question that matters here is whether MassMutual acted as a fiduciary
when it received revenue sharing payments. Establishing that MassMutual acts as a fiduciary in
actions unrelated to revenue sharing (as plaintiff frequently tries to do) is meaningless.

Second, as to plaintiff's subsection (i) theories, which require proof that MassMutual
exercised a relevant power, plaintiff largely ignores the evidence relating to the GSI Plan, all of
which shows that the GSI Plan trustees chose each of its investment options. The Opposition is
filled with arguments about actions MassMutual could take or did take with respect to other
plans, but at this stage, all that matters is what the evidence shows with respect to the GSI Plan.
For example, plaintiff contends that MassMutual sometimes tried to increase the revenue sharing
amounts it received from mutual funds, but the evidence shows MassMutual never received an

---

[1] This brief uses the following abbreviations: "Br." refers to MassMutual's opening brief; "Opp." refers to
plaintiff's opposition brief; "Stmt." refers to MassMutual's Local Rule 56.1 Statement of Undisputed Facts; "RCS"
refers to plaintiff's Local Rule 56.1 Response and Counter-Statement of Material Facts of Record; and "Reply
Stmt." refers to MassMutual's Reply to plaintiff's Local Rule 56.1 Response and Counter-Statement of Material
Facts of Record.

increase for any mutual fund in which the GSI Plan was invested. All of plaintiff's subsection (i) theories fail because there is no evidence MassMutual exercised powers as to the GSI Plan.

Third, plaintiff claims that, even if MassMutual never exercised any powers relating to revenue sharing, it can still prove fiduciary status under subsection (iii) simply because MassMutual *possessed* the authority. But that argument is not legally sound because, if accepted, it would render the "exercise" requirement of subsection (i) meaningless. Subsection (iii) is focused on powers relating to plan "administration" and none of MassMutual's authority with respect to revenue sharing concerns plan administration. Rather, all of its authority relates to management or disposition of assets and that is the province of subsection (i).

As explained below, correcting these errors, and applying the undisputed facts, makes clear that there is no genuine issue of material fact, and as a result, MassMutual is entitled to summary judgment on the issue of whether it acts as a fiduciary with respect to revenue sharing as to the GSI Plan.

## ARGUMENT

## I.    PLAINTIFF'S SUBSECTION (i) THEORIES FAIL BECAUSE MASSMUTUAL NEVER EXERCISED ITS POWERS WITH RESPECT TO THE GSI PLAN.

In its Opposition, plaintiff explains each of the powers it contends MassMutual exercised that makes it a fiduciary under subsection (i). These theories are described on pages 11-24 of the Opposition (Section II.C), and the ones plaintiff is pursuing under subsection (i) are described in the following numbered subsections of Section II.C of the Opposition: 1, 5, 6, 8, and 9. As shown below, the Opposition fails to point to any evidence that MassMutual *exercised* any of the described powers as to the GSI Plan, and therefore MassMutual is entitled to summary judgment on each of plaintiff's theories under subsection (i).

2

## A. Use Of "Separate Accounts" Does Not Make MassMutual A Fiduciary.

Plaintiff contends that, because the Plan assets are held in separate accounts owned by MassMutual, it has by definition exercised control over management of plan assets within the meaning of subsection (i).[2] But this contention ignores the "exercise" requirement of subsection (i). The use of separate accounts may provide the potential for exercise of authority, but mere possession of authority is not sufficient for MassMutual to be a fiduciary under subsection (i) – it must exercise that authority with respect to revenue sharing.

MassMutual presented evidence showing that it did not exercise its power over separate accounts to select mutual funds for the GSI Plan. Specifically, the evidence presented showed that (a) revenue sharing fees are established before any plan invests in a separate account, and (b) MassMutual always followed the GSI Plan's instructions about what to do with monies invested in the separate accounts. (Br. at 13-14.) Plaintiff has admitted the latter fact (RCS ¶ 41) and has not properly disputed the former fact (RCS ¶¶ 13-15; Reply Stmt. ¶¶ 13-15) and so it should be deemed admitted. These facts show that there is no genuine issue of material fact that MassMutual does not exercise any authority with respect to revenue sharing as a result of its use of separate accounts. MassMutual has never used its authority over the separate accounts to cause the GSI Plan to invest in a mutual fund other than the ones the GSI Plan has chosen.

Plaintiff does not respond to any of these points. Instead, in its Opposition, it simply cites provisions of the group annuity contract that indicate MassMutual's ownership of the separate accounts, but does not point to any evidence that MassMutual ever used its ownership to select mutual funds for the GSI Plan. Plaintiff likewise does not address the cases MassMutual cited in its opening brief that have rejected the very argument that plaintiff is now advancing.

---

[2] Under Massachusetts law, MassMutual is required to hold plan assets in separate accounts in order to offer variable investment options pursuant to a group annuity contract. Mass. Gen. Law. 175 § 132G.

Instead, plaintiff relegates the crux of its response to several footnotes. In footnote 12, plaintiff argues that MassMutual votes the mutual fund proxies, but presents no evidence that the proxies have had any impact on revenue sharing payments or plaintiff's selection of those mutual funds. (Opp. at 11.) In footnote 14, plaintiff badly mischaracterizes two appellate court decisions. Plaintiff claims – in bold typeface no less – that "it is black ERISA letter law that an insurance company owner of a separate account … is a fiduciary," citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18-21 (1st Cir. 1998) (emphasis omitted). (Opp. at 12.) But *Beddall* did not involve separate accounts, did not involve an insurance company, and did not even hold that the defendant bank was a fiduciary. In footnote 14, plaintiff cites *Leimkuehler v. American United Life Insurance Co.*, 713 F.3d 905, 913 (7th Cir. 2013), which it characterizes as "finding service provider a fiduciary with respect to the separate accounts." (Opp. at 12 n.14.) In fact, the court found exactly the opposite – that an insurance company was *not* a fiduciary with regard to revenue sharing simply through ownership of separate accounts. *Leimkuehler*, 713 F.3d at 913. *Leimkuehler* held that control over the separate accounts could only support fiduciary status if the claim involved mismanagement of the separate account assets, but *not* for a claim involving revenue sharing. The court's conclusion could not have been clearer: mere ownership of "the separate account does not render [the insurance company] a fiduciary under the circumstances of this case." *Id.* at 914.

And these cases are consistent with the Department of Labor's ("DOL") own pronouncements on this subject. The DOL has consistently taken the position that service providers only exercise powers with respect to revenue sharing when they use "authority or control to cause a plan to invest in a mutual fund that pays a fee to the [service provider] in connection with the plan's investment." Opinion Letter 2003-09A, 2003 ERISA LEXIS 11, at

4

*13 (June 25, 2003) (the "ABN AMRO Letter"); Opinion Letter 97-08A, 1997 ERISA LEXIS 10 (Mar. 14, 1997) (the "Frost Letter"); *accord* Opinion Letter 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997) (the "Aetna Letter"). Applying this principle here, there is no evidence that MassMutual ever exercised any power with respect to revenue sharing. MassMutual did not cause plaintiff to select particular investment options. Rather, plaintiff's trustees selected the investments to include in the Plan Menu,[3] and the GSI Plan participants made decisions as to how to allocate their money among those options. (Stmt. ¶ 24; RCS ¶ 24.)

## B.   MassMutual Did Not Exercise Any Power To Add Or Delete Funds From The Plan Menu.

Plaintiff's Opposition makes clear that the parties' dispute on this issue concerns which of the two menus of investment options make a difference in determining fiduciary status: the Overall Menu or the Plan Menu. There is no dispute that, during the period at issue, which begins in October 2005, MassMutual has never made changes to the Plan Menu. (*See* Stmt. ¶¶ 50-52, RCS ¶¶ 50-52.)[4] There is likewise no dispute that, during the same period, MassMutual has added investment options to the Overall Menu. Plaintiff contends that making changes to the Overall Menu makes MassMutual a fiduciary, even if it never made changes to the Plan Menu.

Plaintiff's theory makes little sense. Plaintiff is suggesting that MassMutual would become a fiduciary merely by changing its product offering. Under plaintiff's theory, MassMutual would not be a fiduciary with respect to revenue sharing on the day that the GSI Plan signed a contract with MassMutual, but if MassMutual added a single investment option to

---

[3] As explained in MassMutual's opening brief, MassMutual offers retirement plans a menu of investment options (the "Overall Menu"). Plans select investment options from the Overall Menu and offer the selected options (the "Plan Menu") to plan participants.

[4] In its Opposition, plaintiff quibbles with whether the changes MassMutual proposed in late 2004 complied with applicable DOL guidance (Opp. at 18), but it does not dispute that any claim relating to those changes is outside the limitations period, as MassMutual pointed out in its opening brief (Br. at 16).

its product offering after that date, it would become a fiduciary even with respect to the investment options (and associated revenue sharing) that the GSI Plan had *already selected*. But any mutual fund that MassMutual added to or subtracted from the Overall Menu would have zero impact on how much revenue sharing MassMutual earned from the GSI Plan. Plaintiff does not cite a single case that recognizes this sort of non-fiduciary to fiduciary transformation.

On the contrary, as MassMutual pointed out in its opening brief, numerous courts have squarely rejected the notion that changes to the Overall Menu or limiting the universe of investment options creates fiduciary status. (*See* Br. at 16, citing cases.) Plaintiff's attempt to distinguish all of those cases by suggesting that none of them involved changes to an Overall Menu made after a plan had signed a contract with a service provider is misguided. (Opp. at 19-20.) The implication of all of these cases is that the timing of the changes is irrelevant; all that mattered was that the changes affected only the Overall Menu, not the Plan Menu. (Opp. at 19 n.29.)

Once again, plaintiff's only support for its position is based on mischaracterizations of the authorities on which it relies. Plaintiff points to the language in the *Frost Letter* and in a DOL regulation which says that the act of "designating investment options" is a fiduciary function. (Opp. at 18-19 & n.28.) But as even the cases on which plaintiff relies make clear, assembling a Plan Menu only makes a person a fiduciary with respect to assuring that each selected option is prudent, and not with respect to the fees associated with those options. *See, e.g., DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) (cited in Opp. at 19 n.28). None of these authorities support the notion that plaintiff advances – that a person is a fiduciary with respect to revenue sharing solely by virtue of creating the menu of options.

6

Plaintiff makes two other points that are equally meritless. First, plaintiff points out that MassMutual acknowledges fiduciary responsibility with respect to management of the assets in the separate accounts. (Opp. at 20.) The problem is that plaintiff is not alleging that MassMutual imprudently managed separate account assets, and the fiduciary power that MassMutual admits having does not have anything to do with adding or deleting investment options from the Plan Menu. Second, plaintiff argues that *Frost* makes clear that MassMutual is a fiduciary, but that is wrong because the bank in *Frost* acknowledged it was a fiduciary because it served as trustee for a plan, and the only question the DOL addressed was whether accepting revenue sharing payments violated its duties (and the DOL held it did not).

## C. MassMutual Has Always Followed The Directions Of GSI And Its Plan Participants In Reinvesting Mutual Fund Dividends.

MassMutual showed in its opening brief that it does not act as a fiduciary with respect to reinvestment of dividends because it simply follows the instructions of the GSI Plan participants to invest money in a particular mutual fund, and did not exercise any authority to do otherwise. (Br. at 18-20.) *See Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 22 (1st Cir. 1996) (carrying out other's directions is not the requisite authority or control under ERISA).

Plaintiff offers no response to this point in its brief, and it offers no factual support for the claim that MassMutual does otherwise. MassMutual relied on Statement ¶ 25, which states that MassMutual simply follows participant instructions. Plaintiff purports to dispute that fact by pointing to testimony from Eric Wietsma (*see* RCS ¶ 25), but he specifically testified that "any dividends or capital gains *per their instructions* are put back into the [same] fund." (Tang Decl., Ex. V at 34:19-21.) Plaintiff also refers to RCS ¶ 100, which asserts that MassMutual reinvests dividends without participants' instructions, but the purported support for that statement is testimony from Tina Wilson, who said exactly the opposite. (*Id.* at 27:10-14) (dividends are

7

reinvested in accordance with "how [participants] want their money allocated"). Thus, there is no disputed issue of material fact that MassMutual simply follows participants' instructions about how to invest dividends.

MassMutual also pointed out in its opening brief that plaintiff invested in separate accounts, not mutual funds, and by doing so, participants are getting the gains and losses associated with the separate account investments – including any dividends. Plaintiff makes no response to this point, and for good reason – any decision to move money out of a separate account would be inconsistent with participants' instructions.

## D. Plaintiff's Claim Of Self-Determining Compensation Fails Because There Is No Evidence That MassMutual Ever Increased The Amount Of Revenue Sharing With Respect To The GSI Plan.

Plaintiff contends that MassMutual exercised its authority to set its own compensation in three different ways, but the now undisputed evidence shows that MassMutual never exercised any such authority with respect to the GSI Plan.

First, plaintiff claims that MassMutual entered into agreements with new mutual funds after the GSI Plan became a customer in 1999. This is true, but irrelevant, because none of these new mutual funds could become part of the Plan Menu unless GSI chose to offer them to its participants. The revenue sharing amounts for each of these new funds were negotiated with the funds before the GSI Plan ever elected to invest in those funds. And there is no evidence that MassMutual ever changed the revenue sharing amount for a mutual fund *after* the GSI Plan had chosen to invest.

Second, plaintiff contends that MassMutual monitors the revenue sharing amounts paid to its competitors and sometimes tries to negotiate increases. Again, true but irrelevant. The evidence shows that, during the period at issue starting in 2005, MassMutual only once has received any increase in the revenue sharing amount paid by a mutual fund family (it was the

8

Fidelity funds), and it is undisputed that the GSI Plan never invested in any Fidelity mutual funds. (Stmt. ¶¶ 46, 47.) As a result, any increase in revenue sharing from the Fidelity funds would not have increased the compensation MassMutual earned from the GSI Plan, and thus MassMutual never exercised this power as to the GSI Plan.

Third, plaintiff mentions MassMutual's contractual right to adjust the SIA Management Fee. In its opening brief, MassMutual pointed out the evidence shows that MassMutual has never exercised its power to change the SIA Management Fee for any GSI Plan investment option, citing Statement ¶ 58. Plaintiff has not presented any contrary evidence. Although it attempted to deny Statement ¶ 58 by claiming that it refers to "wrap fees" and that those are "different," the testimony on which plaintiff relies says the opposite – that "mechanically they work the same way." (Tang Decl., Ex. W at 98:22-99:4.) Simply put, plaintiff has offered no evidence that MassMutual has ever altered the SIA Management Fee for any Plan investment.

## E.  Limiting Available Share Classes On The Overall Menu Is Not A Fiduciary Act.

In its opening brief, MassMutual showed that it is well-settled that a decision not to include certain investment options on its Overall Menu is not an "exercise" of any relevant authority. (Br. at 17-18.) In its one-paragraph argument on share classes, plaintiff does not respond to any of the authority MassMutual cited. This omission is significant because the *precise* argument that plaintiff now advances was rejected in *Leimkuehler*, 713 F.3d at 914.

Instead, plaintiff now argues that choosing which share classes to make available is the equivalent of deciding its own compensation. But this argument is groundless because no share class of any mutual fund becomes part of the Plan Menu until GSI decides to invest in it, and there is no evidence that the revenue sharing amount associated with any given share class

9

changed *after* the GSI Plan selected it. As a result, the undisputed evidence shows that

MassMutual did not set its own compensation with respect to the GSI Plan.

## II. PLAINTIFF'S SUBSECTION (iii) ARGUMENTS ARE MERITLESS AND FACTUALLY IRRELEVANT.

### A. Plaintiff's Attempt To Interpret Subsection (iii) As A Catchall That Creates Fiduciary Duty Out Of Unexercised Subsection (i) Powers Is Groundless.

MassMutual explained in its opening brief that plaintiff's subsection (iii) theories are

legally defective because they would effectively read the "exercise" requirement out of

subsection (i). (Br. at 22-25.) In response, plaintiff makes three arguments, none of which have

merit or even address this point.

First, plaintiff contends that MassMutual's argument amounts to a claim that the

coverage of the two subsections is "mutually exclusive," when in fact there can be "overlapping

coverage." (Opp. at 13.) This is a straw man; MassMutual never argued the two subsections

were entirely mutually exclusive. And this is not a response to MassMutual's point that, the way

plaintiff seeks to have subsection (iii) interpreted, it would render subsection (i) irrelevant

entirely. Subsection (i) says that a person is a fiduciary if he "exercises any discretionary

authority or discretionary control respecting management or disposition of [plan] assets." 29

U.S.C. § 1002(21)(A)(i). Plaintiff argues that, if it is unable to show MassMutual *exercised* any

such authority, MassMutual is still a fiduciary under subsection (iii), which does not require any

exercise (and relates to "plan administration"). None of the cases plaintiff cites in the Opposition

interprets subsection (iii) in this manner, and plaintiff has yet to explain why its interpretation

would not effectively read the "exercise" requirement out of subsection (i).

Plaintiff's response brief demonstrates this point. Plaintiff discusses each of its nine

theories of fiduciary status on pages 10-25 of its brief, and six of them are ones that are complete

duplicates. (*Compare* Theories 1 and 2, 4 and 5, 7 and 8.) For example, plaintiff contends that

MassMutual is a fiduciary because it exercised the authority to "add, delete or substitute funds" (Opp. at 17-21), but even if MassMutual did not exercise that power, plaintiff contends MassMutual is a fiduciary simply because it *has* the authority to do so. (*Id.* at 16-17.) In other words, plaintiff is contending that it makes no difference whether MassMutual exercised any of its powers, and thus effectively reading the exercise requirement out of subsection (i). Plaintiff does not explain why Congress, when it enacted ERISA, would have included an exercise requirement in subsection (i) if merely possessing the exact same authority was sufficient.

Second, plaintiff argues that its interpretation of subsection (iii) is justified because the term "administration" in subsection (iii) should be interpreted "broadly." (*Id.* at 12-13.) By "broadly," though, plaintiff apparently means that it should be interpreted in such a way that any authority relating to a 401(k) pension plan qualifies as "administration of such plan" within the meaning of subsection (iii). But this argument overlooks the fact that each subsection uses a different term to describe what activities are covered. Subsection (i) covers "management or disposition of [plan] assets," while subsection (iii) covers "administration of such plan." 29 U.S.C. § 1002(21)(A). If every power to manage or dispose of assets – which is what is at issue here – automatically qualified as "plan administration" under subsection (iii), then subsection (i) would be irrelevant. And that is precisely what plaintiff is arguing.

Again, plaintiff does not cite a single case that equates the phrases "management or disposition of plan assets" and "administration of such plan." Plaintiff cites *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996), but it only holds that administration means acting within the powers "as are necessary or appropriate for the carrying out of the purposes of the trust." (Opp. at 12.) Moreover, the person found to be a fiduciary in *Varity* was the plan administrator, a statutorily defined position with the plan, *see* 29 U.S.C. § 1002(3)(16), not an outsider like

11

MassMutual, and the Court held that as plan administrator, it was expected to provide plan administration. 516 U.S. at 498, 503. As MassMutual pointed out, since the decision in *Varity*, courts have held that administration generally refers to the powers related to granting or denying benefits under a plan (Br. at 24-25), and plaintiff does not address any of those cases in its response. Plaintiff also cites a DOL disclosure regulation relating to separate accounts, which plaintiff claims recognizes that an insurance company offering separate accounts "is involved in the administration of the separate accounts." (Opp. at 12-13.) But nothing in the regulation even mentions subsection (iii), and that is not surprising, because "administration of the separate accounts" – which are owned by MassMutual and are entirely separate from the Plan itself – is not the same as "administration of the plan." Subsection (iii) is focused on persons with a role in carrying out the terms of the plan, not on every person who plays any role at all for a plan.

Third, plaintiff contends that the decision in *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 11-00282, 2013 WL 4446919 (D. Conn. Aug. 9, 2013), supports its claim that subsection (iii) applies because contractual authority to add or delete investment options is related to "carrying out the purposes of the plan." (Opp. at 14-15.) But the *Healthcare Strategies* court reached that conclusion based on the unique language of the contract terms at issue in that case, which provided that the insurance company could add or delete investment options "to accomplish the purpose of the Separate Account." 2013 WL 4446919, at *4. Plaintiff cannot point to a comparable contractual provision in the MassMutual contract, so the court's analysis is inapplicable here. But the *Healthcare Strategies* court simply has it wrong anyway. A separate account and a plan are different, so having the power to alter the investment option to make it consistent with the purposes of a separate account is not the same as seeking to

12

accomplish the purpose of the plan.[5] The GSI Plan trustees determine how best to accomplish the purposes of the Plan by giving directions to MassMutual to change the Plan Menu; MassMutual was not even involved in those decisions. (Br. at 5-6.)

## B. The Powers That Plaintiff Claims Create Fiduciary Status Under Subsection (iii) Are Not Related To MassMutual's Receipt Of Revenue Sharing.

Even if plaintiff were correct that an unexercised power falling within the ambit of subsection (i) could create fiduciary status under subsection (iii), MassMutual would still be entitled to summary judgment because none of the alleged powers are related to MassMutual's receipt of revenue sharing. Under ERISA's fiduciary definition, a person is a fiduciary only "to the extent" that he exercises the relevant powers. 29 U.S.C. § 1002(21)(A). In the context of subsection (iii), this means that there must be some nexus between possession of that power and receipt of revenue sharing. None of plaintiff's subsection (iii) theories have the requisite nexus.

Ownership of Separate Accounts. MassMutual's ownership of the separate accounts has no causal nexus with its receipt of revenue sharing payments. MassMutual negotiates revenue sharing agreements with mutual funds *before* a plan can invest in the separate account. (Assise Aff., Ex. 1 at 21; Assise Aff., Ex. 10 at 10-11.) This means that MassMutual's receipt of any revenue sharing payment relating to the GSI Plan investments is solely dependent on whether the GSI Plan chooses to invest in a separate account, and not any decision made by MassMutual.

Additions/Deletions/Substitutions of Funds on the Overall Menu. The fact that MassMutual can change the Overall Menu of investment options made available to all plans does

---

[5] As MassMutual noted in its opening brief, the *Healthcare Strategies* opinion is of limited value here for the additional reason that it never considered the argument that recognizing fiduciary status under subsection (iii) for an unexercised power would effectively read the exercise requirement of subsection (i) out of the statute. (Br. at 24 n.5.) In its response, plaintiff does not dispute that this critical argument was never addressed.

13

not affect the amount of revenue sharing that MassMutual receives from the GSI Plan. If
MassMutual chose to add or delete investment options, that has no impact on the Plan Menu.

    The Separate Investment Account Management Fee. Plaintiff's theory that MassMutual
is a fiduciary because it has the power to "self determine" its compensation by charging "a
separate investment account management fee" is entirely unrelated to MassMutual's receipt of
revenue sharing. (Opp. at 22-23.) Indeed, plaintiff acknowledges that "SIA Management Fees
are not RSPs." (RCS ¶ 21.) Instead, they are separate, asset based charges, paid directly to
MassMutual by individuals that choose to invest in plans with separate investment account
management fees. (Assise Aff. Ex.11 at 19.) Thus, these fees have no causal connection to, and
thus cannot create fiduciary status with regard to, revenue sharing payments.

## III.   MASSMUTUAL DOES NOT QUALIFY AS A FIDUCIARY UNDER SUBSECTION (ii).

    In its opening brief, MassMutual showed that it could not qualify as a fiduciary under
subsection (ii) because there was no agreement with the GSI Plan that MassMutual's advice
would serve as a primary basis with respect to investment decisions regarding Plan assets. (Br.
at 21 n.4.) In its Opposition, plaintiff does not address any of the legal authorities or the factual
evidence that MassMutual cited. Instead, plaintiff merely points to provisions in the group
annuity contract which provide that MassMutual will invest the assets of the separate account in
accordance with the GSI Plan's instructions and will receive a fee. (Opp. at 15-16.)

    But this simplistic argument comes nowhere close to creating fiduciary status under
subsection (ii). The relevant DOL regulation requires, among other things, that there must be an
agreement that MassMutual's services will be a "primary basis for investment decisions with
respect to plan assets." 29 C.F.R. § 2510.3-21(c)(1)(ii)(B). Not only does the group annuity
contract fail to provide that MassMutual's services will be a primary basis for investment

14

decisions, but in its Local Rule 56.1 statement, plaintiff admits that the Plan trustees and the Plan's independent advisors were the primary bases for investment decisions. (*See* Stmt. ¶¶ 35-37; RCS ¶¶ 35-37; Reply Stmt. ¶ 37.) Indeed, in response to Statement ¶ 37, plaintiff admitted that Messrs. Boeger and Goss (the Plan's outside advisors) and Earl Julo, were the "primary inputs into whether changes would be made to GSI Plan's investments." (RCS ¶ 37.) Thus, plaintiff's claim regarding fiduciary status under subsection (ii) cannot defeat summary judgment.

## CONCLUSION

For the foregoing reasons and the reasons stated in MassMutual's Memorandum in support of its Motion for Summary Judgment on the Issue of Whether it Acts as a Fiduciary With Respect to Revenue Sharing, the Court should hold that MassMutual is not a fiduciary with respect to revenue sharing.

Dated: January 29, 2014     Respectfully submitted,

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY

By: /s/ Mark B. Blocker
    One of its attorneys

James O. Fleckner (BBO #641494)
Alison V. Douglass (BBO #646861)
Ai Tajima (BBO #669182)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Phone: (617) 570-1000
Fax:   (617) 523-1231
E-mail: jfleckner@goodwinprocter.com
       adouglass@goodwinprocter.com
       atajima@goodwinprocter.com

Joel S. Feldman (*pro hac vice*)
Mark B. Blocker (*pro hac vice*)
Jen C. Won (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax:    (312) 853-7036
E-mail: jfeldman@sidley.com
        mblocker@sidley.com
        jwon@sidley.com

Bernadette Harrigan, BBO #635103
E-mail: bharrigan@massmutual.com
Massachusetts Mutual Life Insurance Co.
Law Department
1295 State Street
Springfield, MA 01111-0001
Phone: (413) 788-8411

ATTORNEYS FOR MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2014, a copy of Massachusetts Mutual Life Insurance

Company's Reply Memorandum In Support Of Summary Judgment On The Issue Of Whether It

Acts As A Fiduciary With Respect To Revenue Sharing was served via electronic and first class

mail as follows:

Michelle H. Blauner
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
E-mail: mblauner@shulaw.com

John M. Edgar
John F. Edgar
Michael D. Pospisil
EDGAR LAW FIRM LLC
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone: (816) 531-0033
E-mail: jme@edgarlawfirm.com
        jfe@edgarlawfirm.com
        mdp@edgarlawfirm.com

James E. Miller
Laurie Rubinow
Kolin C. Tang
Karen M. Leser
Shepherd Finkelman Miller
  & Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
E-mail: jmiller@sfmslaw.com
        lrubinow@sfmslaw.com
        kleser@sfmslaw.com
        ktang@sfmslaw.com

Ronald S. Kravitz
Liner Grode Stein Yankelevitz
Sunshine Regenstreif & Taylor LLP
199 Fremont St., 20th Fl.
San Francisco, CA 94105
Telephone: (415) 489-7700
E-mail: rkravitz@linerlaw.com

Patrick A. Klingman
Klingman Law, LLC
100 Pearl Street, 14th Floor
Hartford, CT 06103-4500
Telephone: (860) 249-7122
E-mail: pak@klingmanlaw.com

/s/ Mark B. Blocker
*One of the Attorneys for Defendant*
*Massachusetts Mutual Life Insurance*
*Company*