# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GOLDEN STAR, INC., | ) |
| Plan Administrator of the Golden Star | ) Case No: 3:11-CV-30235-PBS |
| Administrative Associates' 401(k) Plan and | ) |
| Golden Star Bargaining Associates' 401(k) | ) Hon. Patti B. Saris |
| Plan, On Behalf of Itself and All Others | ) |
| Similarly Situated, | ) **LEAVE TO FILE GRANTED** |
| | ) **BY ORDER DATED** |
| Plaintiff, | ) **JANUARY 17, 2014** |
| | ) |
| v. | ) |
| | ) **FILED UNDER SEAL** |
| MASSACHUSETTS MUTUAL LIFE | ) |
| INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY TO PLAINTIFF'S LOCAL RULE 56.1 RESPONSE
## AND COUNTER-STATEMENT OF MATERIAL FACTS OF RECORD

Pursuant to Local Rule 56.1, Massachusetts Mutual Life Insurance Co. ("MassMutual" or

"Defendant") submits this reply to plaintiff's Local Rule 56.1 Response and Counter-Statement

of Material Facts of Record. This document contains three sections: the first section relates to

MassMutual's Local Rule 56.1 Statement (¶¶ 1-61), the second section relates to plaintiff's

"Counter-Statement and Statement of Additional Facts" (¶¶ 62-121), and the third section relates

to plaintiff's "Statement of Disputed Issues of Material Facts" (¶¶ 122-150).

## INTRODUCTION

In response to MassMutual's Local Rule 56.1 Statement of Undisputed Facts (Dkt. 125),

plaintiff has submitted a Local Rule 56.1 Response and Counter-Statement of Material Facts of

Record ("Response Statement" or "RCS") (Dkt. 134.) Plaintiff's Response Statement does not

reproduce the text of MassMutual's facts, so as it stands, the Court would be required to compare

these documents side-by-side to understand plaintiff's responses. For the Court's convenience, MassMutual's statements and plaintiff's responses are reproduced in full below.

However, plaintiff's Response Statement often improperly labels a fact as "Denied," even though there is no basis for a denial or a dispute. Similarly, plaintiff's Response Statement frequently purports to "deny" certain facts stated by MassMutual through legal arguments, inappropriate characterizations or by making non-responsive assertions – such as plaintiff's repeated attempts, even when admitting statements, to offering non-responsive information "by way of further response" (RCS ¶¶ 10-13, 15-16, 24, 36-39, 41, 43, 45, 49, 51, 54-56). Plaintiff also often claims that the evidence cited in support of a statement does not support the fact asserted, when in fact the evidence plainly supports the asserted fact. To address all of these issues, MassMutual has set forth below a reply to each of the statements that plaintiff has sought to deny or dispute improperly. Each of those replies are set forth below the text of plaintiff's response for the Court's convenience.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT OF "UNDISPUTED" FACTS

1. **Plaintiff Golden Star, Inc. ("GSI"), is a manufacturer and international distributor of floor maintenance products based in Kansas City, Missouri. (Ex. 3, E. Julo Dep. at 28; Dkt. 1 ¶ 11.)**

   *Plaintiffs' Response: Admitted.*

2. **GSI offers its employees two 401(k) plans: the Golden Star Administrative Associates' 401(k) plan and the Golden Star Bargaining Associates' 401(k) plan (collectively, the "Plan"). (Dkt. 1 ¶ 11.)**

   *Plaintiffs' Response: Admitted.*

3. **GSI is the plan administrator and named fiduciary of the Plan. (Dkt. 1 ¶ 11.)**

   *Plaintiffs' Response: Admitted.*

4. **MassMutual is an insurance company that also provides services to 401(k) plans. (Ex. 17, Wietsma Decl. Ex. A at MASSMUT0000426-445.)**

*Plaintiffs' Response*: *Admitted.*

**5.    MassMutual's services to 401(k) plans fall into two categories:  (1) a menu of investment options, and (2) recordkeeping and other ministerial services.  (*Id.*)**

*Plaintiffs' Response*: *Admitted in part and denied in part.  It only is admitted*

*that MassMutual provides certain services to 401(k) plans, which include designing and*

*maintaining a menu of investment options and providing certain recordkeeping services.*

*It is expressly denied that MassMutual's services are ministerial in nature or that*

*MassMutual's services are limited to maintaining a menu of investment options and*

*providing recordkeeping services.  Rather than constituting ministerial services,*

*MassMutual holds the authority to make and, in fact, makes, a number of discretionary*

*investment and administrative decisions for and on behalf of the 401(k) plans, including*

*the GSI Plan.  First, the Group Annuity Contract ("GAC" or "Group Contract")*

*between MassMutual and GSI expressly grants MassMutual the authority to administer,*

*control, and manage the Separate Accounts holding the GSI Plan's retirement assets and*

*MassMutual takes legal ownership of the Separate Accounts and the assets contained*

*therein, including the GSI Plan's retirement assets:*

> *... MassMutual has exclusive and absolute*
> *ownership and control of the assets in the Separate*
> *Investment Accounts....  Only MassMutual will have any*
> *individual, legal, or equitable ownership of any investments*
> *or assets of the Separate Investment Accounts....*
>
> *.... All assets of MassMutual are invested by*
> *MassMutual as it, in its sole discretion, may determine,*
> *subject to applicable laws and regulations including, but*
> *not limited to, the discontinuance of a Separate Investment*
> *Account.  The assets of the Separate Investment Accounts*
> *may be invested, wholly or partly, in securities, including*
> *the shares of any investment company registered under the*
> *Investment Company Act of 1940.  In exercise of its sole*
> *discretion, MassMutual may from time to time, hire an*

3

> *investment advisor registered under the Investment*
> *Advisors Act of 1940 to assist in the investment of assets.*

*(See Declaration of Christopher M. Assise, Attorney for Defendant, in Support of*
*Summary Judgment dated November 20, 2013 ("Assise Decl.") at Exhibit ("Ex.") 23 at*
*40 (§ 5.22)[2]; Miles 11/13/12 Dep. at 44:3-46:2.) Second, MassMutual retains the*
*discretionary authority, responsibility and control to change the investment options*
*available to the GSI Plan by adding, deleting and substituting investment options within*
*both the universe of investment options available to the GSI Plan, as well as the actual*
*investment options offered by the GSI Plan to its participants. (See Assise Decl. Exs. 5*
*(GSI04719-4720); 6 (MASSMUT0165371-165373); 17 at Ex. "C"; 23 at 40 (§ 5.22));*
*see also Demetriou Dep. Ex. 6; Demetriou Dep. 61:8-64:1. In fact, MassMutual has*
*specifically considered making changes in the investments made available to the Plans*
*and has substituted certain investments options for other investment options in its sole*
*discretion. (See Assise Decl. at Exs. 18 and 19.) Third, as part of its discretionary*
*administration of the Separate Accounts and the investment options offered to the GSI*
*Plan and the other Plans, MassMutual also chooses and has the discretion to change the*
*share class(es) of the mutual funds that it offers as investment options to the GSI Plan*
*and the other Plans, and the primary, if not exclusive, differences between share classes*
*of a mutual fund are the expense ratios of the mutual fund and the corresponding amount*
*of revenue sharing payments ("RSPs") paid to MassMutual by the mutual funds (with the*
*more expensive share classes of the same exact mutual fund rendering higher amounts of*
*RSPs to MassMutual). (Wietsma 11/14/12 Dep. at 40:9-40:19, 43:17-44:15 and 45:23 to*

---

[2] Citations to Assise Decl. Ex. 23 reference the page number of the exhibit (*i.e.,* 40 of 46), rather than the page number of the document contained in the exhibit.

4

*47:21.) Fourth, MassMutual retains the discretion to set its own compensation in connection with the services that it provides to the GSI Plan and other Plans because (a) "MassMutual may withdraw a separate investment account management fee from each Separate Investment Account," (see Assise Decl. Ex. 23 at 28 (§ 2.04 C.(xi))); (b) [f]or each asset allocation account, alternative equity account and access separate investment account, MassMutual may withdraw an additional fee for ancillary separate account services," (see Assise Decl.Ex. 23 at 28 (§ 2.04 C. (xii)); and (c) Defendant is always cognizant of the amount of RSPs it is receiving and is always monitoring the amount of RSPs by other service providers and, if it believes that others are receiving higher amounts of RSPs, it will proactively takes steps to obtain the higher level of revenue sharing. (Demetriou Dep. at 24:13-26:1.) MassMutual acknowledges that "every time" it learns that revenue sharing is being paid at a greater amount by a fund for the same product, that triggers an inquiry on MassMutual's part. (Demetriou Dep. at 24:24-25:2.) By way of example, when MassMutual determined that it was being paid 25 less basis points in RSPs by a mutual fund than was potentially available through another share class being offered by the fund, it immediately made an inquiry of the fund. (Demitriou Dep. at 50:11-17; Demetriou Dep. Ex. 3.) Fifth, MassMutual makes discretionary investment decisions for the GSI Plan and the other Plans by, among other things, choosing to reinvest all mutual fund dividends, which has the effect of increasing the amount of the assets of the Plans in the Separate Accounts and under MassMutual's management, thereby increasing the amount of RSPs payable to MassMutual. (Wietsma 11/14/12 Dep. at 34:5-36:6.) Finally, the evidence cited by MassMutual does not support the propositions for which it is cited with respect to Defendant's ministerial*

*characterization and the implied limitation of services contained in Defendant's asserted "undisputed" statement of "fact." As reflected above, MassMutual exercises complete and unfettered ownership and control of the GSI Plan's retirement assets and invests those assets at its sole discretion.*

**MassMutual's Reply:** With the exception of the first sentence, plaintiff's response is an improper argument and does not present any contrary facts. The first sentence of plaintiff's response acknowledges that "MassMutual provides certain services to 401(k) plans, which include designing and maintaining a menu of investment options and providing certain recordkeeping services." Thus plaintiff has admitted the entirety of statement ¶ 5, except that the "other" services are ministerial in nature. Nothing in the remainder of plaintiff's response points to any facts that create a dispute over whether MassMutual's services are ministerial. Instead, the remainder of plaintiff's response addresses whether MassMutual exercises discretion, a fact not alleged in statement ¶ 5. Because the substance of plaintiff's denial is unrelated to the facts which are purportedly being denied, it should be disregarded and this fact should be deemed admitted.

**6.     MassMutual or one of its predecessors has provided services to the Plan since 1993. (Ex. 3, E. Julo Dep. at 37, 40.)**

*Plaintiffs' Response: Admitted.*

**7.     GSI signed a group annuity contract with MassMutual in 1999. (Ex. 23, Group Annuity Contract.)**

*Plaintiffs' Response: Admitted.*

**8.     MassMutual offers retirement plans a menu of investment options ("the Overall Menu"). MassMutual occasionally changes the Overall Menu. When it deletes an option from the Overall Menu, it does so only prospectively. Plans that already are invested in the deleted options are not required to change their plan menu. (Ex. 11, Wietsma Dep. (10/1/13) at 24, 28-29.)**

6

*__Plaintiffs' Response__: Admitted in part and denied in part. It is admitted that MassMutual offers a limited menu of investment options ("Limited Menu" or "Smart Architecture Menu") from the universe of mutual funds that otherwise would be available to the GSI Plan and the other Plans, and mutual funds compete to be included on this Limited Menu by making RSPs to MassMutual. (See Wietsma 10/1/13 Dep. at 24:2- 24:18.) It is denied that, when MassMutual deletes an investment option from its Limited Menu, it only does so prospectively. Although Plans invested in the deleted options may be permitted to continue investing in that investment option, Plans that have made those deleted options available to their participants, but in which actual investments have not been made by participants as of the date of the deletion, also will have the investment option deleted from the Plans' menus. (Wietsma 10/1/13 Dep. at 28:19- 29:11; 30:13- 31:22.) Moreover, the evidence establishes instances in which GSI was invested in mutual funds that MassMutual determined, in its sole discretion, to delete from its Limited Menu and substitute with replacement investment options and GSI had no choice to continue with these deleted options, notwithstanding MassMutual's self-serving assertion to the contrary. (See Assise Decl. at Exs. 18, 19; see also Demetriou Dep. Ex. 6 ("MassMutual has exercised its right under its contract with INVESCO to terminate its investment, ... MassMutual is in the process of searching for a replacement for the INVESCO Stable Value trust..., [i]n the event a plan fiduciary notifies MassMutual that it does not want to offer the SIA with the replacement investment..., MassMutual will transfer the value of the plan's investment in the SIA to any other available investment selected by the plan sponsor...."); Demetriou Dep. at 61:8-64:1.) Thus, it is patently untrue that the Plans always are permitted to retain investments in mutual funds or other*

7

*instruments which MassMutual, in its discretion, elects to delete or replace.*
*Furthermore, MassMutual retains the right and discretion to change the investment*
*options and actual investments of the Plans, including the GSI Plan, by substituting a*
*new or existing investment option made available for a current investment option and/or*
*by changing the investments offered through a Separate Account, and MassMutual has*
*exercised its right to substitute existing investment options and to change the investments*
*associated with Separate Accounts. (See Assise Decl. Exs. 5 (GSI04719-4720); 6*
*(MASSMUT0165371-165373); 17 at Ex. "C"; 23 at 40 (§ 5.22).)*

**MassMutual's Reply:** Plaintiff's response is an improper argument and does not
present any contrary facts. Statement ¶ 8 alleges that "MassMutual offers retirement
plans a menu of investment options," that "MassMutual occasionally changes the Overall
Menu," that "[w]hen it deletes an option from the Overall Menu, it does so only
prospectively," meaning "[p]lans that already are invested in the deleted options are not
required to change their plan menu." Plaintiff's response to statement ¶ 8 admits that
MassMutual offers retirement plans a menu of investment options and that MassMutual
occasionally changes the Overall Menu.

Plaintiff denies that MassMutual only prospectively changes the Overall Menu,
but it offers no factual support for its claim, so this portion of the statement should be
deemed admitted as well. Under Local Rule 56.1, a denial is only proper if the denying
party offers "page references to affidavits, depositions and other documentation." *See*
L.R. 56.1. Here plaintiff fails to do so. Instead, plaintiff points to a host of irrelevant
documents. Assise Affidavit Exhibits 18 and 19 document name changes, not fund
changes. Indeed, the face of these documents make clear that the new funds offer "the

8

same style, strategy, portfolio managers [people running the fund] and objectives." (*E.g.*, Assise Aff. Ex. 19.) Demetriou deposition exhibit 6 is equally inapposite as a link in the email chain after the segment plaintiff quoted stated the fund would be "put.. back on," and plaintiff elected not to elicit deposition testimony regarding whether the fund being discussed was deleted. (Tang Decl. Ex. E, Demetriou Dep. Ex. 6.) Finally the cited portions of Mr. Wietsma's testimony reaffirm the statements in ¶ 8, as they confirm MassMutual's assertions that "a plan that had invested [in a fund]... would continue to have that fund available to them" and "a plan that had not invested... would no longer [have the fund] be available to them." (Assise Suppl. Decl. Ex 25, Wietsma Dep. (10/1/13) at 28:19-29:11; 30:13-31:22.)

The remainder of plaintiff's response is an improper argument about topics not asserted in statement ¶ 8 and should be disregarded.

**9. Plans select investment options from the Overall Menu and offer the selected options (the "Plan Menu") to plan participants. Plans can also choose investment options that are not on the Overall Menu and options that have been deleted from the Overall Menu. (*Id.* at 25, 31, 33-34.)**

*Plaintiffs' Response: Denied. Plaintiff incorporates by reference its response to Paragraph 8, which demonstrates that this assertion is factually incorrect and unsupportable based on the actual facts of record.*

**MassMutual's Reply:** Plaintiff's denial does not present any facts controverting the facts set forth in statement ¶ 9 and accordingly should be disregarded pursuant to Local Rule 56.1. Statement ¶ 9 states that "[p]lans select investment options from the Overall Menu and offer the selected options to plan participants" and that plans can also choose options that are not on the Overall Menu. The entirety of plaintiff's denial of statement ¶ 8, which is offered in response to statement ¶ 9 as well, focuses on the

9

circumstances under which investment options are deleted from the Overall Menu. Because nothing in plaintiff's response to statement ¶ 8 dispute the fact that plans (as opposed to MassMutual) select the investment options that will be offered to their participants, or suggests that plans are limited to the investment options in the plan menu, plaintiff's denial of statement ¶ 9 is improper and it should be deemed admitted.

**10.     The investment options mainly consist of MassMutual's separate accounts.**
**(*Id.* at 85.)**

*Plaintiffs' Response: Admitted in part and denied in part. By way of further response, although the cited testimony identifies the corresponding document (MASSMUT000179903) as an internal spreadsheet consisting of the Separate Accounts that MassMutual makes available to the Plans as investment options, neither the cited testimony nor the spreadsheet itself support the proposition that the investment options made available to the Plans "mainly consist" of such Separate Accounts.*

**MassMutual's Reply:** Plaintiff has admitted the facts set forth in statement ¶ 10. Plaintiff's semantic debate over whether the hundreds of separate accounts listed in MASSMUT0179903 are sufficiently numerous to conclude that the offered investment options "mainly consisted" of separate accounts is not material, and so the facts in this statement should be deemed admitted. (Assise Aff. Ex. 21.)

**11.     Most separate accounts invest in the shares of a single mutual fund. (Ex. 11, Wietsma Dep. (10/1/13) at 10; Ex. 1, Demetriou Dep. at 69.)**

*Plaintiffs' Response: Admitted in part and denied in part. By way of further response, the cited documents and testimony do not support the proposition contained in this paragraph. Rather, Mr. Wietsma simply testified that investment in a single mutual fund is the "most common" structure of a Separate Account and Mr. Demetriou testified*

10

*that, although a number of Separate Accounts at Mass Mutual contain a single mutual*

*fund, there also are Separate Accounts at MassMutual that do not contain a mutual fund*

*but, instead, contain a pool of assets. (See Deposition of Peter Demetriou (Demetriou*

*Dep.) at 69:14-70:15; Wietsma 10/1/13 Dep. at 10:12-10:24.)*

**MassMutual's Reply:** Plaintiff has admitted the material facts contained in

section ¶ 11. Plaintiff's semantic debate over whether the terms "most common" and

"most" are different is not a dispute material to this litigation. Further, nothing in

statement ¶ 11 claims that the separate accounts *always* invest in shares of a single

mutual fund, making the last sentence of plaintiff's denial irrelevant.

**12.    Some of the mutual funds that are offered through the separate accounts are MassMutual proprietary funds, and other mutual funds are offered by third parties. (Ex. 1, Demetriou Dep. at 17-18; Ex. 22, MASSMUT0295967-70.)**

*__Plaintiffs' Response__: Denied. By way of further response, the cited documents*

*and testimony do not support the factual assertions contained in this paragraph. (See*

*Demetriou Dep. at 17:18-18:1.)*

**MassMutual's Reply:** Exhibit 22 to the Assise Affidavit lists a variety of mutual

funds, some of which are offered by third parties (e.g., American Funds) and some of

which are MassMutual propriety funds, so the cited material plainly supports the asserted

facts.

**13.    For most of the third-party mutual funds on the Overall Menu, MassMutual enters into an agreement (known as a Participation Agreement or Services Agreement) with the mutual fund company to provide various services in exchange for a fee. (Ex. 8, Miles (11/13/12) Dep. at 110; Ex. 10, Wietsma Dep. (11/14/12) at 10-11.)**

*__Plaintiffs' Response__: Denied. By way of further response, the cited documents*

*and testimony do not support the factual assertions contained in this paragraph. (See*

11

*Miles 11/13/12 Dep. at 110:14-110:21; Wietsma 11/14/12 Dep. at 10:16-11:12.)*
*Moreover, to the extent that the assertions contained in this paragraph are meant to*
*imply that any agreements that MassMutual has entered into with mutual funds (the*
*"Participation Agreements") are bona fide in nature or relate to services rendered by*
*MassMutual, plaintiff specifically denies the same. MassMutual provides the same,*
*undefined "various services" to mutual funds, regardless of the amount of fees paid by*
*the mutual fund. (Demetriou Dep. at 30:15-32:3, 53:15-54:4.) Indeed, MassMutual*
*provides the same, undefined "various services" for mutual funds that do not pay it any*
*RSPs. (Wietsma 11/14/12 Dep. at 62:22-63:9.) MassMutual separately agreed to*
*provide the same services to the GSI Plan under the Group Annuity Contract ("GAC")*
*and/or is legally bound to provide the same services because of its status as the owner*
*and legal title holder of the GSI Plan assets. (See Assise Decl. at Ex. 23, at 23-24, 40 (§§*
*2.04, 5.22); Wietsma 11/14/12 Dep. at 10:16-13:6.).[3] As a result, the only real*
*consideration that MassMutual offers to the mutual funds in exchange for the RSPs it*
*receives under the Participation Agreements is access to MassMutual's retirement plan*
*clients, such as the GSI Plan, through MassMutual's Limited Menu. (See Demetriou*
*Dep. at 21:5-8.) In other words, the Participation Agreements are nothing more than*
*pay-to-play, shelf-space agreements. As MassMutual acknowledged in internal*
*correspondence, explaining why RSPs differ across share classes even though there is no*
*difference in the services provided to the Plans based on different share classes is*
*difficult to explain or justify: "critical questions we must clarify are how the fees we*

---

[3] The pagination referenced for the GAC is the as-filed exhibit page number rather than the internal document pagination.

*charge within our Funds (i.e., 12b-1, Service Fees, Admin Fees) apply to the services we are actually providing and what is the justification for differing fee rates across Classes."* (Eldredge Dep. Ex. 2; Eldredge Dep. at 22:9-50:24.)

**MassMutual's Reply:** Plaintiff's response is an improper argument, does not present any contrary facts, and accordingly this fact should be deemed admitted. The cited testimony states that MassMutual enters into participation agreements with mutual fund companies and that under those agreements MassMutual agrees to provide various services. (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10-11.) Mr. Wietsma's testimony makes clear that, among other things, MassMutual provides Mutual Funds with various services and data. Plaintiff's response to statement ¶ 13 is merely an argument about the purported the legal consequence of the undisputed facts. Having presented no contrary facts, statement ¶ 13 should be deemed admitted.

**14.     MassMutual enters into Participation Agreements before it places any mutual fund on its Overall Menu.  (Ex. 1, Demetrious Dep. at 21.)**

*Plaintiffs' Response: Denied. In the course of discovery, when MassMutual was unable to produce Participation Agreements for specific investments offered by the GSI Plan, counsel for Defendant specifically represented that "[t]here are no revenue sharing agreements for Wellington and Driehaus" and "[w]e do not have any record of Retirement services having a Fund Servicing Agreement with Davis Selected Advisors prior to September 26, 2006." (See Tang Decl. at Exs. AC; AD and AE.) Since MassMutual does not have Participation Agreements related to certain mutual funds that it offers on its Limited Menu and does not have Participation Agreements applicable to time periods in which the GSI Plan invested in such mutual funds, the evidence of record*

13

*obviously does not support MassMutual's assertion that it "enters into Participation Agreements before it places any mutual fund on its Overall Menu."*

**MassMutual's Reply:** Plaintiff's response does not present any evidence that disputes the facts asserted in the statement, so the facts in statement ¶ 14 should be deemed admitted. In the testimony cited in support of statement ¶ 14, Mr. Demetriou testified that "a fund service agreement [would] be put in place prior to a determination being made that a fund would be placed on a platform." (Assise Aff. Ex. 1, Demetriou Dep. at 21:1-8.) The fact that certain participation agreements could not be located does not somehow contradict this testimony. Plaintiff does not point to any evidence that a participation agreement was entered into *after* a fund was placed on the menu. The assets in the Driehaus fund consist of a pool of securities, not an underlying mutual fund, so there is no revenue sharing agreement. (*Id.* at 70:11-24.) Having failed to present any evidence to dispute the facts in statement ¶ 14, the facts should be deemed admitted.

**15.    Until MassMutual enters into a Participation Agreement, the mutual fund is not offered to retirement plans for investment. (Ex. 10, Wietsma Dep. (11/14/12) at 10-11; 74-75; Ex. 1, Demetrious Dep. at 21.)**

*Plaintiffs' Response: Denied. By way of further response, the cited documents and testimony do not support the factual assertions contained in this paragraph. (See Wietsma 11/14/12 Dep. at 10-11, 74-75; Demetriou Dep. at 21.) Instead, the cited deposition testimony generally describes the function of the Participation Agreements and does not reference the timing of Mass Mutual's offering of mutual funds to the Plans vis-a-vis the execution of the Participation Agreements.*

**MassMutual's Reply:** The evidence set forth in support of statement ¶ 15 plainly support the asserted facts. Mr. Demetriou unambiguously testified that "a fund

14

service agreement [would] be put in place prior to a determination being made that a fund would be placed on a platform." (Assise Aff. Ex. 1, Demetriou Dep. at 21:5-8.) Plaintiff does not offer any contrary facts. Accordingly, this statement should be deemed admitted.

**16. The Participation Agreement provides that MassMutual performs many of the functions that would otherwise have to be provided by the mutual fund company, such as a system of recordkeeping, and participant communications. (Ex. 10, Wietsma Dep. (11/14/12) at 11; Ex. 8, Miles Dep. at 55-56.)**

*Plaintiffs' Response: Denied. By way of further response, the cited documents and testimony do not support the factual assertions contained in this paragraph. Although the cited testimony of Mr. Wietsma asserts that the Participation Agreements document the operational relationship between Mass Mutual and the mutual fund, as well as the services provided "to the shareholders and plan sponsors that choose to utilize those investment options that are performed on behalf of the investment firm that they would otherwise perform for themselves," there is no reference in this testimony to Mass Mutual performing "many of the functions that would otherwise have to be provided by the mutual fund company, such as a system of recordkeeping and participant communications," as asserted by Defendant. In addition, the cited deposition testimony of Dennis Miles does not support the assertion contained in this paragraph, since Mr. Miles' deposition testimony relates solely to the services that Mass Mutual provides to the plan sponsor, such as GSI, and there is no reference in this testimony whatsoever to the Participation Agreements or to the alleged services that MassMutual purports that it provides in the stead of mutual fund companies. (See Miles 11/13/12 Dep. at 54:16- 56:10.) As noted above, the Participation Agreements are not bona fide agreements related to services rendered since MassMutual provides the same exact services even*

15

*when mutual funds do not pay it any RSPs. (Demetriou Dep. at 30:15-32:3, 53:15-54:4; Wietsma 11/14/12 Dep. at 62:22-63:9.) And, MassMutual either already agreed to provide the same services to the GSI Plan under the GAC or is legally bound to provide the same services because of its status as the legal title holder of GSI Plan assets. (Assise Decl. at Ex. 23, at 23-24, 40 (§§ 2.04, 5.22); Wietsma 11/14/12 Dep. at 10:16-13:6.) Thus, the only real consideration that MassMutual offers to the mutual funds in exchange for the fees, i.e., "revenue-sharing" under the Participation Agreements, is access to MassMutual's retirement plan clients, such as the GSI Plan. (Demetriou Dep. at 21:5-8.)*

**MassMutual's Reply:** With the exception of the first sentence, plaintiff's response is improper argument, does not present any contrary facts, and accordingly this statement should be deemed admitted. The cited testimony describes the various recordkeeping functions MassMutual provides for mutual funds. To the extent plaintiff's denial is based on the statement that MassMutual is performing functions "that would otherwise have to be provided by the mutual fund company," it is contrary to common sense. Someone has to handle the logistics of communications between mutual funds and individuals investing in the fund. If MassMutual did not do it, the only party left to do so is the mutual fund. The remainder of plaintiff's denial is argument unrelated to the statements contained in ¶ 16 and accordingly should be disregarded.

**17. The fee that MassMutual receives from the mutual fund company is known as a revenue sharing payment. (Ex. 10, Wietsma Dep. (11/14/12) at 57.)**

*Plaintiffs' Response: Denied as stated. The cited page of the transcript of the deposition of Eric Wietsma does not support this factual assertion. Nothing in the referenced testimony discusses mutual fund companies or that RSPs constitute "fees." Instead, the testimony generally describes RSPs as one component of the revenue Mass*

16

*Mutual receives for the services it provides to its customers: "Revenue sharing is one of*

*the forms of revenue that we receive as compensation for the services that we provide to*

*our clients." (Wietsma 11/14/12 Dep. at 57:1-8.)*

**MassMutual's Reply:** Plaintiff's semantic dispute over the term "fee" is not

material and so this statement should be deemed admitted. Plaintiff's response does not

dispute that MassMutual receives monies from mutual fund companies or that those

monies are known as revenue sharing payments. Whether these monies are called "fees,"

"revenue," or something else is immaterial to this dispute.

**18.     Revenue sharing payments are made from the revenue earned from the expense ratio charged by the mutual fund. (Ex. 11, Wietsma Dep. (10/1/13) at 20.)**

*Plaintiffs' Response: Admitted.*

**19.     MassMutual has disclosed the existence of revenue sharing payments since at least 2008. (Ex. 13, Harrison Aff. at ¶ 14; Ex. 17, Wietsma Decl. at ¶ 7; Ex. 17, Wietsma Decl. Ex. A at MASSMUT0000445.)**

*Plaintiffs' Response: Denied. GSI's representatives were unequivocal that*

*MassMutual never disclosed the existence of RSPs until GSI independently requested*

*information regarding the RSPs through its counsel in 2010. (E. Julo Dep. at 12:24-*

*14:20; 127:2-127:6; R. Julo Dep. at 70:18-71:14.) By way of further response, the*

*document/proposal dated November 11, 2008 (which is unrelated to GSI) that*

*MassMutual attaches to support this proposition, neither discloses the "existence" of*

*RSPs or explains the true nature of the RSPs which, as explained above, are unrelated to*

*services rendered. (See Assise Decl. at Ex. 17 (Wietsma Decl. Ex. A at*

*MASSMUT0000445).) Indeed, the alleged "disclosure" of RSPs cited to at*

*MASSMUT0000445 borders on the incomprehensible and only confirms the fact that*

*Defendant never has adequately disclosed the true nature, function and purpose of the*

17

*RSPs. The contents (or lack thereof) of the November 11, 2008 proposal attached as*
*Exhibit "A" to the Declaration of Mr. Wietsma places the unsupportable and bald*
*assertions contained in the Affidavit of Brad Harrison in proper context since the*
*November 11, 2008 proposal is, on its face, opaque, misleading and incomplete in nature*
*and belies the specific assertions of Mr. Harrison with respect to the contents of such*
*proposals. It is undisputed that the amount of RSPs bear absolutely no relationship to the*
*services that MassMutual provides and, as a result, to the extent that the RSPs are*
*obliquely referenced as payments for recordkeeping services, such references (to the*
*extent discernable at all) are false and misleading in nature. (See Wietsma 11/14/12*
*Dep. at 10:16-13:6, 62:22-63:9; GAC at 23-24, 40 (§§ 2.04, 5.22).) Indeed, in a 2009*
*proposal to GSI, MassMutual specifically failed to disclose RSPs in any respect or that*
*RSPs constituted compensation that MassMutual received in connection with*
*transactions involving the GSI Plan's assets. (See RCS, ¶ 21, supra.)*

      **MassMutual's Reply:** Plaintiff's denial of statement ¶ 19 is not support by the
cited materials. GSI's own witness, Mr. Julo, testified that he received and reviewed a
document "disclosing to the Golden Star plan that MassMutual is receiving payments
from mutual funds." (Assise Aff. Ex. 3, E. Julo Dep. at 133.) Plaintiff's denial of
statement ¶ 19 focuses not on whether fees were disclosed, but on legal argument about
whether the disclosures were adequate. This argument does not affect the truth of the
facts contained in statement ¶ 19, which simply states "MassMutual has disclosed the
existence of revenue sharing payments since at least 2008." Accordingly, plaintiff's
denial should be disregarded and the facts in this statement should be deemed admitted.

     **20.**    **When MassMutual bids for a 401(k) plan's business, it determines how much
revenue it needs from a plan to meet a target margin. (Ex. 9, Orzell Dep. at 56-57.)**

*Plaintiffs' Response: Denied. Although MassMutual fails to specify which deposition of Jennifer Orzell it is relying upon, the cited testimony from either deposition bears absolutely no relationship to the proposition for which it is cited and, therefore, the assertion contained in this paragraph is without record support. (See Orzell 11/13/12 Dep. at 56:1-57:25; Orzell 3/11/13 Dep. at 56:1-57:25.)*

**MassMutual's Reply:** Defendant concedes that the cited material does not support the original statement because it pointed to the wrong deposition of Ms. Orzell (she gave two depositions). Defendant intended to cite pages 56-57 of her November 13, 2012 deposition, which, states that in pricing new business, MassMutual "estimate[s] what our expenses are going to be over the life of the contract" and then "tr[ies] to target a margin on that." (Tang Decl. Ex. S, Orzell Dep. (11/13/12) at 56-57.) Mr. Wietsma also addressed this same point, explaining that MassMutual thinks "about the business in terms of all the expenses that it takes," then figures out how much revenue it needs, but is "MassMutual is indifferent to how we collect revenue to be compensated for the services we provide." (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 50, 57, 59, 85).

**21. There are three main sources that the plan can use to pay MassMutual for its services: out-of-pocket payments from the plan sponsor, payments from plan participants through fees; and revenue sharing payments from mutual funds. MassMutual is indifferent which the three sources (or any combination of the three) a plan uses to pay for its services. (Ex. 9, Orzell Decl. ¶ 7; Ex. 13, Harrison Aff. ¶ 5; Ex. 10, Wietsma Dep. (11/14/12) at 50; Ex. 8, Miles Dep. (11/13/12) at 91.)**

*Plaintiffs' Response: Admitted in part and denied in part. It only is admitted that the Plans are advised that there are three components by which they can pay for MassMutual's services, none of which include RSPs. Specifically, as of January 23, 2009, MassMutual provided pricing quotes to GSI demonstrating the following current and proposed bases for payment with accompanying estimated expenses: (a) Asset*

19

*Schedule -- showing for GSI's Administrative Associates 401(k) Plan a current direct 0.60% asset charge with an estimated current expense of $11,882 per annum, and a proposed direct 0.55% asset charge with an estimated current expense of $10,892 per annum, and showing for GSI's Bargaining Unit Associates' 401(k) Plan a current direct 0.60% asset charge with an estimated current expense of $4,349 per annum, and a proposed direct 0.55% asset charge with an estimated current expense of $3,987 per annum; (b) Participant Schedule -- showing for GSI's Administrative Associates 401(k) Plan a current direct participant charge of $245 per annum, and a proposed direct participant charge of $0 per annum, and showing for GSI's Bargaining Unit Associates' 401(k) Plan a current direct participant charge of $450 per annum, and a proposed direct participant charge of $0 per annum; and (c) SIA Management Fees -- showing for GSI's Administrative Associates 401(k) Plan current SIA Management Fees calculated through direct asset charges an estimated current expense of $9,736 per annum, and a proposed SIA Management Fees calculated through direct asset charges with an estimated current expense of $9,736 per annum, and showing for GSI's Bargaining Unit Associates' 401(k) Plan current SIA Management Fees calculated through direct asset charges an estimated current expense of $3,496 per annum, and a proposed SIA Management Fees calculated through direct asset charges with an estimated current expense of $3,496 per annum. (See MASSMUTUAL000138-MASSMUTUAL000139 (see Exhibits "AF" and "AG" to the Tang Decl).) SIA Management Fees are not RSPs. (Wietsma 10/1/13 Dep. at 101:15-23.) In fact, in these proposal documents to GSI in 2009, there is absolutely no mention of either RSPs or the spread that MassMutual earns on its Fixed Account investments, both of which MassMutual treats as sources of*

20

*revenues but which MassMutual does not disclose in its proposal documents, as reflected above. Furthermore, MassMutual presents no competent evidence that it ever discloses to or has notified the Plans, including the GSI Plan, that the RSPs from mutual funds are a "source" that a retirement plan can use to pay MassMutual for its services. (See E. Julo Dep. at 12:24-14:20, 127:2-6; R. Julo Dep. at 70:18-71:14.) Nor does MassMutual disclose that the RSPs are payments for access that are unrelated to any other service it may provide to the GSI Plan or mutual funds. (Assise Decl. at Ex. 17 (Wietsma Decl. Ex. A at MASSMUT0000445); Wietsma 11/14/12 Dep. at 10:16-13:6, 62:22-63:9; Assise Decl. at Ex. 23, at 23-24, 40 (§§ 2.04, 5.22).)*

**MassMutual's Reply:** Plaintiff's response is an improper argument, does not present any contrary facts, and accordingly the facts in Statement ¶ 21 should be deemed admitted. The cited material plainly supports the facts alleged in statement ¶ 21. For example, the Affidavit of Brad Harrison states "once our clients selected a record keeper, they would determine how to pay for the record keeper's services. This can be done in three ways: via revenue sharing, via a direct payment by the plan sponsor, or via a direct charge to the plan participants." (Assise Aff. Ex. 13, Harrison Aff. ¶ 5.) Plaintiff offers no facts to the contrary. Instead, plaintiff offers argument over the sufficiency of MassMutual's revenue sharing disclosures, a fact not germane to statement ¶ 21.

**22. MassMutual uses revenue sharing to offset monies that it would otherwise collect from the plan sponsor or plan participants. (Ex. 10, Wietsma Dep. (10/1/13) at 50, 57, 59, 85; Ex. 14, Mezey Aff. at ¶ 7.)**

*Plaintiffs' Response: Denied. The cited deposition testimony and affidavit do not support the propositions for which they are cited. Moreover, MassMutual has admitted that, if a mutual fund decides to increase the revenue sharing payments to*

21

*MassMutual, the amount MassMutual receives in revenue increases – meaning that there*
*is no corresponding credit to the Plans. (Orzell 11/13/12 Dep. at 74:9-14.) Likewise,*
*MassMutual has presented no evidence that it uses all of the RSPs it collects to offset fees*
*it would otherwise charge retirement plans such as the GSI Plan (i.e., on a dollar-for-*
*dollar basis or otherwise). Finally, MassMutual has no contractual obligation to use the*
*RSPs to offset the fees it charges to retirement plans like the GSI Plan, so it has the*
*discretionary authority to freely allocate the revenue-sharing payments as it so desires*
*and in its discretion, thereby providing it with discretion to establish its own*
*compensation. (See generally Assise Decl. at Ex. 23.)*

**MassMutual's Reply:** The cited material plainly supports the facts alleged in
statement ¶ 22. The cited testimony of Mr. Wietsma explained that MassMutual thinks
"about the business in terms of all the expenses that it takes," then figures out how much
revenue it needs, but "MassMutual is indifferent to how we collect revenue to be
compensated for the services we provide" and "revenue sharing is one form of revenue
that [MassMutual] get compensated for doing those services." (Tang Decl. Ex. V,
Wietsma Dep. (11/14/12) at 50, 57, 59, 85). Mr. Wietsma went on to explain that
revenue sharing is collected in lieu of "asset charges" or "fixed per head" charges. (*Id.*)

**23.     MassMutual provides the following services to plans: offering a menu of
investment options; providing recordkeeping services; sending out monthly statements;
providing internet and web support for electronic transactions and access to accounts;
providing a toll-free customer service phone number; and providing educational and
informational materials about investment alternatives. (Ex. 17, Wietsma Decl. Ex. A.)**

***Plaintiffs' Response**: Admitted in part and denied in part. It is admitted that the*

*services delineated in this paragraph are certain of the services that MassMutual*

22

*provides to the Plans. In addition, MassMutual provides a number of other services, including, but not limited to, administration of the Separate Accounts, maintenance of the Limited Menu of investments, and making investment decisions on behalf of the Plans, including reinvesting dividends issued by mutual funds, as opposed to receiving them in cash or investing them in other instruments, including money market funds, MassMutual's Fixed Account and/or qualified investments designated by the Plans or their participants. (See Assise Decl. at Ex. 17, Wietsma Decl. Ex. A at MASSMUT0000436-439; Wietsma 11/14/12 Dep. at 34:5-36:6.)*

**MassMutual's Reply:** Plaintiff's denial is improper. Plaintiff admits the only fact stated in statement ¶ 23, that MassMutual provides "the services delineated in this paragraph." The remainder of plaintiff's response lists other services it claims MassMutual provides, but without disputing the fact asserted in the statement. As a result, the facts in this statement should therefore be deemed admitted.

**24. After a plan chooses the Plan Menu, participants provide directions about how they want their 401(k) monies invested. The plan, or the participants, communicate those directions to Mass Mutual. (Ex. 2, Harrison Dep. at 33.)**

*Plaintiffs' Response: Admitted. By way of further response, MassMutual defines the investment options that are and will remain available for investment by the Plans and their participants, and determines, in its discretion, whether the investments and the investments options of the Plans and their participants will be changed based on MassMutual's own judgment. (See Assise Decl. Exs. 5 (GSI04719-4720); 6 (MASSMUT0165371-165373); 17 at Ex. "C"; 23 at 40 (§ 5.22).)*

**MassMutual's Reply:** Plaintiff has admitted the facts in statement ¶ 24, so its "further response" has no bearing on the truth of the facts asserted in statement ¶ 24.

23

**25.** **MassMutual executes the directions from the plan or the participants about how participants want their 401(k) monies invested. (Ex. 2, Harrison Dep. at 33-34; Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.)**

> *Plaintiffs' Response: Admitted in part and denied in part. It is admitted that MassMutual executes the directions from the Plans and their participants regarding how their 401(k) investments will be invested so long as MassMutual determines, in its sole discretion, that it will permit such investments. (See Assise Decl. Exs. 5 (GSI04719-4720); 6 (MASSMUT0165371-165373); 17 at Ex. "C"; 23 at 40 (§ 5.22).) In addition, MassMutual, in its sole discretion, makes the investment decision to reinvest all mutual fund dividends, thereby increasing the amount of RSPs. (Wietsma 11/14/12 Dep. at 34:5-36:6.) It is expressly denied that, in light of the substantial discretion which MassMutual holds and exercises, Defendant simply or solely follows or executes the directions of the Plans and their participants (or that MassMutual performs duties that are solely ministerial in nature).*

**MassMutual's Reply:** Plaintiff's response is improper argument, does not present any contrary facts, and accordingly the facts asserted should be deemed admitted. Plaintiff admits the only fact asserted in statement ¶ 25, that "MassMutual executes the directions from the Plans and their participants regarding how their 40(k) investments will be invested." The rest of plaintiff's response is improper argument or is not supported by the facts.

First, plaintiff cites Assise Affidavit Exhibits 5, 6, and 17 for the proposition that MassMutual only follows directions if MassMutual decides "in its sole discretion to do so." Each of these documents is an investment change form from the GSI directing MassMutual to make changes to investment options, so none of the document supports

24

the claim that MassMutual chooses on its own whether to follow the directions. These exhibits are directions from the GSI Plan.

Second, plaintiff cites a portion of the testimony of Eric Wietsma for the proposition that MassMutual makes the decision about where to reinvest dividends, but the cited passage does not support this assertion. On the contrary, Wietsma specifically testified that "any dividends or capital gains *per their instructions* are put back into the [same] fund." (Tang Decl. Ex. V, Wietsma Dep. at 34:19-21) (emphasis added.)

Third, in the last sentence of its response, plaintiff explains that it "expressly denies" MassMutual's statement ¶ 25, but the sentence is not support by any evidentiary materials.

**26.     The plan administrator of the Plan has always been a GSI employee. (Ex. 3, E. Julo Dep. at 33-34.)**

*Plaintiffs' Response: Admitted.*

**27.     The plan administrator of the Plan was Earl Julo from 1999-2010, and his son, Ray from August 2010 to the present. (*Id.* at 19, 33-34; Ex. 7, R. Julo Dep. at 20.)**

*Plaintiffs' Response: Admitted.*

**28.     From the inception of the Plan to today, the Julos have worked with two independent financial advisors, Michael Goss and Brett Boeger. (Ex. 3, E. Julo Dep. at 38, 41, 43-44, 48.)**

*Plaintiffs' Response: Admitted.*

**29.     From the inception of the Plan until today, GSI has contracted with a third-party plan administrator, Compensation Benefit Planning ("CBP"). (Ex. 3, E. Julo Dep. at 37, 62; Ex. 7, R. Julo Dep. at 21-22.)**

*Plaintiffs' Response: Admitted.*

**30.     CBP provides many plan-related services, including drafting the Plan documents and making changes to the Plan documents. (Ex. 3, E. Julo Dep. at 37, 56, 62-64, 104-05; Ex. 7, R. Julo Dep. at 20-21.)**

**Plaintiffs' Response**: *Admitted in part and denied in part. It is admitted that Compensation Benefit Planning, Inc. ("CBP") drafted certain of the Plan's documents used in connection with the GSI Plan. As "Plan documents" is an undefined term and MassMutual drafted and created the GAC and the amendments thereto, which constitute the operative document related to the administration of the assets of the GSI Plan, it is expressly denied that CBP drafted all "Plan documents." The documents that define the relationship between MassMutual and its customers are the GACs. (Miles 11/13/12 Dep. at 11:4-11:11, 15:14-16:5, 37:11-37:18, 72:13-72:22.) In addition to the GAC, MassMutual began providing administrative services agreements to all new GAC customers in 2010 and initiated a process to issue the administrative service agreements to current customers to "codify" the services provided under the GACs, which do not substantively or materially alter the terms of the relationship provided under the GACs. (Miles 11/13/12 Dep. at 16:11-20:16, 21:14-21:22, 73:21-74:1, 132:19-133:20.) Finally, the Plans generally adopt a prototype or basic plan document, which simply defines the rights of the Plans' participants and the obligations of a plan, while an adoption agreement is simply the means by which the Plans can adopt a prototype or basic plan document, and these plan documents and adoption agreements do not speak to the relationship between MassMutual and the Plans. (Miles 11/13/12 Dep. at 71:16-72:4, 73:13-73:20.) Presumably, these immaterial plan documents are the documents to which MassMutual refers when it utilizes the undefined term, "Plan documents," but since such documents do not relate to the relationship between the Plans and MassMutual in any respect, any such "Plan documents" are immaterial as to the issues at hand.*

26

**MassMutual's Reply:** Plaintiff's response is improper argument, does not present any contrary facts, and accordingly the facts in Statement ¶ 30 should be deemed admitted. Plaintiff admits the only fact asserted in statement ¶ 30, that CBP provides many plan-related services, including drafting the Plan documents and making changes to the Plan documents. The remainder of plaintiff's "denial" has no bearing on the truth of the facts asserted in statement ¶ 30 and accordingly does not present any dispute about the asserted fact.

**31. CBP communicated with MassMutual on behalf of the Plan. (Ex. 3, E. Julo Dep. at 62-63.)**

*Plaintiffs' Response: Admitted.*

**32. MassMutual had no role in drafting the Plan documents. (Ex. 3, E. Julo Dep. at 57-58; Ex. 7, R. Julo Dep. at 21.)**

*Plaintiffs' Response: Admitted in part and denied in part. Plaintiff incorporates by reference its response to Paragraph 30, which demonstrates that MassMutual drafted certain plan documents, but not others. By way of further response, although MassMutual may not have had a role in drafting plan documents defining the relationship between the Plan and its participants, MassMutual drafted the GAC, which defines the relationship between MassMutual and the GSI Plan, including MassMutual's discretionary, authority and control with respect to the GSI Plan and its investments, and MassMutual retains the final authority over any changes to the GSI Plan's administrative procedures or any GSI Plan amendments. (Assise Decl. Ex. 23, at 11 (§ 1.11).)*

**MassMutual's Reply:** Plaintiff's response is improper argument, does not present any contrary facts, and accordingly the facts in Statement ¶ 32 should be deemed admitted. Plaintiff admits the only fact asserted in statement ¶ 32, that MassMutual had

27

no role in drafting the Plan documents. The remainder of plaintiff's "denial," which

focuses on other documents that MassMutual did draft, has no bearing on the truth of the

facts asserted in statement ¶ 32.

**33.    The Plan has an Investment Committee, which consists of one of the Julos and their two independent advisors, Messrs. Boeger and Goss. (Ex. 3, E. Julo Dep. at 41.)**

*Plaintiffs' Response: Admitted in part and denied in part. Although it is*

*admitted that GSI has an Investment Committee, MassMutual misstates the composition*

*of the Investment Committee. R. Julo Dep. at 30:1-30:14.)*

**MassMutual's Reply:** Plaintiff's response does not dispute the truth of the facts

contained in statement ¶ 33, namely that at least one Julo and two independent

investment advisors were members of the GSI Plan's Investment Committee.

MassMutual agrees that other advisors not affiliated with MassMutual may have also

been part of the committee, but that does not change the substance of statement ¶ 33.

**34.    Since 2005, the Investment Committee has met at least annually in Kansas City, except in 2009. (Ex. 3, E. Julo Dep. at 42-43; Ex. 7, R. Julo Dep. at 33-34.)**

*Plaintiffs' Response: Admitted.*

**35.    No one from MassMutual ever attended the Investment Committee meetings. (Ex. 3, E. Julo Dep. at 43-44; Ex. 7, R. Julo Dep. at 47.)**

*Plaintiffs' Response: Admitted.*

**36.    At the Investment Committee meetings, Messrs. Boeger and Goss provided a review of the investment options on the Plan Menu, including the fees and performance, and recommended which investment options should be removed or added. (Ex. 3, E. Julo Dep. at 42-44, 50-51.)**

*Plaintiffs' Response: Admitted. By way of further response, the investment*

*options presented by Messrs. Boeger and Goss were derived from the Limited Menu*

*defined and maintained by MassMutual. (Wietsma 10/1/13 Dep. at 24:2-24:18.)*

28

**MassMutual's Reply:** Plaintiff has admitted the statements in statement ¶ 36,

and its "further response" has no bearing on the truth of the statements asserted in

statement ¶ 36.

**37.     Messrs. Boeger and Goss were the "the primary inputs" into whether
changes would be made to the Plan's investment options. (Ex. 3, E. Julo Dep. at 42-43.)**

*Plaintiffs' Response: Denied. By way of further response, from 1993 until 2010,
Earl Julo, as well as Messrs. Boeger and Goss, were the primary inputs into whether
changes would be made to the GSI Plan's investments based on the investments made
available on the Limited Menu defined and maintained by MassMutual. (E. Julo Dep. at
42:5-10.)*

**MassMutual's Reply:** Plaintiff's response does not cite any evidence in support

of its denial, and its "further response" does not materially dispute the truth of the facts

contained in statement ¶ 37. MassMutual agrees that Mr. Julo, in addition to Messrs.

Boeger and Goss were "the primary inputs" into whether changes would be made to the

Plan's investment options. As a result, the facts in statement ¶ 37 should be deemed

admitted.

**38.     The Investment Committee made recommendations to the Julos about
whether to add or delete investment options. (Ex. 3, E. Julo Dep. at 35; Ex. 7, R. Julo Dep.
at 50-51.)**

*Plaintiffs' Response: Denied. By way of further response, the Investment
Committee made recommendations to the GSI Plan's trustees, as opposed to Earl and
Ray Julo, and these recommendations were limited to the investments available on the
Limited Menu defined and maintained by MassMutual. (E. Julo Dep. at 35:2-35:7;
Wietsma 10/1/13 Dep. at 24:2-24:18.)*

29

**MassMutual's Reply:** Plaintiff's denial is improper under Local Rule 56.1 as it neither asserts that the factual support for statement ¶ 38 is insufficient nor cites any contrary facts. Moreover, plaintiff's arguments about "the Limited Menu" have no bearing on the truth of the facts asserted in statement ¶ 38. As a result, the facts in Statement ¶ 38 should be deemed admitted.

**39.    Earl and Ray Julo both testified that they had the ultimate authority over the selection of Plan investment options. (Ex. 3, E. Julo Dep. at 35-36, 69-70; Ex. 7, R. Julo Dep. at 30, 51, 55.)**

*Plaintiffs' Response: Denied. The testimony cited does not support the assertion contained in this paragraph. By way of further response, Ray Julo identified the Investment Committee as having the ultimate authority regarding selection of investments from the Limited Menu defined and maintained by MassMutual, and Earl Julo did not address the selection process in his testimony. (E. Julo Dep. at 36:2-7; R. Julo Dep. at 30:15-21, 51:5-10, 55:10-13.)*

**MassMutual's Reply:** Plaintiff's denial is unsupported by the cited testimony of its own witnesses. Earl Julo was asked "as plan administrator, did you have ultimate authority over what investments got added to the plan?" and answered "I had ultimate authority." (Assise Aff. Ex. 3, E. Julo Dep. at 35-36.) In any event, what is material is that Golden Star's trustees, none of whom had any relationship with MassMutual, had ultimate authority over the selection of Plan investment options. Plaintiff's response does not dispute this fact.

The remainder of plaintiff's "denial" consists of argument about the "Limited Menu defined and maintained by MassMutual" has no bearing on the truth of the facts

30

asserted in statement ¶ 39. Accordingly, the facts set forth in statement ¶ 39 should be deemed admitted.

**40.     The Julos' decision to add or delete investment options were communicated to MassMutual either in writing or orally. (Ex. 7, R. Julo Dep. at 34-35; Ex. 3, E. Julo Dep. Ex. 6.)**

*Plaintiffs' Response: Denied. The testimony of Ray Julo cited in support of this proposition does not support the assertion that Earl Julo and Ray Julo ever made the decisions to add or delete investment options, and similarly does not state that such decisions were communicated orally or in writing to MassMutual, as so asserted. (R. Julo Dep. at 34:1-35:25.) In addition, the cited exhibit to the Deposition of Earl Julo (Exhibit 6) has not been included in the record by Defendant and, in any event, does not address the authority to add or delete investment options or the manner in which any such changes are communicated to MassMutual. See Tang Decl. at Ex. "M."*

**MassMutual's Reply:** Defendant's denial is unsupported by the cited testimony of its own witnesses. Earl Julo was asked "as plan administrator, did you have ultimate authority over what investments got added to the plan?" and answered "I had ultimate authority." (Assise Aff. Ex. 3, E. Julo Dep. at 35-36.) In any event, what is material is that Golden Star's trustees, none of whom had any relationship with MassMutual, had ultimate authority over the selection of Plan investment options. Plaintiff's response does not dispute this fact. Moreover, Ray Julo was asked "if decisions are made to add or take away one of the funds from the lineup, you then have that decision communicated to MassMutual; correct?" and answered "Correct." (Assise Aff. Ex. 7, R. Julo Dep. at 34-35.)

31

The remainder of plaintiff's "denial" has no bearing on the truth of the facts

asserted in statement ¶ 40 and accordingly is improper and the facts set forth in statement

¶ 40 should be deemed admitted.

**41.    Once the Julos made the decision to add or delete investment options, MassMutual always made the changes in investment options. (Ex. 3, E. Julo Dep. at 69-70, 74-75; Ex. 7, R. Julo Dep. at 35-36.)**

*Plaintiffs' Response: Admitted. By way of further response, GSI never requested*

*an addition to or deletion from the Plan's menu of investment options that was outside of*

*the parameters of permissible investments, as defined by MassMutual in the Limited*

*Menu. (See E. Julo 10/23/12 Dep. Exs. 1, 2, 6, 11 and 12.)*

**MassMutual's Reply:** Plaintiff has admitted the fact asserted in statement ¶ 41,

obviating any need for a "further response." Moreover, plaintiff's "further response" has

no bearing on the truth of the facts asserted in statement ¶ 41 and accordingly should be

disregarded.

**42.    The Plan had a written investment policy. (Ex. 3, E. Julo Dep. at 96.)**

*Plaintiffs' Response: Admitted.*

**43.    MassMutual had no input into the Plan's investment policy. (Ex. 3, E. Julo Dep. at 96-97; Ex. 7, R. Julo Dep. at 31.)**

*Plaintiffs' Response: Admitted. By way of further response, although*

*MassMutual personnel did not participate in planning with respect to the GSI Plan's*

*investment policy, its final authority (and macro and micro level control) over the overall*

*investment options and composition of the Limited Menu had a direct effect on limiting*

*the possible scope and ranges of the GSI Plan's investment policy. (Assise Decl. Ex. 23,*

*at 40 (§ 5.22).)*

32

**MassMutual's Reply:** Plaintiff has admitted the statements in statement ¶ 43,

obviating any need for a "further response." Moreover, plaintiff's "further response" has

no bearing on the truth of the statements asserted in statement ¶ 43 and accordingly

should be disregarded.

**44.     MassMutual provided information to the Plan about the expense ratio of
each of the mutual funds that were contained on the Plan Menu.  (Ex. 3, E. Julo Dep. at 95.)**

*Plaintiffs' Response: Admitted.*

**45.     MassMutual disclosed to Earl Julo in writing that it was receiving revenue
sharing payments from mutual funds.  (*Id.* at 133.)**

*Plaintiffs' Response: Denied. By way of further response, MassMutual did not*

*disclose to Earl Julo in writing or otherwise that the RSPs were for access and unrelated*

*to any services it may provide to the GSI Plan or any mutual funds.  (E. Julo Dep. at*

*12:24-14:20; 127:2-127:6; Assise Decl. at Ex. 17 (Wietsma Decl. Ex. A at*

*MASSMUT0000445); Wietsma 11/14/12 Dep. at 10:16-13:6, 62:22-63:9 ; Assise Decl. at*

*Ex. 23, at 23-24, 40 (§§ 2.04, 5.22).)*

**MassMutual's Reply:** Plaintiff's denial of statement ¶ 45 is not supported by the

evidence. Mr. Julo testified that he received and reviewed a document "disclosing to the

Golden Star plan that MassMutual is receiving payments from mutual funds."  (Assise

Aff. Ex. 3, E. Julo Dep. at 133.)  Plaintiff's denial of statement ¶ 45 is based not on the

fact asserted in statement ¶ 45 – that the existence of revenue sharing was disclosed – but

but instead is based on a legal argument regarding the adequacy of the disclosures.  This

argument does not impact the truth of the facts contained in statement ¶ 45, which simply

states "MassMutual disclosed to Earl Julo in writing that it was receiving revenue sharing

payments form mutual funds."  Accordingly, plaintiff's denial, which is merely legal

33

argument about the import of this fact, should be disregarded, and the facts set forth in statement ¶ 45 should be deemed admitted.

**46.    The only mutual fund company that has ever increased the revenue sharing percentage paid to MassMutual after entering into a Participation Agreement was Fidelity Investments. (Ex. 1, Demetriou Dep. at 67.)**

*Plaintiffs' Response: Denied. The cited testimony does not support the assertion contained in this paragraph. By way of further response, Mr. Demetriou only testified that, since he has been the platform manager, to his personal knowledge, the only time a fund increased the revenue sharing amount that MassMutual receives was once (while never referencing a percentage of RSPs or basis points or explaining what he meant by amount), and there was no reference to the Participation Agreement in the question posed nor answer given. (Demetriou Dep. at 67:3-16.) Further, Mr. Wietsma testified that, over time, after entering into Participation Agreements with MassMutual, mutual funds increase the amount of revenue sharing they pay to MassMutual and that mutual funds do this because they view it as a way to become more competitive in the eyes of a record keeper such as MassMutual, vis-a-vis other mutual funds on the platform. (Wietsma 11/14/12 Dep. at 19:20-21:6.)*

**MassMutual's Reply:** Plaintiff's contention that the cited material does not support the fact asserted is meritless, and therefore this fact should be deemed admitted. As plaintiff acknowledges, Mr. Demetriou testified that during his time as investment platform manager (which has been since 2006, *see* Tang Decl., Ex. C at 17:12-21), only one fund has ever increased the revenue sharing amount that MassMutual receives. Mr. Wietsma's testimony is not to the contrary. Plaintiff's speculation that some other increase may have occurred at some point prior to the time Mr. Demetriou became

34

investment platform manager is not evidence, and in any event, is not a material fact

since the period at issue begins in October 2005. Thus, the facts set forth in statement ¶

46 should be deemed admitted.

The remainder of plaintiff's denial has nothing to do with the truth of the

statement that Fidelity was the only mutual fund company that has ever increased the

revenue sharing percentage paid to MassMutual after entering into a Participation

Agreement and accordingly is improper, irrelevant, and should be stricken and

disregarded.

**47.     A list of the investment options and underlying mutual funds that the Plan offered to its participants from 1999 to August 2011 is attached as Exhibit 22.  This listing shows that the Plan never offered any Fidelity mutual funds on its Plan Menu.  (Ex. 22, MASSMUT0295967-70.)**

*Plaintiffs' Response: Admitted.*

**48.     From October 2005 to August 2011, the Plan Menu changed on three occasions.  (Exs. 4-6, E. Julo Dep. Exs. 2, 11, 12.)**

*Plaintiffs' Response: Admitted.*

**49.     On all three occasions in which the Plan Menu changed from October 2005 to August 2011, the Plan administrators, Earl and Ray Julo, or someone acting at their request, directed MassMutual to make changes to the Plan Menu.  (Exs. 4-6, E. Julo Dep. Exs. 2, 11, 12; Ex. 3, E. Julo Dep. at 52.)**

*Plaintiffs' Response: Admitted.  By way of further response, MassMutual*

*retained the discretionary authority at all times to change the investments of the GSI Plan*

*without notice to the Plan.  As GSI's GAC with MassMutual makes crystal clear:*

*"MassMutual has exclusive and absolute ownership and control of the assets in the*

*Separate Investment Accounts....[and] [a]ll assets of MassMutual are invested by*

*MassMutual as it, in its sole discretion, may determine...." (Assise Decl. at Ex. 23 at 40,*

*(§ 5.22)(emphasis added).) Moreover, at all pertinent times, MassMutual explicitly*

35

*retained the right to add, delete or substitute investment options from the universe of*

*available investment options offered to the Plans, including the GSI Plan, and to add,*

*delete or substitute investment options from the actual and existing investments of the*

*Plans, including the GSI Plan.*

**MassMutual's Reply:** Plaintiff has admitted the fact asserted in statement ¶ 49,

obviating any need for a "further response." Moreover, plaintiff's "further response" has

no bearing on the truth of the statements asserted in statement ¶ 49 and accordingly

should be disregarded.

**50. With respect to the Plan Menu, the only time that MassMutual proposed a change to one of the investment options was in November 2004 (the "November 2004 Notice"). (Ex. 18, MASSMUT0025035; Ex. 3, E. Julo Dep. at 141-43.)**

*Plaintiffs' Response: Admitted.*

**51. In connection with the November 2004 Notice, MassMutual sent the Plan a letter notifying it of an intention to change the investment underlying four mutual funds from a non-proprietary mutual fund to a proprietary mutual fund and to change the name of the separate account, and the Notice was dated 45 days before the proposed change. The Notice included an election form that allowed the Plan to choose a different investment option rather than accepting the proposed changes. (Ex. 18, MASSMUT0025035.)**

*Plaintiffs' Response: Admitted in part and denied in part. By way of further*

*response, although the November 2004 Notice was mailed 45 days before the date of the*

*effective change, the November 2004 Notice only provided the GSI Plan with 25 days*

*from the date of mailing to object to the change that MassMutual, in its discretion, was*

*implementing and, if the GSI Plan failed to opt-out of this change within 25 days of the*

*date the November 2004 Notice was mailed, MassMutual implemented the change*

*without further notice. (See Assise Decl. at Ex. 18.) Moreover, although the November*

*2004 Notice provided the GSI Plan with the right to elect alternative investments within*

*the universe of the Limited Menu defined and maintained by MassMutual (as now*

36

*modified and altered by the deletions and substitutions reflected in the November 2004 Notice), in specific contravention of Department of Labor guidance on the subject, the November 2004 Notice failed to provide the following: (a) a fulsome disclosure of the amount and nature of the RSPs, including the specific services provided to mutual funds in return for the RSPs, and detailed information regarding any changes in the RSPs or other compensation earned by MassMutual as a result of the change that MassMutual was implementing (indeed, the November 2004 Notice contained no such information); (b) 60 days notice of any proposed change and the opportunity to terminate the GAC without penalty; (c) an explanation that the GSI Plan had the right to reject the change or terminate the GAC; and (d) an explanation that, if the Plan rejected a proposed deletion or substitution, MassMutual was not authorized to make any change and the Plan would be provided with an additional 60 days to identify another service provider, thereby providing each of the Plans with at least 120 days to reject any proposed deletion or substitution. (Id.)*

**MassMutual's Reply:** Plaintiff's denial is improper, as it does not dispute any of the facts asserted in statement ¶ 51, and accordingly the fact set forth in statement ¶ 51 should be deemed admitted. Instead of contesting the facts contained in statement ¶ 51, plaintiff alleges a host of separate facts that purport to argue the import of the facts contained in statement ¶ 51. This is improper. Under Local Rule 56.1, an opposition to a statement of material facts should contain only "a concise statement of the material facts of record as to which the moving party contends that there is no genuine issue to be tried." Because plaintiff's response offers <u>additional</u> facts and argument about how those

37

facts should be construed, rather than disputing the truth of the fact asserted by

MassMutual, it should be disregarded.

**52.    In the November 2004 Notice, MassMutual gave the Plan an opportunity to either approve the change or direct its assets into different investment options. (Ex. 19, MASSMUT0025039.)**

*Plaintiffs' Response: Admitted in part and denied in part. It is admitted that the*

*November 2004 Notice provided the GSI Plan with the opportunity to direct assets into*

*different investment options (subject to the limitations imposed by the deletions and*

*substitutions reflected in the November 2004 Notice), but it is specifically denied that the*

*November 2004 provided the GSI Plan with "an opportunity to ... approve the change...."*

*(See Assise Decl. at Ex. 18.) Indeed, the November 2004 Notice affirmatively states:*

*"[w]e are writing to let you know about some changes we will make to four investment*

*options available to MassMutual retirement plans." (Id.) (emphasis added.) Nothing in*

*the November 2004 Notice seeks approval of the change that MassMutual initiated and*

*implemented of its own accord.*

**MassMutual's Reply:** Plaintiff's only dispute regarding statement ¶ 52 concerns

whether plaintiff was given "an opportunity to... approve the changes." Its denial is

plainly contrary to the record. Assise Affidavit exhibit 18 advises the GSI Plan that if it

approves the change it "do[es] not need to take any action," which plainly gave the GSI

Plan the opportunity to approve the changes.

**53.    When a mutual fund pays a dividend, the dividend is reinvested in shares of the same mutual fund from which the dividend is paid. (Ex. 11, Wietsma Dep. (10/1/13) at 48-49.)**

*Plaintiffs' Response: Denied. The statement contained in this paragraph is*

*factually incorrect, as mutual fund dividends are not reinvested but, rather, are issued in*

*cash and, if reinvestment in mutual fund shares occurs, that requires the affirmative act and an investment decision to use the cash to repurchase additional mutual fund shares. (Wietmsa 10/1/13 Dep. at 49:1-22.)*

**MassMutual's Reply:** Plaintiff's response does not address the facts contained in statement ¶ 53, and accordingly the facts set forth in statement ¶ 53 should be deemed admitted. Mr. Wietsma testified that under the terms of the Separate Accounts, dividends were "reinvested into the mutual fund," precisely what statement ¶ 53 asserts. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 48.) Plaintiff's only denial appears to focus on whether dividends paid in cash were automatically reinvested or whether they required "an affirmative act and an investment decision." As Mr. Wietsma testified, reinvestment was required by the terms of the separate investment accounts, no independent decision was made. The deposition testimony plaintiff cites is not to the contrary.

**54. Earl Julo testified that reinvesting dividends in the same mutual fund made sense to him because he did not want Plan participants getting a "little check every time there was a dividend paid" and because 401(k) participants generally cannot take a distribution in cash. (Ex. 3, E. Julo Dep. at 158-60.)**

*Plaintiffs' Response: Denied. Earl Julo did not testify that he did not want Plan participants getting a check every time there was a dividend paid but, rather, he testified that "I can't -- I can't think that we'd get a little -- little check every time there was a dividend paid." (E. Julo Dep. at 158:24-159:2.) By way of further response, Mr. Julo was not questioned about and did not address other available means to invest or direct dividends into qualified instruments or other accounts.*

**MassMutual's Reply:** Plaintiff's denial is improper as it does not contain any evidence that contradicts the facts contained in statement ¶ 54. Far from it, plaintiff's "denial" acknowledges that Mr. Julo gave the quoted testimony attributed to him.

39

Plaintiff's statement that "Mr. Julo was not questioned about and did not address other available means to invest or direct dividends into qualified instruments or other accounts" has no bearing on the truth of the facts asserted in statement ¶ 54 and therefore the facts in statement ¶ 54 should be deemed admitted.

**55. In the group annuity contract, GSI authorized MassMutual to "withdraw a separate investment account management fee from each Separate Investment Account." (Ex. 23, Group Annuity Contract at 25.)**

*Plaintiffs' Response: Admitted. By way of further response, the GAC provides MassMutual with the discretion to change the SIA Management Fee, as well as other components of its compensation, at any time. (See Assise Decl. at Ex. 23, at 28, 40 (§§ 2.04 C (xii); 5.22).)*

**MassMutual's Reply:** Plaintiff has admitted the statements in statement ¶ 55, obviating any need for a "further response." Moreover, plaintiff's "further response" has no bearing on the truth of the statements asserted in statement ¶ 55 and accordingly should be disregarded.

**56. MassMutual has added a separate investment account ("SIA") management fee to some, but not all, of its separate accounts. (Ex. 1, Demetriou Dep. at 69-70.)**

*Plaintiffs' Response: Denied. The cited deposition testimony does not support Defendant's assertion in this paragraph. By way of further response, Mr. Demetriou disclaimed any knowledge as to what an SIA Management Fee is or how it functions. (Demetriou Dep. at 60:17-61:3.) Moreover, the cited testimony of Mr. Demetriou relates to "wrap fees," which Eric Wietsma unequivocally testified were not SIA Management Fees. (Wietsma 10/1/13 Dep. at 99:11-18.)*

**MassMutual's Reply:** Plaintiff's response does not contradict the facts set forth in statement ¶ 56. In the testimony cited in support of statement ¶56, Mr. Demeteriou

40

testified that (a) some separate accounts' only investment is a single mutual fund, (b) for some of those separate accounts, MassMutual adds a wrap fee, and (c) that those wrap fees have never been changed. (Assise Aff. Ex. 1, Demetriou Dep. at 69-70.) The fact that Mr. Demetriou did not know that the group annuity contract refers to those wrap fees as separate investment account management fees does not change the fact that those fees have never been changed. (*Id.*) In the testimony plaintiff cites from Eric Wietsma, he did not testify that wrap fees and separate investment account management fees are different, only that "the way I think about them is that they are different," but that "mechanically they work the same way." (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 98:15-99:18.) And like Mr. Demetriou, Mr. Wietsma did not know if the group annuity contract referred to the wrap fees as separate investment account management fees, but that does not change the fact that the fee have never been changed. (*Id.* at 98:22-99:4.) Plaintiff points to no evidence suggesting that the separate investment account management fees have ever been changed.

**57. Attached as Exhibit 22 is a list of the separate accounts offered by MassMutual to retirement plans. The column entitled "Wrapped Ind" indicates whether the separate account includes a separate investment account management fee (the letter Y means that there is such a fee). The listing shows that, for any separate account that has a separate investment account management fee, there is an identical separate account that does not have the charge. (Ex, 21, MASSMUT0179903; Ex. 11, Wietsma Dep. (10/1/13) at 88-89, 98-99.)**

*Plaintiffs' Response: Denied. The cited documents list "wrap fees," which MassMutual's witnesses have testified are different from SIA Management Fees. (Id.) Moreover, the cited testimony of Mr. Wietsma relates to "wrap fees," which he concedes are different from SIA Management Fees. (Id.)*

41

**MassMutual's Reply:** As explained in MassMutual's reply to statement ¶ 56, the wrap fees discussed in this statement are referred to in the group annuity contract as separate investment account management fees, so the facts in this statement ¶ 57 should be deemed admitted.

58. **The SIA management fee has never been altered for any separate accounts that have such a charge, including the separate accounts in which the Plan invested. (Ex. 1, Demetriou Dep. at 70-71; Ex. 12, Wilson Dep. at 33-34.)**

*Plaintiffs' Response: Denied. The cited testimony addresses "wrap fees," which MassMutual states are different from SIA Management Fees.*

**MassMutual's Reply:** Plaintiff's denial is improper as Local Rule 56.1 requires that for "material facts of record as to which it is contended that there exists a genuine issue" the party contending a factual dispute exists must include "page references to affidavits, depositions and other documentation." Because plaintiff has not done so, the facts in statement ¶ 58 should be deemed admitted. To the extent plaintiff meant to incorporate its response to statement ¶ 57, MassMutual incorporates its reply to statement ¶ 57 cited above.

59. **Some plans that contract with MassMutual make use of an account called a Plan Expense Reimbursement Account ("PERA"). (Ex. 15, Miles Decl. ¶ 8.)**

*Plaintiffs' Response: Admitted. It is admitted that certain retirement plans, which are not included in the putative class, maintain Plan Expense Reimbursement Accounts ("PERAs") that are funded with RSPs, which MassMutual credits to the benefit of those retirement plans -- but not the Plans or the GSI Plan. By way of further response, MassMutual does not disclose to the Plans that PERAs are available and never has disclosed to the GSI Plan that a PERA is or could be available. (Miles 11/13/12 Dep. at 58:3-12; 60:22-61:9; Orzell 11/13/12 Dep. at 38:10-17.) PERAs are used only*

*for a fraction of MassMutual's customers (Miles 11/13/12 Dep. at 59:8-62:1) (less than*
*800 of the 6700 plans), generally by the larger customers (Miles 11/13/12 Dep. at 62:24-*
*64:3), and the option to use PERA is not disclosed to customers and must be raised by*
*individual customers to result in a PERA account being implemented. (Miles 11/13/12*
*Dep. at 106:10-107:11.)*

**MassMutual's Reply:** Plaintiff has admitted the statements in statement ¶ 59,

obviating any need for its additional response. Moreover, plaintiff's "further response"

has no bearing on the truth of the statements asserted in statement ¶ 59, is improper

argument, and should be stricken disregarded.

**60.    Plans that have PERAs generally use them as a means to pay qualified plan
expenses, such as for the services of attorneys and accounts. (*Id.*; Ex. 8, Miles Dep. at 57.)**

   *Plaintiffs' Response: Admitted.*

**61.    The Plan did not have a PERA at any time. (Dkt. 51 at 24.)**

   *Plaintiffs' Response: Admitted.*

## DEFENDANT'S RESPONSE TO PLAINTIFF'S COUNTER-STATEMENT AND STATEMENT OF ADDITIONAL FACTS

**62.     MassMutual manages and serves as the owner and legal title holder of the retirement assets in the Separate Accounts, including the GSI Plan's retirement assets. (Assise Decl. Ex. 23, at 12 (§ 1.12), 40 (§ 5.22); Wietsma 10/1/13 Dep. at 15:5-16.)**

**MassMutual's Response:** Denied. MassMutual denies that it manages or serves

as the owner and legal title holder of the retirement plan assets in the separate accounts.

Plan sponsors and participants purchase units in MassMutual's separate accounts, which

in turn purchase shares in the mutual funds. (Assise Aff. Ex. 23, at 9 (§ 1.13); Tang Decl.

Ex. W, Wietsma Dep. (10/1/13) at 15:5-16.) Plan participants own assets in the separate

accounts and determine how their assets are invested, and MassMutual follows plan

participants' investment decisions. (Tang Decl. Ex. W, Wietsma Dep. (10/1/13) at at 11,

42.) MassMutual further states that plaintiff's citations to record evidence do not support

the contention in ¶ 62. In the deposition testimony cited above, Mr. Wietsma testified as

to MassMutual's legal ownership of the separate accounts, not MassMutual's ownership

or control over retirement plan assets.

**63.     The documents that define the relationship between MassMutual and the Plans, including the GSI Plan, are the Group Annuity Contracts ("GACs" or "Group Contracts"). (Miles 11/13/12 Dep. at 11:4-11:11, 15:14-16:5, 37:11-37:18, 72:13-72:22.)**

**MassMutual's Response:** Admitted.

**64.     Pursuant to the GACs, MassMutual provides investment options to the GSI Plan and the other Plans. (Miles 11/13/12 Dep. at 21:14-25:3 (explaining how investments in mutual funds are offered to 401k plans through the Group Contracts and other means).)**

**MassMutual's Response:** Admitted.

**65.     Pursuant to the terms of the GACs, the Plans' retirement assets are placed in, among other things, "separate investment accounts" ("Separate Accounts") created by MassMutual for the purpose of investing in mutual funds, which (i) MassMutual owns along with all of the retirement assets contained in those accounts (and for which MassMutual indisputably functions as a fiduciary under applicable law), (ii) are created under Mass. Gen. Law. 175 §§ 132F-H, (iii) are not charged with the liabilities of**

44

MassMutual to the extent of the reserves and anticipated contract liabilities of those
accounts, but otherwise are subject to the claims of creditors of MassMutual, (iv) buy and
hold the shares of the mutual funds in which the Plans' participants choose to invest, and
(v) are utilized by MassMutual as the tool to negotiate revenue sharing or Participation
Agreements with the mutual funds so that MassMutual can earn additional income that
bears no relationship to the services that it provides to the Plans and/or the mutual funds.
(Complaint at ¶ 27; Answer at ¶ 27; *see also* Miles 11/13/12 Dep. 27:5-27:16, 46:3-46:12
(explaining that all 401 plan investments in mutual funds are held in Separate Accounts
directly tied to different mutual funds); Wietsma 11/14/12 Dep. 56:12-19 (confirming that
MassMutual has never calculated the "value" of the services it ostensibly performs for the
mutual funds through the Participation Agreements), 62:22-63:9 (confirming that
MassMutual performs the same services for different mutual funds regardless of amount of
RSPs paid); 72:24-73:22 (confirming that MassMutual owns the Separate Accounts), 74:4-
16 (confirming that MassMutual is a fiduciary of the Separate Accounts because of the plan
assets within them), 75:3-19 (explaining that the Participation Agreements allows
MassMutual to meet the investment objective of each Separate Account), 76:6-24
(confirming that MassMutual only receives RSPs on the basis of the plan assets delivered
through the Separate Accounts), 122:13-124:11 (confirming that MassMutual buys and
holds mutual fund shares attributable to individual participants in an omnibus fashion);
Demetriou Dep. 30:15-31:13 (testifying the MassMutual performs same services regardless
of amount of RSPs paid); Assise Decl. Ex. 23, at 12 (§ 1.12); 40 (§ 5.22).)

           **MassMutual's Response:** Admitted in part. MassMutual admits that, pursuant

to the group annuity contracts, the plan assets are placed in MassMutual's separate

accounts, which are created under Mass. Gen. Law. 175 §§ 132F-H and are beyond the

reach of MassMutual's creditors. MassMutual denies the rest of the plaintiff's contention

above.

           With respect to subsection (i), MassMutual denies that it owns plan assets in the

separate accounts and acts as a fiduciary under applicable law. MassMutual offers a

menu of investment options (the "Overall Menu") to retirement plans, from which plan

sponsors select a smaller menu (the "Plan Menu"). (Assise Aff. Ex. 11, Wietsma Dep.

(10/1/13) at 24-25.) The investment options on the Overall Menu mainly consist of

MassMutual's separate accounts. (*Id.* at 24, 85.) Plan sponsors offer the Plan Menu to

plan participants, and plan participants decide how their retirement monies will be

45

allocated among the Plan Menu. (Assise Aff. Ex. 2, Harrison Dep. at 33; Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42.) MassMutual has no input on a plan's selection of the Plan Menu or the plan participants' investment decisions. (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 90-91.) MassMutual does not have any ownership or control over plan assets in the separate accounts, including GSI Plan assets. (Tang Decl. Ex. W, Wietsma Dep. (10/1/13) at 11, 42.) MassMutual further notes that its fiduciary status is the legal conclusion, not a statement of fact.

With respect to subsection (v), MassMutual denies that it uses the separate accounts to negotiate revenue sharing or the Participation Agreements with the mutual funds. Revenue sharing agreements are put in place before any of the plan assets are invested in a separate account. (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10-11; Assise Aff. Ex. 1, Demetriou Dep. at 21.) Therefore, it is impossible for MassMutual to use plan assets in the separate account to negotiate revenue sharing agreements when it enters into the Participation Agreement with mutual fund firms.

With respect to subsection (v), MassMutual also denies that revenue sharing fees are unrelated to the services that MassMutual provides to the retirement plans or the mutual funds. (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10-11; Assise Aff. Ex. 1, Demetriou Dep. at 21.) MassMutual receives revenue sharing for providing services that would otherwise have to be performed by mutual fund firms, such as recordkeeping and participant communications. (Assise Aff. Ex. 10, Wiestma Dep. (11/14/12) at 11; Assise Aff. Ex. 8, Miles Dep. at 55-56.)

By way of further response, MassMutual states that plaintiff's statement ¶ 65 contains multiple contentions followed by multiple citations, which are not properly tied

46

to any specific factual allegation. As such, statement ¶ 65 fails to comply with L.R. 56.1

and should be stricken or disregarded. Moreover, plaintiff's citations to record evidence

do not support statements in ¶ 65. Nothing in the deposition testimony of Messrs.

Wietsma or Demetrious supports plaintiff's contention that MassMutual's services are

unrelated to revenue sharing fees or that MassMutual acts as a fiduciary with respect to

plan assets.

**66.      The Plans and their participants do not invest directly in the mutual funds, but invest in the Separate Accounts, which are established and owned by MassMutual. (Complaint at ¶ 28; Answer at ¶ 28; *see also* Wietsma 11/14/12 Dep. at 90:3-91:20 (describing MassMutual's "Smart Architecture" platform in which MassMutual offers its own mutual funds and other companies' mutual funds as investment options as part of its retirement products).)**

   **MassMutual's Response:**  Admitted.

**67.      The Separate Accounts are established, administered, owned and managed by MassMutual and the Separate Accounts' assets are segregated from the general assets of MassMutual. (Complaint at ¶ 29; Answer at ¶ 29; Miles 11/13/12 Dep. at 44:3-46:2 (MassMutual's policies and procedures with respect to the Separate Accounts are uniform in terms of the accounting, operations, management and administration of these Separate Accounts as to all of the Plans); Assise Decl. Ex. 23, at 40 (§ 5.22); Wietsma 11/14/12 Dep. 72:24-73:22 (confirming that MassMutual owns the Separate Accounts).)**

   **MassMutual's Response:**  Admitted.

**68.      The Separate Accounts permit MassMutual to pool the investments of the Plans to invest in mutual funds and similar investments. (Complaint at ¶ 32; Answer at ¶ 32; Miles 11/13/12 Dep. at 82:18-83:7 (confirming that MassMutual invests in mutual funds through an omnibus account and that MassMutual acts as a single shareholder *vis-a-vis* the mutual funds; Wietsma 11/14/12 Dep. 13:7-14:22 (explaining that MassMutual invests and executes its trades in an omnibus manner, meaning that, on behalf of each of its Separate Accounts, MassMutual aggregates each of the buys and sells for all of its participants and delivers one purchase and sale order each day to the mutual funds with which it maintains business relationships); Wietsma 10/1/13 Dep. 10:25-11:22); Assise Decl. Ex. 23, at 40 (§ 5.22), 41).)**

   **MassMutual's Response:**  MassMutual admits that the separate accounts invest

in mutual funds and other similar investments.  MassMutual denies that the separate

accounts permit MassMutual to "pool" the plan's investments.  Plan sponsors select

47

investment options for the plan and the plan participants determine how plan assets are

invested. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.) Accordingly,

MassMutual has no ability to "pool" the plan assets or determine how they are invested.

**69.     The Separate Accounts maintained by MassMutual are divided to
correspond to the mutual funds and other investment options available under the GACs
that MassMutual maintains with the Plans. (Complaint at ¶ 33; Answer at ¶ 33; Miles
11/13/12 Dep. at 40:14-41:14 (confirming that the Separate Accounts are divided to
correspond with mutual fund investments and the Plans and participant investments are
reflected in accumulation units); Wietsma 11/14/12 Dep. at 122:13-124:11 (same); Assise
Decl. Ex. 23, at 12 (§ 1.13), 23-24 (§ 2.04).)**

> **MassMutual's Response:** Admitted.

**70.     The Separate Accounts are divided into accumulation units (sometimes
referred to as "record units") that track the performance of shares of a selected mutual
fund investment with the price per accumulation unit calculated by dividing the total value
of the assets of the Separate Account by the number of units in the Separate Account.
(Complaint at ¶ 32; Answer at ¶ 32; Miles 11/13/12 Dep 40:10-41:14; Wietsma 11/4/12 Dep.
122:13-124:1; Assise Decl. Ex. 23 at 12 (§ 1.13).)**

> **MassMutual's Response:** Admitted.

**71.     MassMutual maintains ownership of, as well as authority and control over,
the Separate Accounts, the sub-accounts, and the accumulation units. (Complaint at ¶ 34;
Answer at ¶ 34; Miles 11/13/12 Dep. 40:10-41:14; Wietsma 10/1/13 Dep. 10:25-11:21; Assise
Decl. Ex. 23, at 12 (§ 1.12); 40 (§ 5.22).)**

> **MassMutual's Response:** Admitted in part. MassMutual admits that it
>
> maintains legal ownership of the separate accounts. MassMutual denies that it maintains
>
> ownership, authority, or control over the separate accounts, accumulation units, and
>
> subaccounts. Plan participants purchase and own the accumulation units in the separate
>
> accounts. (Assise Aff. Ex. 23 at 9 (§1.12).) Plan participants own assets in the separate
>
> accounts and provide directions about how their monies in the separate accounts are
>
> invested. (Assise Aff. Ex. 11, Wiestma Dep. (10/1/13) at 11, 42, 48.) MassMutual's
>
> separate accounts do not have subaccounts. (Tang Decl. Ex. V, Wietsma Dep. (11/14/12)
>
> at 122:17-18.)

48

72.     The accumulation units of the Plans and their participants, which are held by MassMutual, like the Separate Accounts and sub-accounts, constitute assets of the Plans. (Complaint at ¶ 35; Answer at ¶ 35; Miles 11/13/12 Dep. 40:10-41:14; Wietsma 10/1/13 Dep. 10:25-11:21; Assise Decl. Ex. 23, at 12 (§ 1.13), 23-24 (§ 2.04).)

        **MassMutual's Response:** Admitted.

73.     Based on the combined contributions to the sub-accounts made by all these Plans and their participants, MassMutual sells and purchases mutual fund shares to hold in the Separate Accounts (and receives RSPs/kickbacks in return for these purchases). (Complaint at ¶ 36; Answer at ¶ 36; Wietsma 10/1/13 Dep. 76:6-24, 122:13-124:11; Assise Decl. Ex. 23, at 23-24 (§ 2.04).)

        **MassMutual's Response:** Denied. MassMutual does not sell or purchase mutual

fund shares based on the combined contributions to the sub-accounts. Plan sponsors

select investment options from MassMutual's Overall Menu and offer a smaller menu

(the Plan Menu) to plan participants. Once a plan sponsor chooses the Plan Menu,

participants provide directions about how they want their monies to be invested among

the investment options. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.)

MassMutual merely follows the direction of plan participants in buying or selling mutual

fund shares. (Assise Aff. Ex. 2, Harrison Dep. at 33-34; Assise Aff. Ex. 11, Wiestma

Dep. (10/1/13) at 42, 48.) MassMutual further states that the evidence cited by plaintiff

does not support the contentions above and thus fails to comply with L.R. 56.1. The

contention that mutual fund firms share revenues in return for investing in mutual funds

is plaintiff's theory of the case, which is not supported by record evidence. As such, ¶ 73

should be stricken or disregarded.

74.     The GAC expressly grants MassMutual the authority to administer, control, and manage the Separate Accounts holding the GSI Plan assets:

> ... **MassMutual has exclusive and absolute
> ownership and control of the assets in the Separate
> Investment Accounts.... Only MassMutual will have
> any individual, legal, or equitable ownership of any**

> investments or assets of the Separate Investment
> Accounts....
>
> .... All assets of MassMutual are invested by
> MassMutual as it, in its sole discretion, may determine,
> subject to applicable laws and regulations including,
> but not limited to, the discontinuance of a Separate
> Investment Account. The assets of the Separate
> Investment Accounts may be invested, wholly or partly,
> in securities, including the shares of any investment
> company registered under the Investment Company Act
> of 1940. In exercise of its sole discretion, MassMutual
> may from time to time, hire an investment advisor
> registered under the Investment Advisors Act of 1940 to
> assist in the investment of assets.

(Assise Decl. Ex. 23, at 40 (§ 5.22); Miles 11/13/12 Dep. at 44:3-46:2.)

**MassMutual's Response:** Admitted in part. MassMutual admits that the group

annuity contract includes the cited paragraphs above. MassMutual denies that the group

annuity contract grants MassMutual the authority to administer, control, or manage the

GSI Plan assets. Under the group annuity contract, MassMutual's role is limited to

initially setting up the separate accounts and making sure that plan assets are invested

into the funds that participants have selected. (Assise Aff. Ex. 11, Wietsma Dep.

(10/1/13) at 42.) Plan participants purchase and own the accumulation units in the

separate account, which in turn invest in the underlying mutual funds. (Assise Aff. Ex.

23 at 9 (§1.12).) Plan participants provide directions about how their monies in the

separate accounts are invested, and MassMutual follows their directions. (Assise Aff. Ex.

11, Wiestma Dep. (10/1/13) at 42.)

**75.      MassMutual explicitly acknowledges its fiduciary status with respect to the Separate Accounts and the Plans' assets it invests through the Separate Accounts. (Miles 11/13/12 Dep. at 69:15-71:3.)**

**MassMutual's Response:** Denied. In the deposition testimony cited above, Mr.

Miles stated that "MassMutual acts as a fiduciary in a very limited capacity" to the extent

50

that MassMutual invests plan assets in a separate account according to the direction of

plan participants. (Tang Decl. Ex. R, Miles Dep. at 70:13-23.) By way of further

response, MassMutual states that nothing in the cited records shows that MassMutual

ever acted in a fiduciary capacity with respect to GSI Plan assets in the separate account.

**76.     MassMutual has the legal standing, control and authority to vote in any proxies put forth by the mutual funds that it holds shares of in the Separate Accounts. (Demetriou Dep. at 39:15-40:1.)**

**MassMutual's Response:**  Admitted in part. MassMutual admits that it votes in

proxies sent by the mutual fund companies. MassMutual denies that the cited record

supports the statement that MassMutual has the legal standing, control, and authority to

vote in any proxies put forth by the mutual funds.

**77.     MassMutual recognizes that it must exercise its authority and control over any proxy votes solely for the benefit of the plan participants and makes its own discretionary determination as to what is in the best interest of the plan participants when its proxy votes. (Demetriou Dep. at 40:3-43:3.)**

**MassMutual's Response:**  Denied. The three pages of cited testimony do not

address how MassMutual makes a discretionary determination as to what is in the best

interest of the plan participants when voting on a proxy. In the cited testimony, Mr.

Demetriou stated that MassMutual has a committee, which votes on the proxy sent by a

mutual fund company, with the best interest of the shareholder in mind (Assise Aff. Ex.

1, Demetriou Dep. at 40:3-4.) Mr. Demetriou further testified that after reviewing the

proxy, if it is not disadvantageous to shareholders, the committee decides to vote in favor

of the proxy. (*Id.* at 42.)

**78.     The GAC grants MassMutual the final discretionary authority to substitute, eliminate, and add funds to its Separate Accounts. (Assise Decl. Ex. 23, at 40 (§ 5.22); Miles 11/13/12 Dep. at 134:15-137:7; Wietsma 11/14/12 Dep. at 88:20-90:2; Demetriou Dep. at 74:3-19.)**

51

**MassMutual's Response:** Denied. The cited evidence does not support the statement that the group annuity contract grants MassMutual the "final discretionary authority" to change funds in the separate accounts. Neither the group annuity contract nor the cited deposition testimony states that MassMutual has the "final discretionary authority" to substitute, eliminate, and add funds to the separate accounts. MassMutual further states that, since October 2005, any change to the Plan Menu occurred at the direction of the GSI Plan administrators. (Assise Aff. Exs. 5-6, E. Julo Dep. Exs. 11, 12; Assise Aff. Ex. 7, R. Julo Dep. at 35-36.)

**79. The GAC also grants MassMutual the final discretionary authority to veto the GSI Plan from offering any investment that MassMutual deems "competing." (Assise Decl. Ex. 23, at 26 (§ 2.04(C)(vi); Stamborski Dep. at 23:16-24:14.)**

**MassMutual's Response:** Denied. The cited portion of the group annuity contract states that "[t]he Contractholder agrees not to offer an investment fund which MassMutual considers to be a competing fund, unless MassMutual gives its prior written consent." (Assise Aff. Ex. 23 at 20 (§ 2.04(C)(vi).) The cited deposition testimony does not support the contention that MassMutual has the final discretionary authority to veto the GSI Plan's selection of a competing fund. In the cited testimony, Mr. Stamborski stated that if "a plan sponsor decides that they want to add a competing fund, [] [MassMutual] would have restrictions on the system that wouldn't allow transfers to occur." (Tang Decl. Ex. U, Stamborski Dep. at 23:16-24:14.) By way of further response, MassMutual states that it has never vetoed or overridden the GSI Plan's selection of investment options. (Assise Aff. Exs. 3-7, E. Julo Dep. Exs. 2, 11, 12; E. Julo Dep. at 69-70, 74-75; R. Julo Dep. at 35-36.) Plaintiff fails to cite any record evidence in support of statement ¶ 79. As such, ¶ 79 should be stricken or disregarded.

52

**80.** In the event that MassMutual decides to exercise its discretionary authority to substitute, eliminate, or add funds to its Separate Accounts, the GAC does not require MassMutual to provide any notice or opportunity for the GSI Plan to reject such changes. (*See generally* Assise Decl. Ex. 23.)

> **MassMutual's Response:** Admitted in part. MassMutual admits that the group
>
> annuity contract does not require MassMutual to provide any notice relating to changes in
>
> the investment options in the separate accounts. MassMutual denies that it has any
>
> discretionary authority to substitute, eliminate, or add funds to the separate accounts
>
> under the group annuity contract. MassMutual makes changes to the Overall Menu only
>
> on a prospective basis. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 28.) By way of
>
> further response, MassMutual states that the only time MassMutual proposed a change to
>
> the GSI Plan Menu occurred in November 2004. At that time, MassMutual sent the GSI
>
> Plan a 45 days notice. The notice included an election form, which allowed the GSI Plan
>
> to accept or reject the proposed change. (Assise Aff. Ex. 18, MASSMUT0025035;
>
> Assise Aff. Ex. 3, E. Julo Dep. at 141-43.)

**81.** MassMutual admits in proposals to clients that it is "a fiduciary with respect to plan assets held in separate accounts under the group annuity contract to the extent that it is responsible for the prudent selection of the underlying mutual funds in which the separate accounts invest." (Wietsma 10/1/13 Dep. at 84:9-24 (initial misquotation corrected on record); Wietsma 10/1/13 Dep. Ex. 13.)

> **MassMutual's Response:** Admitted.

**82.** When MassMutual proposes to change an investment option on a plan menu, MassMutual does not disclose the difference in revenue-sharing rates it will be receiving as a result of the proposed change and surrender charges (meaning penalties) are sometimes applicable if a plan chooses to exit. (Assise Decl. at Ex. 18 (MASSMUT0025035); Miles 11/13/12 Dep. at 36:17-37:10.)

> **MassMutual's Response:** Denied. MassMutual is not aware of any situation
>
> where MassMutual's proposed change in the Plan Menu caused revenue sharing rates to
>
> change. Accordingly, there was no difference in revenue-sharing rates to be disclosed.

The only one time that MassMutual proposed a change to the Plan's investment option
was in November 2004. The November 2004 change did not change revenue sharing
rates. (Assise Aff. Ex. 18, MASSMUT 0025035.) Since the GSI Plan contracted with
MassMutual in 1999, there was no increase in revenue sharing rates with regard to the
GSI Plan assets. (Assise Aff. Ex. 1, Demetriou Dep. at 67.)

MassMutual denies that it does not disclose surrender charges. Surrender charges
are disclosed in the group annuity contract. (Assise Aff. Ex. 23 at 10 (§ 1.14).) In the
cited portions of deposition testimony, Mr. Miles stated that MassMutual reserves the
right to waive any surrender charges if plans choose not to accept the proposed change.
To the contrary of the contention above, Mr. Miles testified that he is not aware of any
instance where plans were subject to surrender charges because they chose not to elect
the change proposed by MassMutual. (Tang Decl. Ex. R, Miles Dep. (11/13/12) at
36:22-37:10.)

**83.    MassMutual has exercised its discretion and power to add and delete mutual
funds from its menu of available investment options for existing and prospective Plans.
(Wietsma 11/14/12 Dep. at 107:14-111:2; Demetriou 12:15-23.)**

**MassMutual's Response:**  Admitted in part. MassMutual admits that it adds and
deletes mutual funds from the Overall Menu. MassMutual assembles the Overall Menu
prior to contracting with any retirement plans. (Assise Aff. Ex. 11, Wietsma Dep.
(10/1/13) at 24, 28-29.)

MassMutual denies that it has ever exercised discretion in adding or deleting
mutual funds from the GSI Plan Menu. By way of further response, MassMutual states
that the cited deposition testimony does not support the contention above. In the cited
portions of deposition testimony, Mr. Wietsma stated that any changes to the Overall

54

Menu occurs prospectively. (Assise Aff. Ex. 11, Wiestma Dep. (10/1/13) at 28.) Mr.

Wietsma did not testify that MassMutual made any changes to a Plan Menu for existing

plans, after plans contracted with MassMutual. To the contrary, Mr. Wietsma testified

that, with regard to plans that already have the Plan Menu, plan sponsors, not

MassMutual, make changes to the Plan Menu. (Tang Decl. Ex. V, Wietsma Dep.

(11/14/12) at 110:21–111:2.)

**84. Mutual funds have been added and removed from the list of investment options available to the GSI Plan and, in recognition of that fact, there are at least 90 more funds on the overall menu than in 2006. (Demetriou Dep. at 12:15-23, 22:20-1.)**

**MassMutual's Response:** Denied. The cited testimony does not support the

statement ¶ 84. During the deposition, Mr. Demetriou testified that currently there are

more funds available on the Overall Menu than in 2006. (Tang Decl. Ex. C, Demetriou

Dep. at 22:20-23:1.) MassMutual's selection of mutual funds on the Overall Menu is not

related to a list of investment options on the GSI Plan Menu. When the GSI Plan wanted

to add more mutual funds on its Plan Menu after initial selection, MassMutual always

followed the GSI Plan's direction to do so. (Assise Aff. Exs. 3-7, E. Julo Dep. Exs. 2, 11,

12; E. Julo Dep. at 69-70, 74-75; Ex. 7, R. Julo Dep. at 35-36.)

**85. MassMutual has explicitly admitted that it is a fiduciary with respect to the management of the Separate Accounts, including the creation, monitoring and maintenance of the Limited Menu of investments it makes available to the Plans:**

> *Mass Mutual acknowledges to plan sponsors that it is a fiduciary with respect to the management of assets invested in separate accounts held in group annuity contracts issued to retirement plans covered by ERISA. Mass Mutual fulfills its fiduciary obligation through the prudent selection and monitoring of the mutual funds and other options in which each separate account invests.* As part of that process Mass Mutual performs thorough and ongoing due diligence of each investment option and advisor. Plan sponsors and other fiduciaries are therefore relieved of their obligation to perform those functions.

(Wietsma 10/1/13 Dep. Ex. 6 (emphasis added); Wietsma 10/1/13 Dep. at 41:6-42:22.)
MassMutual also explicitly acknowledges fiduciary status with respect to MassMutual
proprietary funds for which it serves as an investment adviser:

> *MassMutual as Adviser to the MassMutual Select and Premier
> funds is a fiduciary. Fiduciary obligations are comprehensive
> and substantial.* They are not typically partitioned into segments
> or sections.... Again, though, *being a fiduciary is an all or
> nothing responsibility and we are that for the MM funds.*

(Eldredge Dep. Ex. 1 (emphasis added); Eldredge Dep. at 19:17-22:4.)

**MassMutual's Response:** Admitted in part. MassMutual admits that under the

group annuity contract, it is responsible for selecting and monitoring mutual funds that

are available on the Overall Menu. By way of further response, MassMutual admits that

it makes sure that plan participants' monies are invested according to plan participants'

investment directions. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42.) MassMutual

denies that this limited responsibility can establish its fiduciary status with respect to the

GSI Plan assets or revenue sharing. As Mr. Wietsma explained in the cited deposition

testimony above, MassMutual's role with respect to the Overall Menu is limited to

"initially build[ing] the separate account" and perform "due diligence on the fund that

gets created there." (*Id.*)

MassMutual also admits that for certain proprietary funds (i.e. mutual funds

owned by MassMutual), it acts as an advisor. In the cited deposition testimony above,

Mr. Eldredge stated that "[i]n a narrow situation of relating to the Select and Premier

funds," MassMutual is a fiduciary. (Tang Decl. Ex. F, Eldredge Dep. at 21.)

**86.     MassMutual calls its revenue sharing agreements with mutual funds
"Participation Agreements," "Administrative Services Agreements," or "Mutual Fund
Agreements," and uses those terms synonymously. (Wietsma 11/14/12 Dep. at 10:16-11:7,
28:4-28:14; Miles 11/13/12 Dep. at 111:10-111:13.)**

**MassMutual's Response:** Denied. The cited deposition pages establish that a participation agreement, also known as administrative services agreement, or mutual fund agreement, provides that MassMutual performs many of the functions that would be otherwise provided by the mutual fund company and set revenue sharing fees for these services. During the deposition, Mr. Wietsma testified that a Participation Agreement documents the relationship between MassMutual and a mutual fund provider, which includes not only revenue sharing agreements but also the type of services that MassMutual provides. (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10:21-11:1.)

**87. MassMutual uses the common term "Participation Agreements" with respect to the retirement Plans funded through GACs, which are the subject of this lawsuit. (Wietsma 11/14/12 Dep. 10:20-13:6.)**

**MassMutual's Response:** Admitted in part. MassMutual admits that the terms of its group annuity contracts and participation agreements govern its ability to offer mutual funds on the Overall Menu, from which plan sponsors choose investment options for the plan participants. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.) The remaining facts asserted in statement ¶ 87 are not supported by record evidence. As such, it should be stricken or disregarded.

**88. MassMutual makes "proactive" inquiries if it discovers that other service providers are receiving more payments and never refuses increases (and this policy applies to all of the Plans). (Wietsma 11/14/12 Dep. at 29:22-30:15.)**

**MassMutual's Response:** Denied. The cited testimony does not support the contention that MassMutual makes a proactive inquiry about other service providers' revenue sharing payments. Neither does it support the contention that MassMutual never refuses an increase in revenue sharing payments. The cited testimony actually states:

> Q.  [D]uring your seven years at MassMutual, has there ever been a circumstance where a mutual fund has

57

> offered an amount of revenue sharing to
> MassMutual and MassMutual has responded that
> the amount is too much?

A.    I'm not aware of any situation.

Q.    And if MassMutual becomes aware that a
competitor is receiving a greater amount of revenue
sharing with respect to the same product, then
MassMutual makes inquiries in an attempt to obtain
a comparable amount of revenue sharing. Is that
correct?

A.    At the end of the day, we do not view the level of
revenue sharing as a basis of competition between
us and other recordkeepers. So when we make
funds available, our expectation is that it's all the
same. So and we – and then we endeavor to
understand why differences exist.

(Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 29:22-30:15.)

**89.    At times, mutual funds unilaterally increase the amount of RSPs to
MassMutual in order to be more competitive *vis-a-vis* other fund families, and to pay that
increased revenue sharing amount, the mutual fund may increase the expense ratio
charged to MassMutual's customers. (Wietsma 11/14/12 Dep. at 20:2-21:6, 44:5-44:15.)**

**MassMutual's Response:** Denied. Plaintiff's citations do not support the

contention above. The cited testimony states that "there could be a whole host of reasons

for why a firm changes the amount of revenue." (Tang Decl. Ex. V, Wietsma Dep.

(11/14/12) at 20:9-11.) By way of further response, MassMutual states that since

plaintiff contracted with MassMutual in 1999, revenue sharing payment has not increased

for the GSI Plan assets. (Assise Aff. Ex. 1, Demetriou Dep. at 67; Assise Aff. Ex. 22 at

MASSMUT0295967-70.)

**90.    MassMutual understands that the RSPs, which it calls "service fees" even
though the payments bear absolutely no relationship to services, are paid from the expense
ratios charged to MassMutual's customers. (Wietsma 11/14/12 Dep. at 59:19-63:9.)**

**MassMutual's Response:** Denied. The cited testimony does not support the

statement made. Nowhere in the cited testimony did Mr. Wietsma testify that revenue

sharing payments are made from the expense ratios charged to MassMutual's customers.

MassMutual also denies that the revenue sharing payments "bear absolutely no

relationship to services." The cited testimony states the exact opposite:

> Q. And is it fair to say that the services, if any, that
> MassMutual provides to mutual funds are unrelated
> to the amount of revenue sharing payments it
> receives from mutual funds?
>
> A. I don't think that's an accurate statement. When the
> participation agreement is put in place, there's a
> whole host of services that get performed. So those
> services are being provided to the fund company
> that they otherwise would do themselves.

(Tang Decl. Ex. V, Wietsma Dep. (11/13/12) at 59:19-60:3.)

**91. The services that MassMutual performs for the mutual funds are uniform in nature. (*Id.*)**

**MassMutual's Response:** Denied. The cited testimony does not support the

contention above. Nowhere in the cited passage does the witness state or even suggest

that the services provided to mutual funds are uniform in nature.

**92. Although MassMutual states that it performs services for mutual funds in return for RSPs, MassMutual performs the same services for mutual funds regardless of whether a mutual fund agrees to pay RSPs or not. Indeed, if MassMutual wishes to operate a retirement business, it would be necessary for MassMutual to perform the same services it identifies as providing for mutual funds on behalf of its customers in any event. (Wietsma 11/14/12 Dep. 11:2-13:6.)**

**MassMutual's Response:** Denied. The cited passage does not support the

statement above.

**93. MassMutual exercises discretionary authority and control with respect to management and administration of the Plans and their assets held in the Separate Accounts by, among other things, electing to receive dividends from the mutual funds into**

59

the Separate Accounts in the form of additional mutual funds shares. (Wietsma 11/14/12 Dep. at 34:5-37:4.)

  **MassMutual's Response:** Admitted in part. MassMutual admits that it reinvests

mutual fund dividends in the same mutual fund from which they were paid, but denies the

rest of the statement. MassMutual denies that reinvesting mutual fund dividends

constitutes an exercise of discretionary authority or control with respect to management

and administration of the plans. Plans participants direct how their 401(k) monies should

be invested, including the reinvestment of dividends, and MassMutual has no power to

override plan participants' directions. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42,

48.)

  **94.**   **MassMutual does not consult with or alert the Plans of its options regarding the payment or reinvestment of dividends, despite the fact that the authority to make this election is contained in MassMutual's Participation Agreements. (Wietsma 11/14/12 Dep. at 37:5-38:20.)**

  **MassMutual's Response:** Denied. Nothing in the cited testimony supports the

statement above. In the cited portions of deposition, the witness explained that dividends

are reinvested in accordance with a plan participant's instructions. The GSI Plan's

former trustee, Earl Julo, also testified that reinvesting dividends in the same mutual fund

made sense to him because he did not want plan participants to receive "a little check

every time" a dividend was paid. (Assise Aff. Ex. 3, E. Julo Dep. at 158:21-159:2.)

  **95.**   **MassMutual holds, owns, administers, manages and controls the Separate Accounts, as well as their sub-accounts, and uses the Separate Accounts as a delivery mechanism to purchase and sell shares in the mutual funds. (Wietsma 11/14/12 Dep. at 72:24-74:16.)**

  **MassMutual's Response:** Admitted in part and denied in part. MassMutual

admits that it is the legal owner of the separate accounts. MassMutual denies that it uses

the separate accounts as a delivery mechanism to purchase and sell shares in the mutual

60

funds. Plan sponsors and participants determine how their monies in the separate

accounts are invested. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.) Similarly,

MassMutual had no input into the GSI Plan's selection of the Plan Menu or the Plan

participants' investment decisions. (Assise Aff. Ex. 3, E. Julo Dep. at 35, 43-44, 96-97;

Assise Aff. Ex. 7, R. Julo Dep. at 47, 50-51.)

**96.     In direct return for delivering these funds from the Separate Accounts to the
mutual funds, MassMutual receives the RSPs at issue. (Wietsma 11/14/12 Dep. at 74:17-
76:24 (MassMutual is paid RSPs in recognition of its status as the sole shareholder of the
mutual funds).)**

   **MassMutual's Response:** Denied. Plaintiff's statement ¶ 95 represents

plaintiff's legal theory of the case, but nothing in the cited passage supports the

contention that MassMutual uses the separate accounts to negotiate revenue sharing. The

cited testimony actually states that the mutual fund firms make revenue sharing payments

for a list of services outlined in the participation agreement. (Tang Decl. Ex. V, Wietsma

Dep. (11/14/12) at 75:20-76:5.)

**97.     MassMutual is able to influence and control its own compensation derived
from the Separate Accounts by, among other things, negotiating the terms of the
Participation Agreements with the mutual funds, which generally make RSPs on the basis
of the assets invested by the Separate Accounts in their mutual funds. (Wietsma 11/14/12
Dep. at 14:23-16:9 (although Mr. Wietsma prefers not to use the term "negotiate," he
admits that MassMutual makes a "proactive inquiry" when aware that the amount of RSPs
are substandard).)**

   **MassMutual's Response:** Denied. Nothing in the cited testimony supports this

statement. In the cited pages, Mr. Wietsma testified that mutual funds generally tell

MassMutual how much they will agree to pay in revenue sharing, and there is no real

negotiation about revenue sharing. (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at

14:23-15:8.) Mr. Wietsma also testified that in rare occasions where MassMutual learned

that its competitors were getting higher amounts of revenue sharing, MassMutual might

inquire about the difference in revenue sharing. (*Id.* at 15:19-16:1.) For example, when

MassMutual learned that a competitor service provider was getting a higher revenue

sharing amount from American Funds, MassMutual inquired with American Funds to

understand the difference in revenue sharing payments. In the case of American Funds,

Mr. Wietsma testified that American Funds was making higher revenue sharing payments

to MassMutual's competitor because the competitor was providing additional services

that MassMutual did not provide. (*Id.* at 16:2-9.)

**98.     MassMutual also maintains complete discretion to substitute, eliminate and add funds within its Separate Accounts. (Assise Decl. at Ex. 23 at 40 (§ 5.22); Miles 11/13/12 Dep. at 134:15-137:7; Wietsma 11/14/12 Dep. at 88:20-90:2, 107:14-111:2 (MassMutual has exercised its discretion and power to add and delete mutual funds from its menu of available investment options for existing and prospective Plans); Miles 11/13/12 Dep. at 36:17-37:10 (admitting that, if a customer chooses to leave MassMutual because it has deleted one of its existing investment options, the Plan may be forced to pay a surrender charge to terminate its relationship with MassMutual).)**

> **MassMutual's Response:** Admitted in part and denied in part. MassMutual
>
> admits that it sometimes makes changes to the mutual funds offered within a separate
>
> account, but the only examples provided in the cited testimony are when MassMutual is
>
> compelled to do so, because the underlying mutual fund is closing or being merged out of
>
> existence. Nothing in the cited testimony supports the claim that MassMutual has
>
> complete discretion.

**99.     This allows MassMutual to control the menu of available mutual funds offered in its Separate Accounts and the discretion to change its fund menus and to not offer certain investment options to Plans based upon contract pricing and other considerations. (Wietsma 11/14/12 Dep. at 40:9-40:19, 43:17-44:4 (different share classes of mutual funds, as detailed in various Participation Agreements, that have different expense ratios and service fees, are available to MassMutual should MassMutual choose to use the share class); Wietsma 11/14/12 Dep. at 45:23-46:6 (MassMutual generally attempts to ensure that its Participation Agreements are applicable to all of the share classes of a**

mutual fund which it may wish to offer to its retirement customers, and then MassMutual chooses the applicable share classes based upon the product offering it designs for the Plans).)[4]

> **MassMutual's Response**: Denied. *See* Response to ¶ 98. MassMutual admits that it assembles the Overall Menu, but denies that it has the discretion to change the Plan Menu, or MassMutual has the ability to control the mutual fund selection on the Plan Menu. The Overall Menu is assembled before any plans select the Plan Menu. Plans select the Plan Menu and make any changes to the selection of investment options. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 25, 31, 33-34.)

> With respect to plaintiff's statement in footnote 4, MassMutual denies that it has the discretion to control or self-determine its own compensation under the group annuity contract. The group annuity contract governs MassMutual's compensation with respect to the separate accounts. The record evidence shows that the separate investment account management fee (the "SIA Management Fee") has never been altered after plans contracted with MassMutual. (Assise Aff. Ex. 1, Demetriou Dep. at 70-71; Assise Aff. Ex. 12, Wilson Dep. at 33:17-34:4.)

**100.    MassMutual reinvests cash dividends generated by GSI Plan assets without any input from GSI, the GSI Plan, or the GSI Plan participants. (Wilson Dep. at 27:5-25.)**

> **MassMutual's Response**: Denied. The cited testimony does not support the statement above. The cite testimony actually states as follows:

> > "[e]very participant declares how they want their money allocated. And in order to keep their monies allocated appropriately, the dividend reinvestment is actually to

---

[4] Under the GACs, MassMutual also retains and exercises the discretion and control to self-determine its own compensation under the Separate Accounts by withdrawing a "separate investment account management fee." (*See* Assise Decl. Ex. 23, at 28 (§ 2.04(c)(xii).)

comply with that wish. Because if we didn't reinvest the
dividends, we would actually take them out of line with
where they want us to invest their money."

(Tang Decl. Ex. AB, Wilson Dep. at 27:5-19.)

**101.    Under the GAC, MassMutual has the discretion to assess a "separate investment account management fee" which would be on "a daily rate which on an annual basis does not exceed 1.0% of the average daily Market Value of the applicable Separate Investment Account." (Assise Decl. Ex. 23, at 28 (§ 2.04(c)(xi)); Miles 11/13/12 Dep. at 42:11-43:5; Wietsma 10/1/13 Dep. at 17:4-25.)**

        **MassMutual's Response:**  Admitted that the statement quotes from a portion of

the group annuity contract.

**102.    The separate investment account management fee is determined, in part, by a mutual fund's management fee, *i.e.*, the expense ratio.  (Wietsma 10/1/13 Dep. at 16:3-17; Miles 11/13/12 Dep. at 42:11-5.)**

        **MassMutual's Response:**  Denied.  The cited testimony does not support the

contention that the SIA Management Fee is determined by a mutual fund's expense ratio.

In addition, nothing in the cited testimony equates management fee and expense ratio; the

management fee is only a portion of the expense ratio.

**103.    MassMutual's fee arrangements with the mutual fund families, which it calls Participation Agreements and which dictate the amount of the RSPs, are not fully disclosed to the Plans because MassMutual treats its Participation Agreements as highly confidential. (Wietsma 11/14/12 Dep. at 65:22-66:10.)**

        **MassMutual's Response:**  Denied.  The cited testimony does not support the

statements made.  In the cited testimony, the witness testified that while MassMutual

does not routinely disclose the participation agreements itself to plans, the plans receive

information in the Participation Agreements, including the revenue sharing arrangements.

In fact, the GSI Plan trustee, Earl Julo, also testified that he received information about

revenue sharing arrangements from MassMutual in writing.  (Assise Aff. Ex. 3, E. Julo

Dep. at 95, 133.)

**104.    MassMutual is paid and receives RSPs in recognition of its status as the sole shareholder of the mutual funds and in its capacity as the owner of the Separate Accounts. (Wietsma 11/14/12 Dep. at 45:9-45:22.)**

        **MassMutual's Response:** Denied. Nothing in the cited testimony supports the

statement made. The passage cited discusses different types of participation agreements,

and nothing else.

**105.    MassMutual's Separate Accounts are utilized by MassMutual as the tool to negotiate revenue sharing or Participation Agreements with the mutual funds so that MassMutual can earn additional income that bears no relationship to the services that it provides to the Plans and/or the mutual funds. (Miles 11/13/12 Dep. at 27:5-27:16, 46:3-46:12; Wietsma 11/14/12 Dep. at 74:17-76:24.)**

        **MassMutual's Response:** Denied. The cited deposition testimony does not

support the contention in ¶ 105. Nothing in the cited testimony indicates that

MassMutual uses separate accounts to negotiate revenue sharing or that revenue sharing

bears no relationship to the services that MassMutual provides to the plans or the mutual

funds. On the contrary, Mr. Wietsma testified that the participation agreement outlines a

list of services MassMutual provides, and its receipt of revenue sharing payments for the

services. (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 76:1-5.)

**106.    MassMutual has the right to invest in mutual fund share classes based upon either the financial and asset status of its Separate Accounts or on the financial and asset status of its customers, upon MassMutual's choice. (Wietsma 11/14/12 Dep. at 74:17-76:24.)**

        **MassMutual's Response:** Denied. Nothing in the cited testimony discusses

mutual fund share classes or the financial or asset status of the separate accounts. The

cited testimony also contradicts the statement's assertion that the separate accounts are

somehow involved in the participation agreements. The cited testimony actually states:

> Q.    And when MassMutual enters into participation
> agreements, it is entering into the participation
> agreement on behalf of the separate account. Is that
> correct?

A. [W]hen we're putting a participation agreement in place, we are establishing a relationship between MassMutual and a mutual fund company.

(Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 74:17-75:2.)

**107.** **MassMutual has the right to invest in mutual fund share classes based upon either the financial and asset status of its Separate Accounts or on the financial and asset status of its customers, upon MassMutual's choice. (Wietsma 11/14/12 Dep. at 45:9-45:22.)**

> **MassMutual's Response:** Denied. This is an exact duplicate of ¶ 106, but citing
>
> different testimony. The cited testimony does not support this statement either. The cited
>
> testimony concerns minimum investment amounts, and whether it is the plan or the
>
> separate account that has to qualify for the minimum. Nothing in the cited passage
>
> discusses share classes.

**108.** **MassMutual consistently monitors the rate of revenue-sharing payments from the existing Participation Agreements and readily enters into new terms for increased rates of revenue-sharing payments when possible. (Demitriou Dep. at 24:13-26:1; Wietsma 11/14/12 Dep. at 14:23-16:9.) MassMutual acknowledges that "every time" it learns that revenue sharing is being paid at a greater amount by a fund for the same product, that triggers an inquiry on MassMutual's part. (Demitriou Dep. at 24:24-25:2.) By way of example, when MassMutual determined that it was being paid 25 less basis points in RSPs by a mutual fund than was potentially available through another share class being offered by the fund, it immediately made an inquiry of the fund. (Demitriou Dep. at 50:11-17; Demetriou Dep. Ex. 3.)**

> **MassMutual's Response:** Admitted in part. As to the first sentence,
>
> MassMutual admits that it monitors the amount of revenue sharing that mutual fund firms
>
> are paying to MassMutual's competitors, and makes inquiries when it learns competitors
>
> are getting higher amounts, but nothing in the cited passage supports the notion that
>
> MassMutual "readily enters into new terms for increased rates of revenue-sharing
>
> payments." On the contrary, Mr. Demetrious testified that there has only been one
>
> occasion in the last eight years in which MassMutual received an increase, and it was not

66

the result of an inquiry, but was the result of voluntary action by the mutual fund

company. (Assise Aff. Ex. 1, Demetriou Dep. at 67.)

As to the second sentence, admitted.

As to the third sentence, denied. In the cited passage, Mr. Demetriou was

describing an inquiry MassMutual made because it did not understand the revenue

sharing and expense structure for a particular set of share classes in a single fund, but it

was not seeking to make any changes and did not make any changes as a result of this

inquiry. (*Id.* at 25.)

**109.    The RSPs attributable to the Plans' investments in a mutual fund are not always used to benefit the Plans because, when Defendant receives an increase in the amount of the RSPs, it keeps them for its own benefit and does not pass that benefit on to the Plans. (Orzell 11/13/12 Dep. at 74:9-14.)**

**MassMutual's Response:** Admitted in part and denied in part. Admitted that in

the cited passage, the witness testified that *if* a mutual fund increases the revenue sharing

payments the day after a plan signed up, MassMutual would receive the increase.

However, this statement has no applicability to the GSI Plan, because the revenue sharing

amount was never increased with respect to any mutual funds in which GSI Plan assets

are invested. (Assise Aff. Ex. 1, Demetriou Dep. at 67; Assise Aff. Ex. 22,

MASSMUT0295967-70.) Accordingly, plaintiff's statement above has no applicability

to the GSI Plan.

**110.    Mutual funds generally offer different classes of shares, and the only material differences between the share classes are the expense ratio, or management fee, that is levied from the plan assets, and the revenue-sharing paid from that expense ratio to a service provider. (Wietsma 11/14/12 Dep. at 40:9-22, 43:17-44:15; Wilson Dep. at 24:12-25:1.)**

**MassMutual's Response:** Admitted in part. MassMutual admits that the main

difference in share classes is differences in expense ratios, often the result of different

12b-1 fees. Nothing in the cited testimony suggests that there are different management

fees among the different share classes.

**111.     As the business records of MassMutual disclose, MassMutual actively considers creating new share classes to benefit itself economically through the Dividend Received Deduction ("DRD"), which MassMutual captures by reinvesting dividends in its discretion into certain instruments, while MassMutual manipulates its own compensation by establishing and setting SIA Management Fees in its discretion:**

> The attached schematic illustrates the restructuring that would be necessary to maximize the DRD benefit. I note that while the schematic shows the creating of a new low revenue share class with as yet to be defined work effort, we could consider an immediate capture of the DRD benefit by having the various SIA's investing in the Y L A and N Premier and Select share classes instead of investing in the cheaper S share class. *This action, which I believe would be an immediate and unilateral decision on the part of RS [MassMutual's Retirement Services], would then allow us to offset the revenue reduction that usage of the S share class would cause, with a management fee imposed at the SIA level.*
>
> \*     \*     \*
>
> *Not a lot of opportunities to add $10 million to the bottom line in one fell swoop....*
>
> \*     \*     \*
>
> The analysis suggests a DRD benefit increase from the current $2 M (approx) by over $13M. Based on ... above, I would expect the benefit to be factored down, but high level, may be considered a benefit of $10M against the other efforts to restructure the mutual funds' management fee structure across all existing share classes.

**(Wietsma Dep. Ex. 8 (emphasis added); Wietsma Dep. 46:2-64:21.)**

        **MassMutual's Response:** Denied. In the cited deposition, Mr. Wietsma testified

that dividend received deduction is a type of tax deduction that one can receive credit for

dividends that are paid down from parent companies to subsidiaries. (Assise Suppl. Aff.,

Ex. 25, Wietsma Dep. (10/1/13) at 46:18-24.) Nowhere in the fifteen pages cited above,

or in the exhibit, does record evidence support plaintiff's statement that MassMutual

considers creating new share classes through dividend received deduction, or that

MassMutual manipulates its own compensation by setting the SIA Management Fee. In

fact, record evidence establishes that the SIA Management Fees are governed by the

group annuity contract and that those fees has never been altered for any separate

accounts. (Assise Aff. Ex. 12, Wilson Dep. at 33-34; Assise Aff. Ex. 1, Demetriou Dep.

at 70-71.)

**112.    Pursuant to its Participation Agreements with mutual funds, MassMutual
has the right to offer various classes of mutual funds to its customers, with varying expense
ratios charged to its customers (and corresponding RSPs made to MassMutual with higher
RSPs associated with higher expense ratios), and MassMutual chooses which of these share
classes are "appropriate" to offer to its customers on its menu of available investment
options. (Miles 11/13/12 Dep. at 81:3-81:15; Wietsma 11/14/12 Dep. at 45:23-47:21.)**

       **MassMutual's Response:** Admitted in part. In the cited deposition, Mr.

Wietsma testified that the most common practice is to include in the participation

agreements as many share classes as possible, but not all of those share classes may be

chosen by a plan. (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 46:13-47:1.) Mr.

Wietsma also testified that some share classes may not be offered to plans because they

have non-waivable redemption fees and therefore are not suitable for retirement plan

investors. (*Id.* at 47:2-21.)

**113.    MassMutual performs no additional services regardless of the different rates
of revenue-sharing provided by different share classes in the same mutual fund, and no less
services even if the share class does not pay any revenue-sharing. (Demetriou Dep. at
30:15-32:3, 53:15-54:4; Wietsma 11/14/12 Dep. at 62:22-63:9.)**

       **MassMutual's Response:** Denied. The cited testimony does not support the

categorical statements above. Mr. Wietsma testified only that MassMutual performs

similar services for Growth Fund of America and Vanguard, and Mr. Demetriou testified

69

only that, mutual fund companies may increase revenue sharing payments to match what

they pay to MassMutual's competitors, so as to create a level playing field. (Tang Decl.

Ex. V, Wietsma Dep. (11/14/12) at 62:22-63:9; Tang Decl. Ex. C, Demetriou Dep. at

31:21-32:3.) The rest of the facts asserted in this paragraph are not supported by the cited

testimony.

**114.    The GAC does not specify whether the GSI Plan or MassMutual has the
authority to decide which share class a Separate Account could use, but MassMutual
negotiates with the mutual funds to decide which share classes to offer. (Wietsma 11/14/12
Dep. at 45:23-46:6; Miles 11/13/12 Dep. at 81:3-15.)**

**MassMutual's Response:** Admitted in part. MassMutual admits that the group

annuity contract does not specify which share classes are available on the Overall Menu.

MassMutual denies the rest of the statement above and states that the cited testimony

does not support ¶ 114. The participation agreement governs which share classes are

available from a mutual fund. To the contrary of the statement above, Mr. Miles stated

that all share classes are available to plans and sponsors. (Tang Decl. Ex. R, Miles Dep.

at 81:3-15.)

**115.    Institutional ("I") share classes of mutual funds generally are made available
to larger plans with larger amounts of assets invested, require higher minimum investment
amounts but have lower expense ratios and pay lower to zero RSPs. (Wietsma 11/14/12
Dep. at 44:16-45:8, 47:22-49:18.)**

**MassMutual's Response:** Denied. The cited testimony does not support the

statement above. In the cited portions of the deposition, Mr. Wietsma testified that some

mutual fund prospectus requires a minimum amount of investment for the fund, and some

share classes pay no revenue sharing and make up the difference in fees in other ways.

(Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 44:16-45:8; 48:3-20.)

**116.    Under the GAC, MassMutual retains the authority and responsibility to
render investment advice:**

*.... All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including, but not limited to, the discontinuance of a Separate Investment Account.* The assets of the Separate Investment Accounts may be invested, wholly or partly, in securities, including the shares of any investment company registered under the Investment Company Act of 1940. *In exercise of its sole discretion, MassMutual may from time to time, hire an investment advisor registered under the Investment Advisors Act of 1940 to assist in the investment of assets.*

(Assise Decl. Ex. 23, at 40 (§ 5.22) (emphasis added).)

**MassMutual's Response:** Admitted in part and denied in part. MassMutual

admits that this paragraph accurately quotes from the GSI group annuity contract, but

denies that this passage means that MassMutual is providing investment advice within the

meaning of ERISA.

**117.    MassMutual receives fees and compensation in exchange for the investment advice it provides, as stated in the GAC:**

> MassMutual may withdraw a separate investment account management fee from each Separate Investment Account. This fee will be at a daily rate which on an annual basis does not exceed 1.0% of the average daily Market Value of the applicable Separate Investment Account.

(Assise Decl. Ex. 23, at 28 (§ 2.04(xi).)

**MassMutual's Response:** Admitted in part and denied in part. MassMutual

admits that this paragraph quotes from one section of the group annuity contract, but

denies that this passage means that MassMutual is providing investment advice within the

meaning of ERISA.

**118.    MassMutual's promotional materials highlight the quality of its investment advice. (Assise Decl. Ex. 17, Ex. A, at MASSMUT0000430; Assise Decl. Ex. 17, Ex. B, at 4.) For example, it advertises that:**

> Through our disciplined methodology, we employ both quantitative and qualitative factors in screening investment managers for specific investment mandates. *To help you make the*

71

> *right decisions regarding your plan, we employ a systematic*
> *monitoring process and provide you with detailed information for*
> *evaluating every option in your program.*

**(Assise Decl. Ex. 17, Ex. A, at MASSMUT0000430) (emphasis added).**

        **MassMutual's Response:** Admitted in part and denied in part. MassMutual

admits that this paragraph quotes from the cited document, but denies that this passage

means that MassMutual is providing investment advice within the meaning of ERISA.

      **119.**    **The RSPs at issue are kickbacks provided for access to the Plans' retirement assets, since they bear no relationship to services rendered. (Wietsma 11/14/12 Dep. at 59:19-63:9.)**

        **MassMutual's Response:** Denied. The statement above is the plaintiff's theory

of the case, and not a factual statement. Nothing in the cited testimony supports this legal

argument.

      **120.**    **RSPs are subject to negotiation and MassMutual makes proactive inquiries when it becomes concerned about the amount of the RSPs that it is receiving from mutual funds. (Wietsma 11/14/12 Dep. at 14:23-16:9.)**

        **MassMutual's Response:** Admitted in part and denied in part. The cited

testimony does not support all of the statements above. The statement says that revenue

sharing payments are subject to negotiation, but in the cited testimony, Mr. Wietsma

testified that "we don't negotiate revenue sharing typically." (Tang Decl. Ex. V,

Wietsma Dep. (11/14/12) at 14:23-15:4.) MassMutual admits that MassMutual makes

proactive inquiries when it learns that its competitors are receiving higher amounts of

revenue sharing. In the cited passage, Mr. Wietsma testified that when MassMutual

became aware that one of the mutual funds was paying different revenue sharing

payments to other service-providers, MassMutual approached the fund and found out that

the difference in recordkeeping services justified the variation in revenue sharing

payments. (*Id.* at 15:19-16:9.)

**121.** Any alleged disclosure by MassMutual with respect to RSPs was false and misleading in nature because (a) Defendant always has related the receipt of RSPs to services actually performed for mutual funds (Wietsma 11/14/12 Dep. at 58:5-19), but MassMutual has admitted that it performs the same services, regardless of whether a mutual fund agrees to pay it RSPs (Mezey Dep. at 80:9-20; Wietsma 11/14/12 Dep. at 48:21-49:2; 57:18-58:4); (b) MassMutual's own representatives do not even understand their current disclosures regarding RSPs (Assaley Dep. at 106:16-107:7; Bruder Dep at 95:16-97:19;101:20-103:21; Harrison Dep. 157:5-169:4); and (c) MassMutual's current disclosures falsely indicate that all of the RSPs are attributable to costs which indisputably is untrue. (Mezey Dep. 55:15-56:16.)

> **MassMutual's Response:** Denied. The cited testimony does not support
>
> plaintiff's statements above. In particular, statements (a), (b), and (c) are not supported
>
> by the evidence cited, and each does not support the contention that MassMutual's
>
> disclosure of revenue sharing was false and misleading. MassMutual uses revenue
>
> sharing to offset monies that it would otherwise collect from the plan sponsor or plan
>
> participants. (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 50, 57, 59, 85.) Moreover,
>
> MassMutual provided information to the GSI Plan about the expense ratio of each mutual
>
> fund on the Plan Menu and disclosed to the GSI Plan trustee in writing that it was
>
> receiving revenue sharing payments. (Assise Aff. Ex. 3, E. Julo Dep. at 95, 133.)

73

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF
## DISPUTED ISSUES OF MATERIAL FACTS

In paragraphs 122-150 below, plaintiff sets forth a series of "disputed issues" but does

not cite any supporting evidentiary authorities for any of them. Each of these statements

therefore violates Local Rule 56.1, which requires that a party opposing the motion shall include

a concise statement of the material facts of record as to which it is contended that there exists a

genuine issue to be tried, *with page references to affidavits, depositions and other*

*documentation*." (emphasis added.) Accordingly, under Local Rule 56.1, paragraphs 122-50

should be stricken and disregarded. *Aulisio v. Baystate Health Sys., Inc.*, No. 11-30027-KPN,

2012 WL 3957985, at *3 (D. Mass. Sept. 7, 2012) (striking plaintiff's response to defendant's

statement of undisputed facts because plaintiff failed to cite any record in support of the

statement); *see also Sanchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209, 212 (1st

Cir. 2008) (treating the defendant's statement of facts as uncontested where plaintiff's proposed

statement of facts did not comply with local rules).

**122.     Whether MassMutual possessed and/or exercised sufficient authority,
control, discretion, discretionary authority and/or discretionary control to be deemed a
fiduciary in connection with its (a) ownership and control of the Separate Accounts; (b)
administration of the Separate Accounts; (c) authority or responsibility to render
investment advice for which it receives fees and compensation; (d) authority to add, delete,
change or substitute mutual funds from the menu available for the Separate Accounts; (e)
exercise of authority to add, delete, change or substitute mutual funds from the menu
available for the Separate Accounts; (f) exercise of discretionary authority not to offer,
purchase, and substitute institutional and lower expense ratio share classes; (g) exercise of
discretionary authority to re-invest the mutual fund dividends generated by the Separate
Accounts; (h) discretionary authority to self-determine and draw its compensation directly
from the Separate Accounts; and (i) exercise of discretionary authority to set and draw its
compensation directly from the Separate Accounts.**

**MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

74

**123.    Whether MassMutual acts as a fiduciary to the GSI Plan.** *See* **Assise Decl. at Ex. 24 (acknowledging that issue for summary judgment is solely related to MassMutual's fiduciary status).**

**MassMutual's Response**:  Denied for lack of any supporting evidence. *See*

MassMutual's Introductory Statement before ¶ 122.

**124.    Whether MassMutual explicitly acknowledges its fiduciary status to the Plans, including the GSI Plan.**

**MassMutual's Response**:  Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**125.    Whether MassMutual's services to 401(k) plans are limited to only providing a menu of investment options and recordkeeping and other "ministerial" services.**

**MassMutual's Response**:  Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**126.    Whether MassMutual holds the authority and exercises the power to make discretionary investment and/or administrative decisions on behalf of the Plans, including the GSI Plan.**

**MassMutual's Response**:  Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**127.    Whether MassMutual holds the discretionary power to and exercises the power to set its own compensation.**

**MassMutual's Response**:  Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**128.    Whether MassMutual holds and exercises the discretion to add, delete and substitute investment options within the Limited Menu of investment options that it maintains.**

**MassMutual's Response**:  Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**129.** Whether MassMutual only deletes and substitutes investment options from the Limited Menu on a prospective basis or, in fact, does so for existing Plans offering and investing in the deleted/substituted investment options.

> **MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**130.** Whether MassMutual is paid RSPs in return for services rendered to the mutual funds or if, in fact, the RSPs are unrelated to services rendered and actually amount to payments for access to the Plans (*i.e.*, shelf space payments).

> **MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**131.** Whether MassMutual enters into Participation Agreements with mutual funds before it places them on its Limited Menu.

> **MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**132.** Whether MassMutual had adequately or truthfully disclosed the existence, nature or purpose of RSPs and, if so, when.

> **MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**133.** Whether MassMutual has ever advised the GSI Plan that it can use RSPs to pay for services.

> **MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**134.** Whether MassMutual uses RSPs to offset monies that would otherwise be due and owing from the Plans or their participants.

> **MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**135.** Whether MassMutual is required to execute directives related to investments from the Plans or other participants.

    <u>MassMutual's Response</u>: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**136.** Whether MassMutual drafted the operative plan documents, including the GAC, that govern its relationship with the GSI Plan.

    <u>MassMutual's Response</u>: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**137.** Whether MassMutual has considered its power to change and substitute investment options and whether it has exercised such power.

    <u>MassMutual's Response</u>: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**138.** Whether MassMutual provided adequate and fulsome notice to the Plans, including the GSI Plan, regarding its substitution of investment options.

    <u>MassMutual's Response</u>: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**139.** Whether MassMutual provided the Plans, including the GSI Plan, with adequate time to identify an alternative service provider and to terminate its contact without penalty when MassMutual elected to substitute investment options offered to the Plans.

    <u>MassMutual's Response</u>: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**140.** Whether MassMutual made the discretionary investment decisions to (a) determine what investments to offer and maintain through the Separate Accounts, (b) reinvest dividends of mutual funds, and (c) vote proxies on behalf of the Plans.

    <u>MassMutual's Response</u>: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**141.** Whether MassMutual engages in post-contract acts, conduct and omissions in which it exercises any authority or control respecting management or disposition of plan assets.

**MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**142.** Whether MassMutual holds post-contract discretionary authority or discretionary responsibility in the administration of the plans.

**MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**143.** Whether MassMutual renders investment advice for a fee or other compensation, directly or indirectly, with respect to any monies or other property of the Plans, including the GSI Plan, or has any authority or responsibility to do so.

**MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**144.** Whether the RSPs constitute plan assets.

**MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**145.** Whether MassMutual has dealt with the RSPs in its own interest or for its own account.

**MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**146.** Whether MassMutual has received consideration in the form of RSPs from mutual funds dealing with the GSI Plan in connection with a transaction involving the assets of the plan.

**MassMutual's Response**: Denied for lack of any supporting evidence. *See*

MassMutual's introductory statement before ¶ 122.

**147.    Whether MassMutual received the RSPs in connection with its fiduciary status.**

   **MassMutual's Response**:  Denied for lack of any supporting evidence.  *See*

MassMutual's introductory statement before ¶ 122.

**148.    Whether MassMutual engaged in self-dealing in connection with retirement plan assets.**

   **MassMutual's Response**:  Denied for lack of any supporting evidence.  *See*

MassMutual's introductory statement before ¶ 122.

**149.    Whether MassMutual adequately disclosed the existence and nature of the RSPs, the reasons why it receives them and the status it occupies in connection with receipt of the RSPs.**

   **MassMutual's Response**:  Denied for lack of any supporting evidence.  *See*

MassMutual's introductory statement before ¶ 122.

**150.    Whether MassMutual misrepresented or concealed the nature of the RSPs from Plaintiff.**

   **MassMutual's Response**:  Denied for lack of any supporting evidence.  *See*

MassMutual's introductory statement before ¶ 122.

Dated: January 29, 2014

Respectfully submitted,

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY

By: /s/ Mark Blocker
    One of its attorneys

James O. Fleckner (BBO #641494)
Alison V. Douglass (BBO #646861)
Ai Tajima (BBO #669182)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Phone: (617) 570-1000
Fax:    (617) 523-1231
E-mail: jfleckner@goodwinprocter.com
        adouglass@goodwinprocter.com
        atajima@goodwinprocter.com

Joel S. Feldman (*pro hac vice*)
Mark B. Blocker (*pro hac vice*)
Jen C. Won (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax:    (312) 853-7036
E-mail: jfeldman@sidley.com
        mblocker@sidley.com
        jwon@sidley.com

Bernadette Harrigan, BBO #635103
E-mail: bharrigan@massmutual.com
Massachusetts Mutual Life Insurance Co.
Law Department
1295 State Street
Springfield, MA 01111-0001
Phone: (413) 788-8411

ATTORNEYS FOR MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY

80

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2014, a copy of Massachusetts Mutual Life Insurance

Company's Reply to Plaintiff's Local Rule 56.1 Response and Counter-Statement of Material

Facts of Record was served via electronic and first class mail as follows:

Michelle H. Blauner
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
E-mail: mblauner@shulaw.com

John M. Edgar
John F. Edgar
Michael D. Pospisil
EDGAR LAW FIRM LLC
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone: (816) 531-0033
E-mail: jme@edgarlawfirm.com
          jfe@edgarlawfirm.com
          mdp@edgarlawfirm.com

James E. Miller
Laurie Rubinow
Kolin C. Tang
Karen M. Leser
Shepherd Finkelman Miller
 & Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
E-mail: jmiller@sfmslaw.com
          lrubinow@sfmslaw.com
          kleser@sfmslaw.com
          ktang@sfmslaw.com

Ronald S. Kravitz
Liner Grode Stein Yankelevitz
Sunshine Regenstreif & Taylor LLP
199 Fremont St., 20th Fl.
San Francisco, CA 94105
Telephone: (415) 489-7700
E-mail: rkravitz@linerlaw.com

Patrick A. Klingman
Klingman Law, LLC
100 Pearl Street, 14th Floor
Hartford, CT 06103-4500
Telephone: (860) 249-7122
E-mail: pak@klingmanlaw.com

/s/ Mark B. Blocker _____ _____

*One of the Attorneys for Defendant*
*Massachusetts Mutual Life Insurance*
*Company*