## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GOLDEN STAR, INC., | : | CIVIL ACTION |
| Plan Administrator of the Golden Star | : | NO: 3:11-CV-30235-PBS |
| Associates' 401(k) Plan and the Golden Star | : | |
| Bargaining Associates' 401(k) Plan, | : | CLASS ACTION |
| On Behalf of Itself and All Others | : | |
| Similarly Situated, | : | **LEAVE TO FILE GRANTED** |
| | : | **BY ORDER DATED** |
| Plaintiff, | : | **January 17, 2014** |
| | : | |
| vs. | : | |
| | : | |
| MASS MUTUAL LIFE INSURANCE CO., | : | |
| | : | |
| Defendant. | : | February 12, 2014 |

---

### SUR-REPLY BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, MASS MUTUAL LIFE INSURANCE COMPANY, REGARDING DEFENDANT'S FIDUCIARY STATUS

---

James E. Miller
Laurie Rubinow
Kolin C. Tang
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
        lrubinow@sfmslaw.com
        ktang@sfmslaw.com

Michelle H. Blauner
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
Email: mblauner@shulaw.com

John M. Edgar
John F. Edgar
Edgar Law Firm LLC
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: jme@edgarlawfirm.com
        jfe@edgarlawfirm.com

Ronald S. Kravitz
Shepherd Finkelman Miller & Shah, LLP
One California St., Suite 900
San Francisco, CA 94111
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com

**TABLE OF CONTENTS**

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.    The DOL's Position And The Weight Of Relevant Authorities . . . . . . . . . . . . . . . . . 3

     B.    MassMutual's Subsection (i) Arguments Are Without Merit. . . . . . . . . . . . . . . . . . 5

          1.    MassMutual's Exercise Of Control Over The Separate Accounts. . . . . . . . . 5

          2.    MassMutual's Discretionary Exercise To Add Or Delete Funds. . . . . . . . . . 8

          3.    MassMutual's Discretionary Exercise To Reinvest Dividends. . . . . . . . . . . . 9

          4.    MassMutual's Discretionary Exercise Of Determining Its Own
               Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          5.    MassMutual's Exercise Of Discretion Over The Share Classes. . . . . . . . . . . 10

     C.    MassMutual's Subsection (iii) Argument Is Without Merit. . . . . . . . . . . . . . . . . . . . 11

     D.    MassMutual's Subsection (ii) Arguments Are Without Merit. . . . . . . . . . . . . . . . . . 14

III.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

*Aetna Cas. & Sur. Co. v. Clasby*,
  788 F. Supp. 61 (D. Mass. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Beddall v. State St. Bank & Trust Co.*,
  137 F.3d 12 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Boston Children's Heart Found., Inc. v. Nadel-Ginard*,
  1994 WL 16011252 (D. Mass. Dec. 15, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Bouboulis v. Transp. Workers Union of Am.*,
  442 F.3d 55 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Chao v. Day*,
  436 F.3d 234 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Charters v. John Hancock Life Ins. Co.*,
  583 F. Supp. 2d 189 (D. Mass. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fechter v. Connecticut General Life Ins. Co.*,
  798 F.Supp. 1120, 1129 (E.D. Pa. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.*,
  931 F. Supp. 2d 296 (D. Mass. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Haddock v. Nationwide Fin. Servs., Inc.*,
  419 F. Supp. 2d 156 (D. Conn. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
  2013 WL 4446919 (D. Conn. Aug. 9, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12, 13

*Howard v. Shay*,
  100 F3d 1484 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re State Street Bank and Trust Co. Erisa Litig.*,
  579 F. Supp. 2d 512 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
   510 U.S. 86 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Leigh v. Engle*,
   727 F.2 113 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Leimkhuehler v. Am. United Life Ins. Co.*,
   713 F.3d 905 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 11

*Lowen v. Tower Asset Mgmt., Inc.*,
   829 F.2d 1209 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mack Boring and Parts v. Meeker Sharkey Moffitt*,
   930 F.2d 267 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Pension Benefit Guar. Corp. v. Morin*,
   2000 WL 760737 (D. Me. April 24, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Phones Plus, Inc. v. The Hartford Fin. Servs. Grp., Inc.*,
   2007 WL 3124733 (D. Conn. Oct. 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tool v. National Employee Ben. Services, Inc.*,
   957 F.Supp. 1114 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*,
   783 F.Supp. 899, 905 (D.N.J. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tybout v. Karr Barth Pension Admin., Inc.*,
   819 F.Supp. 371 (D. Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

## STATUTES AND REGULATIONS

29 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

29 U.S.C. § 1002 (21)(A)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

29 U.S.C. § 1104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 U.S.C. § 1106(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 C.F.R. § 5880.401c-1(d)(2)(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. § 2510.3-21 (ii)(A),
  reprinted in 1974 U.S.C.C.A.N. 4639, 4649. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## OTHER AUTHORITIES

*H.R. Conf. Rep. No. 93-1280.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7

*Opinion Letter 2003-09A,*
  2003 ERISA LEXIS 11 (June 25, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Opinion Letter 97-15A,*
  1997 ERISA LEXIS 18 (Mar. 14, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 8, 9

*Opinion Letter 97-16A,*
  1997 ERISA LEXIS 17 (May 22, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

# I.  INTRODUCTION[1]

Plaintiff, Golden Star, Inc. ("Plaintiff" or "GSI"), respectfully submits this Sur-Reply Brief in Opposition to the Motion for Summary Judgment of Defendant, Mass Mutual Life Insurance Company ("Defendant" or "MassMutual"), regarding Defendant's fiduciary status. Defendant's Reply, in addition to being incorrect as a matter of law, ignores a record replete with material issues of fact that prevent summary judgment. Defendant's Reply Brief in Support of Summary Judgment re-affirms MassMutual's strategy of disregarding The Honorable Michael A. Ponsor's clear and specific instruction, which was to brief whether MassMutual is a fiduciary to the GSI Plan, while creating a false construct for this Court.[2] MassMutual continues to ignore the fact that this action arises under the prohibited transaction ("PT") rules of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1106 – that is, if a person is a fiduciary to a retirement plan *for any purpose*, and (1) deals with the assets of a plan in its own interest or (2) receives consideration for its own account in connection with a transaction involving plan assets, then that person is acting in its fiduciary capacity and has committed a prohibited transaction. ERISA § 406(b)(1)&(3), 29 U.S.C. § 1106(b)(1)&(3). In other words, ERISA § 406 defines the delimits of whether a fiduciary is wearing its fiduciary hat under *Pegram v. Herdrich*, 530 U.S. 211 (2000) ("ERISA . . . require[s] . . . that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions"), and, *if MassMutual is a*

---

[1] Unless otherwise indicated, Plaintiff adopts the definitions contained in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment for the convenience of the Court. References to Plaintiff's Sur-Reply to Defendant's Reply to Plaintiff's Local Rule 56.1 Response and Counter-Statement of Material Facts of Record ("SRCS") are identified as follows: "SRCS, ¶ __."

[2] Indeed, MassMutual does not, because it cannot, respond to the actual instructions given by Judge Ponsor that GSI provided in its Opposition, which Defendant's counsel clearly acknowledged. (Opposition, at 5 n.6, *quoting* Hr. Transcript, Dkt No. 101, 8:3-10:1, 11:16-12, 18:12-21, 23:7-24:3.) Moreover, MassMutual clearly understood the parameters of Judge Ponsor's Order when it served discovery requests focused on MassMutual's status as a fiduciary vis-a-vis the GSI Plan (SRCS, ¶ 123), and the class certification briefing was focused solely on MassMutual's fiduciary status. (Memorandum in Support of Motion for Class Certification, at 6, 11-16, 37.)

*fiduciary to the GSI Plan, it cannot persuasively argue that it is not wearing its fiduciary hat*
*when (1) it deals with the assets of the GSI Plan in its own interest (i.e., a Section 406(b)(1)*
*violation), or (2) receives consideration for its own account in connection with a transaction*
*involving GSI Plan assets (i.e., a Section 406(b)(3) violation).* To hold otherwise would be to
turn the prohibited transaction rules of ERISA on their head because it is black letter law that a
fiduciary that engages in conduct violative of Section 406(b) has engaged in a *per se* violation of
ERISA. *Boston Children's Heart Found., Inc. v. Nadel-Ginard*, CIV.A.93-12539-REK, 1994
WL 16011252 * 4 (D. Mass. Dec. 15, 1994), *aff'd sub nom*. 73 F.3d 429 (1st Cir. 1996)
("'Federal courts have interpreted § 1106(b) as stating a *per se* prohibition, with liability to be
imposed on all transactions in which there is such a conflict of interest, even where there is "no
taint of scandal, no hint of self-dealing, no trace of bad faith"").[3] That is why, as discussed
below, a fiduciary charged with a PT bears the burden of establishing by clear and convincing
evidence that the challenged transaction is unrelated to its fiduciary status (by showing that the
challenged transaction does not involve self-dealing with plan assets or the receipt of
consideration in connection with a transaction involving plan assets, thereby confirming that
ERISA § 406(b) explicitly defines the delimits of the fiduciary hat analysis) -- *a burden that*
*MassMutual tellingly ignores and cannot meet under any set of conceivable circumstances*.

Notwithstanding MassMutual's convenient misframing of the issue, the evidence
demonstrates that MassMutual is acting as a fiduciary under subsections (i), (ii), and (iii) of
ERISA Section 3(21)(A) in connection with its receipt of the RSPs, because it is using its control

---

[3]*See also Aetna Cas. & Sur. Co. v. Clasby*, 788 F. Supp. 61, 65-66 (D. Mass. 1991) ("If Clasby is additionally found to be a fiduciary (as alleged in count one of the Hospital action), the commissions paid directly to C.T. Garrahan [from Travelers, which sold insurance policies to the plan,] and the resulting indirect benefit to Clasby also constitute *per se* violations of ERISA § 1106(b)"); H.R. Conf. Rep. 93-1280, 5037, at 5087 (Aug. 12, 1974) (in the legislative history to ERISA § 406, noting that "[t]he conference substitute prohibits plan fiduciaries and parties-in-interest from engaging in a number of specific transactions ... *the fiduciary is the main focus of the prohibited transaction rules*").

over GSI Plan assets and discretionary authority over the administration of the GSI Plan to secure

the RSPs from the mutual funds with which it negotiates, while acting as investment advisor to

the GSI Plan. In sum, the evidence and law prevent entry of a summary judgment here.

## II. ARGUMENT

### A. The DOL's Position And The Weight Of Relevant Authorities

MassMutual brazenly claims that the DOL's "own pronouncements" are consistent with

MassMutual's position that it cannot be a fiduciary to the GSI Plan because it did not cause the

GSI Plan to select particular investments, Reply Brief at 4-5, *citing* Opinion Letter 2003-09A,

2003 ERISA LEXIS 11 (June 25, 2003) (the "*ABN AMRO Letter*"), Opinion Letter 97-15A, 1997

ERISA LEXIS 18, at *7-*9 (Mar. 14, 1997) (the "*Frost Letter*"), and Opinion Letter 97-16A,

1997 ERISA LEXIS 17, at *11 (May 22, 1997) (the "*Aetna Letter*"), **even though those opinion**

**letters establish MassMutual's liability**. Defendant's "Emperor's New Clothes" approach to this

case should be recognized for what it is -- no matter how high it holds its head, MassMutual's

position is indisputably naked, as Judge Ponsor specifically recognized when commenting about

the fact that MassMutual did not follow the DOL's opinion letters at issue. *See* 4/25/13 Tr. at 7-

10.

The DOL Opinion Letters actually support a finding that MassMutual is a fiduciary to the

GSI Plan and its acceptance of RSPs for its own account violates ERISA § 406:

> The *Frost Letter*: the trustee had reserved the right to add or remove mutual fund
> families that it made available to its client plans and agreed to apply any fees it
> received from the mutual funds to the benefit of the plans. The DOL found the
> trustee to be a fiduciary but that it did not engage in any prohibited transactions in
> violation of Section 406 because the "fees attributable to the Plans' investments in
> mutual funds are used to benefit the Plans, *either as a dollar-for-dollar offset*
> *against the fees the Plans would be obligated to pay to Frost for its services or*
> *as amounts credited directly to the Plans*." 1997 ERISA LEXIS 18, at *12
> (emphasis added). Here, MassMutual also retains the right to add or remove
> mutual fund families that it makes available to the GSI Plan, including existing

options on the plan menu, but does not apply the RSPs it receives from the mutual funds in a "dollar-for-dollar" offset against fees the Plans would be ***obligated*** to pay to MassMutual or credit the RSPs directly to the GSI Plan. (SRCS, ¶¶ 22, 88, 109.)[4]

The *Aetna Letter*: the DOL expressed the view that a person would not possess or exercise discretionary authority or control over the management of a plan or its assets to render it a fiduciary solely as a result of its limited role with respect to investment options and services offered to plans, provided that the appropriate plan fiduciary, in fact, retains and exercises the decision to accept or reject the change by receiving meaningful notice (120 days) and an opportunity to obtain a new service provider without application of any penalty or surrender charge. 1997 ERISA LEXIS 17, at *15-*16. Here, in contrast, MassMutual has the discretionary authority over the investment options and services offered to the GSI Plan and exercised such authority, but is not required to and did not provide any meaningful notice and opportunity to the GSI Plan for any changes it has or will make (while it still assesses surrender charges on Plans where applicable in violation of *Aetna*). (SRCS, ¶¶ 51, 80.) Moreover, the *Aetna Letter* specifically recognized that the owner of separate account is a fiduciary subject to the PT rules of ERISA, thereby establishing MassMutual's liability in this case.[5] (SRCS, ¶¶ 5, 13, 49, 62, 71, 74, 104, 122 (establishing that Defendant is the owner of the Separate Accounts and the assets contained therein).)

The *ABN AMRO Letter*: the DOL expressly distinguished the facts presented from those of the *Frost Letter* because the service provider reserved no right to add or remove mutual fund families that it made available to its client plans. 2003 ERISA LEXIS 11, at *14 n.4. Moreover, the service provider did not provide an "overall menu" for a plan to choose for its participants. Instead, there was no restriction on which mutual fund the client plan can use, although the service provider would provide a list of investment funds for the client plan to consider if requested. *Id.* at *5-*6. Here, in contrast, not only does MassMutual retain the final authority to change not only the overall menu but the GSI Plan menu,

---

[4]MassMutual credits certain RSPs for larger retirement plans through the use of PERA accounts (which the GSI Plan does not have and which the proposed class of plans do not have), thereby confirming that MassMutual understands how to credit RSPs when it wants to and knows how to keep them for its own benefit, as here, when it so chooses. (SRCS, ¶ 59.)

[5]The *Aetna Letter* explicitly states: "You represent that ALIC utilizes several separate accounts in connection with the GACs, and have assumed for purposes of the advisory opinion request that the assets of these separate accounts would be deemed to be plan assets pursuant to the Department's regulation at 29 CFR 2510.3-101" and "ALIC ... may be considered a fiduciary of the Plan by virtue of providing investment management services for Plan assets invested in an ALIC separate account." *Id.* at * 2, n.1., * 12.

MassMutual also limits the overall menu. (SRCS, ¶¶ 8, 51-52, 79.)[6]

Prohibited transaction cases addressing facts similar to this case have consistently held on summary judgment that a service provider possessing final discretionary authority, like here, is either a fiduciary or, at a minimum, that summary judgment concluding that the service provider is not a fiduciary is unwarranted.[7]

### B.     MassMutual's Subsection (i) Arguments Are Without Merit

#### 1.     MassMutual's Exercise Of Control Over The Separate Accounts

MassMutual first argues that it never used its authority over the Separate Accounts to cause the GSI Plan to invest in a mutual fund. MassMutual critically ignores, however, that it exercises authority and control to confer fiduciary status under ERISA § 3(21)(A)(i) over the

---

[6]Indeed, the DOL recently reiterated its position that, if a service provider retains the final authority to unilaterally add, delete, or substitute any or all funds on a plan menu, then that service provider is an ERISA fiduciary to the plan. *See* Brief of the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants and Requesting Reversal filed January 21, 2014, *Santomenno v. John Hancock Life Ins. Co.*, No. 13-3467, at 13-23, a true and correct copy of which is attached as Exhibit "A."

[7]*See Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 931 F. Supp. 2d 296, 304 (D. Mass. 2013) (denying summary judgment that defendant was not a fiduciary because *"Plaintiff has offered evidence that State Street's initial contracts with class members (Investment Management Agreements) established, at most, the maximum lending fee and gave State Street discretion to set its fee anywhere from 0% to 50%. These agreements appear to give State Street significant discretionary authority to determine the amount of its lending compensation"*); *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 197-198 (D. Mass. 2008) (finding that "[b]ecause the Contract gave Hancock discretionary authority over its fees it acquired a fiduciary status with respect to those fees" and "[b]ecause of the built-in penalties [for terminating a contract after a change in the investment options], Charters did not have a meaningful opportunity to reject substitutions . . . [so] this Court finds Hancock's ability to substitute investment options also rendered it a fiduciary to the Plan"); *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, CIV.A. 11-00282-WGY, 2013 WL 4446919, at *7 (D. Conn. Aug. 9, 2013) (Young, J., sitting by designation) ("ILIAC's discretionary authority to change the funds available to 401(k) plans supports fiduciary status"); *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 166 (D. Conn. 2006) ("Accordingly, Nationwide may be a fiduciary to the extent that it exercises authority or control over plan assets by determining and altering which mutual funds are available for the Plans' and participants' investments"); *see also Phones Plus, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, CIV. 3:06CV01835AVC, 2007 WL 3124733 * 4 (D. Conn. Oct. 23, 2007) (on motion to dismiss and applying the meaningful notice and opportunity requirements of the *Aetna Letter*, "[r]egardless of whether Phones Plus has the power to make the "ultimate decision" about Hartford's changes to the fund menu, a reasonable fact finder could still conclude, for example, that the change notification procedures are inadequate or that the time provided in which to make such a decision is unreasonably short, and that as a result Hartford is an ERISA fiduciary").

Plan's assets through its legal ownership of the Separate Accounts and the Plans' assets[8] contained therein: "*MassMutual has exclusive and absolute ownership and control of the assets in the Separate Investment Accounts....*" (SRCS, ¶ 5);[9] *In re State Street Bank and Trust Co. Erisa Litig.*, 579 F. Supp. 2d 512, 518-519 (S.D.N.Y. 2008) (ownership of separate account was a fiduciary).[10] In addition, MassMutual used its ownership and authority over the Separate Accounts and the Plans' assets to negotiate and receive the RSPs at issue (SCRS, ¶¶ 65, 73, 95-97, 104, 119) -- thereby independently establishing Defendant's fiduciary status independent of any question as to whether MassMutual caused the Plan to invest in certain mutual funds (which it also did). (SCRS, ¶¶ 8, 49.)

This legal ownership and control over the Plans' assets in the Separate Accounts render MassMutual a fiduciary to the GSI Plan under ERISA § 3(21)(A)(i), 29 U.S.C. 1001(21)(A)(i), which both *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998), and *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013), held does not require any

---

[8]Indeed, MassMutual carries the assets in the Separate Accounts, including the retirement assets invested by the GSI Plan, on its balance sheet as *assets of MassMutual and MassMutual explicitly acknowledges its fiduciary status as a result of its management of the Separate Accounts.* (SRCS, ¶ 62.) There could be no clearer indicia of authority and control giving rise to fiduciary status under ERISA § 3(21)(A)(i).

[9]MassMutual admits that it establishes, administers, owns, and manages the Separate Accounts in which the GSI Plan assets are deposited. (SRCS, ¶¶ 66-67.) But it then strangely denies that, notwithstanding the fact that it holds legal title and ownership to the GSI Plan assets in the Separate Accounts, it still does not "maintain ownership, authority, or control over the [S]eparate [A]ccounts." (*Id.* ¶¶ 71, 74.) Yet this position is completely belied by the express terms of the GSI Plan's contract with MassMutual. (*Id.* ¶ 5) ("MassMutual has exclusive and absolute ownership and control of the assets in the Separate Accounts ... only MassMutual will have any individual, legal, or equitable ownership of any investments or assets of the Separate Accounts....")

[10]Other courts have reached exactly the same conclusion. *See Tool v. National Employee Ben. Services, Inc.*, 957 F.Supp. 1114 (N.D. Cal. 1996); *Tybout v. Karr Barth Pension Admin., Inc.*, 819 F.Supp. 371 (D. Del. 1993); *Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F.Supp. 899, 905 (D.N.J. 1992); *Fechter v. Connecticut General Life Ins. Co.*, 798 F.Supp. 1120, 1129 (E.D. Pa. 1991). Indeed, the Supreme Court's decision in *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 100-101 (1993), is all about when an insurer becomes a fiduciary with respect to assets in its general account -- and that discussion is predicated on the understanding that an insurer, by law, is a fiduciary with respect to assets held in separate accounts. Likewise, the legislative history of ERISA also demonstrates that Congress intended that insurance companies holding plan assets in separate accounts would be fiduciaries under ERISA, given their exercise of control over plan assets. H.R. Rep. No. 93-1280 at 296-299, WL ERISA-LH 9, at *41-43.

"discretion."[11]  Thus, even without any grant of discretion, the legal owner of the Separate

Accounts is a fiduciary, **which MassMutual has effectively acknowledged**.  (SRCS ¶¶ 81, 85.)

Since this is a prohibited transaction case and MassMutual is indisputably a fiduciary to

the GSI Plan with respect to the Separate Accounts, as set forth in *Pension Benefit Guar. Corp. v.*

*Morin*, No. Civ. 99-246-P-C, 2000 WL 760737 (D. Me. April 24, 2000), *Howard v. Shay*, 100

F3d 1484 (9th Cir. 1996), and *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209 (2d Cir. 1987)),

as well as by the DOL and ERISA's legislative history, MassMutual bears the burden of proving

by clear and convincing evidence that the receipt of or negotiation for RSPs does not implicate

the proscriptions of ERISA § 406(b)(1) -- which it did here.  MassMutual does not even address

this evidentiary standard in its Reply Brief because it apparently has no answer.[12]  That is

unsurprising since MassMutual's fiduciary status as the owner of the Separate Accounts is

directly connected to its receipt of RSPs.  Indeed, the RSPs are calculated based on the value of

the retirement assets that MassMutual delivers to the mutual funds.  (SCRS, ¶¶ 65, 73, 97.)[13]

---

[11]MassMutual criticizes Plaintiff's reliance upon *Beddall* and *Leimkuehler* on the basis that they did not address separate accounts in this context, *see* Reply Brief at 4, but ignores Plaintiff's accompanying citation to *Mack Boring and Parts v. Meeker Sharkey Moffitt*, 930 F.2d 267, 275 (3d Cir. 1991) ("insurance companies are to be responsible under the general fiduciary rules with respect to assets held under separate account contracts, and the assets of these contracts are to be considered as plan assets") (quoting H.R. Rep. No. 93-1280, at 5077), and 29 C.F.R. § 5880.401c-1(d)(2)(c), which also were cited and, indeed, establish that it is blackletter law that owners of insurance company separate accounts are fiduciaries.  Moreover, *Leimkuehler* merely held that the defendant-fiduciary was not liable for fiduciary breach where the challenged conduct was unconnected to its status as a fiduciary owner of a separate account -- a circumstance not present here based on all of the evidence.

[12]If MassMutual is rendered a fiduciary to the GSI Plan for **any purpose**, the burden shifts to MassMutual to prove that it did not engage in any prohibited transaction arising from its fiduciary status.  The reason for this is because a fiduciary "has a virtual monopoly on information concerning the [alleged prohibited] transaction." *Pension Benefit Guar. Corp.*, 2000 WL 760737, at *4; *see Howard*, 100 F3d at 1488; *Lowen*, 829 F.2d at 1215; H.R. Conf. Rep. 93-1280, 5037, at 5087 (Aug. 12, 1974) ("The conference substitute prohibits plan fiduciaries and parties-in-interest from engaging in a number of specific transactions . . . the fiduciary is the main focus of the prohibited transaction rules").  Of course, if MassMutual is found to have violated Section 406, then it is automatically liable for violating its fiduciary duties under Section 404 of ERISA, 29 U.S.C. § 1104.  *See, e.g., Leigh v. Engle*, 727 F.2 113, 126 (7th Cir. 1984); (Opposition, at 2 n.2.).

[13]MassMutual's reliance upon *Leimkuehler* is misplaced because, among other things, *Leimkuehler* never analyzed the existence of a PT based upon the proper burden shifting analysis outlined above.  Instead, *Leimkuehler* analyzed the case on the basis of the alleged fact that plaintiff "d[id] not allege that AUL in any way mismanaged the

## 2. **MassMutual's Discretionary Exercise To Add Or Delete Funds**

MassMutual does not dispute that it made post-contractual changes to the Limited Menu. (Reply, at 5); (SRCS ¶¶ 5, 84.)  But it argues that it makes "little sense" that, by engaging in **post-contractual discretionary conduct** by changing the overall universe of investment options available to the GSI Plan, MassMutual would be rendered a fiduciary under ERISA.  Yet that is exactly the type of conduct that confers fiduciary status with regard to the Limited Menu, which MassMutual does not refute, aside from asserting in a conclusional fashion that the authorities Plaintiff cites are purportedly "mischaracterized." (Reply Brief at 6.)[14]

As for the "numerous courts" that have purportedly rejected the notion that changes to the Limited Menu or limiting the universe of investment options creates fiduciary status, those authorities, as the Opposition points out, stand for the sole principle that **pre-contractual activity** does not create fiduciary responsibility.  (Opposition, at 19-20, n. 29.)  Finding no effective way to reconcile its gross misinterpretation of those authorities, MassMutual baldly asserts that the timing of the changes is irrelevant.  Defendant's bluster is unpersuasive.

Finally, MassMutual argues that the fiduciary responsibility that it acknowledged with regard to the management of assets invested in the Separate Accounts (SRCS, ¶¶ 81, 85), only

---

separate account," *Leimkuehler*, 713 F.3d at 913, even though a PT case requires no mismanagement or wrongdoing -- it relates to transactions that rightly are deemed *per se* unlawful given their potential for mischief and wrongdoing. *See Boston Children's Heart Found., Inc., supra* at * 4.  *Leimkuehler* also failed to recognized the inherent mismanagement of the Separate Accounts entailed by engaging in transactions prohibited by ERISA where, as here, MassMutual (1) accepted, for its own account, RSPs from the expense ratios assessed against the Separate Accounts' assets by the mutual funds and then kickbacked to MassMutual (SRCS, ¶ 18), and (2) used its control of the Separate Accounts to negotiate for its share of the expense ratio, *i.e.* the RSPs (SRCS, ¶¶ 96-97). *See* 29 U.S.C. § 1106(b)(3)("A fiduciary with respect to a plan shall not . . . receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan").

[14]*See, e.g., Frost Letter*, 1997 ERISA LEXIS 18, at *11 n.9 ("the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) [participant self-directed] plan is a fiduciary function . . . ."); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007); (Opposition at 19 n.28) (same).  Despite MassMutual's reliance upon *DiFelice*, the case actually supports Plaintiff's position.

extends to the prudent management of Separate Account assets and the GSI Plan supposedly does not allege that it mismanaged the Separate Account assets. Again, as a preliminary manner and as discussed above, once MassMutual is demonstrated to be a fiduciary to the GSI Plan, the burden is on MassMutual to prove that its acceptance of the RSPs is not in connection with its fiduciary responsibilities. Regardless, MassMutual's position is absurd – the crux of this case is that MassMutual engaged in PTs in violation of Section 406 when managing the Separate Accounts.[15]

### 3.    MassMutual's Discretionary Exercise To Reinvest Dividends

MassMutual argues that the evidence supports its position that its automatic re-investment of dividends generated by the Separate Account investments in the mutual funds were done at the instruction of the GSI Plan participants. But all the "evidence" that MassMutual points to – other than the self-serving (and selective) language MassMutual's employees use – only shows that MassMutual automatically and unilaterally assumes that when a plan participant picks an investment option in the first place, the plan participant also desires dividend re-investment. The reality is that the plan participants were never given any option regarding dividend re-investment, and never made any decision; MassMutual just wrongly claims they did. (SRCS, ¶¶ 25, 53, 100.) MassMutual also does not respond to Plaintiff's argument that the reinvestment of dividends is directly connected to the receipt of RSPs. *See* Opposition at 3.

---

[15]Specifically, MassMutual created an unredeemed conflict of interest between itself and the GSI Plan by allowing competing incentives in its selection of mutual funds for the Limited Menu, which Judge Ponsor recognized as the basis for the *Frost Letter*. (SRCS, ¶¶ 8, 13-18, 46, 89); (Hr. Transcript, Dkt No. 101, 8:8-23.) The *Frost Letter* made clear that when a service provider accepts RSPs from mutual funds when it possesses final discretionary authority over the overall or plan menu, it can only avoid violating the prohibited transaction provisions of ERISA Section 406 by discharging its conflict-of-interest through either "a dollar-for-dollar offset against the fees the Plans would be obligated to pay to Frost for its services or as amounts credited directly to the Plans." *Frost Letter*, 1997 ERISA LEXIS 18, at *12. Unfortunately, MassMutual does not provide a dollar-for-dollar offset or credit the amounts of RSPs entirely to the GSI Plan, and thus retains the impermissible conflict-of-interest.

### 4. MassMutual Discretionary Exercise Of Determining Its Own Compensation

MassMutual argues that there is no evidence that MassMutual exercised its authority to set its own compensation because the GSI Plan never offered any new mutual funds after the GSI Plan became a customer in 1999, that there were no increases to the rate of RSPs for the GSI Plan's existing investment options, and that it never "altered" the SIA Management Fee. The first two arguments completely miss the points raised in the Opposition and are factually incorrect (SRCS, ¶¶ 56, 84, 109), while the third is a red herring.

The separate investment account management fee is not fixed or required under the contract, but is to be drawn entirely at the discretion of MassMutual (Assise Decl. Ex. 23 at § 2.04(C)(xi);[16] hence, any decision by MassMutual to withdraw a fee, regardless of whether the rate remains the same or is different, is an act of discretion. *See Charters*, 583 F. Supp. 2d at 198. Second and independently, MassMutual's acceptance of RSPs as compensation for the services it provides to the GSI Plan was never authorized in its contract with MassMutual. Thus, MassMutual's mere acceptance of RSPs for its own account is a discretionary act. Moreover, MassMutual fails to address the fact that the separate investment account management fee is inextricably connected to the amount of RSPs MassMutual receives, since MassMutual is, assuming *arguendo*, "indifferent" as to the "three sources . . . a plan uses to pay for its services." (SRCS, ¶ 21); (Opposition, at 23-24.)

### 5. MassMutual Exercise Of Discretion Over The Share Classes

MassMutual first asserts that the Opposition failed to address the authorities it cited,

---

[16]It provides that "MassMutual *may* withdraw a separate investment account management fee from each Separate Account. This fee will be at a daily rate which on an annual basis does not exceed 1.0% of the average daily Market Value of the applicable Separate Investment Account." (Assise Decl. Ex. 23 at § 2.04(C)(xi) (emphasis added.)

including *Leimkuehler*, which purportedly rejects the fact that MassMutual exercises discretionary authority to render it a fiduciary when it chooses which share classes to offer to the GSI Plan for its investment options *after* the GSI Plan entered into the contract with MassMutual in 1999. Again, MassMutual misses the point, which was addressed in the Opposition and *supra*, that *Leimkuehler* and the other authorities it cites pertain only to pre-contractual activity. (Opposition, at 19-20, 19 n.29.) MassMutual cannot persuasively explain away that significant distinction -- so it simply chooses to ignore it.

MassMutual then argues that since share classes, which affect the rate of RSPs, do not become a part of the GSI Plan menu until after the investment option is selected, MassMutual does not exercise any discretionary authority regarding the compensation it receives. This is absurd – MassMutual has and can choose which share classes to make available to the GSI Plan *after* the GSI Plan enters into the Group Contract, while the type of share class determines the rate of RSPs it will receive. (Opposition, at 24.)

### C.  MassMutual's Subsection (iii) Argument Is Without Merit

MassMutual reaffirms its absurd interpretation of subsection (iii) of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A)(iii), *which would render subsection (iii) virtually meaningless*, in recognition of the plain fact that subsection (iii) overwhelmingly supports MassMutual's status as a fiduciary to the GSI Plan with respect to the RSPs.

First, MassMutual argues that unless the Court adopts its interpretation, subsection (i) would purportedly be redundant, and that "plaintiff has yet to explain why its interpretation would not effectively read the 'exercise' requirement out of subsection (i)." (Reply, at 10.) Yet, GSI simply relies upon the actual language of the statute and case law - which MassMutual apparently would prefer to ignore. As the Opposition explains, quoting *Bouboulis*, "[s]ubsection

one imposes fiduciary status on those who exercise discretionary authority, ***regardless of whether such authority was ever granted***, [while] [s]ubsection three describes those individuals who have actually been granted discretionary authority, ***regardless of whether such authority is ever exercised***." (Opposition at 13) (*quoting Bouboulis*, 442 F.3d at 63 (emphasis added)).[17]

MassMutual next argues that the "administration of such plan" language under subsection (iii) and the "management or disposition of [plan] assets" language in subsection (i) must cover mutually exclusive activities to prevent subsection (i) from being irrelevant. But that position makes no sense (since subsection (i) can relate to the exercise of authority and subsection (iii) can relate to the grant of discretionary authority regarding the same activities), which is why this argument was rejected by Judge Young in *Healthcare Strategies*, *supra* at * 5-6. Instead, the difference in terminology can be attributed to fact that subsection (iii) was intended to cover all parties granted discretionary authority to administer the plan, duties of which, of course, includes the disposition of plan assets, while subsection (i) was intended to capture those uninvolved in the administration of a plan who nevertheless misuses plan assets. *See Chao v. Day*, 436 F3d 234, 274-75.

MassMutual's attempt to characterize *Varity Corp. v. Howe*, 516 U.S. 489 (1996) as limiting subsection (iii) to named plan administrators is baseless. First, *Varity Corp.* announced no such limitation, instead explaining that "administration" included the power "to carrying out an important plan purpose," and noting that "[t]here is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it

---

[17]Of course, MassMutual conveniently forgets to address *Bouboulis*, as well as the other authorities Plaintiff cited. (Opposition, at 14) (*quoting Glass Dimensions, Inc*., 931 F. Supp. 2d at 304. There simply is no redundancy – under subsection (i), a person can become a fiduciary if she exercises certain authority, while under subsection (iii), a person can become a fiduciary if she is granted discretionary authority; thus, a person can be rendered a fiduciary under both subsection (i) and (iii), as MassMutual is here, if the person is both granted discretionary authority ***and*** exercises that authority.

also includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan." 516 U.S. at 502, 504. And second, "[l]imiting the fiduciaries of plan administration to the named administrator of the plan does away with subsection three," because named plan administrators are already designated fiduciaries and subsection (iii) could have expressly limited its application to named plan administrators. *Healthcare Strategies*, 2013 WL 4446919, at *7. MassMutual also asserts that "administration" generally refers to benefits determination, citing to a series of irrelevant cases that simply applied subsection (iii) to benefits determination – none of the authorities supports MassMutual's argument that subsection (iii) applies *exclusively* to benefits determination. (Opposition, at 14.) Indeed, MassMutual's construct that "[s]ubsection (iii) is focused on person with a role in carrying out the terms of the plan, not on every person who plays any role at all for a plan," is a straw man – subsection (iii) only applies to those *granted discretionary authority* over aspects of the plan.

Finally, MassMutual's attempt to distinguish its powers from those of the defendant in *Healthcare Strategies, Inc.* is unavailing. 2013 Westlaw 4446919, at *7. It is quite ludicrous for MassMutual to suggest that the discretionary authority it possesses over the GSI Plan assets as a result of the contract – whether it be to safekeep the assets, provide investment options for participants, or draw compensation directly from those plan assets to make everything possible – are not "power[s] 'appropriate' to carrying out an important [GSI] plan purpose" of protecting and growing the GSI Plan participants' retirement assets. *Varity Corp.*, 516 U.S. at 502. Moreover, the language in the Group Contract here is more encompassing than in *Healthcare Strategies* because the GSI Plan's assets, here, are invested at MassMutual's *sole discretion*.

(SRCS, ¶ 5.)[18]

### D. MassMutual's Subsection (ii) Arguments Are Without Merit

MassMutual's subsection (ii) argument relies on a selective reading of the relevant DOL regulation, and conveniently omits the operative provision that a person providing "advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property" is also rendered a fiduciary under subsection (ii) if that person "[h]as discretionary authority or control, ***whether or not pursuant to agreement***.  29 C.F.R. § 2510.3–21(ii)(A).  Obviously, no "agreement" that MassMutual's services be a "primary basis for investment decisions" is necessary under subpart (A).  Here, MassMutual does no deny that it (1) determines the values of the securities and other assets within each Separate Account, which it advises to the GSI Plan, that it (2) has discretionary control over which securities and assets are held under each Separate Account, and that it receives compensation in the form of SIA management fees in exchange.  (SRCS, ¶¶ 56-58, 74); (Opposition, at 15-16).  And the SIA Management Fees are directly related to MassMutual's receipt of RSPs as it pools them together when determining the total compensation for servicing the GSI Plan.  (SRCS, ¶¶ 5, 17, 21-22, 55, 97, 111, 117); (Opposition, at 16).  Thus, MassMutual has no basis to avoid fiduciary status under subsection (ii). (SRCS, ¶¶ 8, 56-58, 74, 85, 116.)

---

[18]MassMutual's fiduciary status arising under Subsection (iii) is intimately related to its receipt of RSPs . MassMutual does not receive any RSPs until *after* a plan invests in the Separate Account. (SRCS, ¶ 18.) MassMutual's receipt of RSPs is contingent on the availability of the mutual fund providing such RSPs on the GSI Plan menu.  (SRCS, ¶¶ 5, 13-18.)  It is irrelevant whether MassMutual chose to add or delete investment options – the fact that MassMutual has the discretionary authority to restrict the investment options, and thus its receipt of RSPs, means that the two are intimately related.  Finally, MassMutual does not address the fact that both the Separate Investment Account Management Fees and the RSPs are components of the compensation MassMutual assesses from the GSI Plan for its services and, thus, are intimately related.  (SRCS, ¶¶ 17, 21-22.)

### III.    CONCLUSION

For all of the reasons explained above, as well as the reasons stated in the Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Plaintiff, Golden Star, Inc., respectfully requests that the Court deny Defendant's Motion for Summary Judgment.

Dated: February 12, 2014                    Respectfully submitted,


                                        /s/ Laurie Rubinow
                                         James E. Miller (*admitted pro hac vice*)
                                         Laurie Rubinow (*admitted pro hac vice*)
                                         Shepherd Finkelman Miller & Shah, LLP
                                         65 Main Street
                                         Chester, CT 06412
                                         Telephone: (860) 526-1100
                                         Facsimile: (860) 526-1120
                                         Email: jmiller@sfmslaw.com
                                                lrubinow@sfmslaw.com

                                         Michelle H. Blauner, BBO #549049
                                         Shapiro Haber & Urmy LLP
                                         53 State Street
                                         Boston MA, 02109
                                         Telephone:  (617) 439-3939
                                         Facsimile:  (617) 439-0134
                                         Email: mblauner@shulaw.com

                                         John M. Edgar
                                         John F. Edgar
                                         Edgar Law Firm LLC
                                         1032 Pennsylvania Avenue
                                         Kansas City, MO 64105
                                         Telephone: (816) 531-0033
                                         Facsimile:  (816) 531-3322
                                         Email: jme@edgarlawfirm.com
                                               jfe@edgarlawfirm.com

Ronald S. Kravitz
Shepherd Finkelman Miller & Shah, LLP
One California St., Suite 900
San Francisco, CA  94111
Telephone: (415) 429-5272
Facsimile:  (866) 300-7367
Email: rkravitz@sfmslaw.com

Attorneys for Plaintiff
and the Proposed Class

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2014, a copy of the foregoing and all accompanying papers was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Laurie Rubinow

Laurie Rubinow (*admitted pro hac vice*)
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: lrubinow@sfmslaw.com