**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GOLDEN STAR, INC., | ) | |
| Plan Administrator of the Golden Star | ) | Case No: 3:11-CV-30235-PBS |
| Administrative Associates' 401(k) Plan and | ) | |
| Golden Star Bargaining Associates' 401(k) | ) | The Honorable Patti B. Saris |
| Plan, On Behalf of Itself and All Others | ) | |
| Similarly Situated, | ) | LEAVE TO FILE GRANTED |
| | ) | BY ORDER DATED |
| Plaintiff, | ) | JANUARY 17, 2014 |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS MUTUAL LIFE | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | Dated February 12, 2014 |

---

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S**
**LOCAL RULE 56.1 RESPONSE AND COUNTER-STATEMENT**
**OF MATERIAL FACTS OF RECORD**

---

Plaintiff, Golden Star, Inc. ("Plaintiff" or "GSI"), respectfully submits this Sur-Reply to

Defendant's Reply to Plaintiff's Local Rule 56.1 Response and Counter-Statement of Material

Facts of Record ("SRCS").

## <u>INTRODUCTION</u>

As explained below, the factual assertions of Defendant, Massachusetts Mutual Life

Insurance Co. ("MassMutual" or "Defendant") are routinely incorrect and unsupported by

competent evidence (and, in many cases, are contradicted by specific record evidence). In its

Reply to Plaintiff's Local Rule 56.1 Response and Counter-Statement of Facts ("RCS"),

MassMutual is unable to meaningfully reply to the RCS and explain why its alleged "facts" are

supported by evidence or could be treated as undisputed. Instead, MassMutual regularly attempts

to conceal its inability to meet its burden on summary judgment by quarreling with Plaintiff's

RCS as constituting argument.  But there is nothing improper about the fact that Plaintiff's RCS

points out MassMutual's inability to support its factual assertions, while identifying evidence

that specifically contradicts MassMutual's unsupported assertions.  Indeed, that is the entire

purpose of the RCS.  MassMutual also criticizes Plaintiff's use of the phrase, "By way of further

response..." in its RCS, when it offers specific facts demonstrating that Defendant's factual

assertions are false, incorrect or misleading and/or to place the "facts" upon which MassMutual

seeks to rely in proper context.  MassMutual identifies no rule or basis for contesting Plaintiff's

nomenclature or approach to providing the Court with a full and accurate record upon which to

judge the existence of material issues of fact.  Indeed, MassMutual's "high" rhetoric and caviling

and carping reminds one of Queen Gertrude's oft quoted line in *Hamlet*:  "The lady doth protest

too much, methinks."  Shakespeare, *Hamlet* Act 3, Scene 2, 222–230.  Taken in total, it is

apparent that MassMutual cannot factually support its request for summary judgment from an

evidentiary perspective (much less legally) and, in light of the grave deficiencies in

MassMutual's submission, the Court should deny Defendant's request for summary judgment on

the basis of the record in this case, which is replete with issues of material fact that should be

resolved through a trial on the merits.

For the convenience of the Court, Plaintiff has produced MassMutual's initial Local Civil

Rule Statement of "Undisputed" Material Facts and Reply in support thereof (which appear in

italics) and Plaintiff's RCS and SRCS, for the convenience of the Court, in full text below.[1]

---

[1]The cited sections of deposition transcripts, affidavits and documents supporting Plaintiff's Response and
Counter-Statement of Material Facts of Record dated December 18, 2013 [Dkt. 134] appear in the accompanying
Appendix as Exhibits "A" through "AG," preceded by an index, and are identified in the accompanying Declaration

### PLAINTIFF'S SUR-REPLY IN RESPONSE TO DEFENDANT'S REPLY
### TO PLAINTIFF'S RESPONSE TO STATEMENT OF "UNDISPUTED" FACTS

1.      *Plaintiff Golden Star, Inc. ("GSI"), is a manufacturer and international distributor of floor maintenance products based in Kansas City, Missouri.  (Ex. 3, E. Julo Dep. at 28; Dkt. 1 ¶ 11.)*

**Plaintiff's Response**:  Admitted.

2.      *GSI offers its employees two 401(k) plans: the Golden Star Administrative Associates' 401(k) plan and the Golden Star Bargaining Associates' 401(k) plan (collectively, the "Plan").  (Dkt. 1 ¶ 11.)*

**Plaintiff's Response**:  Admitted.

3.      *GSI is the plan administrator and named fiduciary of the Plan.  (Dkt. 1 ¶ 11.)*

**Plaintiff's Response**:  Admitted.

4.      *MassMutual is an insurance company that also provides services to 401(k) plans. (Ex. 17, Wietsma Decl. Ex. A at MASSMUT0000426-445.)*

**Plaintiff's Response**:  Admitted.

5.      *MassMutual's services to 401(k) plans fall into two categories:  (1) a menu of investment options, and (2) recordkeeping and other ministerial services.  (Id.)*

---

of Kolin C. Tang.  Each citation to a deposition is cited with the deponent's last name and the page and line number(s) associated with the pertinent testimony (*e.g.*, Demetriou Dep. at 50:1 - 51:20), and where more than one day of deposition was taken, the citation includes the pertinent date of the deposition (*e.g.*, Wietsma 10/1/13 Dep. at 50:1).  All affidavits or declarations cited are referenced by the person's last name with a citation to the pertinent paragraph number (*e.g.* Wietsma Decl. at ¶ 1) and any corresponding Docket No. ("Dkt. No.")  Each citation to a document is identified by deposition exhibit number and page number (*e.g.*, Wietsma Dep. Ex. 1 at 50) or bates number or other identifier.  All of the evidence submitted in support of this SRCS is already part of the record in this case on summary judgment.

**Plaintiff's Response**:  Admitted in part and denied in part.  It only is admitted that MassMutual provides certain services to 401(k) plans, which include designing and maintaining a menu of investment options and providing certain recordkeeping services.  It is expressly denied that MassMutual's services are ministerial in nature or that MassMutual's services are limited to maintaining a menu of investment options and providing recordkeeping services. Rather than constituting ministerial services, MassMutual holds the authority to make and, in fact, makes, a number of discretionary investment and administrative decisions for and on behalf of the 401(k) plans, including the GSI Plan.  First, the Group Annuity Contract ("GAC" or "Group Contract") between MassMutual and GSI expressly grants MassMutual the authority to administer, control, and manage the Separate Accounts holding the GSI Plan's retirement assets and MassMutual takes legal ownership of the Separate Accounts and the assets contained therein, including the GSI Plan's retirement assets:

> *... MassMutual has exclusive and absolute ownership and control of the assets in the Separate Investment Accounts....*  Only MassMutual will have any individual, legal, or equitable ownership of any investments or assets of the Separate Investment Accounts....

> *.... All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including, but not limited to, the discontinuance of a Separate Investment Account.*  The assets of the Separate Investment Accounts may be invested, wholly or partly, in securities, including the shares of any investment company registered under the Investment Company Act of 1940.  In exercise of its sole discretion, MassMutual may from time to time, hire an investment advisor registered under the Investment Advisors Act of 1940 to assist in the investment of assets.

(*See* Declaration of Christopher M. Assise, Attorney for Defendant, in Support of Summary

Judgment dated November 20, 2013 ("Assise Decl.") at Exhibit ("Ex.") 23 at 40 (§ 5.22)[2]; Miles

11/13/12 Dep. at 44:3-46:2.)  Second, MassMutual retains the discretionary authority,

responsibility and control to change the investment options available to the GSI Plan by adding,

deleting and substituting investment options within both the universe of investment options

available to the GSI Plan, as well as the actual investment options offered by the GSI Plan to its

participants.  (See Assise Decl. Exs. 5 (GSI04719-4720); 6 (MASSMUT0165371-165373); 17 at

Ex. "C"; 23 at 40 (§ 5.22)); see also Demetriou Dep. Ex. 6; Demetriou Dep. 61:8-64:1.  In fact,

MassMutual has specifically considered making changes in the investments made available to the

Plans and has substituted certain investments options for other investment options in its sole

discretion.  (See Assise Decl. at Exs. 18 and 19.)  Third, as part of its discretionary administration

of the Separate Accounts and the investment options offered to the GSI Plan and the other Plans,

MassMutual also chooses and has the discretion to change the share class(es) of the mutual funds

that it offers as investment options to the GSI Plan and the other Plans, and the primary, if not

exclusive, differences between share classes of a mutual fund are the expense ratios of the mutual

fund and the corresponding amount of revenue sharing payments ("RSPs") paid to MassMutual

by the mutual funds (with the more expensive share classes of the same exact mutual fund

rendering higher amounts of RSPs to MassMutual).  (Wietsma 11/14/12 Dep. at 40:9-40:19,

43:17-44:15 and 45:23 to 47:21.)  Fourth, MassMutual retains the discretion to set its own

compensation in connection with the services that it provides to the GSI Plan and other Plans

because (a) "MassMutual may withdraw a separate investment account management fee from

---

[2]Citations to Assise Decl. Ex. 23 reference the page number of the exhibit (i.e., 40 of 46), rather than the
page number of the document contained in the exhibit.

each Separate Investment Account," (*see* Assise Decl. Ex. 23 at 28 (§ 2.04 C.(xi))); (b) "[f]or

each asset allocation account, alternative equity account and access separate investment account,

MassMutual may withdraw an additional fee for ancillary separate account services," (*see* Assise

Decl.Ex. 23 at 28 (§ 2.04 C. (xii)); and (c) Defendant is always cognizant of the amount of RSPs

it is receiving and is always monitoring the amount of RSPs by other service providers and, if it

believes that others are receiving higher amounts of RSPs, it will proactively takes steps to obtain

the higher level of revenue sharing. (Demetriou Dep. at 24:13-26:1.) MassMutual acknowledges

that "every time" it learns that revenue sharing is being paid at a greater amount by a fund for the

same product, that triggers an inquiry on MassMutual's part. (Demetriou Dep. at 24:24-25:2.)

By way of example, when MassMutual determined that it was being paid 25 less basis points in

RSPs by a mutual fund than was potentially available through another share class being offered

by the fund, it immediately made an inquiry of the fund. (Demitriou Dep. at 50:11-17;

Demetriou Dep. Ex. 3.) Fifth, MassMutual makes discretionary investment decisions for the GSI

Plan and the other Plans by, among other things, choosing to reinvest all mutual fund dividends,

which has the effect of increasing the amount of the assets of the Plans in the Separate Accounts

and under MassMutual's management, thereby increasing the amount of RSPs payable to

MassMutual. (Wietsma 11/14/12 Dep. at 34:5-36:6.) Finally, the evidence cited by MassMutual

does not support the propositions for which it is cited with respect to Defendant's ministerial

characterization and the implied limitation of services contained in Defendant's asserted

"undisputed" statement of "fact." As reflected above, MassMutual exercises complete and

unfettered ownership and control of the GSI Plan's retirement assets and invests those assets at

its sole discretion.

*__Defendant's Reply__: With the exception of the first sentence, plaintiff's response is an improper argument and does not present any contrary facts. The first sentence of plaintiff's response acknowledges that "MassMutual provides certain services to 401(k) plans, which include designing and maintaining a menu of investment options and providing certain recordkeeping services." Thus plaintiff has admitted the entirety of statement ¶ 5, except that the "other" services are ministerial in nature. Nothing in the remainder of plaintiff's response points to any facts that create a dispute over whether MassMutual's services are ministerial. Instead, the remainder of plaintiff's response addresses whether MassMutual exercises discretion, a fact not alleged in statement ¶ 5. Because the substance of plaintiff's denial is unrelated to the facts which are purportedly being denied, it should be disregarded and this fact should be deemed admitted.*

__Plaintiff's Sur-Reply__: Defendant's Reply highlights the desperate and meritless nature of its position. Notwithstanding Defendant's incorrect assertion and conclusional reasoning, Plaintiff's response presents a concise statement of facts with specific citations to the factual record for each factual statement, which facts demonstrate that there is a genuine issue of material fact to be tried with respect to Defendant's assertions that its services are limited to providing (a) "a menu of investment options," and (b) "recordkeeping and other ministerial services." Plaintiff's Response establishes through evidentiary citation (which MassMutual does not challenge in any respect) that MassMutual holds the authority to make and, in fact, makes, a number of discretionary investment and administrative decisions for and on behalf of the GSI Plan, including that (1) the Group Contract between MassMutual and GSI expressly grants MassMutual the authority to administer, control, and manage the Separate Accounts (including

vesting MassMutual with absolute ownership and control over GSI's retirement assets that are

invested through the Separate Accounts), (2) MassMutual retains the discretionary authority,

responsibility and control to change the investment options available to the GSI Plan by adding,

deleting and substituting investment options available to the GSI Plan and its participants, (3) as

part of its discretionary administration of the Separate Accounts and the investment options

offered to the GSI Plan and the other Plans, MassMutual also chooses and has the discretion to

change the share class(es) of the mutual funds that it offers as investment options to the GSI Plan

and the other Plans, (4) MassMutual retains the discretion to set its own compensation in

connection with the services that it provides to the GSI Plan and other Plans, and (5) MassMutual

makes discretionary investment decisions for the GSI Plan and the other Plans.  MassMutual's

suggestion that Plaintiff has not contested Defendant's unsupportable factual assertion that

Defendant's services are allegedly "ministerial" in nature because Plaintiff simply and only has

established the enormous discretionary authority and control that MassMutual possesses and

exercises with respect to the GSI Plan assumes a complete lack of knowledge on the part of the

Court with respect to principles of ERISA.  *See Boucher v. Williams*, 13 F. Supp. 2d 84, 91-92

(D. Me. 1998)(explaining the difference between ministerial and discretionary acts and the

consequences with respect to fiduciary status under ERISA, collecting cases regarding the same

and thereby establishing the materiality of the factual issue as to whether MassMutual's actions

and powers were ministerial or discretionary in nature).  Likewise, as Plaintiff demonstrated in its

succinct, factually specific and record supported response, Defendant's assertion that its actions

are limited to providing a menu of investments and certain ministerial/recordkeeping functions is

belied by the evidence.  Finally, Defendant fails to respond to the assertion contained in

Plaintiff's Response that the evidence cited by MassMutual does not support the propositions for which it is cited with respect to Defendant's ministerial characterization and the implied limitation of services contained in Defendant's asserted "undisputed" statement of "fact."  As Defendant consistently fails to appreciate, "[a]ccording to Rule 56(e), the party moving for summary judgement bears the initial responsibility of demonstrating the absence of a genuine issue of material fact."  *Lausell-Archilla v. Huertas-Nieves*, 56 F. Supp. 2d 163, 164 (D.P.R. 1999), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Hernandez v. Phillip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007)(Local Civil Rule 56.1 requires a "concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation" and "[f]ailure to include such a statement constitutes grounds for denial of the motion" while "litigants ignore [the local rules] at their peril"); *Fedex Customer Info. Servs., Inc. v. Fright Catalog*, 08-40180, 2010 WL 3505162, at *1 (D. Mass. Aug. 27, 2010)(refusing to accept undisputed facts that were not supported by evidence); *Hodge v. Roblex Aviation, Inc.*, CIV. 09-1445 (SEC), 2010 WL 2852854, at *4 (D.P.R. July 20, 2010)(proposed facts that are not supported by a specific record citation may be disregarded by the court when ruling on motion for summary judgment); *TC Investments Corp. v. Becker*, 733 F. Supp. 2d 287, 291 (D.P.R. 2010)("defendants failed to comply with the basic principle of Local Rule 56(e) that all factual assertions must be accompanied by proper record citation in order to be admitted on summary judgment").  Here, MassMutual's persistent failure to support its alleged "undisputed" facts with actual record evidence or other adequate proof is fatal to its attempt to prevent a trial on the merits in this case.  Since it has failed to meet its burden, Defendant's

factual assertions should be stricken.

6. *MassMutual or one of its predecessors has provided services to the Plan since 1993. (Ex. 3, E. Julo Dep. at 37, 40.)*

**Plaintiff's Response**:  Admitted.

7. *GSI signed a group annuity contract with MassMutual in 1999.  (Ex. 23, Group Annuity Contract.)*

**Plaintiff's Response**:  Admitted.

8. *MassMutual offers retirement plans a menu of investment options ("the Overall Menu").  MassMutual occasionally changes the Overall Menu.  When it deletes an option from the Overall Menu, it does so only prospectively.  Plans that already are invested in the deleted options are not required to change their plan menu.  (Ex. 11, Wietsma Dep. (10/1/13) at 24, 28-29.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  It is admitted that MassMutual offers a limited menu of investment options ("Limited Menu" or "Smart Architecture Menu") from the universe of mutual funds that otherwise would be available to the GSI Plan and the other Plans, and mutual funds compete to be included on this Limited Menu by making RSPs to MassMutual.  (*See* Wietsma 10/1/13 Dep. at 24:2-24:18.)  It is denied that, when MassMutual deletes an investment option from its Limited Menu, it only does so prospectively.  Although Plans invested in the deleted options may be permitted to continue investing in that investment option, Plans that have made those deleted options available to their participants, but in which actual investments have not been made by participants as of the date of the deletion, also will have the investment option deleted from the Plans' menus.  (Wietsma 10/1/13 Dep. at

28:19- 29:11; 30:13-31:22.)  Moreover, the evidence establishes instances in which GSI was

invested in mutual funds that MassMutual determined, in its sole discretion, to delete from its

Limited Menu and substitute with replacement investment options and GSI had no choice to

continue with these deleted options, notwithstanding MassMutual's self-serving assertion to the

contrary.  (*See* Assise Decl. at Exs. 18, 19; *see also* Demetriou Dep. Ex. 6 ("MassMutual has

exercised its right under its contract with INVESCO to terminate its investment, ... MassMutual

is in the process of searching for a replacement for the INVESCO Stable Value trust..., [i]n the

event a plan fiduciary notifies MassMutual that it does not want to offer the SIA with the

replacement investment..., MassMutual will transfer the value of the plan's investment in the SIA

to any other available investment selected by the plan sponsor...."); Demetriou Dep. at

61:8-64:1.)  Thus, it is patently untrue that the Plans always are permitted to retain investments in

mutual funds or other instruments which MassMutual, in its discretion, elects to delete or

replace.  Furthermore, MassMutual retains the right and discretion to change the investment

options and actual investments of the Plans, including the GSI Plan, by substituting a new or

existing investment option made available for a current investment option and/or by changing the

investments offered through a Separate Account, and MassMutual has exercised its right to

substitute existing investment options and to change the investments associated with Separate

Accounts.  (*See* Assise Decl. Exs. 5 (GSI04719-4720); 6 (MASSMUT0165371-165373); 17 at

Ex. "C"; 23 at 40 (§ 5.22).)

   ***Defendant's Reply***:  *Plaintiff's response is an improper argument and does not present*

*any contrary facts.  Statement ¶ 8 alleges that "MassMutual offers retirement plans a menu of*

*investment options," that "MassMutual occasionally changes the Overall Menu," that "[w]hen*

it deletes an option from the Overall Menu, it does so only prospectively," meaning "[p]lans that already are invested in the deleted options are not required to change their plan menu." Plaintiff's response to statement ¶ 8 admits that MassMutual offers retirement plans a menu of investment options and that MassMutual occasionally changes the Overall Menu.

Plaintiff denies that MassMutual only prospectively changes the Overall Menu, but it offers no factual support for its claim, so this portion of the statement should be deemed admitted as well. Under Local Rule 56.1, a denial is only proper if the denying party offers "page references to affidavits, depositions and other documentation." See L.R. 56.1. Here plaintiff fails to do so. Instead, plaintiff points to a host of irrelevant documents. Assise Affidavit Exhibits 18 and 19 document name changes, not fund changes. Indeed, the face of these documents make clear that the new funds offer "the same style, strategy, portfolio managers [people running the fund] and objectives." (E.g., Assise Aff. Ex. 19.) Demetriou deposition exhibit 6 is equally inapposite as a link in the email chain after the segment plaintiff quoted stated the fund would be "put.. back on," and plaintiff elected not to elicit deposition testimony regarding whether the fund being discussed was deleted. (Tang Decl. Ex. E, Demetriou Dep. Ex. 6.) Finally the cited portions of Mr. Wietsma's testimony reaffirm the statements in ¶ 8, as they confirm MassMutual's assertions that "a plan that had invested [in a fund]… would continue to have that fund available to them" and "a plan that had not invested… would no longer [have the fund] be available to them." (Assise Suppl. Decl. Ex 25, Wietsma Dep. (10/1/13) at 28:19-29:11; 30:13-31:22.)

The remainder of plaintiff's response is an improper argument about topics not asserted in statement ¶ 8 and should be disregarded.

**Plaintiff's Sur-Reply**: Defendant's Reply highlights the desperate and meritless nature of its position.  Defendant requests that the Court view the evidence in a light most favorable to MassMutual, as opposed to Plaintiff, as required, and ignores the consequence of the very testimony and documents it cites.  In a shocking attempt to distort the evidence, Defendant literally attempts to run away from the meaning of its own documents and the admissions of its own witnesses.  With respect to Demetriou Exhibit 6, Mr. Demetriou specifically admitted that INVESCO was terminated from MassMutual's Smart Architecture platform, Demetriou Dep. at 61:21-62:6 (Q.  "[D]o you know whether Invesco was terminated from the platform?....A.  Yes, they were.")  Moreover, if one reads the entirety of Demetriou Exhibit 6, it is clear that INVESCO is being put back on a menu with respect to registered products (not at issue in this case) until such time as the termination of the INVESCO investment option at issue can be fully terminated in light of MassMutual's unilateral determination to remove this investment option. Moreover, the consequence of Mr. Wietsma's cited deposition testimony is that, if a plan offered an investment to its participants but, to date, no investments had been made by the plan (*i.e.*, through its participants) in that investment option, the plan would no longer be permitted to offer that investment option to its participants, *see* Wietsma 10/1/13 Dep. at 28:19-29:11; 30:13-31:22 ("a plan that had invested [in a fund]… would continue to have that fund available to them" and "a plan that had not invested… would no longer [have the fund be] available to them"), which fully supports Plaintiff's position on the issue.  Finally, despite its caviling and carping, Assise Decl. Exs. 18 and 19 establish that MassMutual unilaterally changed the investments of certain funds in which the GSI Plan had previously invested by transferring the assets into "new, sub-advised mutual funds."  http://wwwrs.massmutual.com/retire/pdffolder/investments/rs4649.pdf

-13-

(in which MassMutual explains that ("[w]e hire subadvisers to manage our funds, so our fund structure offers a built-in layer of oversight that enables us to perform ongoing due diligence and monitor the managers in action").  The documents, on their face, establish that there was nothing voluntary about this process and that Plaintiff was not given the option of retaining its previous investments.  The fact that the admissions of Defendant's witnesses and Defendant's own documents are unfavorable to its position are not a basis to deny the existence of those evidentiary admissions.  At a minimum, the record establishes that material issues of fact exist and that Defendant's factual assertion cannot be treated as undisputed.

> *9.      Plans select investment options from the Overall Menu and offer the selected options (the "Plan Menu") to plan participants.  Plans can also choose investment options that are not on the Overall Menu and options that have been deleted from the Overall Menu.  (Id. at 25, 31, 33-34.)*

**Plaintiff's Response**:  Denied.  Plaintiff incorporates by reference its response to Paragraph 8, which demonstrates that this assertion is factually incorrect and unsupportable based on the actual facts of record.

***Defendant's Reply***: *Plaintiff's denial does not present any facts controverting the facts set forth in statement ¶ 9 and accordingly should be disregarded pursuant to Local Rule 56.1. Statement ¶ 9 states that "[p]lans select investment options from the Overall Menu and offer the selected options to plan participants" and that plans can also choose options that are not on the Overall Menu.  The entirety of plaintiff's denial of statement ¶ 8, which is offered in response to statement ¶ 9 as well, focuses on the circumstances under which investment options are deleted from the Overall Menu.  Because nothing in plaintiff's response to statement ¶ 8 dispute the fact*

-14-

*that plans (as opposed to MassMutual) select the investment options that will be offered to their*

*participants, or suggests that plans are limited to the investment options in the plan menu,*

*plaintiff's denial of statement ¶ 9 is improper and it should be deemed admitted.*

**Plaintiff's Sur-Reply**:  Defendant requests that the Court view the evidence in a light

most favorable to MassMutual, as opposed to Plaintiff, as required, and ignores the consequence

of the very testimony and documents Plaintiff cites in contesting this factual assertion.  The

evidence cited by Plaintiff establishes that Defendant terminated investments and replaced

investments available to Plaintiff without providing Plaintiff with the opportunity to keep those

investments, while also deleting investments that were available to the GSI Plan and offered to

(but not invested in) by its participants.  That evidence specifically contradicts Defendant's

assertion that "*Plans can also choose investment options that are not on the Overall Menu and*

*options that have been deleted from the Overall Menu*," thereby establishing the existence of a

material issue of fact notwithstanding Defendant's assertion to the contrary.

10.     *The investment options mainly consist of MassMutual's separate accounts.  (Id. at*

*85.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  By way of further response,

although the cited testimony identifies the corresponding document (MASSMUT000179903) as

an internal spreadsheet consisting of the Separate Accounts that MassMutual makes available to

the Plans as investment options, neither the cited testimony nor the spreadsheet itself support the

proposition that the investment options made available to the Plans "mainly consist" of such

Separate Accounts.

***Defendant's Reply***:  *Plaintiff has admitted the facts set forth in statement ¶ 10. Plaintiff's semantic debate over whether the hundreds of separate accounts listed in MASSMUT0179903 are sufficiently numerous to conclude that the offered investment options "mainly consisted" of separate accounts is not material, and so the facts in this statement should be deemed admitted.  (Assise Aff. Ex. 21.)*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  The fact that Defendant asserts that the investment options "mainly consist" of its separate accounts but then provides no record evidence to support that assertion is an adequate and proper basis to deny this unsupported factual assertion which Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.

11.     *Most separate accounts invest in the shares of a single mutual fund.  (Ex. 11, Wietsma Dep. (10/1/13) at 10; Ex. 1, Demetriou Dep. at 69.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  By way of further response, the cited documents and testimony do not support the proposition contained in this paragraph.  Rather, Mr. Wietsma simply testified that investment in a single mutual fund is the "most common" structure of a Separate Account and Mr. Demetriou testified that, although a number of Separate Accounts at Mass Mutual contain a single mutual fund, there also are Separate Accounts at MassMutual that do not contain a mutual fund but, instead, contain a pool of assets.  (*See* Deposition of Peter Demetriou (Demetriou Dep.) at 69:14-70:15; Wietsma 10/1/13 Dep. at 10:12-10:24.)

***Defendant's Reply***: *Plaintiff has admitted the material facts contained in section ¶ 11. Plaintiff's semantic debate over whether the terms "most common" and "most" are different is not a dispute material to this litigation. Further, nothing in statement ¶ 11 claims that the separate accounts always invest in shares of a single mutual fund, making the last sentence of plaintiff's denial irrelevant.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment. The fact that Defendant asserts that the meaning of the words "most common" and "most" have the same meaning fails to recognize that "most common" can mean, for example, a plurality, as opposed to a majority. Despite Defendant's accusation that Plaintiff is resorting to a semantic debate, words have meaning and it is undisputed that Defendant has failed to produce any record evidence to support its assertion, which is an adequate and proper basis to deny this unsupported factual assertion which Defendant itself identified as material. *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291. Moreover, Plaintiff's citation to the fact of record that certain separate accounts contain a pool of assets, as opposed to a single mutual fund, is clearly pertinent and relevant to the issue of whether most separate accounts are invested in a single mutual fund, especially where, as here, Defendant has failed to cite record evidence to support its position, as required.

12.     *Some of the mutual funds that are offered through the separate accounts are MassMutual proprietary funds, and other mutual funds are offered by third parties.  (Ex. 1, Demetriou Dep. at 17-18; Ex. 22, MASSMUT0295967-70.)*

**Plaintiff's Response**:  Denied.  By way of further response, the cited documents and testimony do not support the factual assertions contained in this paragraph.  (See Demetriou Dep. at 17:18-18:1.)

*Defendant's Reply*:  *Exhibit 22 to the Assise Affidavit lists a variety of mutual funds, some of which are offered by third parties (e.g., American Funds) and some of which are MassMutual propriety funds, so the cited material plainly supports the asserted facts.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  The testimony of Mr. Demetriou that is cited relates in no fashion to funds (whether proprietary or offered by third parties) that are invested through Separate Accounts and Assise Decl. Ex. 22 (MASSMUT0295967-70) does not distinguish between proprietary and third party funds, indicate which funds fall into which category or indicate that they are invested through Separate Accounts in any respect.  It is indisputable that Defendant has failed to produce any record evidence to support its assertion in this paragraph, which is an adequate and proper basis to deny this unsupported factual assertion which Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.

13.     *For most of the third-party mutual funds on the Overall Menu, MassMutual enters into an agreement (known as a Participation Agreement or Services Agreement) with the mutual fund company to provide various services in exchange for a fee.  (Ex. 8, Miles (11/13/12) Dep. at 110; Ex. 10, Wietsma Dep. (11/14/12) at 10-11.)*

**Plaintiff's Response**:  Denied.  By way of further response, the cited documents and testimony do not support the factual assertions contained in this paragraph.  (*See* Miles 11/13/12

Dep. at 110:14-110:21; Wietsma 11/14/12 Dep. at 10:16-11:12.)  Moreover, to the extent that the

assertions contained in this paragraph are meant to imply that any agreements that MassMutual

has entered into with mutual funds (the "Participation Agreements") are bona fide in nature or

relate to services rendered by MassMutual, Plaintiff specifically denies the same.  MassMutual

provides the same, undefined "various services" to mutual funds, regardless of the amount of

fees paid by the mutual fund.  (Demetriou Dep. at 30:15-32:3, 53:15-54:4.)  Indeed, MassMutual

provides the same, undefined "various services" for mutual funds that do not pay it any RSPs.

(Wietsma 11/14/12 Dep. at 62:22-63:9.)  MassMutual separately agreed to provide the same

services to the GSI Plan under the Group Annuity Contract ("GAC") and/or is legally bound to

provide the same services because of its status as the owner and legal title holder of the GSI Plan

assets.  (*See* Assise Decl. at Ex. 23, at 23-24, 40 (§§ 2.04, 5.22); Wietsma 11/14/12 Dep. at

10:16-13:6.).[3]  As a result, the only real consideration that MassMutual offers to the mutual funds

in exchange for the RSPs it receives under the Participation Agreements is access to

MassMutual's retirement plan clients, such as the GSI Plan, through MassMutual's Limited

Menu.  (*See* Demetriou Dep. at 21:5-8.)  In other words, the Participation Agreements are

nothing more than pay-to-play, shelf-space agreements.  As MassMutual acknowledged in

internal correspondence, explaining why RSPs differ across share classes even though there is no

difference in the services provided to the Plans based on different share classes is difficult to

explain or justify: "critical questions we must clarify are how the fees we charge within our

Funds (i.e., 12b-1, Service Fees, Admin Fees) apply to the services we are actually providing and

---

[3]The pagination referenced for the GAC is the as-filed exhibit page number rather than the internal
document pagination.

what is the justification for differing fee rates across Classes."  (Eldredge Dep. Ex. 2; Eldredge Dep. at 22:9-50:24.)

*Defendant's Reply*:  *Plaintiff's response is an improper argument, does not present any contrary facts, and accordingly this fact should be deemed admitted.  The cited testimony states that MassMutual enters into participation agreements with mutual fund companies and that under those agreements MassMutual agrees to provide various services.  (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10-11.)  Mr. Wietsma's testimony makes clear that, among other things, MassMutual provides Mutual Funds with various services and data.  Plaintiff's response to statement ¶ 13 is merely an argument about the purported the legal consequence of the undisputed facts.  Having presented no contrary facts, statement ¶ 13 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  First, the cited testimony of Mr. Miles [Miles (11/13/12) Dep. at 110] contains no statement relating to Defendant providing services to mutual funds for a fee.  Second, the cited testimony of Mr. Wietsma makes clear that (a) the services that Defendant provides are for the Plans and their participants, (b) states that Defendant exchanges data with mutual funds to make the mutual funds aware of transaction data, and (c) in no way relates to the provision of any services by Defendant to mutual funds in return for any fees, as MassMutual asserted in its Statement of "Undisputed" Facts.  Once again, Defendant has failed to produce any record evidence to support its assertion in this paragraph, which is an adequate and proper basis to deny this unsupported factual assertion which Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra*

at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.  Moreover, Plaintiff has cited

specific evidence establishing that the services performed by Defendant (whether for the Plans,

their participants or any mutual funds) are wholly unrelated to the compensation and fees (*i.e.*,

RSPs) that Defendant receives from the mutual funds, thereby establishing a material issue of

fact as to whether Defendant receives any fees in return for providing services to mutual funds.

> *14.     MassMutual enters into Participation Agreements before it places any mutual*
> *fund on its Overall Menu.  (Ex. 1, Demetrious Dep. at 21.)*

**Plaintiff's Response**:  Denied.  In the course of discovery, when MassMutual was unable

to produce Participation Agreements for specific investments offered by the GSI Plan, counsel

for Defendant specifically represented that "[t]here are no revenue sharing agreements for

Wellington and Driehaus" and "[w]e do not have any record of Retirement services having a

Fund Servicing Agreement with Davis Selected Advisors prior to September 26, 2006."  (*See*

Tang Decl. at Exs. AC; AD and AE.)  Since MassMutual does not have Participation Agreements

related to certain mutual funds that it offers on its Limited Menu and does not have Participation

Agreements applicable to time periods in which the GSI Plan invested in such mutual funds, the

evidence of record obviously does not support MassMutual's assertion that it "enters into

Participation Agreements before it places any mutual fund on its Overall Menu."

> ***Defendant's Reply***:  *Plaintiff's response does not present any evidence that disputes the*
> *facts asserted in the statement, so the facts in statement ¶ 14 should be deemed admitted.  In the*
> *testimony cited in support of statement ¶ 14, Mr. Demetriou testified that "a fund service*
> *agreement [would] be put in place prior to a determination being made that a fund would be*
> *placed on a platform." (Assise Aff. Ex. 1, Demetriou Dep. at 21:1-8.)  The fact that certain*

*participation agreements could not be located does not somehow contradict this testimony. Plaintiff does not point to any evidence that a participation agreement was entered into after a fund was placed on the menu.  The assets in the Driehaus fund consist of a pool of securities, not an underlying mutual fund, so there is no revenue sharing agreement.  (Id. at 70:11-24.)  Having failed to present any evidence to dispute the facts in statement ¶ 14, the facts should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant's Reply misunderstands the nature of a disputed issue of fact.  Defendant has asserted unequivocally in its Statement of "Undisputed" Facts that it enters into Participation Agreements before placing an investment on its Limited Menu, but then confirmed in writing that there were no Participation Agreements for certain mutual funds and that there was no record of certain Participation Agreements before a material date.  Defendant did not state that the Participation Agreements existed but could not be located.  Rather, Defendant stated that either (1) they did not exist, or (2) there was no record of their existence.  Since Defendant has explicitly stated that Participation Agreements do not exist for mutual fund investments which it indisputably has offered, it obviously is untrue and incorrect that MassMutual enters into such agreements in all cases before placing the investments on its Limited Menu.  In any event, at a minimum, Plaintiff has produced specific evidence disputing Mr. Demetriou's general assertion, which creates a material issue of fact.

15.     *Until MassMutual enters into a Participation Agreement, the mutual fund is not offered to retirement plans for investment.  (Ex. 10, Wietsma Dep. (11/14/12) at 10-11; 74-75; Ex. 1, Demetrious Dep. at 21.)*

-22-

**Plaintiff's Response**:  Denied.  By way of further response, the cited documents and testimony do not support the factual assertions contained in this paragraph.  (*See* Wietsma 11/14/12 Dep. at 10-11, 74-75; Demetriou Dep. at 21.)  Instead, the cited deposition testimony generally describes the function of the Participation Agreements and does not reference the timing of Mass Mutual's offering of mutual funds to the Plans vis-a-vis the execution of the Participation Agreements.

*__Defendant's Reply__: The evidence set forth in support of statement ¶ 15 plainly support the asserted facts.  Mr. Demetriou unambiguously testified that "a fund service agreement [would] be put in place prior to a determination being made that a fund would be placed on a platform."  (Assise Aff. Ex. 1, Demetriou Dep. at 21:5-8.)  Plaintiff does not offer any contrary facts.  Accordingly, this statement should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  First, the originally cited testimony of Mr. Wietsma is unrelated to the timing of when Participation Agreements are entered into and when they are offered to Plans.  Second, the cited testimony of Mr. Demetriou relates to when a fund would be placed on a platform, as opposed to offered to Plans for investment, and that factual distinction between being placed on a platform, as opposed to offered to the Plans for investment, is not immaterial.  It is indisputable that Defendant has failed to produce any record evidence to support its assertion in this paragraph, which is an adequate and proper basis to deny this unsupported factual assertion, which Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.  Moreover, as explained above, MassMutual has offered mutual fund investments

to Plans for which it does not have any Participation Agreements, thereby creating a material issue of fact since that evidence contradicts the assertion of Mr. Demetriou.

16.     *The Participation Agreement provides that MassMutual performs many of the functions that would otherwise have to be provided by the mutual fund company, such as a system of recordkeeping, and participant communications. (Ex. 10, Wietsma Dep. (11/14/12) at 11; Ex. 8, Miles Dep. at 55-56.)*

**Plaintiff's Response**:  Denied.  By way of further response, the cited documents and testimony do not support the factual assertions contained in this paragraph.  Although the cited testimony of Mr. Wietsma asserts that the Participation Agreements document the operational relationship between Mass Mutual and the mutual fund, as well as the services provided "to the shareholders and plan sponsors that choose to utilize those investment options that are performed on behalf of the investment firm that they would otherwise perform for themselves," there is no reference in this testimony to Mass Mutual performing "many of the functions that would otherwise have to be provided by the mutual fund company, such as a system of recordkeeping and participant communications," as asserted by Defendant.  In addition, the cited deposition testimony of Dennis Miles does not support the assertion contained in this paragraph, since Mr. Miles' deposition testimony relates solely to the services that Mass Mutual provides to the plan sponsor, such as GSI, and there is no reference in this testimony whatsoever to the Participation Agreements or to the alleged services that MassMutual purports that it provides in the stead of mutual fund companies.  (*See* Miles 11/13/12 Dep. at 54:16-56:10.)  As noted above, the Participation Agreements are not bona fide agreements related to services rendered since MassMutual provides the same exact services even when mutual funds do not pay it any RSPs.

-24-

(Demetriou Dep. at 30:15-32:3, 53:15-54:4; Wietsma 11/14/12 Dep. at 62:22-63:9.)  And, MassMutual either already agreed to provide the same services to the GSI Plan under the GAC or is legally bound to provide the same services because of its status as the legal title holder of GSI Plan assets.  (Assise Decl. at Ex. 23, at 23-24, 40 (§§ 2.04, 5.22); Wietsma 11/14/12 Dep. at 10:16-13:6.)  Thus, the only real consideration that MassMutual offers to the mutual funds in exchange for the fees, *i.e.*, "revenue-sharing" under the Participation Agreements, is access to MassMutual's retirement plan clients, such as the GSI Plan.  (Demetriou Dep. at 21:5-8.)

*__Defendant's Reply__: With the exception of the first sentence, plaintiff's response is improper argument, does not present any contrary facts, and accordingly this statement should be deemed admitted.  The cited testimony describes the various recordkeeping functions MassMutual provides for mutual funds.  To the extent plaintiff's denial is based on the statement that MassMutual is performing functions "that would otherwise have to be provided by the mutual fund company," it is contrary to common sense.  Someone has to handle the logistics of communications between mutual funds and individuals investing in the fund.  If MassMutual did not do it, the only party left to do so is the mutual fund.  The remainder of plaintiff's denial is argument unrelated to the statements contained in ¶ 16 and accordingly should be disregarded.*

__Plaintiff's Sur-Reply__: Defendant appears to misunderstand its burden on summary judgment.  Defendant's Reply fails to identify any evidence to support the factual assertions contained in this paragraph of its Statement of "Undisputed" Facts.  It is indisputable that Defendant has failed to produce any record evidence to support its assertion in this paragraph, which is an adequate and proper basis to deny this unsupported factual assertion which Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at

7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291. Defendant's desperate resort to "common sense" where, as here, Plaintiff has produced specific, record evidence that Defendant performs no true services for the mutual funds and that the compensation in the form of RSPs that it receives from mutual funds is unrelated to any services rendered, is unconvincing. Indeed, the only common sense conclusion that is dictated by the record evidence (since the RSPs are unrelated to services rendered) is that the RSPs constitute a pay-to-play payment by the mutual funds.

17.     *The fee that MassMutual receives from the mutual fund company is known as a revenue sharing payment.  (Ex. 10, Wietsma Dep. (11/14/12) at 57.)*

**Plaintiff's Response**: Denied as stated. The cited page of the transcript of the deposition of Eric Wietsma does not support this factual assertion. Nothing in the referenced testimony discusses  mutual fund companies or that RSPs constitute "fees." Instead, the testimony generally describes RSPs as one component of the revenue Mass Mutual receives for the services it provides to its customers: "Revenue sharing is one of  the forms of revenue that we receive as compensation for the services that we provide to our clients." (Wietsma 11/14/12 Dep. at 57:1-8.)

**_Defendant's Reply_**: *Plaintiff's semantic dispute over the term "fee" is not material and so this statement should be deemed admitted.  Plaintiff's response does not dispute that MassMutual receives monies from mutual fund companies or that those monies are known as revenue sharing payments.  Whether these monies are called "fees," "revenue," or something else is immaterial to this dispute.*

-26-

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Defendant's Reply fails to identify any evidence to support the factual assertions contained in this paragraph of its Statement of "Undisputed" Facts.  It is indisputable that Defendant has failed to produce any record evidence to support its assertion in this paragraph, which is an adequate and proper basis to deny this unsupported factual assertion, which Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.

18.     *Revenue sharing payments are made from the revenue earned from the expense ratio charged by the mutual fund. (Ex. 11, Wietsma Dep. (10/1/13) at 20.)*

**Plaintiff's Response**:  Admitted.

19.     *MassMutual has disclosed the existence of revenue sharing payments since at least 2008.  (Ex. 13, Harrison Aff. at ¶ 14; Ex. 17, Wietsma Decl. at ¶ 7; Ex. 17, Wietsma Decl. Ex. A at MASSMUT0000445.)*

**Plaintiff's Response**:  Denied.  GSI's representatives were unequivocal that MassMutual never disclosed the existence of RSPs until GSI independently requested information regarding the RSPs through its counsel in 2010.  (E. Julo Dep. at 12:24-14:20; 127:2-127:6; R. Julo Dep. at 70:18-71:14.)  By way of further response, the document/proposal dated November 11, 2008 (which is unrelated to GSI) that MassMutual attaches to support this proposition, neither discloses the "existence" of RSPs or explains the true nature of the RSPs which, as explained above, are unrelated to services rendered.  (*See* Assise Decl. at Ex. 17 (Wietsma Decl. Ex. A at MASSMUT0000445).)  Indeed, the alleged "disclosure" of RSPs cited to at MASSMUT0000445

-27-

borders on the incomprehensible and only confirms the fact that Defendant never has adequately disclosed the true nature, function and purpose of the RSPs.  The contents (or lack thereof) of the November 11, 2008 proposal attached as Exhibit "A" to the Declaration of Mr. Wietsma places the unsupportable and bald assertions contained in the Affidavit of Brad Harrison in proper context since the November 11, 2008 proposal is, on its face, opaque, misleading and incomplete in nature and belies the specific assertions of Mr. Harrison with respect to the contents of such proposals.  It is undisputed that the amount of RSPs bear absolutely no relationship to the services that MassMutual provides and, as a result, to the extent that the RSPs are obliquely referenced as payments for recordkeeping services, such references (to the extent discernable at all) are false and misleading in nature.  (*See* Wietsma 11/14/12 Dep. at 10:16-13:6, 62:22-63:9; GAC at 23-24, 40 (§§ 2.04, 5.22).)  Indeed, in a 2009 proposal to GSI, MassMutual specifically failed to disclose RSPs in any respect or that RSPs constituted compensation that MassMutual received in connection with transactions involving the GSI Plan's assets.  (See RCS, ¶ 21, *supra*.)

   ***MassMutual's Reply***: *Plaintiff's denial of statement ¶ 19 is not support by the cited materials.  GSI's own witness, Mr. Julo, testified that he received and reviewed a document "disclosing to the Golden Star plan that MassMutual is receiving payments from mutual funds." (Assise Aff. Ex. 3, E. Julo Dep. at 133.)   Plaintiff's denial of statement ¶ 19 focuses not on whether fees were disclosed, but on legal argument about whether the disclosures were adequate.  This argument does not affect the truth of the facts contained in statement ¶ 19, which simply states "MassMutual has disclosed the existence of revenue sharing payments since at least 2008."  Accordingly, plaintiff's denial should be disregarded and the facts in this statement*

*should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Defendant's Reply fails to identify any evidence to support the factual assertions contained in this paragraph of its Statement of "Undisputed" Facts.  It is indisputable that Defendant has failed to produce any record evidence to support its assertion in this paragraph (*i.e.*, that MassMutual allegedly disclosed the existence of RSPs since 2008 when the record evidence cited by Plaintiff establishes otherwise), which is an adequate and proper basis to deny this unsupported factual assertion which Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4*; *TC Investments Corp., supra* at 291.  Moreover, Defendant's belated effort to rely upon the testimony of Earl Julo (E. Julo Dep. at 133) in its Reply, which related to a document dated July 1, 2010 (*see* E. Julo Dep. Ex. 11, Assise Decl. Ex. 5) and is unrelated to 2008, does nothing to cure the deficiency in MassMutual's citation to actual and uncontested record evidence.  Finally, Defendant's repeated claim that Plaintiff's specific, factual refutation of Defendant's asserted "undisputed" facts should be disregarded as "argument" finds no support in the law.

20.     *When MassMutual bids for a 401(k) plan's business, it determines how much revenue it needs from a plan to meet a target margin.  (Ex. 9, Orzell Dep. at 56-57.)*

**Plaintiff's Response**:  Denied.  Although MassMutual fails to specify which deposition of Jennifer Orzell it is relying upon, the cited testimony from either deposition bears absolutely no relationship to the proposition for which it is cited and, therefore, the assertion contained in this paragraph is without record support.  (*See* Orzell 11/13/12 Dep. at 56:1-57:25; Orzell

3/11/13 Dep. at 56:1-57:25.)

**_Defendant's Reply_**: *Defendant concedes that the cited material does not support the original statement because it pointed to the wrong deposition of Ms. Orzell (she gave two depositions). Defendant intended to cite pages 56-57 of her November 13, 2012 deposition, which, states that in pricing new business, MassMutual "estimate[s] what our expenses are going to be over the life of the contract" and then "tr[ies] to target a margin on that." (Tang Decl. Ex. S, Orzell Dep. (11/13/12) at 56-57.) Mr. Wietsma also addressed this same point, explaining that MassMutual thinks "about the business in terms of all the expenses that it takes," then figures out how much revenue it needs, but is "MassMutual is indifferent to how we collect revenue to be compensated for the services we provide." (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 50, 57, 59, 85).*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment. Defendant's Reply fails to identify any evidence to support the factual assertions contained in this paragraph of its Statement of "Undisputed" Facts because the newly cited testimony of Ms. Orzell and Mr. Wietsma does not relate to bidding for the Plans' business but, instead, relates to Defendant's internal margin goals with respect to revenues and expenses. Defendant has failed to produce any record evidence to support its assertion in this paragraph, which is an adequate and proper basis to deny this unsupported factual assertion, which Defendant itself identified as material. *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.

21.     *There are three main sources that the plan can use to pay MassMutual for its services: out-of-pocket payments from the plan sponsor, payments from plan participants through fees; and revenue sharing payments from mutual funds.  MassMutual is indifferent which the three sources (or any combination of the three) a plan uses to pay for its services.  (Ex. 9, Orzell Decl. ¶ 7; Ex. 13, Harrison Aff. ¶ 5; Ex. 10, Wietsma Dep. (11/14/12) at 50; Ex. 8, Miles Dep. (11/13/12) at 91.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  It only is admitted that the Plans are advised that there are three components by which they can pay for MassMutual's services, none of which include RSPs.  Specifically, as of January 23, 2009, MassMutual provided pricing quotes to GSI demonstrating the following current and proposed bases for payment with accompanying estimated expenses: (a) Asset Schedule -- showing for GSI's Administrative Associates 401(k) Plan a current direct 0.60% asset charge with an estimated current expense of $11,882 per annum, and a proposed direct 0.55% asset charge with an estimated current expense of $10,892 per annum, and showing for GSI's Bargaining Unit Associates' 401(k) Plan a current direct 0.60% asset charge with an estimated current expense of $4,349 per annum, and a proposed direct 0.55% asset charge with an estimated current expense of $3,987 per annum; (b) Participant Schedule -- showing for GSI's Administrative Associates 401(k) Plan a current direct participant charge of $245 per annum, and a proposed direct participant charge of $0 per annum, and showing for GSI's Bargaining Unit Associates' 401(k) Plan a current direct participant charge of $450 per annum, and a proposed direct participant charge of $0 per annum; and (c) SIA Management Fees -- showing for GSI's Administrative Associates 401(k) Plan current SIA Management Fees calculated through direct asset charges an

-31-

estimated current expense of $9,736 per annum, and a proposed SIA Management Fees

calculated through direct asset charges with an estimated current expense of $9,736 per annum,

and showing for GSI's Bargaining Unit Associates' 401(k) Plan current SIA Management Fees

calculated through direct asset charges an estimated current expense of $3,496 per annum, and a

proposed SIA Management Fees calculated through direct asset charges with an estimated

current expense of $3,496 per annum.  (*See* MASSMUTUAL000138-MASSMUTUAL000139

(*see* Exhibits "AF" and "AG" to the Tang Decl).)  SIA Management Fees are not RSPs.

(Wietsma 10/1/13 Dep. at 101:15-23.)  In fact, in these proposal documents to GSI in 2009, there

is absolutely no mention of either RSPs or the spread that MassMutual earns on its Fixed

Account investments, both of which MassMutual treats as sources of revenues but which

MassMutual does not disclose in its proposal documents, as reflected above.  Furthermore,

MassMutual presents no competent evidence that it ever discloses to or has notified the Plans,

including the GSI Plan, that the RSPs from mutual funds are a "source" that a retirement plan can

use to pay MassMutual for its services.  (*See* E. Julo Dep. at 12:24-14:20, 127:2-6; R. Julo Dep.

at 70:18-71:14.)  Nor does MassMutual disclose that the RSPs are payments for access that are

unrelated to any other service it may provide to the GSI Plan or mutual funds. (Assise Decl. at

Ex. 17 (Wietsma Decl. Ex. A at MASSMUT0000445); Wietsma 11/14/12 Dep. at 10:16-13:6,

62:22-63:9; Assise Decl. at Ex. 23, at 23-24, 40 (§§ 2.04, 5.22).)

    ***Defendant's Reply***:  *Plaintiff's response is an improper argument, does not present any*

*contrary facts, and accordingly the facts in Statement ¶ 21 should be deemed admitted.  The*

*cited material plainly supports the facts alleged in statement ¶ 21.  For example, the Affidavit of*

*Brad Harrison states "once our clients selected a record keeper, they would determine how to*

*pay for the record keeper's services.  This can be done in three ways:  via revenue sharing, via a direct payment by the plan sponsor, or via a direct charge to the plan participants." (Assise Aff. Ex. 13, Harrison Aff. ¶ 5.)  Plaintiff offers no facts to the contrary.  Instead, plaintiff offers argument over the sufficiency of MassMutual's revenue sharing disclosures, a fact not germane to statement ¶ 21.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Plaintiff's Response identified specific evidence contradicting Defendant's assertion that the Plans can use three (3) different sources of revenues to compensate MassMutual and demonstrated that MassMutual does not advise the Plans, including the GSI Plan, that RSPs are a source of revenue that can be used to compensate Defendant.  Defendant's repetitive assertion that Plaintiff's contradictory evidence constitutes mere argument is neither persuasive, nor does it address the fact that Plaintiff has specifically contradicted Defendant's factual assertion and demonstrated that a material issue of fact exists with respect to this paragraph.

22.  *MassMutual uses revenue sharing to offset monies that it would otherwise collect from the plan sponsor or plan participants.  (Ex. 10, Wietsma Dep. (10/1/13) at 50, 57, 59, 85; Ex. 14, Mezey Aff. at ¶ 7.)*

**Plaintiff's Response**:  Denied.  The cited deposition testimony and affidavit do not support the propositions for which they are cited.  Moreover, MassMutual has admitted that, if a mutual fund decides to increase the revenue sharing payments to MassMutual, the amount MassMutual receives in revenue increases – meaning that there is no corresponding credit to the Plans.  (Orzell 11/13/12 Dep. at 74:9-14.)  Likewise, MassMutual has presented no evidence that it uses all of the RSPs it collects to offset fees it would otherwise charge retirement plans such as

the GSI Plan (i.e., on a dollar-for-dollar basis or otherwise).  Finally, MassMutual has no contractual obligation to use the RSPs to offset the fees it charges to retirement plans like the GSI Plan, so it has the discretionary authority to freely allocate the revenue-sharing payments as it so desires and in its discretion, thereby providing it with discretion to establish its own compensation.  (*See generally* Assise Decl. at Ex. 23.)

> **_Defendant's Reply_**:  *The cited material plainly supports the facts alleged in statement ¶ 22.  The cited testimony of Mr. Wietsma explained that MassMutual thinks "about the business in terms of all the expenses that it takes," then figures out how much revenue it needs, but "MassMutual is indifferent to how we collect revenue to be compensated for the services we provide" and "revenue sharing is one form of revenue that [MassMutual] get compensated for doing those services."  (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 50, 57, 59, 85).  Mr. Wietsma went on to explain that revenue sharing is collected in lieu of "asset charges" or "fixed per head" charges.  (Id.)*

> **Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Defendant's Reply fails to identify any evidence to support the factual assertions contained in this paragraph because none of the testimony cited states that RSPs are used to offset fees that otherwise would be paid.  Moreover, the specific evidence cited by Plaintiff establishes that Defendant does not offset other fees in the amount of RSPs, thereby confirming the existence of a material issue of fact in the record.

> 23.     *MassMutual provides the following services to plans: offering a menu of investment options; providing recordkeeping services; sending out monthly statements; providing internet and web support for electronic transactions and access to accounts; providing*

*a toll-free customer service phone number; and providing educational and informational*

*materials about investment alternatives.  (Ex. 17, Wietsma Decl. Ex. A.)*

    **Plaintiff's Response**:  Admitted in part and denied in part.  It is admitted that the services

delineated in this paragraph are certain of the services that MassMutual provides to the Plans.  In

addition, MassMutual provides a number of other services, including, but not limited to,

administration of the Separate Accounts, maintenance of the Limited Menu of investments, and

making investment decisions on behalf of the Plans, including reinvesting dividends issued by

mutual funds, as opposed to receiving them in cash or investing them in other instruments,

including money market funds, MassMutual's Fixed Account and/or qualified investments

designated by the Plans or their participants.  (*See* Assise Decl. at Ex. 17, Wietsma Decl. Ex. A at

MASSMUT0000436-439; Wietsma 11/14/12 Dep. at 34:5-36:6.)

    ***Defendant's Reply***:  *Plaintiff's denial is improper.  Plaintiff admits the only fact stated in*

*statement ¶ 23, that MassMutual provides "the services delineated in this paragraph."  The*

*remainder of plaintiff's response lists other services it claims MassMutual provides, but without*

*disputing the fact asserted in the statement.  As a result, the facts in this statement should*

*therefore be deemed admitted.*

    **Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary

judgment.  Defendant's Reply fails to identify any evidence to support the factual assertions

contained in this paragraph of its Statement of "Undisputed" Facts because the cited evidence

does not support Defendant's assertion that the services identified constitute the universe of

services performed by MassMutual, which plainly is the intent of Defendant stating that it

provides "the following services...."  Therefore, it is entirely appropriate for Plaintiff to dispute

this incorrect assertion by identifying additional (and omitted) services that MassMutual provides with record evidence support as to those additional services that were omitted from Defendant's list and which were presented, by their terms, as an exhaustive list.

24.     *After a plan chooses the Plan Menu, participants provide directions about how they want their 401(k) monies invested.  The plan, or the participants, communicate those directions to Mass Mutual.  (Ex. 2, Harrison Dep. at 33.)*

**Plaintiff's Response**:  Admitted.  By way of further response, MassMutual defines the investment options that are and will remain available for investment by the Plans and their participants, and determines, in its discretion, whether the investments and the investments options of the Plans and their participants will be changed based on MassMutual's own judgment.  (*See* Assise Decl. Exs. 5 (GSI04719-4720); 6 (MASSMUT0165371-165373); 17 at Ex. "C"; 23 at 40 (§ 5.22).)

***MassMutual's Reply***:  *Plaintiff has admitted the facts in statement ¶ 24, so its "further response" has no bearing on the truth of the facts asserted in statement ¶ 24.*

**Plaintiff's Sur-Reply**: Plaintiff does not contest its admission but notes that Defendant does not contest the accuracy of the additional material facts provided by Plaintiff, which Plaintiff respectfully believes places Defendant's underlying conduct in proper context with respect to the material issues of fact at hand in this case.

25.     *MassMutual executes the directions from the plan or the participants about how participants want their 401(k) monies invested.  (Ex. 2, Harrison Dep. at 33-34; Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  It is admitted that MassMutual executes the directions from the Plans and their participants regarding how their 401(k) investments will be invested so long as MassMutual determines, in its sole discretion, that it will permit such investments.  (*See* Assise Decl. Exs. 5 (GSI04719-4720); 6 (MASSMUT0165371-165373); 17 at Ex. "C"; 23 at 40 (§ 5.22).)  In addition, MassMutual, in its sole discretion, makes the investment decision to reinvest all mutual fund dividends, thereby increasing the amount of RSPs.  (Wietsma 11/14/12 Dep. at 34:5-36:6.)  It is expressly denied that, in light of the substantial discretion which MassMutual holds and exercises, Defendant simply or solely follows or executes the directions of the Plans and their participants (or that MassMutual performs duties that are solely ministerial in nature).

***Defendant's Reply**:  Plaintiff's response is improper argument, does not present any contrary facts, and accordingly the facts asserted should be deemed admitted.  Plaintiff admits the only fact asserted in statement ¶ 25, that "MassMutual executes the directions from the Plans and their participants regarding how their 40(k) investments will be invested."  The rest of plaintiff's response is improper argument or is not supported by the facts.  First, plaintiff cites Assise Affidavit Exhibits 5, 6, and 17 for the proposition that MassMutual only follows directions if MassMutual decides "in its sole discretion to do so."  Each of these documents is an investment change form from the GSI directing MassMutual to make changes to investment options, so none of the document supports the claim that MassMutual chooses on its own whether to follow the directions.  These exhibits are directions from the GSI Plan.  Second, plaintiff cites a portion of the testimony of Eric Wietsma for the proposition that MassMutual makes the decision about where to reinvest dividends, but the cited passage does not support this*

*assertion.  On the contrary, Wietsma specifically testified that "any dividends or capital gains*

*per their instructions are put back into the [same] fund."  (Tang Decl. Ex. V, Wietsma Dep. at*

*34:19-21) (emphasis added.)  Third, in the last sentence of its response, plaintiff explains that it*

*"expressly denies" MassMutual's statement ¶ 25, but the sentence is not support by any*

*evidentiary materials.*

**Plaintiff's Sur-Reply**: Defendant's Reply fails to acknowledge or address the critical

document cited in Plaintiff's Response.  The Group Contract specifically provides that "***[a]ll***

***assets ... are invested by MassMutual as it, in its sole discretion, may determine....***"  (*See* Assise

Decl. 23 at 40 (§ 5.22)(emphasis added).)  Moreover, Assise Decl. Exs. 5, 6 and 17 (at Exhibit

"C") each state that "***MassMutual periodically reviews each such mutual fund family to***

***determine whether to continue to offer such funds, and reserves the right to remove such***

***funds from its standard offering***." (Emphasis added.)  As a result, the evidence cited by Plaintiff

clearly demonstrates that there is a material issue of fact with respect to Defendant's factual

assertion contained in this paragraph.

26.    *The plan administrator of the Plan has always been a GSI employee.  (Ex. 3, E.*

*Julo Dep. at 33-34.)*

**Plaintiff's Response**:  Admitted.

27.    *The plan administrator of the Plan was Earl Julo from 1999-2010, and his son,*

*Ray from August 2010 to the present.  (Id. at 19, 33-34; Ex. 7, R. Julo Dep. at 20.)*

**Plaintiff's Response**:  Admitted.

28.     *From the inception of the Plan to today, the Julos have worked with two independent financial advisors, Michael Goss and Brett Boeger.  (Ex. 3, E. Julo Dep. at 38, 41, 43-44, 48.)*

**Plaintiff's Response**:  Admitted.

29.     *From the inception of the Plan until today, GSI has contracted with a third-party plan administrator, Compensation Benefit Planning ("CBP").  (Ex. 3, E. Julo Dep. at 37, 62; Ex. 7, R. Julo Dep. at 21-22.)*

**Plaintiff's Response**:  Admitted.

30.     *CBP provides many plan-related services, including drafting the Plan documents and making changes to the Plan documents.  (Ex. 3, E. Julo Dep. at 37, 56, 62-64, 104-05; Ex. 7, R. Julo Dep. at 20-21.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  It is admitted that Compensation Benefit Planning, Inc. ("CBP") drafted certain of the Plan's documents used in connection with the GSI Plan.  As "Plan documents" is an undefined term and MassMutual drafted and created the GAC and the amendments thereto, which constitute the operative document related to the administration of the assets of the GSI Plan, it is expressly denied that CBP drafted all "Plan documents."  The documents that define the relationship between MassMutual and its customers are the GACs.  (Miles 11/13/12 Dep. at 11:4-11:11, 15:14-16:5, 37:11-37:18, 72:13-72:22.)  In addition to the GAC, MassMutual began providing administrative services agreements to all new GAC customers in 2010 and initiated a process to issue the administrative service agreements to current customers to "codify" the services provided under the GACs, which do not substantively or materially alter the terms of the relationship provided

under the GACs.  (Miles 11/13/12 Dep. at 16:11-20:16, 21:14-21:22, 73:21-74:1, 132:19-133:20.)  Finally, the Plans generally adopt a prototype or basic plan document, which simply defines the rights of the Plans' participants and the obligations of a plan, while an adoption agreement is simply the means by which the Plans can adopt a prototype or basic plan document, and these plan documents and adoption agreements do not speak to the relationship between MassMutual and the Plans.  (Miles 11/13/12 Dep. at 71:16-72:4, 73:13-73:20.)  Presumably, these immaterial plan documents are the documents to which MassMutual refers when it utilizes the undefined term, "Plan documents," but since such documents do not relate to the relationship between the Plans and MassMutual in any respect, any such "Plan documents" are immaterial as to the issues at hand in this case.

_**Defendant's Reply**_: _Plaintiff's response is improper argument, does not present any contrary facts, and accordingly the facts in Statement ¶ 30 should be deemed admitted.  Plaintiff admits the only fact asserted in statement ¶ 30, that CBP provides many plan-related services, including drafting the Plan documents and making changes to the Plan documents.  The remainder of plaintiff's "denial" has no bearing on the truth of the facts asserted in statement ¶ 30 and accordingly does not present any dispute about the asserted fact._

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Defendant's Reply fails to define what it means by "Plan documents" and then quarrels with Plaintiff when it explains that CBP only drafted "plan documents" immaterial to the case (and, therefore, not properly included in any Rule 56.1 Statement), while attempting to dismiss Plaintiff's evidence that MassMutual drafted the material Plan documents as somehow constituting improper argument. Plaintiff's Response is factually correct and proper.  It explains

why the assertion can only be admitted in part and how the Plan documents drafted by CBP are immaterial to this case, a fact which MassMutual apparently would prefer not to address or acknowledge.

31.     *CBP communicated with MassMutual on behalf of the Plan.  (Ex. 3, E. Julo Dep. at 62-63.)*

**Plaintiff's Response**:  Admitted.

32.     *MassMutual had no role in drafting the Plan documents.  (Ex. 3, E. Julo Dep. at 57-58; Ex. 7, R. Julo Dep. at 21.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  Plaintiff incorporates by reference its response to Paragraph 30, which demonstrates that MassMutual drafted certain plan documents, but not others.  By way of further response, although MassMutual may not have had a role in drafting plan documents defining the relationship between the Plan and its participants, MassMutual drafted the GAC, which defines the relationship between MassMutual and the GSI Plan, including MassMutual's discretionary, authority and control with respect to the GSI Plan and its investments, and MassMutual retains the final authority over any changes to the GSI Plan's administrative procedures or any GSI Plan amendments.  (Assise Decl. Ex. 23, at 11 (§ 1.11).)

***MassMutual's Reply***:  *Plaintiff's response is improper argument, does not present any contrary facts, and accordingly the facts in Statement ¶ 32 should be deemed admitted.  Plaintiff admits the only fact asserted in statement ¶ 32, that MassMutual had no role in drafting the Plan documents.  The remainder of plaintiff's "denial," which focuses on other documents that MassMutual did draft, has no bearing on the truth of the facts asserted in statement ¶ 32.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Defendant's Reply fails to define what it means by "Plan documents" and then quarrels with Plaintiff when it explains that CBP only drafted "plan documents" immaterial to the case (and, therefore, not properly included in any Rule 56.1 Statement), while attempting to dismiss Plaintiff's evidence that MassMutual drafted the material Plan documents as somehow constituting improper argument.  Plaintiff's Response is factually correct and proper.  It explains why the assertion can only be admitted in part and how the Plan documents drafted by CBP are immaterial to this case, a fact which MassMutual apparently would prefer not to address or acknowledge.

33.     *The Plan has an Investment Committee, which consists of one of the Julos and their two independent advisors, Messrs. Boeger and Goss.  (Ex. 3, E. Julo Dep. at 41.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  Although it is admitted that GSI has an Investment Committee, MassMutual misstates the composition of the Investment Committee.  R. Julo Dep. at 30:1-30:14.)

***Defendant's Reply***:  *Plaintiff's response does not dispute the truth of the facts contained in statement ¶ 33, namely that at least one Julo and two independent investment advisors were members of the GSI Plan's Investment Committee.  MassMutual agrees that other advisors not affiliated with MassMutual may have also been part of the committee, but that does not change the substance of statement ¶ 33.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Defendant's Reply fails to identify any evidence to support the factual assertions contained in this paragraph of its Statement of "Undisputed" Facts and now, in fact, admits that

-42-

the statement is incorrect.  Defendant appears to believe that, having identified facts as material

and then consistently mkaing mistakes in reciting such facts, Plaintiff should be required to parse

which facts Defendant truly meant to represent as material, as opposed to others which

Defendant apparently now asserts are immaterial facts that it cannot support with evidence.

Since Defendant has failed to produce any record evidence to support its assertion in this

paragraph, this is an adequate and proper basis to deny this unsupported factual assertion, which

Defendant itself identified as material.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at

7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp.,*

*supra* at 291.

33.  *Since 2005, the Investment Committee has met at least annually in Kansas City,*

except in 2009.  (Ex. 3, E. Julo Dep. at 42-43; Ex. 7, R. Julo Dep. at 33-34.)

**Plaintiff's Response**:  Admitted.

35.  *No one from MassMutual ever attended the Investment Committee meetings.  (Ex.*

3, E. Julo Dep. at 43-44; Ex. 7, R. Julo Dep. at 47.)

**Plaintiff's Response**:  Admitted.

36.  *At the Investment Committee meetings, Messrs. Boeger and Goss provided a*

review of the investment options on the Plan Menu, including the fees and performance, and

recommended which investment options should be removed or added.  (Ex. 3, E. Julo Dep. at

42-44, 50-51.)

**Plaintiff's Response**:  Admitted.  By way of further response, the investment options

presented by Messrs. Boeger and Goss were derived from the Limited Menu defined and

maintained by MassMutual.  (Wietsma 10/1/13 Dep. at 24:2-24:18.)

***Defendant's Reply***:  *Plaintiff has admitted the statements in statement ¶ 36, and its "further response" has no bearing on the truth of the statements asserted in statement ¶ 36.*

**Plaintiff's Sur-Reply**: Plaintiff does not contest its admission but notes that Defendant does not contest the accuracy of the additional material facts provided by Plaintiff, which Plaintiff respectfully believes places Defendant's underlying conduct in proper context with respect to the material issues of fact at hand in this case.

37.     *Messrs. Boeger and Goss were the "the primary inputs" into whether changes would be made to the Plan's investment options.  (Ex. 3, E. Julo Dep. at 42-43.)*

**Plaintiff's Response**:  Denied.  By way of further response, from 1993 until 2010, Earl Julo, as well as Messrs. Boeger and Goss, were the primary inputs into whether changes would be made to the GSI Plan's investments based on the investments made available on the Limited Menu defined and maintained by MassMutual.  (E. Julo Dep. at 42:5-10.)

***MassMutual's Reply***:  *Plaintiff's response does not cite any evidence in support of its denial, and its "further response" does not materially dispute the truth of the facts contained in statement ¶ 37.  MassMutual agrees that Mr. Julo, in addition to Messrs. Boeger and Goss were "the primary inputs" into whether changes would be made to the Plan's investment options.  As a result, the facts in statement ¶ 37 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment and clearly has engaged in a self-serving reading of Plaintiff's Response.  Plaintiff cited specific evidence that Messrs. Boeger and Goss were not the primary inputs into whether changes would be made regarding investment options but that, rather, Mr. Julo, along with Messrs. Boeger and Goss, were the primary inputs.  As a result, Plaintiff properly denied

Defendant's factual assertion, which was plainly incorrect and not supported by evidence. *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.

38.     *The Investment Committee made recommendations to the Julos about whether to add or delete investment options. (Ex. 3, E. Julo Dep. at 35; Ex. 7, R. Julo Dep. at 50-51.)*

**Plaintiff's Response**:  Denied.  By way of further response, the Investment Committee made recommendations to the GSI Plan's trustees, as opposed to Earl and Ray Julo, and these recommendations were limited to the investments available on the Limited Menu defined and maintained by MassMutual.  (E. Julo Dep. at 35:2-35:7; Wietsma 10/1/13 Dep. at 24:2-24:18.)

***Defendant's Reply***:  *Plaintiff's denial is improper under Local Rule 56.1 as it neither asserts that the factual support for statement ¶ 38 is insufficient nor cites any contrary facts. Moreover, plaintiff's arguments about "the Limited Menu" have no bearing on the truth of the facts asserted in statement ¶ 38.  As a result, the facts in Statement ¶ 38 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment and clearly has engaged in a self-serving reading of Plaintiff's Response.  Plaintiff cited specific evidence that the Investment Committee made recommendations to the Plan's trustees, as opposed to Messrs. Julo, and, therefore, Plaintiff properly denied Defendant's factual assertion which was plainly incorrect and not supported by evidence.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.

39.     *Earl and Ray Julo both testified that they had the ultimate authority over the selection of Plan investment options.  (Ex. 3, E. Julo Dep. at 35-36, 69-70; Ex. 7, R. Julo Dep. at 30, 51, 55.)*

**Plaintiff's Response**:  Denied.  The testimony cited does not support the assertion contained in this paragraph.  By way of further response, Ray Julo identified the Investment Committee as having the ultimate authority regarding selection of investments from the Limited Menu defined and maintained by MassMutual, and Earl Julo did not address the selection process in his testimony. (E. Julo Dep. at 36:2-7; R. Julo Dep. at 30:15-21, 51:5-10, 55:10-13.)

***Defendant's Reply***:  *Plaintiff's denial is unsupported by the cited testimony of its own witnesses.  Earl Julo was asked "as plan administrator, did you have ultimate authority over what investments got added to the plan?" and answered "I had ultimate authority."  (Assise Aff. Ex. 3, E. Julo Dep. at 35-36.)  In any event, what is material is that Golden Star's trustees, none of whom had any relationship with MassMutual, had ultimate authority over the selection of Plan investment options.  Plaintiff's response does not dispute this fact.*

*The remainder of plaintiff's "denial" consists of argument about the "Limited Menu defined and maintained by MassMutual" has no bearing on the truth of the facts asserted in statement ¶ 39.  Accordingly, the facts set forth in statement ¶ 39 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Plaintiff cited specific evidence demonstrating that Defendant's factual assertion was incorrect and not supported by evidence.  As a result, the factual assertion contained in this paragraph should be deemed unsupported.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp.,*

*supra* at 291.  Defendant's attempt to recast the material facts it now is asserting by way of Reply is improper since it does not change the fact that material issues of fact exist regarding whether the factual assertion contained in Defendant's initial Statement.

40.    *The Julos' decision to add or delete investment options were communicated to MassMutual either in writing or orally.  (Ex. 7, R. Julo Dep. at 34-35; Ex. 3, E. Julo Dep. Ex. 6.)*

**Plaintiff's Response**:  Denied.  The testimony of Ray Julo cited in support of this proposition does not support the assertion that Earl Julo and Ray Julo ever made the decisions to add or delete investment options, and similarly does not state that such decisions were communicated orally or in writing to MassMutual, as so asserted.  R. Julo Dep. at 34:1-35:25.)  In addition, the cited exhibit to the Deposition of Earl Julo (Exhibit 6) has not been included in the record by Defendant and, in any event, does not address the authority to add or delete investment options or the manner in which any such changes are communicated to MassMutual.  *See* Tang Decl. at Ex. "M."

***MassMutual's Reply****:  Defendant's denial is unsupported by the cited testimony of its own witnesses.  Earl Julo was asked "as plan administrator, did you have ultimate authority over what investments got added to the plan?" and answered "I had ultimate authority."  (Assise Aff. Ex. 3, E. Julo Dep. at 35-36)  In any event, what is material is that Golden Star's trustees, none of whom had any relationship with MassMutual, had ultimate authority over the selection of Plan investment options.  Plaintiff's response does not dispute this fact.  Moreover, Ray Julo was asked "if decisions are made to add or take away one of the funds from the lineup, you then have that decision communicated to MassMutual; correct?"  and answered "Correct."  (Assise Aff. Ex. 7, R. Julo Dep. at 34-35.)*

*The remainder of plaintiff's "denial" has no bearing on the truth of the facts asserted in statement ¶ 40 and accordingly is improper and the facts set forth in statement ¶ 40 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Plaintiff cited specific evidence demonstrating that Defendant's factual assertion was incorrect and not supported by evidence.  As a result, the factual assertion contained in this paragraph should be deemed unsupported.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.  Defendant's attempt to rely upon new evidence in support of its Reply cannot cure the defect in its initial submission.  *Id.*

41.     *Once the Julos made the decision to add or delete investment options, MassMutual always made the changes in investment options.  (Ex. 3, E. Julo Dep. at 69-70, 74-75; Ex. 7, R. Julo Dep. at 35-36.)*

**Plaintiff's Response**:  Admitted.  By way of further response, GSI never requested an addition to or deletion from the Plan's menu of investment options that was outside of the parameters of permissible investments, as defined by MassMutual in the Limited Menu.  (*See* E. Julo 10/23/12 Dep. Exs. 1, 2, 6, 11 and 12.)

***Defendant's Reply***:  *Plaintiff has admitted the fact asserted in statement ¶ 41, obviating any need for a "further response."  Moreover, plaintiff's "further response" has no bearing on the truth of the facts asserted in statement ¶ 41 and accordingly should be disregarded.*

**Plaintiff's Sur-Reply**: Plaintiff does not contest its admission but notes that Defendant does not contest the accuracy of the additional material facts provided by Plaintiff, which

Plaintiff respectfully believes places Defendant's underlying conduct in proper context with respect to the material issues of fact at hand in this case.

42.     *The Plan had a written investment policy.  (Ex. 3, E. Julo Dep. at 96.)*

**Plaintiff's Response**:  Admitted.

43.     *MassMutual had no input into the Plan's investment policy.  (Ex. 3, E. Julo Dep. at 96-97; Ex. 7, R. Julo Dep. at 31.)*

**Plaintiff's Response**:  Admitted.  By way of further response, although MassMutual personnel did not participate in planning with respect to the GSI Plan's investment policy, its final authority (and macro and micro level control) over the overall investment options and composition of the Limited Menu had a direct effect on limiting the possible scope and ranges of the GSI Plan's investment policy.  (Assise Decl. Ex. 23, at 40 (§ 5.22).)

***Defendant's Reply***:  *Plaintiff has admitted the statements in statement ¶ 43, obviating any need for a "further response."  Moreover, plaintiff's "further response" has no bearing on the truth of the statements asserted in statement ¶ 43 and accordingly should be disregarded.*

**Plaintiff's Sur-Reply**: Plaintiff does not contest its admission but notes that Defendant does not contest the accuracy of the additional material facts provided by Plaintiff, which Plaintiff respectfully believes places Defendant's underlying conduct in proper context with respect to the material issues of fact at hand in this case.

44.     *MassMutual provided information to the Plan about the expense ratio of each of the mutual funds that were contained on the Plan Menu.  (Ex. 3, E. Julo Dep. at 95.)*

**Plaintiff's Response**:  Admitted.

45.     *MassMutual disclosed to Earl Julo in writing that it was receiving revenue sharing payments from mutual funds.  (Id. at 133.)*

**Plaintiff's Response**:  Denied.  By way of further response, MassMutual did not disclose to Earl Julo in writing or otherwise that the RSPs were for access and unrelated to any services it may provide to the GSI Plan or any mutual funds.  (E. Julo Dep. at 12:24-14:20; 127:2-127:6; Assise Decl. at Ex. 17 (Wietsma Decl. Ex. A at MASSMUT0000445); Wietsma 11/14/12 Dep. at 10:16-13:6, 62:22-63:9 ; Assise Decl. at Ex. 23, at 23-24, 40 (§§ 2.04, 5.22).)

***Defendant's Reply***:  *Plaintiff's denial of statement ¶ 45 is not supported by the evidence. Mr. Julo testified that he received and reviewed a document "disclosing to the Golden Star plan that MassMutual is receiving payments from mutual funds."  (Assise Aff. Ex. 3, E. Julo Dep. at 133.)  Plaintiff's denial of statement ¶ 45 is based not on the fact asserted in statement ¶ 45 – that the existence of revenue sharing was disclosed – but but instead is based on a legal argument regarding the adequacy of the disclosures.  This argument does not impact the truth of the facts contained in statement ¶ 45, which simply states "MassMutual disclosed to Earl Julo in writing that it was receiving revenue sharing payments form mutual funds."  Accordingly, plaintiff's denial, which is merely legal argument about the import of this fact, should be disregarded, and the facts set forth in statement ¶ 45 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Plaintiff cited specific evidence demonstrating that Defendant's factual assertion was incorrect and not supported by evidence.  As a result, the factual assertion contained in this paragraph should be deemed unsupported.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp.,*

*supra* at 291.  Moreover, the fact that MassMutual disclosed the existence of payments from mutual funds in 2010 but then mischaracterized the nature of those payments to conceal their true nature (by attributing the payments as being made in return for services rendered to the mutual funds -- despite all of the evidence to the contrary, including the specific evidence cited by Plaintiff in its Response), certainly is material since the nature of the payments, *inter alia*, give rise to the prohibited transactions under ERISA at issue in this case.

46.     *The only mutual fund company that has ever increased the revenue sharing percentage paid to MassMutual after entering into a Participation Agreement was Fidelity Investments.  (Ex. 1, Demetriou Dep. at 67.)*

**Plaintiff's Response**:  Denied.  The cited testimony does not support the assertion contained in this paragraph.  By way of further response, Mr. Demetriou only testified that, since he has been the platform manager, to his personal knowledge, the only time a fund increased the revenue sharing amount that MassMutual receives was once (while never referencing a percentage of RSPs or basis points or explaining what he meant by amount), and there was no reference to the Participation Agreement in the question posed nor answer given.  (Demetriou Dep. at 67:3-16.)  Further, Mr. Wietsma testified that, over time, after entering into Participation Agreements with MassMutual, mutual funds increase the amount of revenue sharing they pay to MassMutual and that mutual funds do this because they view it as a way to become more competitive in the eyes of a record keeper such as MassMutual, vis-a-vis other mutual funds on the platform.  (Wietsma 11/14/12 Dep. at 19:20-21:6.)

**_Defendant's Reply_**:  *Plaintiff's contention that the cited material does not support the fact asserted is meritless, and therefore this fact should be deemed admitted.  As plaintiff*

*acknowledges, Mr. Demetriou testified that during his time as investment platform manager (which has been since 2006, see Tang Decl., Ex. C at 17:12-21), only one fund has ever increased the revenue sharing amount that MassMutual receives. Mr. Wietsma's testimony is not to the contrary. Plaintiff's speculation that some other increase may have occurred at some point prior to the time Mr. Demetriou became investment platform manager is not evidence, and in any event, is not a material fact since the period at issue begins in October 2005. Thus, the facts set forth in statement ¶ 46 should be deemed admitted.*

*The remainder of plaintiff's denial has nothing to do with the truth of the statement that Fidelity was the only mutual fund company that has ever increased the revenue sharing percentage paid to MassMutual after entering into a Participation Agreement and accordingly is improper, irrelevant, and should be stricken and disregarded.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment. Plaintiff cited specific evidence demonstrating that Defendant's factual assertion was incorrect and not supported by evidence. As a result, the factual assertion contained in this paragraph should be deemed unsupported. *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291. Moreover, on its face, MassMutual's "evidence" does not support the assertion made because Mr. Demetriou did not serve as the investment platform manager for the entire pertinent time period (as MassMutual's Reply makes clear on its face) and, therefore, the evidence cited by MassMutual amounts, in essence, to a non-sequitur - Mr. Demetriou claims (without establishing any basis for such personal knowledge) that RSPs have only been increased once during his tenure as platform manager, but MassMutual admits that Mr. Demetriou's tenure

as platform manager is not coextensive with the pertinent period of time at issue.  Moreover, Mr.

Demetriou contradictorily testified that he became responsible for relationships with

nonproprietary funds in 2006 and that there have been times when he personally was successful

in obtaining increases in RSPs and Mr. Demetriou confirmed that there were instances (in the

plural) where MassMutual has been successful in this regard. (Demetriou Dep. at 17:12-17:23,

24:13-26:1.)  Thus, based on Mr. Demetriou's testimony alone, a clear issue of material fact

exists.

47.     *A list of the investment options and underlying mutual funds that the Plan offered*

*to its participants from 1999 to August 2011 is attached as Exhibit 22.  This listing shows that*

*the Plan never offered any Fidelity mutual funds on its Plan Menu.  (Ex. 22,*

*MASSMUT0295967-70.)*

**Plaintiff's Response**:  Admitted.

48.     *From October 2005 to August 2011, the Plan Menu changed on three occasions.*

*(Exs. 4-6, E. Julo Dep. Exs. 2, 11, 12.)*

**Plaintiff's Response**:  Admitted.

49.     *On all three occasions in which the Plan Menu changed from October 2005 to*

*August 2011, the Plan administrators, Earl and Ray Julo, or someone acting at their request,*

*directed MassMutual to make changes to the Plan Menu.  (Exs. 4-6, E. Julo Dep. Exs. 2, 11, 12;*

*Ex. 3, E. Julo Dep. at 52.)*

**Plaintiff's Response**:  Admitted.  By way of further response, MassMutual retained the

discretionary authority at all times to change the investments of the GSI Plan without notice to

the Plan.  As GSI's GAC with MassMutual makes crystal clear: "MassMutual has exclusive and

absolute ownership and control of the assets in the Separate Investment Accounts....[and] [a]ll

assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine...."

(Assise Decl. at Ex. 23 at 40, (§ 5.22)(emphasis added).)  Moreover, at all pertinent times,

MassMutual explicitly retained the right to add, delete or substitute investment options from the

universe of available investment options offered to the Plans, including the GSI Plan, and to add,

delete or substitute investment options from the actual and existing investments of the Plans,

including the GSI Plan.

**_Defendant's Reply_**: *Plaintiff has admitted the fact asserted in statement ¶ 49, obviating*

*any need for a "further response."  Moreover, plaintiff's "further response" has no bearing on*

*the truth of the statements asserted in statement ¶ 49 and accordingly should be disregarded.*

**Plaintiff's Sur-Reply**: Plaintiff does not contest its admission, as stated by Defendant,

but notes that Defendant does not contest the accuracy of the additional material facts provided

by Plaintiff, which Plaintiff respectfully believes places Defendant's underlying conduct in

proper context with respect to the material issues of fact at hand in this case.  Plaintiff also notes

for purposes of clarity that, during the term of the Group Contract with GSI, Defendant changed

certain of the investments on its underlying menu, as previously noted, by substituting sub-

advised funds for existing investment options on the GSI Plan menu.  (*See* SCRS, ¶ 8.)

*50.       With respect to the Plan Menu, the only time that MassMutual proposed a change*

*to one of the investment options was in November 2004 (the "November 2004 Notice").  (Ex. 18,*

*MASSMUT0025035; Ex. 3, E. Julo Dep. at 141-43.)*

**Plaintiff's Response**:  Admitted.

*51.     In connection with the November 2004 Notice, MassMutual sent the Plan a letter notifying it of an intention to change the investment underlying four mutual funds from a non-proprietary mutual fund to a proprietary mutual fund and to change the name of the separate account, and the Notice was dated 45 days before the proposed change.  The Notice included an election form that allowed the Plan to choose a different investment option rather than accepting the proposed changes.  (Ex. 18, MASSMUT0025035.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  By way of further response, although the November 2004 Notice was mailed 45 days before the date of the effective change, the November 2004 Notice only provided the GSI Plan with 25 days from the date of mailing to object to the change that MassMutual, in its discretion, was implementing and, if the GSI Plan failed to opt-out of this change within 25 days of the date the November 2004 Notice was mailed, MassMutual implemented the change without further notice.  (*See* Assise Decl. at Ex. 18.)  Moreover, although the November 2004 Notice provided the GSI Plan with the right to elect alternative investments within the universe of the Limited Menu defined and maintained by MassMutual (as now modified and altered by the deletions and substitutions reflected in the November 2004 Notice), in specific contravention of Department of Labor guidance on the subject, the November 2004 Notice failed to provide the following: (a) a fulsome disclosure of the amount and nature of the RSPs, including the specific services provided to mutual funds in return for the RSPs, and detailed information regarding any changes in the RSPs or other compensation earned by MassMutual as a result of the change that MassMutual was implementing (indeed, the November 2004 Notice contained no such information); (b) 60 days notice of any proposed change and the opportunity to terminate the GAC without penalty; (c) an

explanation that the GSI Plan had the right to reject the change or terminate the GAC; and (d) an explanation that, if the Plan rejected a proposed deletion or substitution, MassMutual was not authorized to make any change and the Plan would be provided with an additional 60 days to identify another service provider, thereby providing each of the Plans with at least 120 days to reject any proposed deletion or substitution. (*Id*.)

***Defendant's Reply***: *Plaintiff's denial is improper, as it does not dispute any of the facts asserted in statement ¶ 51, and accordingly the fact set forth in statement ¶ 51 should be deemed admitted. Instead of contesting the facts contained in statement ¶ 51, plaintiff alleges a host of separate facts that purport to argue the import of the facts contained in statement ¶ 51. This is improper. Under Local Rule 56.1, an opposition to a statement of material facts should contain only "a concise statement of the material facts of record as to which the moving party contends that there is no genuine issue to be tried." Because plaintiff's response offers additional facts and argument about how those facts should be construed, rather than disputing the truth of the fact asserted by MassMutual, it should be disregarded.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment. Plaintiff cited specific evidence demonstrating that, under the applicable standards, Defendant failed to provide Plaintiff with meaningful options and choices, which is the material fact that Defendant seeks to support in this paragraph. Defendant's factual assertion regarding the options provided to Plaintiff was, therefore, incorrect and not supported by evidence. As a result, the factual assertion contained in this paragraph should be deemed unsupported. *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291. Defendant also does not contest

the fact that, despite its contrary factual assertions, (*see* SRCS, ¶¶ 8, 49), Plaintiff was not given

the "option" to maintain the investments which MassMutual unilaterally replaced with other

investment options of its own choosing.

52.     *In the November 2004 Notice, MassMutual gave the Plan an opportunity to either*

*approve the change or direct its assets into different investment options.  (Ex. 19,*

*MASSMUT0025039.)*

**Plaintiff's Response**:  Admitted in part and denied in part.  It is admitted that the

November 2004 Notice provided the GSI Plan with the opportunity to direct assets into different

investment options (subject to the limitations imposed by the deletions and substitutions reflected

in the November 2004 Notice), but it is specifically denied that the November 2004 provided the

GSI Plan with "an opportunity to ... approve the change...."  (*See* Assise Decl. at Ex. 18.)  Indeed,

the November 2004 Notice affirmatively states: "[w]e are writing to let you know about some

changes we will make to four investment options available to MassMutual retirement plans."

(*Id.*)  (emphasis added.)  Nothing in the November 2004 Notice seeks approval of the change that

MassMutual initiated and implemented of its own accord.

**Defendant's Reply**:  *Plaintiff's only dispute regarding statement ¶ 52 concerns whether*

*plaintiff was given "an opportunity to… approve the changes."  Its denial is plainly contrary to*

*the record.  Assise Affidavit exhibit 18 advises the GSI Plan that if it approves the change it*

*"do[es] not need to take any action," which plainly gave the GSI Plan the opportunity to*

*approve the changes.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary

judgment.  Plaintiff cited specific evidence demonstrating that, under the applicable standards,

Defendant failed to provide Plaintiff with an opportunity to approve the substitutions at issue

and, as a result, the challenged factual assertions regarding the options provided to Plaintiff was

incorrect and not supported by evidence.  As a result, the challenged factual assertion contained

in this paragraph should be deemed unsupported.  *See Lausell-Archilla, supra* at 164; *Hernandez,*

*supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments*

*Corp., supra* at 291.  Defendant's attempt to "save" its factual statement is absurd and

nonsensical.  The language relied upon by Defendant in an attempt to support its position relates

to whether Plaintiff determined that it would accept the substitution initiated and controlled by

Defendant or move its assets into an alternative investment, based on those investments which

Defendant determined would be available.  Despite Defendant's contrary claim, Assise Decl. Ex.

18 plainly does not provide Plaintiff with an opportunity to approve the underlying MassMutual

decision to change/substitute out investment options within the GSI Plan for other investments.

  *53.  When a mutual fund pays a dividend, the dividend is reinvested in shares of the*

*same mutual fund from which the dividend is paid.  (Ex. 11, Wietsma Dep. (10/1/13) at 48-49.)*

  **Plaintiff's Response**:  Denied.  The statement contained in this paragraph is factually

incorrect, as mutual fund dividends are not reinvested but, rather, are issued in cash and, if

reinvestment in mutual fund shares occurs, that requires the affirmative act and an investment

decision to use the cash to repurchase additional mutual fund shares.  (Wietsma 10/1/13 Dep. at

49:1-22.)

  ***Defendant's Reply***:  *Plaintiff's response does not address the facts contained in*

*statement ¶ 53, and accordingly the facts set forth in statement ¶ 53 should be deemed admitted.*

*Mr. Wietsma testified that under the terms of the Separate Accounts, dividends were "reinvested*

into the mutual fund," precisely what statement ¶ 53 asserts. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 48.)  Plaintiff's only denial appears to focus on whether dividends paid in cash were automatically reinvested or whether they required "an affirmative act and an investment decision."  As Mr. Wietsma testified, reinvestment was required by the terms of the separate investment accounts, no independent decision was made.  The deposition testimony plaintiff cites is not to the contrary.

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Plaintiff cited specific evidence demonstrating that Defendant's asserted statement of fact was incorrect and not supported by evidence.  As a result, the challenged factual assertion contained in this paragraph should be deemed unsupported.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.  Defendant's Reply represents a clear attempt to mislead the Court regarding the factual record in this case.  Mr. Wietsma testified that dividends from mutual funds are paid in cash, and that cash is used by the Separate Accounts to purchase additional shares of the mutual funds pursuant to the "investment objective" or the "investment policy" of those Separate Accounts.  (Wietsma 10/1/13 Dep. at 48:3-50:10.)  But, the record is clear and unequivocal that MassMutual and MassMutual alone determines the investment objective or investment policy of each of the Separate Accounts:

> ... MassMutual has exclusive and absolute ownership and control of the assets in the Separate Investment Accounts....  Only MassMutual will have any individual, legal, or equitable ownership of any investments or assets of the Separate Investment Accounts....
>
> **.... All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including,**

> *but not limited to, the discontinuance of a Separate Investment Account.  The*
> *assets of the Separate Investment Accounts may be invested, wholly or partly, in*
> *securities, including the shares of any investment company registered under the*
> *Investment Company Act of 1940.  In exercise of its sole discretion,*
> *MassMutual may from time to time, hire an investment advisor registered*
> *under the Investment Advisors Act of 1940 to assist in the investment of assets*.

(*See* Assise Decl. at Ex. 23 at 40 (§ 5.22)(emphasis added).  Thus, Mr. Wietsma's testimony, that

dividends are reinvested (when MassMutual receives cash and makes the affirmative investment

decision to purchase additional mutual fund shares) in a manner consistent with the "investment

objective" or "investment policy" of the Separate Accounts, means nothing more than that

MassMutual, ***in its sole discretion***, decides whether to reinvest dividends by the means described

above (with no input from the Plans or their participants).  This fact is further confirmed by Mr.

Wietsma's explicit confirmation that nothing in MassMutual's contracts provide for a plan or

participant decision to "reinvest" dividends and that MassMutual does not even communicate to

plans or participants that it makes this reinvestment decision.  (Wietsma 10/1/13 Dep. at 35:3-

37:11.)  Accordingly, a disputed issue of material fact exists.

54.     *Earl Julo testified that reinvesting dividends in the same mutual fund made sense*

*to him because he did not want Plan participants getting a "little check every time there was a*

*dividend paid" and because 401(k) participants generally cannot take a distribution in cash.*

*(Ex. 3, E. Julo Dep. at 158-60.)*

**Plaintiff's Response**:  Denied.  Earl Julo did not testify that he did not want Plan

participants getting a check every time there was a dividend paid but, rather, he testified that "I

can't -- I can't think that we'd get a little -- little check every time there was a dividend paid."

(E. Julo Dep. at 158:24-159:2.)   By way of further response, Mr. Julo was not questioned about

and did not address other available means to invest or direct dividends into qualified instruments or other accounts.

***Defendant's Reply****: Plaintiff's denial is improper as it does not contain any evidence that contradicts the facts contained in statement ¶ 54. Far from it, plaintiff's "denial" acknowledges that Mr. Julo gave the quoted testimony attributed to him. Plaintiff's statement that "Mr. Julo was not questioned about and did not address other available means to invest or direct dividends into qualified instruments or other accounts" has no bearing on the truth of the facts asserted in statement ¶ 54 and therefore the facts in statement ¶ 54 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment. Plaintiff cited specific evidence demonstrating that Defendant's asserted statement of fact was incorrect and not supported by evidence. As a result, the challenged factual assertion contained in this paragraph should be deemed unsupported. *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291. Simply put, Plaintiff explained why Defendant's "interpretation" of Mr. Julo's testimony was neither logical, correct nor supportive of the assertion in this paragraph. Accordingly, a disputed issue of material fact exists.

55.    *In the group annuity contract, GSI authorized MassMutual to "withdraw a separate investment account management fee from each Separate Investment Account." (Ex. 23, Group Annuity Contract at 25.)*

**Plaintiff's Response**: Admitted. By way of further response, the GAC provides MassMutual with the discretion to change the SIA Management Fee, as well as other

components of its compensation, at any time.  (*See* Assise Decl. at Ex. 23, at 28, 40 (§§ 2.04 C (xii); 5.22).)

**Defendant's Reply**:  *Plaintiff has admitted the statements in statement ¶ 55, obviating any need for a "further response."  Moreover, plaintiff's "further response" has no bearing on the truth of the statements asserted in statement ¶ 55 and accordingly should be disregarded.*

**Plaintiff's Sur-Reply**: Plaintiff does not contest its admission, as stated by Defendant, but notes that Defendant does not contest the accuracy of the additional material facts provided by Plaintiff, which Plaintiff respectfully believes places Defendant's underlying conduct in proper context with respect to the material issues of fact at hand in this case.

56.     *MassMutual has added a separate investment account ("SIA") management fee to some, but not all, of its separate accounts.  (Ex. 1, Demetriou Dep. at 69-70.)*

**Plaintiff's Response**:  Denied.  The cited deposition testimony does not support Defendant's assertion in this paragraph.  By way of further response, Mr. Demetriou disclaimed any knowledge as to what an SIA Management Fee is or how it functions.  (Demetriou Dep. at 60:17-61:3.)  Moreover, the cited testimony of Mr. Demetriou relates to "wrap fees," which Eric Wietsma unequivocally testified were not SIA Management Fees.  (Wietsma 10/1/13 Dep. at 99:11-18.)

**Defendant's Reply**:  *Plaintiff's response does not contradict the facts set forth in statement ¶ 56.  In the testimony cited in support of statement ¶56, Mr. Demeteriou testified that (a) some separate accounts' only investment is a single mutual fund, (b) for some of those separate accounts, MassMutual adds a wrap fee, and (c) that those wrap fees have never been changed.  (Assise Aff. Ex. 1, Demetriou Dep. at 69-70.)  The fact that Mr. Demetriou did not*

*know that the group annuity contract refers to those wrap fees as separate investment account management fees does not change the fact that those fees have never been changed. (Id.) In the testimony plaintiff cites from Eric Wietsma, he did not testify that wrap fees and separate investment account management fees are different, only that "the way I think about them is that they are different," but that "mechanically they work the same way." (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 98:15-99:18.) And like Mr. Demetriou, Mr. Wietsma did not know if the group annuity contract referred to the wrap fees as separate investment account management fees, but that does not change the fact that the fee have never been changed. (Id. at 98:22-99:4.) Plaintiff points to no evidence suggesting that the separate investment account management fees have ever been changed.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment. Plaintiff cited specific evidence demonstrating that Defendant's asserted statement of fact was incorrect and not supported by evidence. As a result, the challenged factual assertion contained in this paragraph should be deemed unsupported. *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291. Defendant's attempt to support this factual assertion is simply outrageous. Defendant relied upon Mr. Demetriou's testimony to support an assertion regarding SIA Management Fees -- even though Mr. Demetriou testified that he had no knowledge of what an SIA Management Fee is or how it functions. Moreover, Mr. Wietsma testified that wrap fees and SIA Management Fees are different fees but function in a similar manner (from a mechanical perspective). Nothing in either Mr. Wietsma's testimony or Mr. Demetriou's testimony supports the bald, unsupported claim by MassMutual that "the group annuity contract [supposedly] refers

to those wrap fees as separate investment account management fees...." *See* Defendant's Reply (above).  Indeed, as Defendant well knows, Plaintiff has made repeated and substantial inquiries regarding the nature of SIA Management Fees and, to put it mildly, Defendant has not been able to provide a straight or consistent answer regarding their nature or function.  Defendant's witnesses consistently have disclaimed any knowledge of what SIA Management Fees are (despite promises that they would be able to so testify).  The Court should not countenance this approach in the summary judgment context.  It is MassMutual's burden to support its supposed, undisputed facts with competent evidence -- not raw assertion, which is belied by the actual evidence.  In sum, a disputed issue of material fact exists.

*57.    Attached as Exhibit 22 is a list of the separate accounts offered by MassMutual to retirement plans.  The column entitled "Wrapped Ind" indicates whether the separate account includes a separate investment account management fee (the letter Y means that there is such a fee).  The listing shows that, for any separate account that has a separate investment account management fee, there is an identical separate account that does not have the charge.  (Ex, 21, MASSMUT0179903; Ex. 11, Wietsma Dep. (10/1/13) at 88-89, 98-99.)*

**Plaintiff's Response**:  Denied.  The cited documents list "wrap fees," which MassMutual's witnesses have testified are different from SIA Management Fees.  (Demetriou Dep. at 60:17-61:3; Wietsma 10/1/13 Dep. at 99:11-18.)  Moreover, the cited testimony of Mr. Demetriou relates to "wrap fees," which Eric Wietsma unequivocally testified were not SIA Management Fees.  (*Id.*)  Moreover, the cited testimony of Mr. Wietsma relates to "wrap fees," which he concedes are different from SIA Management Fees.  (*Id.*)

***Defendant's Reply****:  As explained in MassMutual's reply to statement ¶ 56, the wrap fees discussed in this statement are referred to in the group annuity contract as separate investment account management fees, so the facts in this statement ¶ 57 should be deemed admitted.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Plaintiff cited specific evidence demonstrating that Defendant's asserted statement of fact was incorrect and not supported by evidence.  As a result, the challenged factual assertion contained in this paragraph should be deemed unsupported.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.  Plaintiff incorporates by reference its Response and Sur-Reply to paragraph 57 demonstrating all of the reasons why Defendant cannot support its assertion through competent evidence.  In sum, a disputed issue of material fact exists.

58.    *The SIA management fee has never been altered for any separate accounts that have such a charge, including the separate accounts in which the Plan invested.  (Ex. 1, Demetriou Dep. at 70-71; Ex. 12, Wilson Dep. at 33-34.)*

**Plaintiff's Response**:  Denied.  The cited testimony addresses "wrap fees," which MassMutual states are different from SIA Management Fees.

***Defendant's Reply****:  Plaintiff's denial is improper as Local Rule 56.1 requires that for "material facts of record as to which it is contended that there exists a genuine issue" the party contending a factual dispute exists must include "page references to affidavits, depositions and other documentation."  Because plaintiff has not done so, the facts in statement ¶ 58 should be deemed admitted.  To the extent plaintiff meant to incorporate its response to statement  ¶ 57, MassMutual incorporates its reply to statement ¶ 57 cited above.*

**Plaintiff's Sur-Reply**: Defendant appears to misunderstand its burden on summary judgment.  Plaintiff cited specific evidence demonstrating that Defendant's asserted statement of fact was incorrect and not supported by evidence.  That is, the cited testimony did not support the underlying proposition.  Defendant's attempt to argue that Plaintiff failed to cite testimony when it specifically referenced the testimony relied upon by Defendant borders on the absurd.  As a result, the challenged factual assertion contained in this paragraph should be deemed unsupported.  *See Lausell-Archilla, supra* at 164; *Hernandez, supra* at 7; *Fedex Customer Info. Servs., Inc., supra* at *1; *Hodge, supra* at *4; *TC Investments Corp., supra* at 291.  Plaintiff incorporates by reference its Response and Sur-Reply to paragraph 57, demonstrating all of the reasons why Defendant cannot support its assertion through competent evidence.  In sum, a disputed issue of material fact exists.

59.     *Some plans that contract with MassMutual make use of an account called a Plan Expense Reimbursement Account ("PERA").  (Ex. 15, Miles Decl. ¶ 8.)*

**Plaintiff's Response**:  Admitted.  It is admitted that certain retirement plans, which are not included in the putative class, maintain Plan Expense Reimbursement Accounts ("PERAs") that are funded with RSPs, which MassMutual credits to the benefit of those retirement plans -- but not the Plans or the GSI Plan.  By way of further response, MassMutual does not disclose to the Plans that PERAs are available and never has disclosed to the GSI Plan that a PERA is or could be available.  (Miles 11/13/12 Dep. at 58:3-12; 60:22-61:9; Orzell 11/13/12 Dep. at 38:10-17.)  PERAs are used only for a fraction of MassMutual's customers (Miles 11/13/12 Dep. at 59:8-62:1) (less than 800 of the 6700 plans), generally by the larger customers (Miles 11/13/12 Dep. at 62:24-64:3), and the option to use PERA is not disclosed to customers and must be raised

by individual customers to result in a PERA account being implemented.  (Miles 11/13/12 Dep. at 106:10-107:11.)

*__Defendant's Reply__:  Plaintiff has admitted the statements in statement ¶ 59, obviating any need for its additional response.  Moreover, plaintiff's "further response" has no bearing on the truth of the statements asserted in statement ¶ 59, is improper argument, and should be stricken disregarded.*

__Plaintiff's Sur-Reply__: Plaintiff does not contest its admission, as stated by Defendant, but notes that Defendant does not contest the accuracy of the additional material facts provided by Plaintiff, which Plaintiff respectfully believes places Defendant's underlying conduct in proper context with respect to the material issues of fact at hand in this case.

60.     *Plans that have PERAs generally use them as a means to pay qualified plan expenses, such as for the services of attorneys and accounts.  (Id.; Ex. 8, Miles Dep. at 57.)*

__Plaintiff's Response__:  Admitted.

61.     *The Plan did not have a PERA at any time.  (Dkt. 51 at 24.)*

__Plaintiff's Response__:  Admitted.

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S
COUNTER-STATEMENT AND STATEMENT OF ADDITIONAL FACTS**

62.     MassMutual manages and serves as the owner and legal title holder of the

retirement assets in the Separate Accounts, including the GSI Plan's retirement assets. (Assise

Decl. Ex. 23, at 12 (§ 1.12), 40 (§ 5.22); Wietsma 10/1/13 Dep. at 15:5-16.)

*__Defendant's Response__: Denied.  MassMutual denies that it manages or serves as the*

*owner and legal title holder of the retirement plan assets in the separate accounts.  Plan*

*sponsors and participants purchase units in MassMutual's separate accounts, which in turn*

*purchase shares in the mutual funds.  (Assise Aff. Ex. 23, at 9 (§ 1.13); Tang Decl. Ex. W,*

*Wietsma Dep. (10/1/13) at 15:5-16.)  Plan participants own assets in the separate accounts and*

*determine how their assets are invested, and MassMutual follows plan participants' investment*

*decisions.  (Tang Decl. Ex. W, Wietsma Dep. (10/1/13) at 11, 42.)  MassMutual further states*

*that plaintiff's citations to record evidence do not support the contention in 62.  In the deposition*

*testimony cited above, Mr. Wietsma testified as to MassMutual's legal ownership of the separate*

*accounts, not MassMutual's ownership or control over retirement plan assets.*

**Plaintiff's Reply**: Defendant's cited evidence does not support its position.  Mr. Wietsma

agreed that (1) MassMutual owns the Separate Accounts, (2) participants own units of

participation in the Separate Accounts, and (3) the assets in the Separate Accounts (*i.e.,* the

retirement assets at issue) are the "property" of MassMutual.  (Wietsma 10/1/13 Dep. at 15:5-6.)

In addition, Mr. Wietsma confirmed that "[t]he separate account is legally owned by

MassMutual" and that the "assets underneath the separate accounts would all be participant

assets."  (Wietsma 10/1/13 Dep. at 11:15-21.)  In the deposition testimony cited by MassMutual,

Mr. Wietsma specifically acknowledges MassMutual's fiduciary role in connection with its

management of assets invested in the Separate Accounts:

> Q.   And Lisa in responding to Mr. Baum says, thanks for your patience.  The
> following is Mass Mutual's response to your inquiry.  And then she states, ***Mass
> Mutual acknowledges to plan sponsors that it is a fiduciary with respect to the
> management of assets invested in separate accounts held in group annuity
> contracts issued to retirement plans covered by ERISA.  Mass Mutual fulfills its
> fiduciary obligation through the prudent selection and monitoring of the
> mutual funds and other options in which each separate account invests.  As
> part of that process Mass Mutual performs thorough and ongoing due diligence
> of each investment option and advisor.  Plan sponsors and other fiduciaries are
> therefore relieved of their obligation to perform those functions.  Mass Mutual
> does not charge an extra fee related to its fiduciary role***.  Did I read that
> accurately?
>
> A.   Yes.
>
> Q.   Okay.  Is there anything contained within that paragraph that you disagree
> with?
>
> \*     \*     \*
>
> THE WITNESS:  No.  ***I think Mass Mutual clearly acknowledges as part of
> owning the separate accounts and as part of handling plan assets to be invested
> in those separate accounts, that we take on that responsibility***....

(Wietsma 10/1/13 Dep. at 41:6-42:9 (emphasis added); *see also* Wietsma 10/1/13 Dep. Ex. 6.)
Indeed, the record is clear and unequivocal that MassMutual and MassMutual alone owns,

controls and manages the assets in the Separate Accounts:

> ... ***MassMutual has exclusive and absolute ownership and control of the assets
> in the Separate Investment Accounts***....  ***Only MassMutual will have any
> individual, legal, or equitable ownership of any investments or assets of the
> Separate Investment Accounts***....
>
> .... ***All assets of MassMutual are invested by MassMutual as it, in its sole
> discretion, may determine, subject to applicable laws and regulations including,
> but not limited to, the discontinuance of a Separate Investment Account***.  The
> assets of the Separate Investment Accounts may be invested, wholly or partly, in
> securities, including the shares of any investment company registered under the
> Investment Company Act of 1940.  In exercise of its sole discretion, MassMutual

may from time to time, hire an investment advisor registered under the Investment
Advisors Act of 1940 to assist in the investment of assets.

(*See* Assise Decl. at Ex. 23 at 40 (§ 5.22)(emphasis added).  In addition, Mr. Wietsma admitted

that MassMutual carries the assets in the Separate Accounts on its own balance sheet as assets of

MassMutual.  (Wietsma 11/14/12 Dep. at 73:15-22.)  It bears noting that, in response to

Paragraph 67 below, MassMutual explicitly and contradictorily admits that "[t]he Separate

Accounts are established, administered, owned and managed by MassMutual...."  Thus, Plaintiff's

factual assertion was accurate and correct in this paragraph.  At the very minimum, a material

issue of fact exists regarding MassMutual's management and ownership of the retirement assets

held in the Separate Accounts.

63.     The documents that define the relationship between MassMutual and the Plans,

including the GSI Plan, are the Group Annuity Contracts ("GACs" or "Group Contracts").

(Miles 11/13/12 Dep. at 11:4-11:11, 15:14-16:5, 37:11-37:18, 72:13-72:22.)

**_Defendant's Response_**: *Admitted.*

64.     Pursuant to the GACs, MassMutual provides investment options to the GSI Plan

and the other Plans.  (Miles 11/13/12 Dep. at 21:14-25:3 (explaining how investments in mutual

funds are offered to 401k plans through the Group Contracts and other means).)

**_Defendant's Response_**: *Admitted.*

65.     Pursuant to the terms of the GACs, the Plans' retirement assets are placed in,

among other things, "separate investment accounts" ("Separate Accounts") created by

MassMutual for the purpose of investing in mutual funds, which (i) MassMutual owns along

with all of the retirement assets contained in those accounts (and for which MassMutual

indisputably functions as a fiduciary under applicable law), (ii) are created under Mass. Gen.

Law. 175 §§ 132F-H, (iii) are not charged with the liabilities of MassMutual to the extent of the

reserves and anticipated contract liabilities of those accounts, but otherwise are subject to the

claims of creditors of MassMutual, (iv) buy and hold the shares of the mutual funds in which the

Plans' participants choose to invest, and (v) are utilized by MassMutual as the tool to negotiate

revenue sharing or Participation Agreements with the mutual funds so that MassMutual can earn

additional income that bears no relationship to the services that it provides to the Plans and/or the

mutual funds.  (Complaint at ¶ 27; Answer at ¶ 27; *see also* Miles 11/13/12 Dep. 27:5-27:16,

46:3-46:12 (explaining that all 401 plan investments in mutual funds are held in Separate

Accounts directly tied to different mutual funds); Wietsma 11/14/12 Dep. 56:12-19 (confirming

that MassMutual has never calculated the "value" of the services it ostensibly performs for the

mutual funds through the Participation Agreements), 62:22-63:9 (confirming that MassMutual

performs the same services for different mutual funds regardless of amount of RSPs paid);

72:24-73:22 (confirming that MassMutual owns the Separate Accounts), 74:4-16 (confirming

that MassMutual is a fiduciary of the Separate Accounts because of the plan assets within them),

75:3-19 (explaining that the Participation Agreements allows MassMutual to meet the investment

objective of each Separate Account), 76:6-24 (confirming that MassMutual only receives RSPs

on the basis of the plan assets delivered through the Separate Accounts), 122:13-124:11

(confirming that MassMutual buys and holds mutual fund shares attributable to individual

participants in an omnibus fashion); Demetriou Dep. 30:15-31:13 (testifying the MassMutual

performs same services regardless of amount of RSPs paid); Assise Decl. Ex. 23, at 12 (§ 1.12);

40 (§ 5.22).)

***Defendant's Response***:  *Admitted in part.  MassMutual admits that, pursuant to the group annuity contracts, the plan assets are placed in MassMutual's separate accounts, which are created under Mass. Gen. Law. 175 §§ 132F-H and are beyond the reach of MassMutual's creditors.  MassMutual denies the rest of the plaintiff's contention above.    With respect to subsection (i), MassMutual denies that it owns plan assets in the separate accounts and acts as a fiduciary under applicable law.  MassMutual offers a menu of investment options (the "Overall Menu") to retirement plans, from which plan sponsors select a smaller menu (the "Plan Menu").  (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 24-25.)  The investment options on the Overall Menu mainly consist of MassMutual's separate accounts.  (Id. at 24, 85.)  Plan sponsors offer the Plan Menu to plan participants, and plan participants decide how their retirement monies will be allocated among the Plan Menu.  (Assise Aff. Ex. 2, Harrison Dep. at 33; Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42.)  MassMutual has no input on a plan's selection of the Plan Menu or the plan participants' investment decisions.  (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 90-91.)  MassMutual does not have any ownership or control over plan assets in the separate accounts, including GSI Plan assets.  (Tang Decl. Ex. W, Wietsma Dep. (10/1/13) at 11, 42.)  MassMutual further notes that its fiduciary status is the legal conclusion, not a statement of fact.*

*With respect to subsection (v), MassMutual denies that it uses the separate accounts to negotiate revenue sharing or the Participation Agreements with the mutual funds.  Revenue sharing agreements are put in place before any of the plan assets are invested in a separate account.  (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10-11; Assise Aff. Ex. 1, Demetriou Dep. at 21.)  Therefore, it is impossible for MassMutual to use plan assets in the separate account to negotiate*

*revenue sharing agreements when it enters into the Participation Agreement with mutual fund firms.*

*With respect to subsection (v), MassMutual also denies that revenue sharing fees are unrelated to the services that MassMutual provides to the retirement plans or the mutual funds. (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10-11; Assise Aff. Ex. 1, Demetriou Dep. at 21.) MassMutual receives revenue sharing for providing services that would otherwise have to be performed by mutual fund firms, such as recordkeeping and participant communications. (Assise Aff. Ex. 10, Wiestma Dep. (11/14/12) at 11; Assise Aff. Ex. 8, Miles Dep. at 55-56.) By way of further response, MassMutual states that plaintiff's statement ¶ 65 contains multiple contentions followed by multiple citations, which are not properly tied to any specific factual allegation. As such, statement ¶ 65 fails to comply with L.R. 56.1 and should be stricken or disregarded. Moreover, plaintiff's citations to record evidence do not support statements in ¶ 65. Nothing in the deposition testimony of Messrs. Wietsma or Demetrious supports plaintiff's contention that MassMutual's services are unrelated to revenue sharing fees or that MassMutual acts as a fiduciary with respect to plan assets.*

**Plaintiff's Reply**: Defendant's cited evidence does not support its positions. Plaintiff incorporates by reference its Reply to Paragraph 62, which establishes Defendant's ownership and management of the assets in the Separate Accounts, as well as control over the Plan's investments decisions and those of its participants (since it explicitly takes on an acknowledged fiduciary role in performing ongoing due diligence with respect to each investment option and advisor), in addition to the evidence previously and properly cited in support of this paragraph, all of which supports the facts asserted. MassMutual fails to rebut the evidence presented that it

uses the Separate Accounts to negotiate for and receive the RSPs at issue. In addition, as explained in Paragraph 14, MassMutual cannot support its assertion that Participation Agreements always are negotiated before investments are permitted by the Plan or its participants. Although MassMutual asserts that the RSPs are related to services rendered, Plaintiff has produced powerful evidence that the RSPs are entirely unrelated to such services and Defendant does nothing to rebut that evidence other than citing supposedly contrary evidence. Plaintiff incorporates by reference its Responses and Sur-Replies to Paragraphs 13 and 16, which also specifically explain and cite evidence establishing that RSPs are unrelated to any services allegedly rendered for mutual funds. Defendant's assertion that Plaintiff's statement of facts and evidentiary citations are improper constitutes little more than a desperate attempt to avoid the effect of the facts of record, as supplied by Plaintiff and supported by pinpoint citations to record evidence. Thus, Plaintiff's factual assertion was accurate and correct in this paragraph. At the very minimum, material issues of fact exist regarding MassMutual's management and ownership of the retirement assets held in the Separate Accounts, the role in plays in determining the investments of the Plans and their participants, the relationship between and use of the Separate Accounts to obtain RSPs and the relationship (or lack thereof) between the RSPs and services allegedly rendered by MassMutual in return for such payments.

66.    The Plans and their participants do not invest directly in the mutual funds, but invest in the Separate Accounts, which are established and owned by MassMutual. (Complaint at ¶ 28; Answer at ¶ 28; *see also* Wietsma 11/14/12 Dep. at 90:3-91:20 (describing MassMutual's "Smart Architecture" platform in which MassMutual offers its own mutual funds and other companies' mutual funds as investment options as part of its retirement products).

*__Defendant's Response__: Admitted.*

67.    The Separate Accounts are established, administered, owned and managed by MassMutual and the Separate Accounts' assets are segregated from the general assets of MassMutual.  (Complaint at ¶ 29; Answer at ¶ 29; Miles 11/13/12 Dep. at 44:3-46:2 (MassMutual's policies and procedures with respect to the Separate Accounts are uniform in terms of the accounting, operations, management and administration of these Separate Accounts as to all of the Plans); Assise Decl. Ex. 23, at 40 (§ 5.22); Wietsma 11/14/12 Dep. 72:24-73:22 (confirming that MassMutual owns the Separate Accounts).

*__Defendant's Response__: Admitted.*

68.    The Separate Accounts permit MassMutual to pool the investments of the Plans to invest in mutual funds and similar investments.  (Complaint at ¶ 32; Answer at ¶ 32; Miles 11/13/12 Dep. at 82:18-83:7 (confirming that MassMutual invests in mutual funds through an omnibus account and that MassMutual acts as a single shareholder vis-a-vis the mutual funds; Wietsma 11/14/12 Dep. 13:7-14:22 (explaining that MassMutual invests and executes its trades in an omnibus manner, meaning that, on behalf of each of its Separate Accounts, MassMutual aggregates each of the buys and sells for all of its participants and delivers one purchase and sale order each day to the mutual funds with which it maintains business relationships); Wietsma 10/1/13 Dep. 10:25-11:22); Assise Decl. Ex. 23, at 40 (§ 5.22), 41).)

*__Defendant's Response__:  MassMutual admits that the separate accounts invest in mutual funds and other similar investments.  MassMutual denies that the separate accounts permit MassMutual to "pool" the plan's investments.  Plan sponsors select investment options for the plan and the plan participants determine how plan assets are invested.  (Assise Aff. Ex. 11,*

*Wietsma Dep. (10/1/13) at 42, 48.)  Accordingly, MassMutual has no ability to "pool" the plan assets or determine how they are invested.*

**Plaintiff's Reply**:  Defendant's cited evidence does not support its position.  Mr. Wietsma specifically testified that the Separate Accounts operate so that "every plan that utilizes that fund and share class for its plan, ***those investments would be aggregated***."  (Wietsma 10/1/13 Dep. at 11:11-13; *see also* Wietsma 11/14/12 Dep. 13:7-14:22 (explaining that investments are aggregated for trading purposes).)  As a result, the evidence supports the fact that the Separate Accounts permit MassMutual to pool the Plans' investments.  Thus, Plaintiff's factual assertion was accurate and correct in this paragraph.  At the very minimum, material issues of fact exist regarding MassMutual's ability to pool the Plans' assets in connection with its management and ownership of the Separate Accounts and the assets contained therein.

69.    The Separate Accounts maintained by MassMutual are divided to correspond to the mutual funds and other investment options available under the GACs that MassMutual maintains with the Plans.  (Complaint at ¶ 33; Answer at ¶ 33; Miles 11/13/12 Dep. at 40:14-41:14 (confirming that the Separate Accounts are divided to correspond with mutual fund investments and the Plans and participant investments are reflected in accumulation units); Wietsma 11/14/12 Dep. at 122:13-124:11 (same); Assise Decl. Ex. 23, at 12 (§ 1.13), 23-24 (§ 2.04)).)

**Defendant's Response**:  *Admitted.*

70.    The Separate Accounts are divided into accumulation units (sometimes referred to as "record units") that track the performance of shares of a selected mutual fund investment with the price per accumulation unit calculated by dividing the total value of the assets of the Separate

Account by the number of units in the Separate Account.  (Complaint at ¶ 32; Answer at ¶ 32;
Miles 11/13/12 Dep 40:10-41:14; Wietsma 11/4/12 Dep. 122:13-124:1; Assise Decl. Ex. 23 at 12
(§ 1.13).)

  ***Defendant's Response***:  *Admitted.*

  71. MassMutual maintains ownership of, as well as authority and control over, the
Separate Accounts, the sub-accounts, and the accumulation units.  (Complaint at ¶ 34; Answer at
¶ 34; Miles 11/13/12 Dep. 40:10-41:14; Wietsma 10/1/13 Dep. 10:25-11:21; Assise Decl. Ex. 23,
at 12 (§ 1.12); 40 (§ 5.22).)

  ***Defendant's Response***:  *Admitted in part.  MassMutual admits that it maintains legal*
*ownership of the separate accounts.  MassMutual denies that it maintains ownership, authority,*
*or control over the separate accounts, accumulation units, and subaccounts.  Plan participants*
*purchase and own the accumulation units in the separate accounts.  (Assise Aff. Ex. 23 at 9*
*(§1.12).)  Plan participants own assets in the separate accounts and provide directions about*
*how their monies in the separate accounts are invested.  (Assise Aff. Ex. 11, Wiestma Dep.*
*(10/1/13) at 11, 42, 48.)  MassMutual's separate accounts do not have subaccounts.  (Tang Decl.*
*Ex. V, Wietsma Dep. (11/14/12) at 122:17-18.)*

  **Plaintiff's Reply**: The evidence cited by Defendant does not support its position, with the
possible exception of Defendant's statement that "MassMutual's separate accounts do not have
subaccounts," but Defendant contradictorily admits in response to Paragraph 72 that subaccounts
constitute plan assets, like the accumulation units themselves.  Plaintiff incorporates by reference
its response to Paragraph 62, which establishes Defendant's ownership of the assets in the
Separate Accounts.  The Group Contract explicitly provides that "MassMutual has exclusive and

absolute ownership and control of the assets in the Separate Investment Accounts" and that
"[only MassMutual will have any individual, legal, or equitable ownership of any investments or
assets of the Separate Investment Accounts." (Assise Decl. Ex. 23, at 40 (§ 5.22).)  Since the
accumulation units represent interests in the Separate Accounts according to MassMutual itself,
Defendant cannot credibly contest the fact that MassMutual (and only MassMutual) owns the
assets and the investments, as well as any interests related thereto, in the Separate Accounts.
Thus, Plaintiff's factual assertion was accurate and correct in this paragraph (with the possible
exception of its statement that the Separate Accounts are divided into subaccounts for which
there may be an issue of fact - but which is immaterial in any event).  At the very minimum,
material issues of fact exist regarding MassMutual's ownership of the Separate Accounts' assets
and accumulation units based upon the evidence of record.

72.     The accumulation units of the Plans and their participants, which are held by
MassMutual, like the Separate Accounts and sub-accounts, constitute assets of the Plans.
(Complaint at ¶ 35; Answer at ¶ 35; Miles 11/13/12 Dep. 40:10-41:14; Wietsma 10/1/13 Dep.
10:25-11:21; Assise Decl. Ex. 23, at 12 (§ 1.13), 23-24 (§ 2.04).)

**_Defendant's Response_**: _Admitted._

73.     Based on the combined contributions to the sub-accounts made by all these Plans
and their participants, MassMutual sells and purchases mutual fund shares to hold in the Separate
Accounts (and receives RSPs/kickbacks in return for these purchases).  (Complaint at ¶ 36;
Answer at ¶ 36; Wietsma 10/1/13 Dep. 76:6-24, 122:13-124:11; Assise Decl. Ex. 23, at 23-24 (§
2.04).)

**_Defendant's Response_**: _Denied.  MassMutual does not sell or purchase mutual fund_

*shares based on the combined contributions to the sub-accounts. Plan sponsors select investment options from MassMutual's Overall Menu and offer a smaller menu (the Plan Menu) to plan participants. Once a plan sponsor chooses the Plan Menu, participants provide directions about how they want their monies to be invested among the investment options. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.) MassMutual merely follows the direction of plan participants in buying or selling mutual fund shares. (Assise Aff. Ex. 2, Harrison Dep. at 33-34; Assise Aff. Ex. 11, Wiestma Dep. (10/1/13) at 42, 48.) MassMutual further states that the evidence cited by plaintiff does not support the contentions above and thus fails to comply with L.R. 56.1. The contention that mutual fund firms share revenues in return for investing in mutual funds is plaintiff's theory of the case, which is not supported by record evidence. As such, ¶ 73 should be stricken or disregarded.*

**Plaintiff's Reply**: The evidence cited by Defendant does not support its position, with the exception of Defendant's statement that "MassMutual's separate accounts do not have subaccounts," but Defendant contradictorily admits in response to Paragraph 72 that subaccounts constitute plan assets, like the accumulation units themselves. Plaintiff incorporates by reference its response to Paragraph 62, which establishes Defendant's ownership of the assets in the Separate Accounts. In addition, Mr. Wietsma specifically admitted that, in its Participation Agreements, MassMutual has represented and warranted that "***it is a fiduciary with respect to the separate account and has full authority to enter into this agreement on behalf of the separate account***," thereby confirming that the Separate Accounts (and MassMutual's ownership, control and fiduciary status with respect to the Separate Accounts) is inextricably tied to and related to its receipt of RSPs, since the Participation Agreements define the amount of the

RSPs.  (Wietsma 11/14/12 Dep. at 73:23-76:24 (emphasis added).)  Plaintiff's citation in its

Statement of Facts should have been to Mr. Wietsma's 2012 deposition transcript (and not his

2013 deposition transcript), and Plaintiff apologies for any confusion created by this inadvertent

error.  In any event, Plaintiff's factual assertion was accurate and correct in this paragraph (with

the possible exception of its statement that the Separate Accounts are divided into subaccounts

for which there may be an issue of fact - but which is immaterial in any event).  At the very

minimum, material issues of fact exist regarding whether MassMutual sells and purchases mutual

fund shares to hold in the Separate Accounts and receives RSPs in return for these purchases.

74.      The GAC expressly grants MassMutual the authority to administer, control, and

manage the Separate Accounts holding the GSI Plan assets:

> ... MassMutual has exclusive and absolute ownership and control of the assets in
> the Separate Investment Accounts....  Only MassMutual will have any individual,
> legal, or equitable ownership of any investments or assets of the Separate
> Investment Accounts....
>
> .... All assets of MassMutual are invested by MassMutual as it, in its sole
> discretion, may determine, subject to applicable laws and regulations including,
> but not limited to, the discontinuance of a Separate Investment Account.  The
> assets of the Separate Investment Accounts may be invested, wholly or partly, in
> securities, including the shares of any investment company registered under the
> Investment Company Act of 1940.  In exercise of its sole discretion, MassMutual
> may from time to time, hire an investment advisor registered under the Investment
> Advisors Act of 1940 to assist in the investment of assets.

(Assise Decl. Ex. 23, at 40 (§ 5.22); Miles 11/13/12 Dep. at 44:3-46:2.)

**_Defendant's Response_**: _Admitted in part.  MassMutual admits that the group annuity_

_contract includes the cited paragraphs above.  MassMutual denies that the group annuity_

_contract grants MassMutual the authority to administer, control, or manage the GSI Plan assets._

_Under the group annuity contract, MassMutual's role is limited to initially setting up the_

*separate accounts and making sure that plan assets are invested into the funds that participants*

*have selected.  (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42.)  Plan participants purchase*

*and own the accumulation units in the separate account, which in turn invest in the underlying*

*mutual funds.  (Assise Aff. Ex. 23 at 9 (§1.12).)  Plan participants provide directions about how*

*their monies in the separate accounts are invested, and MassMutual follows their directions.*

*(Assise Aff. Ex. 11, Wiestma Dep. (10/1/13) at 42.)*

**Plaintiff's Reply**:  The evidence cited by Defendant does not support its position.  In

addition, it is beyond cavil that the Group Contract explicitly provides that "MassMutual has

exclusive and absolute ownership and control of the assets in the Separate Investment Accounts"

and that "[only MassMutual will have any individual, legal, or equitable ownership of any

investments or assets of the Separate Investment Accounts."  Moreover, the Group Contract

explicitly provides that "[a]ll assets of MassMutual are invested by MassMutual as it, in its sole

discretion, may determine...."  Thus, Plaintiff's factual assertion was accurate and correct in this

paragraph.  At the very minimum, material issues of fact exist as to whether the GAC expressly

grants MassMutual the authority to administer, control, and manage the Separate Accounts

holding the GSI Plan assets.

75.     MassMutual explicitly acknowledges its fiduciary status with respect to the

Separate Accounts and the Plans' assets it invests through the Separate Accounts.  (Miles

11/13/12 Dep. at 69:15-71:3.)

***Defendant's Response***:  *Denied.  In the deposition testimony cited above, Mr. Miles*

*stated that "MassMutual acts as a fiduciary in a very limited capacity" to the extent that*

*MassMutual invests plan assets in a separate account according to the direction of plan*

*participants.  (Tang Decl. Ex. R, Miles Dep. at 70:13-23.)  By way of further response,*

*MassMutual states that nothing in the cited records shows that MassMutual ever acted in a*

*fiduciary capacity with respect to GSI Plan assets in the separate account.*

      **<u>Plaintiff's Reply</u>**: The evidence of record supports Plaintiff's position.  Nothing in

Defendant's response disputes the fact that MassMutual has explicitly acknowledged fiduciary

status.  In addition, despite Defendant's attempt to self-limit its duties, MassMutual's own

documents and evidentiary admissions establish otherwise:

> ***Mass Mutual acknowledges to plan sponsors that it is a fiduciary with respect to the management of assets invested in separate accounts held in group annuity contracts issued to retirement plans covered by ERISA.  Mass Mutual fulfills its fiduciary obligation through the prudent selection and monitoring of the mutual funds and other options in which each separate account invests.  As part of that process Mass Mutual performs thorough and ongoing due diligence of each investment option and advisor.  Plan sponsors and other fiduciaries are therefore relieved of their obligation to perform those functions.  Mass Mutual does not charge an extra fee related to its fiduciary role***.  Did I read that accurately?

> A.   Yes.

> Q.   Okay.  Is there anything contained within that paragraph that you disagree with?

>                *         *         *

> THE WITNESS:  No.  ***I think Mass Mutual clearly acknowledges as part of owning the separate accounts and as part of handling plan assets to be invested in those separate accounts, that we take on that responsibility***....

(Wietsma 10/1/13 Dep. at 41:6-42:9; *see also* Wietsma 10/1/13 Dep. Ex. 6.)(Emphasis added.)

Plaintiff respectfully submits that there is no material issue of fact in this case as to whether

Defendant has explicitly acknowledged fiduciary status with respect to its management of the

assets in the Separate Accounts.

76.     MassMutual has the legal standing, control and authority to vote in any proxies put forth by the mutual funds that it holds shares of in the Separate Accounts. (Demetriou Dep. at 39:15-40:1.)

*__Defendant's Response__:  Admitted in part.  MassMutual admits that it votes in proxies sent by the mutual fund companies.  MassMutual denies that the cited record supports the statement that MassMutual has the legal standing, control, and authority to vote in any proxies put forth by the mutual funds.*

__Plaintiff's Reply__: The cited evidence supports Plaintiff's position.  Mr. Demetriou explained that he serves on MassMutual's proxy committee and the proxy committee determines how to vote the proxy with "the best interest of the shareholder [*i.e.,* the Separate Account] in mind."  (Demetriou Dep. at 39:21-40:4.)  To the extent that MassMutual is suggesting that it is voting proxies without legal standing, control or authority to so act, despite the substantial powers granted to it under the Group Contract, and acting in an *ultra vires* manner, Defendant cites no evidence to support that assertion.  At a minimum, material issues of fact exist, based on the evidence, as to whether Defendant has legal standing, control and authority to vote proxies put forth by mutual funds.

77.     MassMutual recognizes that it must exercise its authority and control over any proxy votes solely for the benefit of the plan participants and makes its own discretionary determination as to what is in the best interest of the plan participants when its proxy votes. (Demetriou Dep. at 40:3-43:3.)

*__Defendant's Response__:  Denied.  The three pages of cited testimony do not address how MassMutual makes a discretionary determination as to what is in the best interest of the plan*

*participants when voting on a proxy.  In the cited testimony, Mr. Demetriou stated that*

*MassMutual has a committee, which votes on the proxy sent by a mutual fund company, with the*

*best interest of the shareholder in mind (Assise Aff. Ex. 1, Demetriou Dep. at 40:3-4.)  Mr.*

*Demetriou further testified that after reviewing the proxy, if it is not disadvantageous to*

*shareholders, the committee decides to vote in favor of the proxy.  (Id. at 42.)*

**Plaintiff's Reply**: The evidence cited supports the factual statement.  Moreover, the
evidence cited by Defendant only provides further support for the same position.  Plaintiff
frankly does not understand Defendant's response other than its apparent discomfort with the
word "discretion," which is exactly what MassMutual indisputably exercises when making
determinations as to what is in the best interests of shareholders and/or not disadvantageous to
shareholders.  There is no material issue of fact with respect to this paragraph.

78.    The GAC grants MassMutual the final discretionary authority to substitute,
eliminate, and add funds to its Separate Accounts.  (Assise Decl. Ex. 23, at 40 (§ 5.22); Miles
11/13/12 Dep. at 134:15-137:7; Wietsma 11/14/12 Dep. at 88:20-90:2; Demetriou Dep. at
74:3-19.)

***Defendant's Response***: *Denied.  The cited evidence does not support the statement that*

*the group annuity contract grants MassMutual the "final discretionary authority" to change*

*funds in the separate accounts.  Neither the group annuity contract nor the cited deposition*

*testimony states that MassMutual has the "final discretionary authority" to substitute, eliminate,*

*and add funds to the separate accounts.  MassMutual further states that, since October 2005,*

*any change to the Plan Menu occurred at the direction of the GSI Plan administrators.  (Assise*

*Aff. Exs. 5-6, E. Julo Dep. Exs. 11, 12; Assise Aff. Ex. 7, R. Julo Dep. at 35-36.)*

**Plaintiff's Reply**: The evidence cited supports the factual statement.  Mr. Demetriou testified that MassMutual reserves the right to decline to offer any particular investment after it conducts its due diligence.  (Demetriou Dep. at 74:3-19.)  Mr. Wietsma testified that, as the owner of the Separate Accounts, MassMutual has the right to change to make changes to investments and "does make changes."  (Wietsma 11/14/12 Dep. at 88:20-90:2.)  Mr. Miles testified that MassMutual has the right to add or remove mutual funds it makes available to the Plans and that MassMutual has "the discretion [to do so] at the investment platform standpoint." (Miles 11/13/12 Dep. at 135:20-136:4.)  There is no basis to dispute statement of fact.

79.     The GAC also grants MassMutual the final discretionary authority to veto the GSI Plan from offering any investment that MassMutual deems "competing."  (Assise Decl. Ex. 23, at 26 (§ 2.04(C)(vi); Stamborski Dep. at 23:16-24:14.)

*Defendant's Response: Denied.  The cited portion of the group annuity contract states that "[t]he Contractholder agrees not to offer an investment fund which MassMutual considers to be a competing fund, unless MassMutual gives its prior written consent."  (Assise Aff. Ex. 23 at 20 (§ 2.04(C)(vi).)  The cited deposition testimony does not support the contention that MassMutual has the final discretionary authority to veto the GSI Plan's selection of a competing fund.  In the cited testimony, Mr. Stamborski stated that if "a plan sponsor decides that they want to add a competing fund, [] [MassMutual] would have restrictions on the system that wouldn't allow transfers to occur."  (Tang Decl. Ex. U, Stamborski Dep. at 23:16-24:14.)  By way of further response, MassMutual states that it has never vetoed or overridden the GSI Plan's selection of investment options.  (Assise Aff. Exs. 3-7, E. Julo Dep. Exs. 2, 11, 12; E. Julo Dep. at 69-70, 74-75; R. Julo Dep. at 35-36.)  Plaintiff fails to cite any record evidence in support of*

*statement  ¶ 79.  As such,  ¶ 79 should be stricken or disregarded.*

**Plaintiff's Reply**: The evidence cited supports the factual statement.  Nothing in Defendant's Response provides a basis to dispute this statement of fact.

80.     In the event that MassMutual decides to exercise its discretionary authority to substitute, eliminate, or add funds to its Separate Accounts, the GAC does not require MassMutual to provide any notice or opportunity for the GSI Plan to reject such changes.  (*See generally* Assise Decl. Ex. 23.)

***Defendant's Response****:  Admitted in part.  MassMutual admits that the group annuity contract does not require MassMutual to provide any notice relating to changes in the investment options in the separate accounts.  MassMutual denies that it has any discretionary authority to substitute, eliminate, or add funds to the separate accounts under the group annuity contract.  MassMutual makes changes to the Overall Menu only on a prospective basis.  (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 28.)  By way of further response, MassMutual states that the only time MassMutual proposed a change to the GSI Plan Menu occurred in November 2004. At that time, MassMutual sent the GSI Plan a 45 days notice.  The notice included an election form, which allowed the GSI Plan to accept or reject the proposed change.  (Assise Aff. Ex. 18, MASSMUT0025035; Assise Aff. Ex. 3, E. Julo Dep. at 141-43.)*

**Plaintiff's Reply**: The evidence cited supports the factual statement.  Nothing in Defendant's Response provides a basis to dispute this statement of fact.  Plaintiff incorporates by reference its Replies to Defendant's Responses to Paragraphs 78 and 79, which establish that MassMutual possesses the discretionary authority and power to add and delete investments available to the Plans, including the GSI Plan.

81.     MassMutual admits in proposals to clients that it is "a fiduciary with respect to plan assets held in separate accounts under the group annuity contract to the extent that it is responsible for the prudent selection of the underlying mutual funds in which the separate accounts invest."  (Wietsma 10/1/13 Dep. at 84:9-24 (initial misquotation corrected on record); Wietsma 10/1/13 Dep. Ex. 13.)

**_Defendant's Response_**:  *Admitted.*

82.     When MassMutual proposes to change an investment option on a plan menu, MassMutual does not disclose the difference in revenue-sharing rates it will be receiving as a result of the proposed change and surrender charges (meaning penalties) are sometimes applicable if a plan chooses to exit. (Assise Decl. at Ex. 18 (MASSMUT0025035); Miles 11/13/12 Dep. at 36:17-37:10.)

**_Defendant's Response_**:  *Denied.  MassMutual is not aware of any situation where MassMutual's proposed change in the Plan Menu caused revenue sharing rates to change. Accordingly, there was no difference in revenue-sharing rates to be disclosed.  The only one time that MassMutual proposed a change to the Plan's investment option was in November 2004. The November 2004 change did not change revenue sharing rates.  (Assise Aff. Ex. 18, MASSMUT 0025035.)  Since the GSI Plan contracted with MassMutual in 1999, there was no increase in revenue sharing rates with regard to the GSI Plan assets.  (Assise Aff. Ex. 1, Demetriou Dep. at 67.)*

*MassMutual denies that it does not disclose surrender charges.  Surrender charges are disclosed in the group annuity contract.  (Assise Aff. Ex. 23 at 10 (§ 1.14).)  In the cited portions of deposition testimony, Mr. Miles stated that MassMutual reserves the right to waive any*

*surrender charges if plans choose not to accept the proposed change. To the contrary of the*

*contention above, Mr. Miles testified that he is not aware of any instance where plans were*

*subject to surrender charges because they chose not to elect the change proposed by*

*MassMutual. (Tang Decl. Ex. R, Miles Dep. (11/13/12) at 36:22-37:10.)*

**Plaintiff's Reply**: The evidence cited supports the factual statement. Nothing in

Defendant's Response provides a basis to dispute this statement of fact. Defendant provides no

record evidence to support its bald assertion that "[t]he November 2004 change did not change

revenue sharing rates" because the Assise Decl. Ex. 18 only speaks to expense ratios and does

not address any changes in RSPs, thereby confirming the correctness of Plaintiff's position.

Plaintiff's statement of fact contains no assertion regarding Defendant's disclosure of surrender

charges and, as a result, Defendant's Response is largely unresponsive. Mr. Miles' testimony

explicitly confirms that MassMutual reserves the right to assess surrender charges if one of the

Plans rejects a change in investment options initiated by Defendant. (Miles 11/13/12 Dep. at

36:17-37:10.) Thus, the factual statement contained in this paragraph is entirely correct.

83.     MassMutual has exercised its discretion and power to add and delete mutual funds

from its menu of available investment options for existing and prospective Plans. (Wietsma

11/14/12 Dep. at 107:14-111:2; Demetriou 12:15-23.)

***Defendant's Response***: *Admitted in part. MassMutual admits that it adds and deletes*

*mutual funds from the Overall Menu. MassMutual assembles the Overall Menu prior to*

*contracting with any retirement plans. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 24, 28-29.)*

*MassMutual denies that it has ever exercised discretion in adding or deleting mutual*

*funds from the GSI Plan Menu. By way of further response, MassMutual states that the cited*

-88-

*deposition testimony does not support the contention above.  In the cited portions of deposition*

*testimony, Mr. Wietsma stated that any changes to the Overall Menu occurs prospectively.*

*(Assise Aff. Ex. 11, Wiestma Dep. (10/1/13) at 28.)  Mr. Wietsma did not testify that MassMutual*

*made any changes to a Plan Menu for existing plans, after plans contracted with MassMutual.*

*To the contrary, Mr. Wietsma testified that, with regard to plans that already have the Plan*

*Menu, plan sponsors, not MassMutual, make changes to the Plan Menu.  (Tang Decl. Ex. V,*

*Wietsma Dep. (11/14/12) at 110:21-111:2.)*

**Plaintiff's Reply**: The evidence cited supports the factual statement.  Nothing in

Defendant's Response provides a basis to dispute this statement of fact.  As Plaintiff explained in

Response and Sur-Reply to Paragraph 8, although Plans invested in the deleted options may be

permitted to continue investing in that investment option, Plans that have made those deleted

options available to their participants, but in which actual investments have not been made by

participants as of the date of the deletion, also will have the investment option deleted from the

Plans' menus.  (Wietsma 10/1/13 Dep. at 28:19- 29:11; 30:13-31:22.)  Moreover, the evidence

establishes instances in which GSI was invested in mutual funds that MassMutual determined, in

its sole discretion, to delete from its Limited Menu and substitute with replacement investment

options and GSI had no choice to continue with these deleted options, notwithstanding

MassMutual's self-serving assertion to the contrary.  (*See* Assise Decl. at Exs. 18, 19; *see also*

Demetriou Dep. Ex. 6 ("MassMutual has exercised its right under its contract with INVESCO to

terminate its investment, ... MassMutual is in the process of searching for a replacement for the

INVESCO Stable Value trust..., [i]n the event a plan fiduciary notifies MassMutual that it does

not want to offer the SIA with the replacement investment..., MassMutual will transfer the value

of the plan's investment in the SIA to any other available investment selected by the plan

sponsor...."); Demetriou Dep. at 61:8-64:1.)  Thus, it is simply incorrect that the Plans, including

the GSI Plan, always are permitted to retain investments in mutual funds or other instruments

which MassMutual, in its discretion, elects to delete or replace them.  Thus, the factual statement

contained in this paragraph is entirely correct.

84.    Mutual funds have been added and removed from the list of investment options

available to the GSI Plan and, in recognition of that fact, there are at least 90 more funds on the

overall menu than in 2006. (Demetriou Dep. at 12:15-23, 22:20-1.)

*__Defendant's Response__: Denied.  The cited testimony does not support the statement  ¶*

*84.  During the deposition, Mr. Demetriou testified that currently there are more funds available*

*on the Overall Menu than in 2006.  (Tang Decl. Ex. C, Demetriou Dep. at 22:20-23:1.)*

*MassMutual's selection of mutual funds on the Overall Menu is not related to a list of investment*

*options on the GSI Plan Menu.  When the GSI Plan wanted to add more mutual funds on its Plan*

*Menu after initial selection, MassMutual always followed the GSI Plan's direction to do so.*

*(Assise Aff. Exs. 3-7, E. Julo Dep. Exs. 2, 11, 12; E. Julo Dep. at 69-70, 74-75; Ex. 7, R. Julo*

*Dep. at 35-36.)*

__Plaintiff's Reply__:  The evidence cited supports the factual statement.  Mr. Demetriou

testified that he had observed instances in which mutual funds were added and deleted from

MassMutual's platform and that the number of funds had increased from 130 to 220. (Demetriou

Dep. at 12:15-23, 22:20-23:1.)  Nothing in Defendant's Response provides a basis to dispute this

statement of fact.

85.     MassMutual has explicitly admitted that it is a fiduciary with respect to the

management of the Separate Accounts, including the creation, monitoring and maintenance of

the Limited Menu of investments it makes available to the Plans:

> *Mass Mutual acknowledges to plan sponsors that it is a fiduciary with respect to*
> *the management of assets invested in separate accounts held in group annuity*
> *contracts issued to retirement plans covered by ERISA.  Mass Mutual fulfills its*
> *fiduciary obligation through the prudent selection and monitoring of the*
> *mutual funds and other options in which each separate account invests*.  As part
> of that process Mass Mutual performs thorough and ongoing due diligence of each
> investment option and advisor.  Plan sponsors and other fiduciaries are therefore
> relieved of their obligation to perform those functions.

(Wietsma 10/1/13 Dep. Ex. 6 (emphasis added); Wietsma 10/1/13 Dep. at 41:6-42:22.)

MassMutual also explicitly acknowledges fiduciary status with respect to MassMutual

proprietary funds for which it serves as an investment adviser:

> *MassMutual as Adviser to the MassMutual Select and Premier funds is a*
> *fiduciary.  Fiduciary obligations are comprehensive and substantial*.  They are
> not typically partitioned into segments or sections....  Again, though, *being a*
> *fiduciary is an all or nothing responsibility and we are that for the MM funds*.

(Eldredge Dep. Ex. 1 (emphasis added); Eldredge Dep. at 19:17-22:4.)

***Defendant's Response**:  Admitted in part.  MassMutual admits that under the group*

*annuity contract, it is responsible for selecting and monitoring mutual funds that are available*

*on the Overall Menu.  By way of further response, MassMutual admits that it makes sure that*

*plan participants' monies are invested according to plan participants' investment directions.*

*(Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42.)  MassMutual denies that this limited*

*responsibility can establish its fiduciary status with respect to the GSI Plan assets or revenue*

*sharing.  As Mr. Wietsma explained in the cited deposition testimony above, MassMutual's role*

*with respect to the Overall Menu is limited to "initially build[ing] the separate account" and*

perform "due diligence on the fund that gets created there."  (Id.)

MassMutual also admits that for certain proprietary funds (i.e. mutual funds owned by MassMutual), it acts as an advisor.  In the cited deposition testimony above, Mr. Eldredge stated that "[i]n a narrow situation of relating to the Select and Premier funds," MassMutual is a fiduciary. (Tang Decl. Ex. F, Eldredge Dep. at 21.)

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Nothing in Defendant's Response provides a basis to dispute this statement of fact.

86.     MassMutual calls its revenue sharing agreements with mutual funds "Participation Agreements," "Administrative Services Agreements," or "Mutual Fund Agreements," and uses those terms synonymously.  (Wietsma 11/14/12 Dep. at 10:16-11:7, 28:4-28:14; Miles 11/13/12 Dep. at 111:10-111:13.)

***Defendant's Response***:  Denied.  The cited deposition pages establish that a participation agreement, also known as administrative services agreement, or mutual fund agreement, provides that MassMutual performs many of the functions that would be otherwise provided by the mutual fund company and set revenue sharing fees for these services.  During the deposition, Mr. Wietsma testified that a Participation Agreement documents the relationship between MassMutual and a mutual fund provider, which includes not only revenue sharing agreements but also the type of services that MassMutual provides.  (Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 10:21-11:1.)

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Defendant's Response does not address the factual statement and nothing in Defendant's Response provides a basis to dispute this statement of fact.

87.   MassMutual uses the common term "Participation Agreements" with respect to the retirement Plans funded through GACs, which are the subject of this lawsuit.  (Wietsma 11/14/12 Dep. 10:20-13:6.)

*__Defendant's Response__: Admitted in part.  MassMutual admits that the terms of its group annuity contracts and participation agreements govern its ability to offer mutual funds on the Overall Menu, from which plan sponsors choose investment options for the plan participants. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.)  The remaining facts asserted in statement ¶ 87 are not supported by record evidence.  As such, it should be stricken or disregarded.*

__Plaintiff's Reply__:  The evidence cited supports the factual statement.  Defendant's Response does not address the factual statement and nothing in Defendant's Response provides a basis to dispute this statement of fact.

88.   MassMutual makes "proactive" inquiries if it discovers that other service providers are receiving more payments and never refuses increases (and this policy applies to all of the Plans). (Wietsma 11/14/12 Dep. at 29:22-30:15.)

*__Defendant's Response__: Denied.  The cited testimony does not support the contention that MassMutual makes a proactive inquiry about other service providers' revenue sharing payments.  Neither does it support the contention that MassMutual never refuses an increase in revenue sharing payments.  The cited testimony actually states:*

> *Q.    [D]uring your seven years at MassMutual, has there ever been a circumstance where a mutual fund has offered an amount of revenue sharing to MassMutual and MassMutual has responded that the amount is too much?*
>
> *A.    I'm not aware of any situation.*

> Q.     And if MassMutual becomes aware that a competitor is receiving a
> greater amount of revenue sharing with respect to the same product, then
> MassMutual makes inquiries in an attempt to obtain a comparable amount
> of revenue sharing.  Is that correct?
>
> A.     At the end of the day, we do not view the level of revenue sharing as a
> basis of competition between us and other recordkeepers. So when we
> make funds available, our expectation is that it's all the same.  So and we
> - and then we endeavor to understand why differences exist.

*(Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 29:22-30:15.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Defendant's

Response does not address the factual statement and nothing in Defendant's Response provides a

basis to dispute this statement of fact.  Mr. Wietsma confirmed that, when MassMutual becomes

aware that a competitor is receiving a greater amount of revenue sharing with respect to the same

product, MassMutual makes inquiries to understand why differences exist, since it is Defendant's

expectation that it will receive the same amount.  (Wietsma Dep. (11/14/12) at 29:22-30:15.)

Likewise, Mr. Demetriou confirmed that, if MassMutual learns that a competitor is being paid a

greater amount of RSPs, that triggers an inquiry "every time" and that he makes the inquiry.

(Demetriou Dep. at 24:24-25:5.)  Therefore, the factual statement in this paragraph is entirely

correct.

89.     At times, mutual funds unilaterally increase the amount of RSPs to MassMutual in

order to be more competitive vis-a-vis other fund families, and to pay that increased revenue

sharing amount, the mutual fund may increase the expense ratio charged to MassMutual's

customers.  (Wietsma 11/14/12 Dep. at 20:2-21:6, 44:5-44:15.)

**_Defendant's Response_**:  *Denied.  Plaintiff's citations do not support the contention*

*above.  The cited testimony states that "there could be a whole host of reasons for why a firm*

*changes the amount of revenue." (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 20:9-11.) By*

*way of further response, MassMutual states that since plaintiff contracted with MassMutual in*

*1999, revenue sharing payment has not increased for the GSI Plan assets. (Assise Aff. Ex. 1,*

*Demetriou Dep. at 67; Assise Aff. Ex. 22 at MASSMUT0295967-70.)*

**Plaintiff's Reply**: The evidence cited supports the factual statement.  Mr. Wietsma

testified that one reason that mutual funds increase the amount of RSPs "as a basis for

competition with each other" in the "eyes of the recordkeepers" and that the mutual funds "would

look at it" as "a way to be more competitive in the eyes of a specific recordkeeper vis-a-vis other

mutual funds on the platform." (Wietsma 11/14/12 Dep. at 20:2-21:6.)  Likewise, Mr. Wietsma

testified that, "[i]n general," the "higher amount of revenue sharing payments [equals] the higher

expense ratio" because "as you move up in revenue sharing, the total expense ratio would

increase as well" since "[r]evenue sharing is a subset of the total expense ratio." (Wietsma

11/14/12 Dep. at 44:5-44:15.)  Defendant's Response does not provide a basis to dispute the facts

asserted.  Therefore, the factual statement in this paragraph is entirely correct.

90.     MassMutual understands that the RSPs, which it calls "service fees" even though

the payments bear absolutely no relationship to services, are paid from the expense ratios charged

to MassMutual's customers.  (Wietsma 11/14/12 Dep. at 59:19-63:9.)

***Defendant's Response***: *Denied.  The cited testimony does not support the statement*

*made.  Nowhere in the cited testimony did Mr. Wietsma testify that revenue sharing payments are*

*made from the expense ratios charged to MassMutual's customers.  MassMutual also denies that*

*the revenue sharing payments "bear absolutely no relationship to services."  The cited testimony*

*states the exact opposite:*

> Q.     *And is it fair to say that the services, if any, that MassMutual provides to mutual funds are unrelated to the amount of revenue sharing payments it receives from mutual funds?*
>
> A.     *I don't think that's an accurate statement.  When the participation agreement is put in place, there's a whole host of services that get performed.  So those services are being provided to the fund company that they otherwise would do themselves.*

*(Tang Decl. Ex. V, Wietsma Dep. (11/13/12) at 59:19-60:3.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.   Examination of the entirety of Mr. Wietsma's cited testimony establishes that MassMutual provides the same exact services regardless of whether a mutual fund pays RSPs and independent of the amount of RSPs.  (Wietsma 11/14/12 Dep. at 59:19-63:9.)  Defendant's Response does not provide a basis to dispute the facts asserted because it merely cites Mr. Wietsma's self-serving introductory statement, which was fully contradicted when he was examined regarding actual facts (*see, e.g.,* MassMutual performs the same exact services in the case of Growth Fund of America and Vanguard even though Growth Fund of America pays RSPs and Vanguard does not -- Wietsma 11/14/12 Dep. at 62:9-63:9.)  Therefore, the factual statement in this paragraph is entirely correct.

91.     The services that MassMutual performs for the mutual funds are uniform in nature.  (*Id.*)

***Defendant's Response***:  *Denied.  The cited testimony does not support the contention above.  Nowhere in the cited passage does the witness state or even suggest that the services provided to mutual funds are uniform in nature.*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.   Mr. Wietsma specifically testified that the services provided by MassMutual are the same, regardless of

whether RSPs are paid: "Q. Does MassMutual perform any different services for Growth Fund of America as opposed to Vanguard? A. For the fund itself -- should a sponsor choose to use those funds, *the services would be the same*." (Wietsma 11/14/12 Dep. at 62:9-63:9 (emphasis added).) Therefore, the factual statement in this paragraph is entirely correct.

92.     Although MassMutual states that it performs services for mutual funds in return for RSPs, MassMutual performs the same services for mutual funds regardless of whether a mutual fund agrees to pay RSPs or not. Indeed, if MassMutual wishes to operate a retirement business, it would be necessary for MassMutual to perform the same services it identifies as providing for mutual funds on behalf of its customers in any event. (Wietsma 11/14/12 Dep. 11:2-13:6.)

*__Defendant's Response__: Denied. The cited passage does not support the statement above.*

__Plaintiff's Reply__: The evidence cited supports the factual statement. Mr. Wietsma specifically testified that the services that MassMutual allegedly provides for mutual funds, as outlined in the Participation Agreements, are the "[s]ervices provided to the shareholders and plan sponsors that choose to utilize those investment options" and these alleged services for mutual funds "are the same services that [MassMutual] perform[s] for the plan sponsors and the participants in delivering the retirement product" because they are "part of the same transaction." (Wietsma 11/14/12 Dep. 11:2-13:6.) Defendant's conclusional denial is unpersuasive. The factual statement in this paragraph is entirely correct.

93.     MassMutual exercises discretionary authority and control with respect to management and administration of the Plans and their assets held in the Separate Accounts by,

among other things, electing to receive dividends from the mutual funds into the Separate

Accounts in the form of additional mutual funds shares.  (Wietsma 11/14/12 Dep. at 34:5-37:4.)

*__Defendant's Response__:  Admitted in part.  MassMutual admits that it reinvests mutual*

*fund dividends in the same mutual fund from which they were paid, but denies the rest of the*

*statement.  MassMutual denies that reinvesting mutual fund dividends constitutes an exercise of*

*discretionary authority or control with respect to management and administration of the plans.*

*Plans participants direct how their 401(k) monies should be invested, including the reinvestment*

*of dividends, and MassMutual has no power to override plan participants' directions.  (Assise*

*Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.)*

__Plaintiff's Reply__:  The evidence cited supports the factual statement.   Mr. Wietsma

testified that MassMutual simply treats the election to invest in a mutual fund as an automatic

election to also reinvest all dividends and capital gains.  (Wietsma 11/14/12 Dep. at 34:5-37:4.)

But MassMutual's Participation Agreements contain a uniform provision making clear that

"*[u]nless otherwise instructed by the recordkeeper [meaning MassMutual] based upon*

*instructions provided by authorized persons for the plans, dividends and capital gain*

*distributions from any fund will be automatically reinvested in additional shares of such*

*fund*...." (Wietsma 11/14/12 Dep. at 33:3-33:21)(emphasis added.)  Thus, MassMutual's own

Participation Agreements confirm that the election by MassMutual to automatically reinvest all

dividends is, in fact, a discretionary decision that Defendant makes and exercises.  Defendant's

citation to other testimony of Mr. Wietsma is unpersuasive.  The factual statement in this

paragraph is entirely correct.  At a minimum, material issues of fact exist regarding this factual

issue.

94.     MassMutual does not consult with or alert the Plans of its options regarding the

payment or reinvestment of dividends, despite the fact that the authority to make this election is

contained in MassMutual's Participation Agreements.  (Wietsma 11/14/12 Dep. at 37:5-38:20.)

*__Defendant's Response__:  Denied.  Nothing in the cited testimony supports the statement*

*above.  In the cited portions of deposition, the witness explained that dividends are reinvested in*

*accordance with a plan participant's instructions.  The GSI Plan's former trustee, Earl Julo,*

*also testified that reinvesting dividends in the same mutual fund made sense to him because he*

*did not want plan participants to receive "a little check every time" a dividend was paid.  (Assise*

*Aff. Ex. 3, E. Julo Dep. at 158:21-159:2.)*

__Plaintiff's Reply__:  The evidence cited supports the factual statement.   Mr. Wietsma

specifically testified that MassMutual does not advise the Plans about their options to choose not

to reinvest dividends and MassMutual's Participation Agreements make the power not to

reinvest dividends plain and apparent.  (Wietsma 11/14/12 Dep. at 33:3-33:21, 34:5-38:20.)

Defendant's citation to the testimony of Mr. Julo, when he mused that it seemed impractical to

receive a small non-qualified check every time a dividend is issued without being asked any

questions about the direction of dividends to other qualified accounts and without being advised

that MassMutual has the discretion to determine whether mutual fund dividends will be

reinvested, is unpersuasive and not responsive to the factual assertion at issue.  The factual

statement in this paragraph is entirely correct.  At a minimum, material issues of fact exist

regarding this factual issue.

95.     MassMutual holds, owns, administers, manages and controls the Separate

Accounts, as well as their sub-accounts, and uses the Separate Accounts as a delivery mechanism

to purchase and sell shares in the mutual funds.  (Wietsma 11/14/12 Dep. at 72:24-74:16.)

   ***Defendant's Response****:  Admitted in part and denied in part.  MassMutual admits that it is the legal owner of the separate accounts.  MassMutual denies that it uses the separate accounts as a delivery mechanism to purchase and sell shares in the mutual funds.  Plan sponsors and participants determine how their monies in the separate accounts are invested. (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13) at 42, 48.)  Similarly, MassMutual had no input into the GSI Plan's selection of the Plan Menu or the Plan participants' investment decisions. (Assise Aff. Ex. 3, E. Julo Dep. at 35, 43-44, 96-97; Assise Aff. Ex. 7, R. Julo Dep. at 47, 50-51.)*

   **Plaintiff's Reply**:  The evidence cited supports the factual statement.   Mr. Wietsma specifically testified that MassMutual owns both the Separate Accounts and the assets in them, (Wietsma 11/14/12 Dep. at 72:24-73:17), that the Separate Accounts operate as a delivery mechanism to purchase and sell shares in the mutual funds, (Wietsma 11/14/12 Dep. at 73:18-75:19), and that "if MassMutual does not deliver retirements assets through the separate accounts to the mutual funds, it does not receive revenue sharing payments" because RSPs are "based on the amount of assets that a fund has invested in it" and "the amount of such assets is the amount of assets in the separate accounts," which "dictate the revenue payments."  (Wietsma 11/14/12 Dep. at 76:6-76:24.)  Defendant's citation to subsequent testimony of Mr. Wietsma does not change these facts.  The factual statement in this paragraph is entirely correct.  At a minimum, material issues of fact exist regarding this factual issue.

   96.     In direct return for delivering these funds from the Separate Accounts to the mutual funds, MassMutual receives the RSPs at issue.  (Wietsma 11/14/12 Dep. at 74:17-76:24 (MassMutual is paid RSPs in recognition of its status as the sole shareholder of the mutual

funds).)

*Defendant's Response*: *Denied.  Plaintiff's statement ¶ 95 represents plaintiff's legal theory of the case, but nothing in the cited passage supports the contention that MassMutual uses the separate accounts to negotiate revenue sharing.  The cited testimony actually states that the mutual fund firms make revenue sharing payments for a list of services outlined in the participation agreement.  (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 75:20-76:5.)*

Plaintiff's Reply:  The evidence cited supports the factual statement.   MassMutual's self-serving interpretation of the cited testimony does not square with the actual admissions contained in Mr. Wietsma's deposition.  (Wietsma 11/14/12 Dep. at 74:17-76:24.)  The factual statement in this paragraph is entirely correct.  At a minimum, material issues of fact exist regarding this factual issue.

97.     MassMutual is able to influence and control its own compensation derived from the Separate Accounts by, among other things, negotiating the terms of the Participation Agreements with the mutual funds, which generally make RSPs on the basis of the assets invested by the Separate Accounts in their mutual funds.  (Wietsma 11/14/12 Dep. at 14:23-16:9 (although Mr. Wietsma prefers not to use the term "negotiate," he admits that MassMutual makes a "proactive inquiry" when aware that the amount of RSPs are substandard).)

*Defendant's Response*: *Denied.  Nothing in the cited testimony supports this statement.  In the cited pages, Mr. Wietsma testified that mutual funds generally tell MassMutual how much they will agree to pay in revenue sharing, and there is no real negotiation about revenue sharing.  (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 14:23-15:8.)  Mr. Wietsma also testified that in rare occasions where MassMutual learned that its competitors were getting higher*

*amounts of revenue sharing, MassMutual might inquire about the difference in revenue sharing.*
*(Id. at 15:19-16:1.)  For example, when MassMutual learned that a competitor service provider*
*was getting a higher revenue sharing amount from American Funds, MassMutual inquired with*
*American Funds to understand the difference in revenue sharing payments.  In the case of*
*American Funds, Mr. Wietsma testified that American Funds was making higher revenue sharing*
*payments to MassMutual's competitor because the competitor was providing additional services*
*that MassMutual did not provide.  (Id. at 16:2-9.)*

**Plaintiff's Reply**:  The evidence cited entirely supports the factual statement.
MassMutual's attempt to distinguish between the "proactive inquiry" that MassMutual makes
after learning that it has been competitively disadvantaged and "negotiation" based on pure
nomenclature cannot conceal the true nature of the underlying conduct.  As Mr. Demetriou
explained:

> Q.    Who is responsible for negotiating revenue sharing with funds?
>
>                     *     *     *
>
> THE WITNESS:  It's not a negotiation.  It is a -- we ask the fund companies
> what's available for revenue sharing and then they tell us what they make
> available to recordkeepers.
>
> Q.    There are instances when a fund may increase the amount of revenue
> sharing that it pays to Mass Mutual, correct?
>
> A.    That's correct.
>
> Q.    And you've seen that happen before?
>
> A.    I have.

Q.   Do you, as a company with -- and looking at the fund marketplace, does Mass Mutual monitor, to the extent practicable, the amount of revenue sharing that funds may be paying to your competitors?

A.   We do.

Q.   And to the extent that revenue sharing is being paid at a greater amount by a fund for the same product, would that trigger an inquiry sometimes?

A.   Every time.

Q.   And who's the person at Mass Mutual that's responsible for making those types of inquiries?

A.   Me.

Q.   Okay.  And so explain for me in general terms if that scenario comes to your attention, what you would do?

A.   I would call the fund company in question and say to them that it has been brought to my attention that such and such is receiving X for this same fund that we are receiving Y. Is that correct?  And if it is, then why isn't -- why aren't we receiving the same amount.

Q.   Okay.  And are there times in making such an inquiry then that you have requested that there be an increase in revenue sharing paid to Mass Mutual?

A.   I have asked why the discrepancy and I await -- I await the fund company's response; in other words, are they going to -- is it confirmed that it's greater and if it is, are they going to increase ours?

Q.   Well, if you -- and are there instances where after you've made that inquiry that the response comes back that they will increase revenue sharing paid to Mass Mutual?

A.   There have been, yes.

(Demetriou Dep. at 24:4-26:1.)  Thus, it is apparent that, despite its apparent discomfort with the

word, MassMutual has negotiated for and obtained increases in RSPs in a number of instances.

The factual statement in this paragraph is entirely correct.  At a minimum, material issues of fact

exist regarding this factual issue.

98.     MassMutual also maintains complete discretion to substitute, eliminate and add funds within its Separate Accounts.  (Assise Decl. at Ex. 23 at 40 (§ 5.22); Miles 11/13/12 Dep. at 134:15-137:7; Wietsma 11/14/12 Dep. at 88:20-90:2, 107:14-111:2 (MassMutual has exercised its discretion and power to add and delete mutual funds from its menu of available investment options for existing and prospective Plans); Miles 11/13/12 Dep. at 36:17-37:10 (admitting that, if a customer chooses to leave MassMutual because it has deleted one of its existing investment options, the Plan may be forced to pay a surrender charge to terminate its relationship with MassMutual).)

*__Defendant's Response__: Admitted in part and denied in part.  MassMutual admits that it sometimes makes changes to the mutual funds offered within a separate account, but the only examples provided in the cited testimony are when MassMutual is compelled to do so, because the underlying mutual fund is closing or being merged out of existence.  Nothing in the cited testimony supports the claim that MassMutual has complete discretion.*

__Plaintiff's Reply__:  The evidence cited entirely supports the factual statement.  Indeed, the evidence cited specifically acknowledges that "MassMutual periodically reviews each such unaffiliated mutual fund family to determine whether to continue to offer the funds and *__reserves the right to add or remove the funds it makes available to the plan__*" and "*__this is consistent with how [MassMutual] manage[s] the overall platform__*" while, in the case of "affiliated funds," MassMutual has "*__the discretion at the investment platform standpoint__*" to "*__add or remove funds it makes available to the plans__*."  (Miles 11/13/12 Dep. at 135:3-136:17 (emphasis added)(also acknowledging that sometimes an entire fund is replaced).)  This is the essence of

complete discretion.  MassMutual cannot successfully hide from the actual evidence in this case.

The factual statement in this paragraph is entirely correct.

99.     This allows MassMutual to control the menu of available mutual funds offered in

its Separate Accounts and the discretion to change its fund menus and to not offer certain

investment options to Plans based upon contract pricing and other considerations.  (Wietsma

11/14/12 Dep. at 40:9-40:19, 43:17-44:4 (different share classes of mutual funds, as detailed in

various Participation Agreements, that have different expense ratios and service fees, are

available to MassMutual should MassMutual choose to use the share class); Wietsma 11/14/12

Dep. at 45:23-46:6 (MassMutual generally attempts to ensure that its Participation Agreements

are applicable to all of the share classes of a mutual fund which it may wish to offer to its

retirement customers, and then MassMutual chooses the applicable share classes based upon the

product offering it designs for the Plans).)[4]

**_Defendant's Response_**: _Denied.  See Response to ¶ 98.  MassMutual admits that it_

_assembles the Overall Menu, but denies  that it has the discretion to change the Plan Menu, or_

_MassMutual has the ability to control the mutual fund selection on the Plan Menu.  The Overall_

_Menu is assembled before any plans select the Plan Menu.  Plans select the Plan Menu and make_

_any changes to the selection of investment options.  (Assise Aff. Ex. 11, Wietsma Dep. (10/1/13)_

_at 25, 31, 33-34.)_

_With respect to plaintiff's statement in footnote 4, MassMutual denies that it has the_

_discretion to control or self-determine its own compensation under the group annuity contract._

---

[4]Under the GACs, MassMutual also retains and exercises the discretion and control to self-determine its own compensation under the Separate Accounts by withdrawing a "separate investment account management fee." (_See_ Assise Decl. Ex. 23, at 28 (§ 2.04(c)(xii).)

*The group annuity contract governs MassMutual's compensation with respect to the separate*

*accounts.  The record evidence shows that the separate investment account management fee (the*

*"SIA Management Fee") has never been altered after plans contracted with MassMutual.*

*(Assise Aff. Ex. 1, Demetriou Dep. at 70-71; Assise Aff. Ex. 12, Wilson Dep. at 33:17-34:4.)*

**Plaintiff's Reply**:  The evidence cited entirely supports the factual statement.

Defendant's conclusional invocation of its Response to Paragraph 98 is rebutted by the Reply to

that Response demonstrating that it is incorrect and unsupported by the actual record evidence.

Sections 2.04(c)(xi) and (xii) of the Group Contract speak for themselves and establish

MassMutual's discretionary authority to establish the amount of its own compensation.  Neither

the cited testimony of Mr. Demetriou nor Ms. Wilson support MassMutual's assertion that the

SIA Management Fees have never been changed.  Mr. Demetriou testified that he did not know

what an SIA Management Fee was (Demetriou Dep. at 60:17-23), and the cited testimony of Mr.

Demetriou and Ms. Wilson relates to "wrap fees," which Eric Wietsma unequivocally testified

were not SIA Management Fees.  (Wietsma 10/1/13 Dep. at 99:11-18.)  The factual statement in

this paragraph is entirely correct.

100.    MassMutual reinvests cash dividends generated by GSI Plan assets without any

input from GSI, the GSI Plan, or the GSI Plan participants.  (Wilson Dep. at 27:5-25.)

**Defendant's Response**:  *Denied.  The cited testimony does not support the statement*

*above.  The cite testimony actually states as follows:*

> *"[e]very participant declares how they want their money*
> *allocated.  And in order to keep their monies allocated*
> *appropriately, the dividend reinvestment is actually to comply with*
> *that wish.  Because if we didn't reinvest the dividends, we would*
> *actually take them out of line with where they want us to invest*

*their money."*

*(Tang Decl. Ex. AB, Wilson Dep. at 27:5-19.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement that dividends are paid in cash.  (Wilson Dep. at 27:20-27:25.)  By way of further response, as explained in its Sur-Reply to Paragraph 53, it is apparent that MassMutual makes all decisions regarding dividend reinvestment without any input from GSI, the GSI Plan or its participants.  The factual statement in this paragraph is entirely correct.  At the very minimum, a disputed material issue of fact exists with respect to this paragraph.

101.    Under the GAC, MassMutual has the discretion to assess a "separate investment account management fee" which would be on "a daily rate which on an annual basis does not exceed 1.0% of the average daily Market Value of the applicable Separate Investment Account." (Assise Decl. Ex. 23, at 28 (§ 2.04(c)(xi)); Miles 11/13/12 Dep. at 42:11-43:5; Wietsma 10/1/13 Dep. at 17:4-25.)

**Defendant's Response**: *Admitted that the statement quotes from a portion of the group annuity contract.*

102.    The separate investment account management fee is determined, in part, by a mutual fund's management fee, *i.e.*, the expense ratio.  (Wietsma 10/1/13 Dep. at 16:3-17; Miles 11/13/12 Dep. at 42:11-5.)

**Defendant's Response**: *Denied.  The cited testimony does not support the contention that the SIA Management Fee is determined by a mutual fund's expense ratio.  In addition, nothing in the cited testimony equates management fee and expense ratio; the management fee is only a portion of the expense ratio.*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Mr. Miles testified that the amount of the SIA Management Fee that MassMutual "can deduct varies by individual separate investment account and based on the fund and the agreement that you have with the separate investment account" and specifically relates the same to "the expense ratio that's assessed by the mutual fund," while Mr. Wietsma explained that the SIA Management Fee is "[t]ypically the management fee that the underlying investment has...."  (Wietsma 10/1/13 Dep. at 16:3-17; Miles 11/13/12 Dep. at 42:11-43:5.)   The factual statement in this paragraph is entirely correct.

103.    MassMutual's fee arrangements with the mutual fund families, which it calls Participation Agreements and which dictate the amount of the RSPs, are not fully disclosed to the Plans because MassMutual treats its Participation Agreements as highly confidential.  (Wietsma 11/14/12 Dep. at 65:22-66:10.)

***Defendant's Response***: *Denied.  The cited testimony does not support the statements made.  In the cited testimony, the witness testified that while MassMutual does not routinely disclose the participation agreements itself to plans, the plans receive information in the Participation Agreements, including the revenue sharing arrangements.  In fact, the GSI Plan trustee, Earl Julo, also testified that he received information about revenue sharing arrangements from MassMutual in writing.  (Assise Aff. Ex. 3, E. Julo Dep. at 95, 133.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  The testimony cited by Plaintiff confirms the fact that MassMutual has treated the amount of RSPs it receives from mutual funds as highly confidential and proprietary information, which was not shared with the Plans.  The cited testimony of Mr. Julo relates to (a) MassMutual's disclosure of mutual fund

expense ratios (not RSPs), and (b) MassMutual's 2010 disclosure that it receives payments from mutual funds (without enumerating any amount or identifying which funds), while mischaracterizing those payments as being made in return for services rendered, which was a false and misleading statement. The factual statement in this paragraph is entirely correct and Defendant offers no basis to dispute it.

104.    MassMutual is paid and receives RSPs in recognition of its status as the sole shareholder of the mutual funds and in its capacity as the owner of the Separate Accounts. (Wietsma 11/14/12 Dep. at 45:9-45:22.)

**_Defendant's Response_**: _Denied. Nothing in the cited testimony supports the statement made. The passage cited discusses different types of participation agreements, and nothing else._

**Plaintiff's Reply**: The evidence cited supports the factual statement. The testimony confirms the fact that the Separate Account (_i.e._, the SIA) needs to qualify for any mutual fund prospectus requirements for investment, thereby confirming that the Separate Accounts are treated as a single shareholder from the mutual fund's perspective. The factual statement in this paragraph is entirely correct and Defendant offers no basis to dispute it.

105.    MassMutual's Separate Accounts are utilized by MassMutual as the tool to negotiate revenue sharing or Participation Agreements with the mutual funds so that MassMutual can earn additional income that bears no relationship to the services that it provides to the Plans and/or the mutual funds. (Miles 11/13/12 Dep. at 27:5-27:16, 46:3-46:12; Wietsma 11/14/12 Dep. at 74:17-76:24.)

**_Defendant's Response_**: _Denied. The cited deposition testimony does not support the contention in ¶ 105. Nothing in the cited testimony indicates that MassMutual uses separate_

*accounts to negotiate revenue sharing or that revenue sharing bears no relationship to the*
*services that MassMutual provides to the plans or the mutual funds.  On the contrary, Mr.*
*Wietsma testified that the participation agreement outlines a list of services MassMutual*
*provides, and its receipt of revenue sharing payments for the services.  (Tang Decl. Ex. V,*
*Wietsma Dep. (11/14/12) at 76:1-5.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.   Mr. Wietsma
specifically testified that MassMutual owns both the Separate Accounts and the assets in them,
(Wietsma 11/14/12 Dep. at 72:24-73:17), that the Separate Accounts operate as a delivery
mechanism to purchase and sell shares in the mutual funds, (Wietsma 11/14/12 Dep. at
73:18-75:19), and that "if MassMutual does not deliver retirements assets through the separate
accounts to the mutual funds, it does not receive revenue sharing payments" because RSPs are
"based on the amount of assets that a fund has invested in it" and "the amount of such assets is
the amount of assets in the separate accounts," which "dictate the revenue payments."  (Wietsma
11/14/12 Dep. at 76:6-76:24.)  In addition, Mr. Wietsma's testimony establishes that MassMutual
provides the same exact services regardless of whether a mutual fund pays RSPs and independent
of the amount of RSPs.  (Wietsma 11/14/12 Dep. at 59:19-63:9.)  Mr. Wietsma specifically
testified that the services that MassMutual allegedly provides for mutual funds, as outlined in the
Participation Agreements, are the "[s]ervices provided to the shareholders and plan sponsors that
choose to utilize those investment options" and these alleged services for mutual funds "are the
same services that [MassMutual] perform[s] for the plan sponsors and the participants in
delivering the retirement product" because they are "part of the same transaction." (Wietsma
11/14/12 Dep. 11:2-13:6, 62:9-63:9.)  MassMutual provides the same, undefined "various

services" to mutual funds, regardless of the amount of fees paid by the mutual fund.  (Demetriou

Dep. at 30:15-32:3, 53:15-54:4.)   Indeed, MassMutual provides the same, undefined "various

services" for mutual funds that do not pay it any RSPs.  (Wietsma 11/14/12 Dep. at 62:22-63:9.)

The factual statement in this paragraph is entirely correct.  At a minimum, material issues of fact

exist regarding this factual issue.

106.    MassMutual has the right to invest in mutual fund share classes based upon either

the financial and asset status of its Separate Accounts or on the financial and asset status of its

customers, upon MassMutual's choice.  (Wietsma 11/14/12 Dep. at 74:17-76:24.)

***Defendant's Response****: Denied.  Nothing in the cited testimony discusses mutual fund*

*share classes or the financial or asset status of the separate accounts.  The cited testimony also*

*contradicts the statement's assertion that the separate accounts are somehow involved in the*

*participation agreements.  The cited testimony actually states:*

> Q.    *And when MassMutual enters into participation agreements, it is entering*
> *into the participation agreement on behalf of the separate account.  Is that*
> *correct?*
>
> A.    *[W]hen we're putting a participation agreement in place, we are*
> *establishing a relationship between MassMutual and a mutual fund*
> *company.*

*(Assise Aff. Ex. 10, Wietsma Dep. (11/14/12) at 74:17-75:2.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  First, the citation

to the deposition testimony above is incomplete.  The testimony not quoted by Defendant

supports Plaintiff's position.  In addition, as previously noted, the Separate Account (*i.e.*, the

SIA) needs to qualify for any mutual fund prospectus requirements for investment in terms of

share class, thereby confirming that the Separate Accounts are treated as a single shareholder

from the mutual fund's perspective. (Wietsma Dep. (11/14/12) at 43:17-49:22.) The factual statement in this paragraph is entirely correct and Defendant offers no basis to dispute it.

107.    MassMutual has the right to invest in mutual fund share classes based upon either the financial and asset status of its Separate Accounts or on the financial and asset status of its customers, upon MassMutual's choice. (Wietsma 11/14/12 Dep. at 45:9-45:22.)

*__Defendant's Response__: Denied. This is an exact duplicate of ¶ 106, but citing different testimony. The cited testimony does not support this statement either. The cited testimony concerns minimum investment amounts, and whether it is the plan or the separate account that has to qualify for the minimum. Nothing in the cited passage discusses share classes.*

__Plaintiff's Reply__: The evidence cited supports the factual statement. As previously noted, the Separate Account (*i.e.*, the SIA) needs to qualify for any mutual fund prospectus requirements for investment in terms of share class, thereby confirming that the Separate Accounts are treated as a single shareholder from the mutual fund's perspective. (Wietsma Dep. (11/14/12) at 43:17-49:22.) The factual statement in this paragraph is entirely correct and Defendant offers no basis to dispute it.

108.    MassMutual consistently monitors the rate of revenue-sharing payments from the existing Participation Agreements and readily enters into new terms for increased rates of revenue-sharing payments when possible. (Demetriou Dep. at 24:13-26:1; Wietsma 11/14/12 Dep. at 14:23-16:9.) MassMutual acknowledges that "every time" it learns that revenue sharing is being paid at a greater amount by a fund for the same product, that triggers an inquiry on MassMutual's part. (Demetriou Dep. at 24:24-25:2.) By way of example, when MassMutual determined that it was being paid 25 less basis points in RSPs by a mutual fund than was

potentially available through another share class being offered by the fund, it immediately made an inquiry of the fund.  (Demetriou Dep. at 50:11-17; Demetriou Dep. Ex. 3.)

   ***Defendant's Response****: Admitted in part.  As to the first sentence, MassMutual admits that it monitors the amount of revenue sharing that mutual fund firms are paying to MassMutual's competitors, and makes inquiries when it learns competitors are getting higher amounts, but nothing in the cited passage supports the notion that MassMutual "readily enters into new terms for increased rates of revenue-sharing payments."  On the contrary, Mr. Demetrious testified that there has only been one occasion in the last eight years in which MassMutual received an increase, and it was not the result of an inquiry, but was the result of voluntary action by the mutual fund company.  (Assise Aff. Ex. 1, Demetriou Dep. at 67.)*

   *As to the second sentence, admitted.*

   *As to the third sentence, denied.  In the cited passage, Mr. Demetriou was describing an inquiry MassMutual made because it did not understand the revenue sharing and expense structure for a particular set of share classes in a single fund, but it was not seeking to make any changes and did not make any changes as a result of this inquiry.  (Id. at 25.)*

   **Plaintiff's Reply**:  The evidence cited supports the factual statement.  Mr. Demetriou only testified that he recalled one RSP increase that occurred in the past eight (8) years, but contradictorily testified that there had been instances (in the plural) when he was aware of increases in RSPs as a result of MassMutual's own inquiries.  (Demetriou Dep. at 24:4-26:1.)  Moreover, MassMutual's discussion of the third sentence in this paragraph (a) provides no basis to dispute its accuracy, and (b) demonstrates an instance in which MassMutual exercised its discretion to keep the Plans in a more expensive share class of an investment (from an expense

ration perspective), despite learning that it could earn the same or greater RSPs while placing the Plans in the same investment in a different share class (with less expenses) to the Plans. (Demetriou Dep. at 43:16-51:4.)  Defendant's citation to page 25 of Mr. Demetriou's deposition appears to be in error since it does not relate to the issues addressed in the third sentence of this paragraph.  The factual statement in this paragraph is entirely correct and Defendant offers no basis to dispute it. At a minimum, disputed issues of material fact exist with respect to this paragraph.

109.    The RSPs attributable to the Plans' investments in a mutual fund are not always used to benefit the Plans because, when Defendant receives an increase in the amount of the RSPs, it keeps them for its own benefit and does not pass that benefit on to the Plans.  (Orzell 11/13/12 Dep. at 74:9-14.)

***Defendant's Response****: Admitted in part and denied in part.  Admitted that in the cited passage, the witness testified that if a mutual fund increases the revenue sharing payments the day after a plan signed up, MassMutual would receive the increase.  However, this statement has no applicability to the GSI Plan, because the revenue sharing amount was never increased with respect to any mutual funds in which GSI Plan assets are invested.  (Assise Aff. Ex. 1, Demetriou Dep. at 67; Assise Aff. Ex. 22, MASSMUT0295967-70.)  Accordingly, plaintiff's statement above has no applicability to the GSI Plan.*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Defendant does not dispute its accuracy but, rather, disputes its applicability to the GSI Plan.  But, as explained in SCRS, ¶46, Mr. Demetriou is not competent to opine about whether increases in RSPs occurred during the pertinent period because he was not in his position at a time coextensive with the time

period at issue.  Therefore, MassMutual has produced no competent evidence to support its

assertion that RSPs did not increase with respect to the GSI Plan during the relevant time period.

The factual statement in this paragraph is entirely correct and Defendant offers no basis to

dispute it.

110.    Mutual funds generally offer different classes of shares, and the only material

differences between the share classes are the expense ratio, or management fee, that is levied

from the plan assets, and the revenue-sharing paid from that expense ratio to a service provider.

(Wietsma 11/14/12 Dep. at 40:9-22, 43:17-44:15; Wilson Dep. at 24:12-25:1.)

**_Defendant's Response_**_:  Admitted in part.  MassMutual admits that the main difference_

_in share classes is differences in expense ratios, often the result of different 12b-1 fees.  Nothing_

_in the cited testimony suggests that there are different management fees among the different_

_share classes._

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Plaintiff concedes

that the cited testimony does not specifically reference management fees, which are part of an

experience ratio but the material fact is admitted -- the difference in share classes is the expense

ratio.  Defendant's attempt to limit its admission by stating that the "main" difference is the

expense ratio is not supported by the record.  In fact, the cited testimony supports the fact that the

only (and material) difference between share classes is the expense charged to the Plans and their

participants.

111.    As the business records of MassMutual disclose, MassMutual actively considers

creating new share classes to benefit itself economically through the Dividend Received

Deduction ("DRD"), which MassMutual captures by reinvesting dividends in its discretion into

certain instruments, while MassMutual manipulates its own compensation by establishing and

setting SIA Management Fees in its discretion:

> The attached schematic illustrates the restructuring that would be necessary to
> maximize the DRD benefit.  I note that while the schematic shows the creating of
> a new low revenue share class with as yet to be defined work effort, we could
> consider an immediate capture of the DRD benefit by having the various SIA's
> investing in the Y L A and N Premier and Select share classes instead of investing
> in the cheaper S share class. ***This action, which I believe would be an immediate
> and unilateral decision on the part of RS [MassMutual's Retirement Services],
> would then allow us to offset the revenue reduction that usage of the S share
> class would cause, with a management fee imposed at the SIA level***.

\*       \*       \*

> ***Not a lot of opportunities to add $10 million to the bottom line in one fell
> swoop***....

\*       \*       \*

> The analysis suggests a DRD benefit increase from the current $2 M (approx) by
> over $13M.  Based on ... above, I would expect the benefit to be factored down,
> but high level, may be considered a benefit of $10M against the other efforts to
> restructure the mutual funds' management fee structure across all existing share
> classes.

(Wietsma Dep. Ex. 8 (emphasis added); Wietsma Dep. 46:2-64:21.)

> ***Defendant's Response***:  *Denied.  In the cited deposition, Mr. Wietsma testified that*

*dividend received deduction is a type of tax deduction that one can receive credit for dividends*

*that are paid down from parent companies to subsidiaries. (Assise Suppl. Aff., Ex. 25, Wietsma*

*Dep. (10/1/13) at 46:18-24.)  Nowhere in the fifteen pages cited above, or in the exhibit, does*

*record evidence support plaintiff's statement that MassMutual considers creating new share*

*classes through dividend received deduction, or that MassMutual manipulates its own*

*compensation by setting the SIA Management Fee.  In fact, record evidence establishes that the*

*SIA Management Fees are governed by the group annuity contract and that those fees has never been altered for any separate accounts. (Assise Aff. Ex. 12, Wilson Dep. at 33-34; Assise Aff. Ex. 1, Demetriou Dep. at 70-71.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  The document and testimony speak for itself.  MassMutual actively considered changing share classes of the investments offered to the Plans to influence its own compensation by increasing the DRD, while acknowledging that it could unilaterally, in its discretion, offset any other declines in revenue by simply increasing the SIA Management Fee.  Defendant offers no basis to dispute this statement of fact.  Mr. Demetriou testified that he did not know what an SIA Management Fee was, (Demetriou Dep. at 60:17-23), and the cited testimony of Mr. Demetriou and Ms. Wilson relates to "wrap fees," which Eric Wietsma unequivocally testified were not SIA Management Fees. (Wietsma 10/1/13 Dep. at 99:11-18).

112.    Pursuant to its Participation Agreements with mutual funds, MassMutual has the right to offer various classes of mutual funds to its customers, with varying expense ratios charged to its customers (and corresponding RSPs made to MassMutual with higher RSPs associated with higher expense ratios), and MassMutual chooses which of these share classes are "appropriate" to offer to its customers on its menu of available investment options.  (Miles 11/13/12 Dep. at 81:3-81:15; Wietsma 11/14/12 Dep. at 45:23-47:21.)

**Defendant's Response**: *Admitted in part.  In the cited deposition, Mr. Wietsma testified that the most common practice is to include in the participation agreements as many share classes as possible, but not all of those share classes may be chosen by a plan.  (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 46:13-47:1.)  Mr. Wietsma also testified that some share classes*

*may not be offered to plans because they have non-waivable redemption fees and therefore are*

*not suitable for retirement plan investors.  (Id. at 47:2-21.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  MassMutual's

citation to certain of the testimony does not change the fact that the full evidence supports

Plaintiff's position, including the fact that MassMutual chooses which share classes it will offer

the Plans based on its judgment as to what is appropriate.

113.    MassMutual performs no additional services regardless of the different rates of

revenue-sharing provided by different share classes in the same mutual fund, and no less services

even if the share class does not pay any revenue-sharing.  (Demetriou Dep. at 30:15-32:3,

53:15-54:4; Wietsma 11/14/12 Dep. at 62:22-63:9.)

***Defendant's Response***:  *Denied.  The cited testimony does not support the categorical*

*statements above.  Mr. Wietsma testified only that MassMutual performs similar services for*

*Growth Fund of America and Vanguard, and Mr. Demetriou testified only that, mutual fund*

*companies may increase revenue sharing payments to match what they pay to MassMutual's*

*competitors, so as to create a level playing field.  (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at*

*62:22-63:9; Tang Decl. Ex. C, Demetriou Dep. at 31:21-32:3.)  The rest of the facts asserted in*

*this paragraph are not supported by the cited testimony.*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.   Mr. Wietsma's

testimony establishes that MassMutual provides the same exact services regardless of whether a

mutual fund pays RSPs and independent of the amount of RSPs.  (Wietsma 11/14/12 Dep. at

59:19-63:9.)  Mr. Wietsma specifically testified that the services that MassMutual allegedly

provides for mutual funds, as outlined in the Participation Agreements, are the "[s]ervices

provided to the shareholders and plan sponsors that choose to utilize those investment options"

and these alleged services for mutual funds "are the same services that [MassMutual] perform[s]

for the plan sponsors and the participants in delivering the retirement product" because they are

"part of the same transaction." (Wietsma 11/14/12 Dep. 11:2-13:6, 62:9-63:9.)  MassMutual

provides the same, undefined "various services" to mutual funds, regardless of the amount of

fees paid by the mutual fund.  (Demetriou Dep. at 30:15-32:3, 53:15-54:4.)   Indeed, MassMutual

provides the same, undefined "various services" for mutual funds that do not pay it any RSPs,

based on the share class of the mutual fund or otherwise.  (Wietsma 11/14/12 Dep. at

62:22-63:9.)  Thus, the factual statement in this paragraph is entirely correct.  At a minimum,

material issues of fact exist regarding this factual issue.

114.    The GAC does not specify whether the GSI Plan or MassMutual has the authority

to decide which share class a Separate Account could use, but MassMutual negotiates with the

mutual funds to decide which share classes to offer.  (Wietsma 11/14/12 Dep. at 45:23-46:6;

Miles 11/13/12 Dep. at 81:3-15.)

*__Defendant's Response__: Admitted in part.  MassMutual admits that the group annuity*

*contract does not specify which share classes are available on the Overall Menu.  MassMutual*

*denies the rest of the statement above and states that the cited testimony does not support ¶ 114.*

*The participation agreement governs which share classes are available from a mutual fund.  To*

*the contrary of the statement above, Mr. Miles stated that all share classes are available to plans*

*and sponsors.  (Tang Decl. Ex. R, Miles Dep. at 81:3-15.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Mr. Wietsma testified that "in the participation agreement, it's outlined which share classes are made available" and MassMutual will "not always [make] all of the share classes that exist" available. (Wietsma 11/14/12 Dep. at 45:23-46:6.)  Mr. Miles only testified that the "appropriate" share class would be presented and made available to the Plans.  (Miles 11/13/12 Dep. at 81:3-15.) Accordingly, there is no basis to dispute the factual assertion contained in this paragraph.

115.    Institutional ("I") share classes of mutual funds generally are made available to larger plans with larger amounts of assets invested, require higher minimum investment amounts but have lower expense ratios and pay lower to zero RSPs.  (Wietsma 11/14/12 Dep. at 44:16-45:8, 47:22-49:18.)

*__Defendant's Response__:  Denied.  The cited testimony does not support the statement above.  In the cited portions of the deposition, Mr. Wietsma testified that some mutual fund prospectus requires a minimum amount of investment for the fund, and some share classes pay no revenue sharing and make up the difference in fees in other ways. (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 44:16-45:8; 48:3-20.)*

**Plaintiff's Reply**:  The evidence cited supports the factual statement.  Defendant appears to misunderstand the nature of the underlying statement of fact.  The statement of fact simply explains the nature of institutional share classes, which is fully supported by the cited testimony of Mr. Wietsma.  Defendant does not dispute the actual statement but, instead, appears to be anticipatorily attempting to defend its conduct in failing to make institutional share classes available to the Plans.  That is not the subject of this statement of fact and there is no basis to deny the statement as written since it is factually correct, as confirmed by Mr. Wietsma.

116.    Under the GAC, MassMutual retains the authority and responsibility to render investment advice:

> **.... All assets of MassMutual are invested by MassMutual as it, in its sole discretion, may determine, subject to applicable laws and regulations including, but not limited to, the discontinuance of a Separate Investment Account**.  The assets of the Separate Investment Accounts may be invested, wholly or partly, in securities, including the shares of any investment company registered under the Investment Company Act of 1940.  **In exercise of its sole discretion, MassMutual may from time to time, hire an investment advisor registered under the Investment Advisors Act of 1940 to assist in the investment of assets**.

(Assise Decl. Ex. 23, at 40 (§ 5.22) (emphasis added).)

**_Defendant's Response_**:  *Admitted in part and denied in part.  MassMutual admits that this paragraph accurately quotes from the GSI group annuity contract, but denies that this passage means that MassMutual is providing investment advice within the meaning of ERISA.*

**Plaintiff's Reply**:  The evidence cited supports the factual statement and Defendant provides no factual basis for its denial.  The quoted language explicitly states that MassMutual, "**in the exercise of its sole discretion**, may "**hire an investment advisor ... to assist in the investment of assets**" in the Separate Accounts.  (*Id*.)  Any disagreement that MassMutual may have regarding the legal import of these facts is not a proper basis for a factual denial.

117.    MassMutual receives fees and compensation in exchange for the investment advice it provides, as stated in the GAC:

> MassMutual may withdraw a separate investment account management fee from each Separate Investment Account.  This fee will be at a daily rate which on an annual basis does not exceed 1.0% of the average daily Market Value of the applicable Separate Investment Account.

(Assise Decl. Ex. 23, at 28 (§ 2.04(xi).)

***Defendant's Response****: Admitted in part and denied in part. MassMutual admits that this paragraph quotes from one section of the group annuity contract, but denies that this passage means that MassMutual is providing investment advice within the meaning of ERISA.*

**Plaintiff's Reply**: The evidence cited supports the factual statement and Defendant provides no factual basis for its denial. Any disagreement that MassMutual may have regarding the legal import of these facts is not a proper basis for a factual denial.

118. MassMutual's promotional materials highlight the quality of its investment advice. (Assise Decl. Ex. 17, Ex. A, at MASSMUT0000430; Assise Decl. Ex. 17, Ex. B, at 4.) For example, it advertises that:

> Through our disciplined methodology, we employ both quantitative and qualitative factors in screening investment managers for specific investment mandates. ***To help you make the right decisions regarding your plan, we employ a systematic monitoring process and provide you with detailed information for evaluating every option in your program***.

(Assise Decl. Ex. 17, Ex. A, at MASSMUT0000430)(emphasis added).

***Defendant's Response****: Admitted in part and denied in part. MassMutual admits that this paragraph quotes from the cited document, but denies that this passage means that MassMutual is providing investment advice within the meaning of ERISA.*

**Plaintiff's Reply**: The evidence cited supports the factual statement and Defendant provides no factual basis for its denial. Any disagreement that MassMutual may have regarding the legal import of these facts is not a proper basis for a factual denial.

119. The RSPs at issue are kickbacks provided for access to the Plans' retirement assets, since they bear no relationship to services rendered. (Wietsma 11/14/12 Dep. at 59:19-63:9.)

*__Defendant's Response__: Denied. The statement above is the plaintiff's theory of the case, and not a factual statement. Nothing in the cited testimony supports this legal argument.*

__Plaintiff's Reply__: The evidence cited supports the factual statement and Defendant provides no factual basis for its denial. Defendant fails to explain what the RSPs constitute other than kickbacks in light of the fact that they bear absolutely no relationship to any services rendered, as the evidence cited establishes.

120.    RSPs are subject to negotiation and MassMutual makes proactive inquiries when it becomes concerned about the amount of the RSPs that it is receiving from mutual funds. (Wietsma 11/14/12 Dep. at 14:23-16:9.)

*__Defendant's Response__: Admitted in part and denied in part. The cited testimony does not support all of the statements above. The statement says that revenue sharing payments are subject to negotiation, but in the cited testimony, Mr. Wietsma testified that "we don't negotiate revenue sharing typically." (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 14:23-15:4.) MassMutual admits that MassMutual makes proactive inquiries when it learns that its competitors are receiving higher amounts of revenue sharing. In the cited passage, Mr. Wietsma testified that when MassMutual became aware that one of the mutual funds was paying different revenue sharing payments to other service-providers, MassMutual approached the fund and found out that the difference in recordkeeping services justified the variation in revenue sharing payments. (Id. at 15:19-16:9.)*

__Plaintiff's Reply__: The evidence cited entirely supports the factual statement. MassMutual's attempt to distinguish between the "proactive inquiry" that MassMutual makes after learning that it has been competitively disadvantaged and "negotiation" based on pure

nomenclature cannot conceal the true nature of the underlying conduct.  *See* Plaintiff's Reply in support of Paragraph 97.

121.    Any alleged disclosure by MassMutual with respect to RSPs was false and misleading in nature because (a) Defendant always has related the receipt of RSPs to services actually performed for mutual funds (Wietsma 11/14/12 Dep. at 58:5-19), but MassMutual has admitted that it performs the same services, regardless of whether a mutual fund agrees to pay it RSPs (Mezey Dep. at 80:9-20; Wietsma 11/14/12 Dep. at 48:21-49:2; 57:18-58:4); (b) MassMutual's own representatives do not even understand their current disclosures regarding RSPs (Assaley Dep. at 106:16-107:7; Bruder Dep at 95:16-97:19;101:20-103:21; Harrison Dep. 157:5-169:4); and (c) MassMutual's current disclosures falsely indicate that all of the RSPs are attributable to costs which indisputably is untrue.  (Mezey Dep. 55:15-56:16.)

***Defendant's Response***:  *Denied.  The cited testimony does not support plaintiff's statements above.  In particular, statements (a), (b), and (c) are not supported by the evidence cited, and each does not support the contention that MassMutual's disclosure of revenue sharing was false and misleading.  MassMutual uses revenue sharing to offset monies that it would otherwise collect from the plan sponsor or plan participants.  (Tang Decl. Ex. V, Wietsma Dep. (11/14/12) at 50, 57, 59, 85.)  Moreover, MassMutual provided information to the GSI Plan about the expense ratio of each mutual fund on the Plan Menu and disclosed to the GSI Plan trustee in writing that it was receiving revenue sharing payments.  (Assise Aff. Ex. 3, E. Julo Dep. at 95, 133.)*

**Plaintiff's Reply**:  The evidence cited entirely supports the factual statement.   Nothing in MassMutual's Response provides a basis to dispute the factual statement.  Despite

MassMutual's contrary claim, the evidence establishes that it does not offset RSPs against monies that it otherwise would collect from the Plans or their participants.  *See* Plaintiff's Reply and Sur-Reply to Paragraph 22.  In addition, MassMutual's reference to its disclosure of expense ratios is immaterial to the factual statement, while its assertion that it disclosed the existence of RSPs (while falsely claiming that they were related to services rendered for mutual funds) only supports (as opposed to contradicts) the factual statement in this paragraph. *See* Paragraph 103 and Plaintiff's Reply to Defendant's Response to Paragraph 103.

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF DISPUTED ISSUES OF MATERIAL FACTS

In Paragraphs 122-150, Plaintiff summarized and restated the issues of material fact as is often done for the convenience of the Court in connection with statements submitted under Local Civil Rules 56.1.  Defendant challenges this attempt to assist the Court and distill the issues of fact in this case by asserting that Plaintiff has somehow violated this Court's Local Rules.[5] Given Defendant's persistent disregard of this Court's Local Rules, that criticism is more than a

---

[5]Specifically, in its "introductory statement" to this section, Defendant states as follows:

In paragraphs 122-150 below, plaintiff sets forth a series of "disputed issues" but does not cite any supporting evidentiary authorities for any of them.  Each of these statements therefore violates Local Rule 56.1, which requires that a party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, ***with page references to affidavits, depositions and other documentation***."  (emphasis added.)  Accordingly, under Local Rule 56.1, paragraphs 122-50 should be stricken and disregarded.  *Aulisio v. Baystate Health Sys., Inc.*, No. 11-30027-KPN, 2012 WL 3957985, at *3 (D. Mass. Sept. 7, 2012) (striking plaintiff's response to defendant's statement of undisputed facts because plaintiff failed to cite any record in support of the statement); *see also Sanchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209, 212 (1st Cir. 2008) (treating the defendant's statement of facts as uncontested where plaintiff's proposed statement of facts did not comply with local rules).

bit ironic.  In any event, the authority upon which Defendant relies in seeking to strike

Paragraphs 122-150 demonstrates the improper nature of MassMutual's request in this case.  In

*Aulisio v. Baystate Health Sys., Inc.*, No. 11-30027-KPN, 2012 WL 3957985 (D. Mass. Sept. 7,

2012), the court struck only the portions of the plaintiff's statement of facts that were

unsupported by any citations to the records, and only after the court had previously admonished

the plaintiff regarding adherence to Local Rule 56.1.  (*Id.* at *5.)  Meanwhile, in

*Sanchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209 (1st Cir. 2008), the district

court only struck the statement of undisputed facts because most of the cited exhibits were not

properly translated as required under Local Rule 10(b), noting that the plaintiffs "did not''even

arguably comply with the spirit or the letter of the rule[s].'" (*Id.* at 214 (brackets original).)

Here, Plaintiff offers the statement of disputed issues of material facts contained in Paragraph

122-150 as a summary and distillation of the disputed issues and only after first presenting the

disputed and countervailing facts for the Court's evaluation.  This was done precisely for the

Court's convenience and to help "focus[] a district court's attention on what is-and what is

not-genuinely controverted." *Caban Hernandez v. Phillip Morris USA, Inc.*, 486 F.3d 1, 6 (1st

Cir. 2007).  As a result, Plaintiff respectfully submits that paragraphs 122-150 should not be

stricken and, instead, they should be accepted by the Court to the extent that they aid the Court in

framing the issues on summary judgment.

122.    Whether MassMutual possessed and/or exercised sufficient authority, control,

discretion, discretionary authority and/or discretionary control to be deemed a fiduciary in

connection with its (a) ownership and control of the Separate Accounts; (b) administration of the

Separate Accounts; (c) authority or responsibility to render investment advice for which it

receives fees and compensation; (d) authority to add, delete, change or substitute mutual funds from the menu available for the Separate Accounts; (e) exercise of authority to add, delete, change or substitute mutual funds from the menu available for the Separate Accounts; (f) exercise of discretionary authority not to offer, purchase, and substitute institutional and lower expense ratio share classes; (g) exercise of discretionary authority to re-invest the mutual fund dividends generated by the Separate Accounts; (h) discretionary authority to self-determine and draw its compensation directly from the Separate Accounts; and (i) exercise of discretionary authority to set and draw its compensation directly from the Separate Accounts.

***Defendant's Response***: *Denied for lack of any supporting evidence. See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

123.    Whether MassMutual acts as a fiduciary to the GSI Plan.  *See* Assise Decl. at Ex. 24 (acknowledging that issue for summary judgment is solely related to MassMutual's fiduciary status).

***Defendant's Response***: *Denied for lack of any supporting evidence. See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

124.    Whether MassMutual explicitly acknowledges its fiduciary status to the Plans, including the GSI Plan.

**_Defendant's Response_**_: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122._

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

125.    Whether MassMutual's services to 401(k) plans are limited to only providing a menu of investment options and recordkeeping and other "ministerial" services.

**_Defendant's Response_**_: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122._

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

126.    Whether MassMutual holds the authority and exercises the power to make discretionary investment and/or administrative decisions on behalf of the Plans, including the GSI Plan.

**_Defendant's Response_**_: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122._

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

127.    Whether MassMutual holds the discretionary power to and exercises the power to set its own compensation.

**_Defendant's Response_**_: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122._

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

128.   Whether MassMutual holds and exercises the discretion to add, delete and substitute investment options within the Limited Menu of investment options that it maintains.

***Defendant's Response***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

129.   Whether MassMutual only deletes and substitutes investment options from the Limited Menu on a prospective basis or, in fact, does so for existing Plans offering and investing in the deleted/substituted investment options.

***Defendant's Response***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

130.   Whether MassMutual is paid RSPs in return for services rendered to the mutual funds or if, in fact, the RSPs are unrelated to services rendered and actually amount to payments for access to the Plans (*i.e.*, shelf space payments).

***Defendant's Response***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

131.    Whether MassMutual enters into Participation Agreements with mutual funds before it places them on its Limited Menu.

***Defendant's Response***:  *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

132.    Whether MassMutual had adequately or truthfully disclosed the existence, nature or purpose of RSPs and, if so, when.

***Defendant's Response***:  *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

133.    Whether MassMutual has ever advised the GSI Plan that it can use RSPs to pay for services.

***Defendant's Response***:  *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

134.    Whether MassMutual uses RSPs to offset monies that would otherwise be due and owing from the Plans or their participants.

***Defendant's Response***:  *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**<u>Plaintiff's Reply</u>**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

135.    Whether MassMutual is required to execute directives related to investments from the Plans or other participants.

***<u>Defendant's Response</u>***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**<u>Plaintiff's Reply</u>**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

136.    Whether MassMutual drafted the operative plan documents, including the GAC, that govern its relationship with the GSI Plan.

***<u>Defendant's Response</u>***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**<u>Plaintiff's Reply</u>**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

137.    Whether MassMutual has considered its power to change and substitute investment options and whether it has exercised such power.

***<u>Defendant's Response</u>***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**<u>Plaintiff's Reply</u>**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

138.    Whether MassMutual provided adequate and fulsome notice to the Plans, including the GSI Plan, regarding its substitution of investment options.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

139.   Whether MassMutual provided the Plans, including the GSI Plan, with adequate time to identify an alternative service provider and to terminate its contact without penalty when MassMutual elected to substitute investment options offered to the Plans.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

140.   Whether MassMutual made the discretionary investment decisions to (a) determine what investments to offer and maintain through the Separate Accounts, (b) reinvest dividends of mutual funds, and (c) vote proxies on behalf of the Plans.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

141.   Whether MassMutual engages in post-contract acts, conduct and omissions in which it exercises any authority or control respecting management or disposition of plan assets.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

142.    Whether MassMutual holds post-contract discretionary authority or discretionary responsibility in the administration of the plans.

***Defendant's Response***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

143.    Whether MassMutual renders investment advice for a fee or other compensation, directly or indirectly, with respect to any monies or other property of the Plans, including the GSI Plan, or has any authority or responsibility to do so.

***Defendant's Response***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

144.    Whether the RSPs constitute plan assets.

***Defendant's Response***: *Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

145.    Whether MassMutual has dealt with the RSPs in its own interest or for its own account.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

146.    Whether MassMutual has received consideration in the form of RSPs from mutual funds dealing with the GSI Plan in connection with a transaction involving the assets of the plan.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

147.    Whether MassMutual received the RSPs in connection with its fiduciary status.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

148.    Whether MassMutual engaged in self-dealing in connection with retirement plan assets.

***Defendant's Response****: Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

149.     Whether MassMutual adequately disclosed the existence and nature of the RSPs, the reasons why it receives them and the status it occupies in connection with receipt of the RSPs.

***Defendant's Response****:  Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.

150.     Whether MassMutual misrepresented or concealed the nature of the RSPs from Plaintiff.

***Defendant's Response****:  Denied for lack of any supporting evidence.  See MassMutual's introductory statement before ¶ 122.*

**Plaintiff's Reply**: Plaintiff submits that the paragraph is proper and should be accepted by the Court to the extent helpful in framing the issues in this case.


Dated: February 12, 2014                    Respectfully submitted,

/s/ Laurie Rubinow
James E. Miller (*admitted pro hac vice*)
Laurie Rubinow (*admitted pro hac vice*)
Kolin C. Tang (*admitted pro hac vice*)
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
         lrubinow@sfmslaw.com
         ktang@sfmslaw.com

John M. Edgar
John F. Edgar
Edgar Law Firm LLC
1032 Pennsylvania Avenue
Kansas City, MO  64105
Telephone: (816) 531-0033
Facsimile:  (816) 531-3322
Email: jme@edgarlawfirm.com
          jfe@edgarlawfirm.com

Ronald S. Kravitz
Shepherd Finkelman Miller & Shah, LLP
One California Street
Suite 900
San Francisco, CA  94111
Telephone: (415) 429-5272
Facsimile:   (866) 300-7367
Email: rkravitz@sfmslaw.com

Michelle H. Blauner
Shapiro Haber & Urmy LLP
53 State Street
Boston MA, 02109
Telephone:  (617) 439 3939
Facsimile:  (617) 439 0134
Email: mblauner@shulaw.com

Attorneys for Plaintiff
and the Proposed Class