**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GOLDEN STAR, INC., | : | CIVIL ACTION |
| Plan Administrator of the Golden Star | : | NO: 3:11-CV-30235-MGM |
| Associates' 401(k) Plan and the Golden Star | : | |
| Bargaining Associates' 401(k) Plan, | : | CLASS ACTION |
| On Behalf of Itself and All Others | : | |
| Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MASSACHUSETTS MUTUAL LIFE | : | |
| INSURANCE CO., | : | |
| | : | |
| Defendant. | : | October 31, 2014 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## I.    INTRODUCTION

Plaintiff, Golden Star, Inc. ("Plaintiff" or "GSI"), on behalf of itself and the proposed

Settlement Classes defined below, respectfully submits this Memorandum of Law in Support of

its Motion for Preliminary Approval of Settlement with Defendant, Massachusetts Mutual Life

Insurance Company ("Defendant" or "MassMutual").  For the reasons set forth below, Plaintiff

respectfully submits that the proposed Settlement Agreement (which is attached as Exhibit "1")

is fair, reasonable and adequate, and should be granted preliminary approval so that notice can be

provided to the proposed Settlement Classes.[1]  The proposed settlement ("Settlement") is the

product of significant and lengthy arm's-length negotiations between counsel for the proposed

_____

[1] All capitalized terms herein have the same meaning as set forth in the Parties' Settlement
Agreement.

Settlement Classes ("Class Counsel")[2] and counsel for Defendant, all of whom have significant

experience in matters arising under the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1001, *et seq.*[3]  This is a proposed class action in which Plaintiff challenges

---

[2]As detailed in the accompanying Settlement Agreement, the Parties have agreed, for purposes of Settlement only, to certification of two Settlement Classes: (1) the Monetary Relief Class, which is defined as "all current and former retirement plans that are or were serviced by MassMutual pursuant to a group annuity contract from October 19, 2005 through the date of the Court's Preliminary Approval Order; and (2) the Structural Changes Class, which is defined as "all retirement plans that receive services from MassMutual pursuant to a group annuity contract on or after the date of entry of the Preliminary Approval Order.  Excluded from the Classes are (1) Defendant, (2) any administrators of retirement plans ("Plans") for which Defendant's directors, officers or employees are beneficiaries, (3) any Plans for which the Judge(s) to whom this case is assigned or any other judicial officer having responsibility for this case is a beneficiary, (4) any Plans that were former Hartford Plans (as that term is defined in the Settlement Agreement), and (5) any Plans which are invested through registered products.  The Monetary Relief Class covers current and past retirements plan customers of MassMutual, while the Structural Changes Class covers current and future retirement plan customers of MassMutual.

[3]Lead Counsel in this case, Shepherd Finkelman Miller & Shah, LLP ("SFMS"), has extensive experience litigating cases challenging revenue sharing practices under ERISA.  In *Phones Plus, Inc. v. Hartford Life Ins. Co.*, 3:2006-cv-01835 (D. Conn.), SFMS, on behalf of its client and a nationwide class of plan sponsors, achieved the first settlement of its kind under ERISA in 2010, challenging the practice of life insurance service providers accepting and receiving revenue sharing payments under certain circumstances.  The *Phones Plus* settlement was reached after class certification and summary judgment had been fully submitted to the court.  In *Healthcare Strategies, Inc. v. ING Life Insurance & Annuity Co.*, No. 3:11-cv-00282 (WGY)(D. Conn), SFMS, on behalf of its client and a nationwide class of sponsors, obtained certification of a nationwide class, defeated a motion for summary judgment and proceeded to trial through liability before that case was successfully resolved.  SFMS also served as lead counsel in *Butler National Corp., et al. v. Union Central Life Ins. Co., et al*, No. 1:12-CV-177-SJD (S.D. Ohio), a case in which SFMS was successful in achieving a significant monetary recovery and groundbreaking changes in practice with respect to revenue sharing practices. While Lead Counsel has achieved significant results in these cases, it bears noting that some similar actions against insurance company service providers have been entirely unsuccessful.  *See Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013)(holding that a 401(k) service provider was not a fiduciary with respect to its receipt of revenue sharing from mutual fund companies); *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.,* 2014 WL 4783665 (3d Cir. Sept. 26, 2014)(affirming dismissal of revenue sharing class action); *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488 (S.D. Iowa 2008)(denying class certification in revenue sharing class action), *appeal dismissed by* 705 F.3d 839 (8th Cir. 2013), *cert. denied,*

Defendant's receipt of revenue sharing payments from mutual fund companies and similar entities. Defendant's position is that its practices comply with applicable law, and it has vigorously contested Plaintiff's claims. The Settlement of these disputed claims provides the following substantial and meaningful relief to the Settlement Classes:

- Defendant will deposit $9,475,000 in a common fund to provide compensatory relief to the Monetary Relief Class;

- Defendant will make a number of changes to its business practices that relate directly to issues Plaintiff raised, are squarely directed at addressing a number of the aspects of the challenged conduct and provide clarity in the disclosures with respect to Defendant's challenged conduct, all of which will directly benefit the Structural Changes Class. Such changes include:

  - Defendant shall make the following changes to the menu(s) of investments it offers ("Product Menu(s)"): (a) Defendant shall identify to plan sponsors, via MassMutual's plan sponsor website or other electronic media made available by Defendant to the plan sponsor ("Plan Sponsor Website"), any addition of any insurance company Separate Investment Account, Mutual Fund, Bank Collective Trust Fund or other investment option (collectively "Funds"), to the Product Menu(s). Defendant shall inform current plan sponsors within ninety (90) days of the effective date of any settlement and future plan sponsors at point of sale in writing that such additions are identified on the Plan Sponsor Website; (b) Defendant shall advise all current and future Plan fiduciaries that, notwithstanding any provision in any group annuity contract or group funding agreement ("Group Contract"), Defendant would not delete, change or replace any Funds (including share classes of a given Fund) on the Product Menu that is in a Plan's selected investment lineup without: (1) providing an applicable fiduciary for each affected Plan with sixty (60) days' written notice, and (2) obtaining a plan fiduciary's consent to the proposed change, subject to the qualification that Defendant can remove a Fund from the Plan's lineup if it is no longer available through merger or otherwise and further provided that a Plan fiduciary's failure to object will be treated as consent to the proposed change. If the fiduciary affirmatively rejects the proposed change and Defendant ultimately implements the

---

134 S.Ct. 152 (2013). Although Plaintiff and Lead Counsel believe strongly that *Leimkuehler*, *Santomenno* and *Ruppert* were decided in error, it is beyond cavil that Plaintiff faced substantial risk in litigating this case on behalf of the Settlement Classes.

change, the Plan fiduciary has the right to terminate its Group Contract with Defendant without application of a surrender charge or similar charge (a "penalty") and the Plan fiduciary will be provided with an additional sixty (60) days from the effective date of the change to identify an alternative service provider.  The conditions described in this subparagraph (b) only apply to Fund changes initiated by the Defendant and not to any Fund changes initiated by an investment provider other than Defendant; and (c) Defendant shall provide to plan sponsors notice on the MassMutual's Plan Sponsor Website of any removal of a Fund from the Product Menu.  Such notice shall be published on such website at least thirty (30) days prior to the removal, and shall state the effective date of the removal.  The conditions described in this subparagraph (c) only apply to the removal of a Fund initiated by Defendant and not to the removal of a Fund initiated by an investment provider other than Defendant.  Defendant shall inform current plan sponsors within ninety (90) days of the effective date of any settlement and future plan sponsors at point of sale in writing that such deletions will be identified on the Plan Sponsor Website.

- Defendant shall provide on the Plan Sponsor Website for each fund made available by MassMutual a disclosure of the expense ratio for each Fund, including the amount, if any, of the SIA Management Fee or other direct fees specifically associated with each Fund.  MassMutual shall also disclose for each Fund made available by MassMutual the revenue paid to MassMutual from a Fund, including disclosure of those Funds that make no revenue sharing payments to MassMutual.

- Defendant shall modify its written point of sale disclosure, so as to: (a) advise Plans that Defendant offers various Funds, including various share classes of certain Funds, to retirement plan customers depending on the amount of direct fees plan sponsors choose to pay and other factors, that these various Funds pay to Defendant differing amounts of revenue sharing as a percentage of the Funds' assets, that only one share class of each Fund is typically offered to a Plan consistent with the Defendant's pricing and product offering and that, as an investment option under a retirement plan, the primary difference between share classes of a Fund is the Fund's expense ratio (*i.e.*, the amount that the Plan's participants pay as a Fund expense) and the amount of revenue sharing that Defendant receives from the Fund, which is paid from the revenue derived from the Fund's fees and expenses, and that Funds are available to all Plans that pay no revenue sharing of any kind resulting in the expenses of a Plan being paid for entirely by direct fees assessed to the Plan and/or its participants; (b) explain that revenue sharing payments are made by certain, but not all, Funds and the amount of revenue sharing payments received can be dependent on the share class(es) offered by the Fund and the share

class(es) chosen by Defendant; and (c) advise Plans that more detailed information regarding the share classes available on various menus offered by Defendant, as well as the revenue sharing associated with those share classes, and the revenue sharing received in connection with the plan's investments, would be provided upon written request to Defendant.

• Each of the Plans in the Settlement Classes will be deemed to have elected to reinvest all mutual fund dividends from the effective date of the Plan's Group Contract. Defendant's point of sale disclosures will now provide that, as a result of entering into a contractual relationship with Defendant through a Group Contract, each Plan is directing Defendant to reinvest any mutual fund dividends.

• Defendant will include in its proposal an explanation of the option for Plan customers to pay all fees to Defendant through direct charges and, if requested by the plan sponsor or its advisor, will offer a menu of Funds for which Defendant does not receive revenue sharing payments.

• Defendant shall not make any change in the compensation that it receives from the Plans, including the SIA Management Fees or the Funds without providing each affected Plan with sixty (60) days written notice and an opportunity to terminate its Group Contract without penalty if the changes are not acceptable.

Unless otherwise provided in the Settlement Agreement, Defendant has agreed that it will make diligent and good faith efforts to ensure that the implementation of these changes is concluded within twelve (12) months of the Effective Date. Unless there is a change in applicable law that renders any change or practice unlawful (in which case Defendant shall be permitted to alter its practices to the extent (but only to the extent) required by law), the Structural Changes Class has agreed that, for as long as MassMutual follows the changed business practices described in the Settlement Agreement (or as otherwise required by changes in applicable law), those practices cannot be challenged in the future.[4] As explained herein,

_____

[4]Plaintiff has consulted with experts who estimate that the changes to Defendant's business practices has significant value, and Defendant also will be required to incur expenses to implement them. The Settlement provides for payment of attorneys' fees of up to one-third (1/3)

Plaintiff has established all necessary prerequisites for preliminary approval of the Settlement.  In addition, in connection with seeking final approval of the Settlement, Plaintiff expects to provide the Court with the opinion and a report from an independent fiduciary,[5] who will review and approve of all aspects of the Settlement as fair and reasonable under the circumstances.

## II.   FACTUAL BACKGROUND RELEVANT TO PRELIMINARY APPROVAL

### A.   Procedural History And History Of Settlement Negotiations

The Parties' Settlement Agreement was reached after over three (3) years of litigation, including extensive discovery, which involved the production of hundreds of thousands of pages of documents, the deposition of two (2) representatives of Plaintiff, the depositions of ten (10)

---

of the Settlement Fund, plus expenses not to exceed $315,000.00.  The amount sought for attorneys' fees and costs is a relatively small percentage of the total Settlement value and will be supported by Class Counsel's total lodestar devoted to this matter (*i.e.*, the costs and fees, based on Class Counsel's normal hourly rates, expended in prosecuting this case), which lodestar is greater than the amount requested as payment for attorneys' fees and expenses and which Plaintiff believes is fair and reasonable under applicable law.  *See In re Thirteen Appeals Arising Out Of the San Juan DuPont Plaza Hotel Fire Litigation,* 56 F.3d 295, 307 (1st Cir. 1995); *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 79 (D. Mass. 2005); *Mazola v. May Dept. Stores Co.,* 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999)("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund.  This approach mirrors that taken by the federal courts in other jurisdictions.").  Finally, the Settlement provides for the payment of a Case Contribution Fee to Plaintiff in the amount of $15,000 in recognition of Plaintiff's invaluable contributions to the prosecution of this action.  Such an award is commonplace in class actions, especially where, as here, Plaintiff has made significant contributions to the Settlement.  Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *See, e.g.*, *In re Lupron Marketing and Sales Practices Litigation*, No. MDL 1430, 01-cv-10861-RGS, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005).  In connection with seeking final approval of the Settlement, Plaintiff will submit more detailed information, including affidavits regarding the time and expenses devoted to this matter and the time spent by Plaintiff in prosecuting this class action litigation, in support of the request for an award of attorneys' fees and expenses, as well as a Case Contribution Fee.

[5]This opinion is being provided, to the extent applicable, pursuant to the Department of Labor's Prohibited Transaction Exemption No. 2003-39.

MassMutual employees (three (3) of whom were deposed twice), the deposition of MassMutual's expert witness who submitted a report in opposition to class certification, the deposition of Plaintiff's expert witness who submitted a report in support of class certification, and three (3) financial advisors who submitted affidavits regarding class certification.  The Parties fully briefed class certification, and fully briefed and argued summary judgment on the issue of fiduciary status, before the Settlement was agreed upon.  The Settlement terms were arrived at following a full day of mediation in May 2014 with Magistrate Judge Morton Denlow (Ret.) in Chicago, Illinois, and direct and lengthy negotiations over a period of several months following the mediation.  The Settlement Agreement is the result of arm's-length negotiations that first began in approximately March of 2013.  During the course of these negotiations, the Parties and their respective counsel had discussions concerning the potential resolution of the case, as well as the risks attendant in connection with the theories being advanced in the prosecution and defense of this case.[6]  As a result of those discussions, which were informed by the significant experience of Lead Counsel and Defendant's counsel in such matters, Plaintiff and Defendant, by and through their respective counsel, and with the substantial assistance of Magistrate Denlow, ultimately reached agreement as to all material terms and then memorialized those terms in the Settlement Agreement.

The Parties exchanged substantial documentation so as to evaluate the merits of their respective claims and defenses.  Plaintiff also consulted with experts regarding potential theories

---

[6]During the discussions, the Parties continued to litigate the issues of class certification and summary judgment as to fiduciary status.

of liability and damages.  Thus, the Settlement was reached after considerable investigation and careful consideration and discussions.

**B.      The Settlement Provisions**

The full terms of the Settlement are embodied in the Settlement Agreement attached hereto as Exhibit "1."  The Settlement Agreement clearly is fair and reasonable to the Settlement Classes, as it provides significant and meaningful benefits to all Members of the Settlement Classes.  Moreover, as explained above, the terms of the Settlement have been carefully crafted and relate directly to the conduct that Plaintiff challenged in this case.  In sum, in the considered judgment of Plaintiff, the Settlement calls for a significant monetary payment to the Monetary Relief Class and provides substantial and meaningful benefits to the Structural Changes Class in the form of significant changes in the manner in which Defendant conducts its business and the provision of clear, detailed information regarding revenue sharing payments, as well as direct fees and expenses paid by the Settlement Classes' retirement Plans.

### III.      ARGUMENT

**A.      The Court Should Certify The Settlement Classes' Claims, Respectively, Under Rule 23(b)(1) And Rule 23(b)(3) Of The Federal Rules Of Civil Procedure**

Defendant has agreed, solely for the purposes of this Settlement, that certification of the Monetary Relief Class's claims should occur under Fed. R. Civ. P. 23(b)(3) and that Class members will have the right to exclude themselves from the Monetary Relief Class, and certification of the Structural Changes Class's claims should occur under Fed. R. Civ. P. 23(b)(1), and that Class members will not have the right to opt out of the Structural Changes Class.  Certification of the Classes in this case under Rule 23(b)(1) and Rule 23(b)(3), respectively, is fair and appropriate.  *See Hochstadt v. Boston Scientific Corp.*, 708 F.Supp.2d 95

(D. Mass. 2010)(discussing appropriate nature of certification of settlement class in ERISA class action under Fed.R.Civ.P. 23(b)(1)); *Bertella v. JetDirect Aviation, Inc.*, No. 09–10527–RGS, 2010 WL 4103664 (D. Mass. Oct. 19, 2010)(same); *McDonough v. Horizon Healthcare Services, Inc.*, 2014 WL 3396097 (D.N.J. July 9, 2014)(certifying ERISA class under Fed.R.Civ.P. 23(b)(3) for purposes of settlement); *Phones Plus, Inc. v. Hartford Life Ins. Co.*, 3:2006-cv-01835 (D. Conn.)(Dkt. No. 314)(June 22, 2010)(certifying settlement classes of retirement plans in ERISA revenue sharing class action under Fed.R.Civ.P. 23(b)(1)&(3)); *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-cv-00282 (WGY)(D. Conn)(Dkt. Nos. 102 & 282)(Sept. 27, 2012, Sept. 26, 2014)(certifying class of retirement plans in ERISA revenue sharing class action under Fed.R.Civ.P. 23(b)(3) and subsequently certifying settlement class of retirement plans in ERISA revenue sharing class action under Fed.R.Civ.P. 23(b)(3)); *Butler National Corp., et al. v. Union Life Ins. Co., et al.*, No. 1:12-CV-177-SJD(Dkt. No. 55)(Sept. 10, 2014)(certifying settlement classes of retirement plans in ERISA revenue sharing class action under Fed.R.Civ.P. 23(b)(1)&(3)).

**B.     The Class Notice Is The Best Practicable Under The Circumstances**

To comport with the due process rights of absent members of the Settlement Classes, notice must be the best practicable given all the circumstances. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).  Here, the Parties have agreed to have the Settlement Administrator provide direct notice by first-class mail or electronic mail (if available) to the plan administrators of Monetary Relief Class members.  There is no question that such notice is the best notice practicable and is adequate.  *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 218 (D. Maine 2003)(delivery of the notice by first class

mail to each individual class member in a class action was deemed the best notice practicable under the circumstances, where class members' addresses could be readily identified through the defendant's records).   Moreover, notice of the Settlement also will be provided on a settlement website maintained by an experienced settlement administrator, Strategic Claims Services, and through a publication in the *Wall Street Journal*, thereby supplementing and improving the direct notice that the Settlement contemplates.  *See In re Tyco Intern., Ltd. Multidistrict Litigation*, 535 F.Supp.2d 249, 257-58 (D.N.H. 2007)(delivery of the notice by first class mail, publication notice in several major newspapers and claims administrator's website and hotline to assist class members in submission of claims, constituted adequate notice).

The proposed notices (*i.e.*, the Long Form Notice that will be mailed or emailed, as well as the Summary Notice that will be published) describe the Settlement, explain Plaintiff's claims and the Litigation, inform Class Members of the identity of Class Counsel, and explain the Class Members' legal rights and options under the Settlement, and how to obtain additional information regarding the Settlement.  Thus, the Class notice meets all requirements of applicable law with respect to notice.  *Hochstadt, et al. v. Boston Scientific Corp.*, 708 F.Supp.2d 95, 110 (D. Mass. 2010)(finding class notice to be appropriate where the notice provides "background information on the ERISA Actions, accurately recites the legal rights and options of the Settlement Class and fully explains the Revised Plan of Allocation...").

## C.    The Settlement Agreement Merits Preliminary Approval

The approval of a class action settlement generally involves two steps.  "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing."  *In re Relafen*

*Antitrust Litigation*, 231 F.R.D. at 57 (D. Mass. 2005) (quoting Manual For Complex Litigation, Fourth §13.14 at 171).

In reviewing the proposed settlement of a class action litigation, a court will review a proposed settlement to determine if it is "fair, reasonable, and adequate." *See* Fed. R.Civ.P. 23(e)(2) and *Hochstadt*, 708 F.Supp.2d at 106-107 (D. Mass. 2010). At the preliminary approval juncture, "the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *Scott v. First Am. Title Ins. Co.*, No. 06-286, 2008 WL 4820498, at *3 (D.N.H. 2008), *as cited in In re Puerto Rican Cabotage Antitrust Litigation*, 269 F.R.D. at 140 (D.P.R. 2010).

The court "need not engage in a trial on the merits" in reviewing the settlement proposal. *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1984)(citing *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647 (7th Cir. 1971). As is the case here, there is usually a presumption in favor of the settlement "[i]f the parties negotiated at arm's length and conducted sufficient discovery." *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33(1st Cir. 2009); s*ee also* 2 Herbert B. Newberg And Alba Conte, Newberg On Class Actions, §11.41, at 11-88 (3d ed. 1992). A presumption of fairness applies to the court's preliminary fairness determination when: (a) the negotiation for the proposed settlement occurred at arm's length, (b) there was sufficient discovery, (c) the proponents of the settlement are experienced in similar litigation, and (d) only a small fraction of the class objected. *Hochstadt v. Boston Scientific Corp.,* 708 F.Supp.2d at 107 (2010)*; In re Puerto Rican Cabotage Antitrust Litigation,* 269 F.R.D. at 140 (D.P.R. 2010); *In re Lupron Mktg. and Sales Practices Litig.*, 345

F.Supp.2d at 137 (D. Mass. 2004). Considering these factors, preliminary approval clearly is proper in this instance.

## 1.     The Negotiations Occurred At Arm's Length

The proposed Settlement Agreement is a product of "serious, informed, non-collusive negotiations." Manual For Complex Litigation §30.41 at 265 (3d ed. 2000). Settlement discussions lasted over a period of one (1) year before an agreement was reached by the Parties. The settlement negotiations were extensive and adversarial in nature. Indeed, the Parties continued to litigate during most of the period during which they held settlement negotiations. The Parties were able to reach the Settlement only after working with a well-respected mediator, Magistrate Judge Denlow (ret.), for a mediation session and participating in several subsequent telephone conferences. There plainly was no collusion with respect to this proposed Settlement Agreement.

As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for court approval.
>
> *          *          *
>
> The initial presumption of fairness of a class settlement may be established by showing;
>
> 1.     That the settlement has been arrived at by arm's-length bargaining;.
>
> 2.     That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and
>
> 3.     That the proponents of the settlement are counsel experienced in similar litigation.

Herbert B. Newberg and Alba Conte, Newberg On Class Actions §11.41 at 11-88, 11-91 (3d ed. 1992); *see also City P'ship Co. v. Atl. Acquisition ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement Agreement were reached during extensive, arm's-length negotiations by experienced counsel after thorough investigation.

### 2.     Sufficient Discovery Was Conducted

The discovery taken in this Litigation clearly supports the Settlement. Over the course of three (3) years, Class Counsel reviewed approximately four hundred thousand (400,000) pages of documents, deposed ten (10) MassMutual employees (three (3) of whom were deposed twice), engaged in expert witness discovery, including the deposition of MassMutual's class certification expert witness and Plaintiff's class certification expert witness, and deposed three (3) financial advisors that utilize MassMutual as a service provider. Class Counsel used the information gained in discovery to thoroughly investigate and analyze the claims and defenses in this Litigation. Given that the Litigation advanced to the class certification and summary judgment stages, the Parties were able to thoroughly assess the issues in this Litigation and ensure that the Settlement was tailored to meet the realities of the case, including the specific nature of Defendant's challenged business practices. *See Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d at 108 (2010)("[g]iven the thorough investigation of the facts over the last four years, this case is at a stage where both the court and counsel are able to evaluate the merits of the claims."). Thus, sufficient discovery occurred to weigh in favor of finding the terms of the Settlement Agreement fair.

### 3.      The Proponents Of The Settlement Are Experienced In Similar Litigation

Counsel for Plaintiff and Defendant are experienced in ERISA class action cases such as

the instant action (*see infra* at p. 2, fn. 3) and class action litigation generally.  *See also*

www.sfmslaw.com; http://www.sfmslaw.com/Our-People/James-E-Miller.shtml;

http://www.sfmslaw.com/Our-People/Laurie-Rubinow.shtml; www.sidley.com;

http://www.sidley.com/joel-feldman/; http://www.sidley.com/blocker_mark; s*ee also In re*

*Puerto Rican Cabotage Antitrust Litigation*, 269 F.R.D. at 141 (D. P.R. 2010)(review of

curricula vitae of counsel supported that proponents of settlement were experienced in similar

litigation); *Hochstadt v. Boston Scientific Corp.*, 708 F.Supp.2d at 108 (D. Mass. 2010)(in

ERISA litigation, experience of counsel was demonstrated by years of prosecution of ERISA

actions).  Thus, the proponents of the Settlement are experienced in similar litigation.

### 4.      There Have Been No Objections At This Procedural Stage

Since notice has not yet been disseminated to the Settlement Classes, there obviously

have been no objections as of this date as is typically the case and the inability to assess the

potential for objections does not weigh against preliminary approval:

> [T]he ability of class members to object rests upon the Court's
> certification of a settlement class, preliminary approval of the
> settlement agreements and approval of notice to be sent to class
> members.  Thus the Court does not find that the lack of
> information as to objections within the class weighs against
> preliminary approval of the settlement agreements.

*In re Puerto Rican Cabotage Antitrust Litigation*, 269 F.R.D. at 141 (D. P.R. 2010).  Likewise,

here, the inherent lack of information regarding potential objections does not weight against

granting preliminary approval of the Settlement.  In sum, this case meets all of the requirements

for preliminary approval under applicable and controlling law.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Preliminary Approval of Settlement, approve the form and manner of Class Notice, grant conditional certification of the Classes for Settlement purposes only, and establish a date for a Final Approval Hearing.

Dated: October 31, 2014                         Respectfully submitted,


                                                /s/ James E. Miller
                                                James E. Miller (*admitted pro hac vice*)
                                                Laurie Rubinow (*admitted pro hac vice*)
                                                Karen M. Leser-Grenon (*admitted pro hac vice*)
                                                Shepherd Finkelman Miller & Shah, LLP
                                                65 Main Street
                                                Chester, CT 06412
                                                Telephone: (860) 526-1100
                                                Facsimile: (866) 300-7367
                                                Email: jmiller@sfmslaw.com
                                                        lrubinow@sfmslaw.com
                                                        kleser@sfmslaw.com

                                                Ronald S. Kravitz
                                                Shepherd Finkelman Miller & Shah, LLP
                                                One California St., Suite 900
                                                San Francisco, CA  94111
                                                Telephone: (415) 429-5272
                                                Facsimile:  (866) 300-7367
                                                Email: rkravitz@sfmslaw.com

                                                John M. Edgar
                                                John F. Edgar
                                                Edgar Law Firm LLC
                                                1032 Pennsylvania Avenue
                                                Kansas City, MO 64105
                                                Telephone: (816) 531-0033
                                                Facsimile:  (816) 531-3322
                                                Email: jme@edgarlawfirm.com
                                                        jfe@edgarlawfirm.com

Michelle H. Blauner, BBO #549049
Shapiro Haber & Urmy LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone:  (617) 439-3939
Facsimile:  (617) 439-0134
Email: mblauner@shulaw.com

**Attorneys for Plaintiff**
**and the Proposed Settlement Classes**