**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GOLDEN STAR, INC.,                              :    CIVIL ACTION
Plan Administrator of the Golden Star           :    NO: 3:11-CV-30235-MGM
Administrative Associates' 401(k) Plan          :
and the Golden Star Bargaining Associates'      :    CLASS ACTION
401(k) Plan, On Behalf of Itself and            :
All Others Similarly Situated,                  :
                                               :    Hearing Date: April 9, 2015
                    Plaintiff,  :    Time: 10:00 a.m.
                                               :    Franklin Courtroom
        vs.                               :
                                               :
MASSACHUSETTS MUTUAL LIFE                        :
INSURANCE CO.,                                  :
                                               :
                 Defendant.   :

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT**

---

| | |
|---|---|
| James E. Miller<br>Laurie Rubinow<br>Karen M. Leser-Grenon<br>Shepherd Finkelman Miller & Shah, LLP<br>65 Main Street<br>Chester, CT 06412<br>Telephone: (860) 526-1100<br>Facsimile: (866) 300-7367<br>Email: jmiller@sfmslaw.com<br>       lrubinow@sfmslaw.com<br>       kleser@sfmslaw.com | Ronald S. Kravitz<br>Shepherd Finkelman Miller & Shah, LLP<br>One California St., Suite 900<br>San Francisco, CA 94111<br>Telephone: (415) 429-5272<br>Facsimile: (866) 300-7367<br>Email: rkravitz@sfmslaw.com<br><br>(Additional Counsel Appear<br>On Signature Page) |

**Attorneys for Plaintiff and the Settlement Classes**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    THE TERMS OF THE SETTLEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT . . . . . 6

       A.    Standard For Final Approval Of The Parties' Settlement Agreement . . . . . . . . . 6

       B.    The Settlement Is Presumptively Fair, Adequate And Reasonable  . . . . . . . . . . . 8

       C.    The Settlement Is Fair, Reasonable And Adequate Based On All Of The Factors
             That Could Be Conceivably Considered By The Court . . . . . . . . . . . . . . . . . . . . . 9

             1.    The stage of proceedings and the amount of discovery completed supports
                   final approval of the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

             2.    The complexity, expense, and likely duration of the litigation should the
                   Settlement be rejected favors final approval  . . . . . . . . . . . . . . . . . . . . . . . 10

             3.    The risk of establishing damages and liability and maintaining the Class
                   through trial weighs in favor of approval of the Settlement  . . . . . . . . . . 11

             4.    The reasonableness of the Settlement, relative to both the maximum
                   potential recovery and the likely recovery, and the taking into account the
                   attendant risks of litigation and remaining *Grinnell* and *Compact Disc*
                   factors, favors final approval  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             5.    The remaining *Grinnell* and *Compact Disc* factors favor final approval of
                   the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       D.    The Sole Objection Filed To Date Is Without Merit  . . . . . . . . . . . . . . . . . . . . . . 13

       E.    The Court Should Approve The Attorneys' Fee and Expense Request, As Well As
             The Requested Case Contribution Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Branch v. FDIC*,
1998 WL 151249, at *4 (D. Mass. Mar. 24, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bussie v. Allmerica Fin. Corp.*,
50 F.Supp.2d 59 (D. Mass. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 488 (2nd Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
177 F.R.D. 54 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hochstadt v. Boston Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 18

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52, 72, (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

-ii-

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 17

*Lipsett v. Blanco*,
975 F.2d 934 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mazola v. May Dept. Stores Co.*,
1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Newbridge Networks Sec. Litig.*,
1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Voss v. Rolland*,
592 F.3d 242 (1st Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Walsh v. Popular, Inc.*,
839 F. Supp. 2d 476 (D.P.R. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

## OTHER AUTHORITIES

*In re Aetna Life Insurance Company*, DOL Opinion Letter 97-16A,
1997 ERISA LEXIS 17, at *11 (May 22, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Frost National Bank*, DOL Opinion Letter 97-15A,
1997 ERISA LEXIS 18, at *7-9 (Mar. 14, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Plaintiff, Golden Star, Inc. ("Plaintiff" or "GSI"), on behalf of itself and the proposed

Settlement Classes defined below (the "Classes" or collectively, as the "Class"),[1] respectfully

submits this Memorandum of Law in Support of Plaintiff's Motion for Final Approval of the

Settlement ("Motion").  Defendant, Massachusetts Mutual Life Insurance Company

("MassMutual" or "Defendant"), does not oppose the relief sought in this Motion.  As explained

fully below, the proposed settlement reached with MassMutual (the "Settlement") is fair,

reasonable, and adequate under all of the circumstances.[2]  Accordingly, Plaintiff respectfully

submits that the Court should grant final approval of the Settlement so that relief can be provided

to the Class.[3]

---

[1]As detailed in the accompanying Settlement Agreement, the parties have agreed, for purposes of settlement only, to certification of two Settlement Classes: (1) the Monetary Relief Class, which is defined as "all current and former retirement plans that are or were serviced by MassMutual pursuant to a group annuity contract from October 19, 2005 through the date of the Court's Preliminary Approval Order;" and (2) the Structural Changes Class, which is defined as "all retirement plans that receive services from MassMutual pursuant to a group annuity contract on or after the date of entry of the Preliminary Approval Order."  Excluded from the Classes are (1) Defendant, (2) any administrators of retirement plans ("Plans") for which Defendant's directors, officers or employees are beneficiaries, (3) any Plans for which the Judge(s) to whom this case is assigned or any other judicial officer having responsibility for this case is a beneficiary, (4) any Plans that were former Hartford Plans (as that term is defined in the Settlement Agreement), and (5) any Plans which are invested through registered products.  The Monetary Relief Class covers current and past retirements plan customers of MassMutual, while the Structural Changes Class covers current and future retirement plan customers of MassMutual.

[2] The Parties' Settlement Agreement was previously submitted to the Court as Exhibit "1" to Plaintiff's Memorandum of Law in Support of its Motion for Preliminary Approval of Settlement dated October 31, 2014 (the "Preliminary Approval Motion"). (Dkt. No. 159.)  For purposes of convenience and consistency, unless otherwise noted, Plaintiff uses the same defined terms as in the Preliminary Approval Motion, supporting Memorandum of Law and Settlement Agreement.

[3]For the convenience of the Court, a proposed Final Approval Order is attached to this Memorandum as Exhibit "A."

I.     **INTRODUCTION**

Plaintiff brought this action on behalf of itself and a proposed Class of similarly situated

sponsors of 401(a) and 401(k) retirement plans governed by the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., which engaged Defendant as a service

provider.  Plaintiff challenged certain of Defendant's business practices and sought to recover

revenue sharing payments made to Defendant by mutual funds or investment advisors allegedly

in violation of the prohibited transaction and fiduciary duty provisions of ERISA, 29 U.S.C. §§

1104, 1106.

As the Court is aware, the Settlement is the product of over three (3) years of hard-fought

litigation, which included extensive discovery involving production of millions of pages of

documents and depositions of twenty (20) witnesses (including experts and third parties), as well

as full briefing and argument on Defendant's Motion to Strike Plaintiff's Jury Demand,

Plaintiff's Motion for Class Certification and Defendant's Motion for Summary Judgment.[4]

Throughout the litigation, the Parties have devoted significant resources to investigating their

claims and defenses, including consulting with experts regarding potential legal theories, and

presenting their respective views of the complex legal and factual issues implicated by this case.

In this litigation, Defendant was principally represented by Sidley Austin LLP, one of the most

respected law firms in the United States with extremely significant experience in defending

financial services and insurance companies in ERISA class actions, as well as Goodwin Procter

LLP, Bulkley Richardson & Gelinas, and Defendant's experienced in-house legal team, all of

whom demonstrated the reason for their well-deserved reputations as highly ethical and zealous

---

[4]Before this action was initiated on October 19, 2011, Plaintiff and its counsel engaged in an extensive and lengthy pre-suit investigation, which lasted for over one (1) year and included pre-litigation requests for information from MassMutual and third parties.

practitioners in this field through their vigorous representation of MassMutual in this case.

The Settlement terms were reached only after significant and, at times, contentious, arm's-length negotiations that spanned over a period of several months, including a full-day mediation session in Chicago, Illinois with Magistrate Judge Morton Denlow (Ret.), a highly-respected mediator (http://www.jamsadr.com/denlow), as well as a number of telephone conferences between counsel and with Judge Denlow following the mediation session.  As detailed below, Plaintiff believes that the Settlement reached is an extremely positive one for the Class, with the members of the Class receiving significant monetary and non-monetary relief, especially when the risks of litigation are taken into account.  The members of the Class apparently agree with Plaintiff's view of the Settlement.  Not one Class member has chosen to exclude itself from the Settlement to date, while only one Class member has objected to the Settlement on grounds that are, as explained fully below, without merit.[5]  For these reasons and all of the reasons discussed below, Plaintiff respectfully submits that the Settlement should receive final approval from the Court.[6]

_____

[5]The deadline for requests for exclusion and objections is March 10, 2015 and Plaintiff will update the Court regarding any opt-outs or additional objections in connection with its Supplemental Submission in Support of Final Approval ("Supplemental Submission"), which will be filed on or before March 19, 2015.  Plaintiff also will provide the opinion of Nicholas Saakvitne, Esquire, the Independent Fiduciary engaged to evaluate the fairness of the Settlement on behalf of the Class (which is expected to confirm the fairness and adequacy of the Settlement), in connection with its Supplemental Submission.

[6]Plaintiff incorporates by reference its discussion of the full factual and procedural background set forth in its Memorandum of Law in Support of Preliminary Approval dated October 31, 2014 at Section II.A. (Dkt. No. 160) and paragraphs 1 to 9 of the accompanying Declaration of James E. Miller ("Miller Decl."), which is attached hereto as Exhibit "B."

## II.     THE TERMS OF THE SETTLEMENT

As previously detailed in connection with Plaintiff's Preliminary Approval Motion, the Parties' Settlement provides substantial and meaningful relief and benefits to the Class.  The full terms of the Settlement are embodied in the Settlement Agreement, but principally provide for the following significant relief to Class members:

- Defendant will deposit $9,475,000 in a common fund to provide compensatory relief to the Monetary Relief Class; and

- Defendant will make a number of significant changes to its business practices that relate directly to issues Plaintiff raised, are squarely directed at addressing a number of the aspects of the challenged conduct and provide clarity in the disclosures with respect to Defendant's challenged conduct, all of which will directly benefit the Structural Changes Class.

The Settlement Agreement is fair and reasonable to the Class, as it provides significant and meaningful benefits to all Class members.  *See* Miller Decl. at ¶¶ 16-20.  Moreover, the terms of the Settlement have been carefully crafted and relate directly to the conduct that Plaintiff challenged in this case.  *Id*. at ¶ 16; *see also* Declaration of James Scheinberg ("Scheinberg Decl.") at ¶¶ 8-10, a true and correct copy of which is attached as Exhibit "C."

Plaintiff considers the Settlement to be an excellent result for the Class, which Settlement was negotiated by reasoned and experienced ERISA counsel after careful consideration and research regarding all of the material issues.  *See* Miller Decl. at ¶ 26.  First, in terms of the monetary relief afforded by the Settlement, each member of the Class entitled to seek monetary relief (that is, all past and present retirement Plans that utilized Defendant as a service provider as of the date of the Court's entry of the Preliminary Approval Order) will receive a payment in excess of the amount of profits that Defendant calculated could reasonably be argued was attributable to its receipt of the revenue sharing payments at issue.  *Id*. at ¶ 18.  Second, as Plaintiff's expert explains, the structural changes encompassed in the Settlement have a

significant and independent value.  Plaintiff's expert conservatively values the benefit conferred

by these changes as being equal to over $16 million to the Class.  *See* Scheinberg Decl. at ¶¶ 18-

21.   Moreover, the structural changes required by the Settlement were designed to, among other

things, closely track the requirements of two (2) seminal opinion letters from the United States

Department of Labor ("DOL"), *In re Frost National Bank*, DOL Opinion Letter 97-15A, 1997

ERISA LEXIS 18, at *7-9 (Mar. 14, 1997) (discussing that, if revenue sharing payments are

credited to the direct benefit of plans or to cover plan expenses that the plans would otherwise be

obligated to pay, no fiduciary breach or prohibited transaction occurs -- since the Settlement

provides a means to for retirement plans simply to pay direct fees without any revenue sharing

associated with those investments, thereby obviating any need for dollar-for-dollar crediting

calculations); and *In re Aetna Life Insurance Company*, DOL Opinion Letter 97-16A, 1997

ERISA LEXIS 17, at *11 (May 22, 1997) (discussing notice and information requirements in the

event that a plan investment addition, substitution, deletion or change in the investment menu

available to a plan is initiated by a retirement plan service provider -- which the Settlement

closely tracks), true and correct copies of which are attached, respectively, as Exhibits "D" and

"E."  *See also* Scheinberg Decl. at ¶ 22; Miller Decl. at ¶ 19.   In sum, the Settlement calls for a

significant monetary payment to the Monetary Relief Class and provides substantial and

meaningful benefits to the Structural Changes Class in the form of changes in the manner in

which Defendant conducts its business and the provision of clear, detailed information regarding

revenue sharing payments, as well as direct fees and expenses paid by the Settlement Classes'

retirement plans.[7]  Thus, Plaintiff respectfully submits that it has established all necessary

---

[7]As noted above, the terms of the Settlement will be reviewed, prior to the final approval
hearing on April 9, 2015, by Mr. Saakvitne, a highly respected independent fiduciary, who will
ensure that all aspects of the Settlement are fair and reasonable under the circumstances. This

prerequisites for final approval of the Settlement.

### III.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

By the Preliminary Approval Order, this Court has certified the Settlement Classes

pursuant to Federal Rules of Civil Procedure 23(b)(1) and 23(b)(3).  As directed by the

Preliminary Approval Order, Class Notice has been disseminated, by electronic and first-class

mail, directly to members of the Class, and notice of the Settlement also has been published in

*The Wall Street Journal*.  *See* Affidavit of John Wier of *The Wall Street Journal* ("Wier Aff.")

and Declaration of Josephine Bravata of Strategic Claims Services ("Bravata Decl."), true and

correct copies of which are attached, respectively, as Exhibits "F" and "G."[8]  Accordingly, this

Court may now finally approve the Settlement if it concludes that the Settlement merits such

approval.

### A.   Standard For Final Approval Of The Parties' Settlement Agreement

Judicial approval of a class action settlement is governed by Federal Rule of Civil

Procedure 23(e).  If the proposed settlement would bind class members, as is the case here, the

---

opinion is being provided, to the extent applicable, pursuant to the DOL's Prohibited Transaction Exemption No. 2003-39 (providing protection for fiduciaries entering into settlements in the class action and other contexts where the opinion of an independent fiduciary is obtained with respect to a settlement, thereby avoiding any claim that the act of entering into the settlement can be deemed a prohibited transaction itself under ERISA).  Thus, Plaintiff also has provided the Class members entering into the Settlement with additional legal protection, consistent with a process sanctioned by the DOL.

[8]Members of the Class were informed that they had the right to exclude themselves from the Monetary Relief Class by serving written notice by March 10, 2015.  *See* Miller Decl. at ¶ 22. They were also informed that they had the right to object to the Settlement Agreement by filing and serving a written statement by March 10, 2015.  *Id*.  In response to the Settlement Notice, no members of the Monetary Relief Class chose to exclude themselves, and only one (1) objection to the Settlement was filed with the Court, which is without merit.  *Id*.  Indeed, in recognition of the fairness of the Settlement and the significant benefits that it confers, the reaction of the Class has been virtually unanimous in its positive response.  *Id*.

Court may approve it only after a hearing and on finding that the settlement is "fair, reasonable and adequate." *Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010). Although this standard is different than that applied in connection with consideration of preliminary approval, many of the same factors are considered at both the preliminary and final approval stages of the approval process. "[I]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009).

Although there is no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement, *see, e.g., Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 480 (D.P.R. 2012), district courts consistently have relied upon factors derived from sister circuit courts in making this assessment.[9] And, because the First Circuit has

---

[9]In *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72, (D. Mass. 2005), this Court identified two (2) sets of factors that can be utilized. One of set of factors, which is drawn from Second Circuit authority and was applied by the district court in *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93-98 (D. Mass. 2005), is identified by the *Relafen* court as the "*Grinnell* factors" and calls for consideration of the following: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Relafen*, 231 F.R.D. at 72 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 488, 463 (2nd Cir. 1974)). The second set of factors identified by the *Relafen* court was used by the district court in *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003), which noted that: "[A]ppellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *Id.* (quoting *Compact Disc*, 216 F.R.D. at 206). The *Compact Disc* factors obviously includes some of the same or similar factors as the *Grinell* factors, and has been described by some district courts in the First Circuit as "a modified version of the *Grinnell* factors." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007); *Walsh*, 839 F. Supp. 2d at 480.

no fixed set of factors or a specific litmus test for determining whether a settlement is fair, reasonable, and adequate, district courts in this Circuit have the discretion to apply those factors that they find most appropriate to the case, and should engage in a studied review of the overall reasonableness of the settlement based on a wide variety of factors "bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Tyco*, 535 F. Supp 2d at 259 (quoting *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 72 (D. Mass. 1999)).

Beyond consideration of the above-identified factors and the over-arching presumption favoring the approval of a class action settlement where the parties have conducted sufficient discovery and engaged in arm's length bargaining, the district court should also be satisfied that the settlement is untainted by collusion. *Relafen*, 231 F.R.D. at 71.[10]  Finally, although the district court must carefully scrutinize the settlement for fairness, public policy favors settlements, particularly in large or complex cases. *Tyco*, 535 F. Supp. 2d at 259.  Ultimately, the decision of whether to approve the settlement "involves balancing the advantages and disadvantages of the proposed settlement against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Walsh*, 839 F. Supp.2d at 480.  Plaintiff respectfully submits that an examination of the totality of these factors, as discussed further below, fully supports granting final approval of the Settlement.

## B.      The Settlement Is Presumptively Fair, Adequate And Reasonable

As detailed above, there can be no question that this Settlement was reached as a result of arm's-length negotiations between experienced and capable counsel after meaningful discovery.

---

[10]In this regard, Rule 23(e)(3) requires that the parties seeking approval identify any agreement "made in connection with" the settlement proposal.  The only such agreement here is the Settlement Agreement itself.  Miller Decl. at ¶ 5.

Therefore, under *In re Pharm. Indus.*, 588 F.3d at 33, the Settlement should be adjudged presumptively fair, adequate, and reasonable.  Nothing in the record provides any basis to disturb or question that presumption.  Moreover, because the Settlement was reached only after a lengthy history of aggressive litigation and negotiations, free from any hint of collusion, as detailed above and in the accompanying Miller Decl., the well-established presumption in favor of approving class action settlements also applies to this Settlement.  *See Relafen*, 231 F.R.D. at 71; *Tyco*, 535 F. Supp. 2d at 259.[11]

**C.      The Settlement Is Fair, Reasonable And Adequate Based On All Of The Factors That Could Be Conceivably Considered By The Court**

As discussed below, an overall review of the Settlement, with due consideration of each of the *Grinnell* or *Compact Disc* factors, supports the presumption that the Settlement is fair, reasonable, and adequate, and warrants final approval.

**1.      The stage of proceedings and the amount of discovery completed supports final approval of the Settlement.**

One of the first factors identified in both *Grinnell* and *Compact Disc* is the stage of the litigation and the amount of discovery completed in the case.  *Relafen*, 231 F.R.D. at 72.  Here,

---

[11]It bears noting that, although the primary issue on a motion for final approval of a class action settlement is the substantive fairness of the settlement, the Settlement here also includes all of the procedural protections, now incorporated into the Preliminary Approval Order, necessary to ensure procedural fairness for Class members.  All Class members have received the best notice possible of the Settlement by means of a direct and electronic mailing of the Settlement Notice, as well as publication of the same in *The Wall Street Journal*.  *See* Miller Decl. at ¶ 22; *see also* Wier Aff.; Bravata Decl. at ¶¶ 4-6.  The notice itself contains all the information necessary for Class members to evaluate the terms of the Settlement and provides contact information for both Class Counsel and counsel for Defendant, so that Class members can make further inquiries to them regarding the Settlement.  Finally, all Class members have been given ample time within which to exclude themselves from the Settlement or object to the Settlement, and to avoid being bound by its terms or barred from bringing their own action.  Accordingly, the procedural means through which the Settlement was achieved, as well as the procedural protections provided to the Class members, create a presumption in favor of final approval and strongly weighs in favor of the Court granting such approval.

by the time the Parties reached an agreement in principle to settle this case, the litigation had

been pending for over three (3) years and was in its advanced stages.  As detailed above, millions

of pages of documents were produced by both sides, twenty (20) depositions were taken, class

certification was fully briefed and argued, and summary judgment was fully briefed and argued.

*See* Miller Decl. at ¶ 5.  As a result of the substantial motion practice and discovery conducted,

the Parties were more than well-informed of the law and the facts bearing on liability, damages,

and the risks of proceeding to trial, and were able ensure that the Settlement was tailored to meet

the realities of the case, including the specific nature of Defendant's challenged business

practices.  *Id.* at ¶¶ 5-6; *see also Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 108

(D. Mass. 2010).  Thus, consideration of this first factor fully supports approval of the

Settlement.

> **2.      The complexity, expense, and likely duration of the litigation should the Settlement be rejected favors final approval.**

Another factor of the *Grinnell* and *Compact Disc* tests is the prospective complexity,

expense, and likely duration of the litigation.  *Relafen*, 231 F.R.D. at 72.  Here, as the Court is

aware from the record and docket activity in this litigation, the issues raised in this ERISA class

action are exceptionally complex from both a legal and technical perspective and expensive to

litigate.  Moreover, in other cases of this kind, there have been extremely substantial and lengthy

proceedings, including lengthy trials and multiple appeals.  *See* Miller Decl. at ¶ 12.  And,

achieving a resolution of the matter through further litigation, rather than by means of a

settlement, would have involved substantially more time and resources, including significant

additional discovery, further motion practice (including additional class certification proceedings,

potential interlocutory appeals, additional summary judgment proceedings, a motion to decertify

any certified class and additional, pre-trial motions), trial preparation, a trial that likely would last

at least a month and an almost certain appeal of any judgment that likely would take an additional two (2) to three (3) years, at minimum, to resolve. *Id.* Such proceedings would certainly require a substantial commitment of additional time and resources beyond that already expended in this case, and would substantially delay any relief to Class members, assuming Plaintiff were to prevail both at trial and on appeal. The Settlement guarantees that Class members will be provided with immediate and significant relief for their alleged losses. In sum, consideration of this second factor strongly favors final approval of the Settlement.

> ### 3. The risk of establishing damages and liability and maintaining the class through trial weighs in favor of final approval of the Settlement.

The *Grinnell* and *Compact Disc* tests also call for consideration of the risks involved in proceeding to trial. *Relafen*, 231 F.R.D. at 72. Such risks include the risk of proving liability, the risk of proving damages, and the risk of maintaining class certification through trial and on appeal. In this case, although Plaintiff believes its claims were strong and it would ultimately have succeeded on the merits, it also acknowledges that certain potential obstacles to establishing liability and damages existed, particularly since plaintiffs in similar cases have both lost on the merits and at class certification. *See* Miller Decl. at ¶¶ 5, 12, 40.

> ### 4. The reasonableness of the Settlement, relative to both the maximum potential recovery and the likely recovery, and taking into account the attendant risks of litigation and remaining *Grinnell* and *Compact Disc* factors, favors final approval.

As outlined above, the Settlement provides Class members with both monetary and non-monetary relief. The monetary relief provided by the Settlement amounting to $9,475,000, although not all that Plaintiff had hoped to recover on behalf of the Class, is undeniably significant. *See* Miller Decl. at ¶ 20. Moreover, the value of the total recovery obtained on

behalf of Class members compares quite favorably to the potential damages that likely would have been recovered based upon MassMutual's profits attributable to revenue sharing payments. Miller Decl. at ¶ 18; *see also* Scheinberg Decl. at ¶¶ 14-21.

While the relief provided by the Settlement is substantial standing alone, the Settlement further merits this Court's approval when considered in light of the considerable risk that Plaintiff faced of recovering nothing at all had the case proceeded to trial, the time and resources that would have been expended in obtaining a litigated result, and the substantial delay in recovery for the Class members as a result of full litigation to trial and subsequent appeals. *In re Lupron Mktg.*, 228 F.R.D. at 97 ("In applying this test of reasonableness, 'the present value of the damages plaintiffs would likely recover if successful, *appropriately discounted for the risk of not prevailing*, should be compared with the amount of the proposed settlement.'") (internal citations omitted; emphasis added); *Relafen*, 231 F.R.D. at 74;[12] *see also* Miller Decl. at ¶ 28.

---

[12]It is also well-settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("[i]n evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s]."); *Compact Disc*, 216 F.R.D. at 211 ("As supervising judge, I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *In re Lupron Mktg.*, 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered"). Thus, a class settlement need not recover the maximum damages that would be provable after establishing liability at trial, and the recovery of a fraction of that amount is reasonable particularly in a complex and risky case such as the one at bar. Indeed, even recoveries representing a very small percentage of a defendant's maximum exposure may be found to be fair, adequate, and reasonable. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

**5.     The remaining *Grinnell* and *Compact Disc* factors favor final approval of the Settlement.**

The fifth factor in evaluating a class action settlement that is common to both the *Grinnell* test and *Compact Disc* test is the reaction of the Class to the settlement.  *Relafen*, 231 F.R.D. at 72.  The response from the Class (consistent with the absence of opt-outs or meritorious objections, as discussed above and below) has been overwhelmingly positive and Plaintiff and Class Counsel agree with the sentiment of the Class and strongly endorse the Settlement.  *See* Miller Decl. at ¶ 30.

Finally, the quality of counsel, which appears as one of the *Compact Disc* factors, also favors approval of the Settlement in this case.  As outlined in the Miller Decl., Class Counsel have extensive experience litigating complex cases and employee benefit class actions under ERISA.  *Id.* at ¶ 26.  The attorneys and other professionals of Shepherd Finkelman Miller & Shah, LLP, Liner LLP, The Edgar Law Firm, LLC, and Shapiro Haber & Urmy, LLP, all have significant experience litigating ERISA and similar complex class actions and certain of these counsel have been responsible for obtaining ground-breaking results in a number of similar cases on a nationwide basis.  *Id.* at ¶¶ 15, 26, 33, 39.  As the record reflects in this case, Plaintiff and the Class received excellent representation throughout the pendency of this case and, in addition, in the form of the Settlement, were the beneficiaries of an excellent result achieved through the diligence of Plaintiff and Class Counsel.  *Id.*

**D.     The Sole Objection Filed To Date Is Without Merit**

The sole objection to the Settlement filed on behalf of the Cheerwine 401(k) Profit Sharing Plan ("Objector" or "Cheerwine"),[13] is without merit and, in a word, unfortunate.  The

_____

[13]Examination of publically available data regarding this retirement plan reveals that it is rated as currently paying high fees for its retirement services, www.brightscope.com/401k-

objection does not challenge the substantive merits of the Settlement and, in fact, appears to agree that the case (which GSI initiated and placed itself at risk for the benefit of Class members), was meritorious and the recovery is valuable in nature.  Instead, Cheerwine merely challenges the request for attorneys' fees and a case contribution fee on an apparent doctrinal basis as somehow unwarranted without asserting any facts or evidence to support that meritless contention.  As detailed below, however, the requested attorneys' fees amount to a recovery of significantly less than the amount Class Counsel would have been paid, based on their normal hourly rates, and represents a modest percentage recovery, when compared to the total value of the Settlement.  *See* Miller Decl. at ¶ 35.[14]  Moreover, as discussed below, despite Objector's baseless attack, it is beyond cavil that GSI made valuable contributions on behalf of the Class and that the requested case contribution fee is, in a word, modest under the circumstances.  *See* Miller Decl. at ¶ 40; *see also* Declaration of Gretchen Gradinger ("Gradinger Decl."), which is attached as Exhibit "H," at ¶¶ 3-6.  Finally, it bears noting that neither Cheerwine nor any representative of Objector ever contacted Class Counsel to either ask any questions regarding the requested attorneys' fees or case contribution fee (which many Class members, in fact, did), but, instead, filed the instant, boilerplate objection without basis and without gathering any facts to

---

rating/270093/Cheerwine-Bottling-Company/274317/Cheerwine-401K-Profit-Sharing-Plan, thereby confirming the fact that the Settlement provides particularly meaningful benefits to this Class member.

[14]The Objector also references payment for "actual productive hours worked" on the case, thereby apparently implying that Class Counsel either were somehow unproductive and/or that they did not perform substantial work on the case, both of which suggestions are baseless and merit little response.  Indeed, if Cheerwine had bothered to contact Lead Counsel as many other Class members, in fact, did (or reviewed the extensive docket and pleadings in the case independently for that matter), it would have learned about the significant, meaningful and productive work performed on the case, as well as the basis for the requested fees and case contribution fee.  Here, of course, Cheerwine chose to do neither.  Instead, it simply chose to file a reflexive and misinformed objection that merits little, if any, consideration by the Court.

support the objection.  That absence of any meaningful inquiry or substantiation speaks volumes about the merits of Cheerwine's objection.

### E.  The Court Should Approve The Attorneys' Fee And Expense Request, As Well As The Requested Case Contribution Fee

Plaintiff requests that the Court award attorneys' fees of $3,158,334.00 (an amount that is significantly less than Class Counsel's total lodestar and equates to a small percentage of the total Settlement value),[15] plus expenses in the amount of $307,820.94.  As noted above, this fee request is substantially less than Class Counsel's total lodestar devoted to this matter (*i.e.*, the costs and fees, based on Class Counsel's normal hourly rates, expended in prosecuting this case for over the past three years),[16] which Plaintiff believes is fair and reasonable under applicable

---

[15]Lead Counsel's hourly rates used to calculate lodestar have been specifically approved as fair and reasonable in similar complex litigation and in litigation of this very nature.  *See* Miller Decl. at ¶ 36.  Moreover, based upon the conservative valuation of the Settlement by Plaintiff's expert, Mr. Scheinberg, *see* Scheinberg Decl. at ¶ 18, the requested fee and expense award amounts to only slightly less than 12.39% of the minimum value of the Settlement [*i.e.*, $3,158,334.00/ $25,496,875], and the fee request amounts to less than 25% of the minimum value of the Settlement in its first year alone [$3,158,334.00/$12,679,375.00], without attributing any formal valuation to the significant opportunity for Class members to invest in mutual funds that do not pay revenue sharing.  It also bears noting that Class Counsel will continue to incur additional fees and expenses in connection with the final approval hearing and, if approval is granted, ensuring that all eligible Class members receive relief.  Since those fees and expenses have not yet been incurred, reimbursement is not sought for those expenses and those fees are not included in Class Counsel's lodestar calculation.  Miller Decl. at ¶ 35.  Class Counsel estimate, based upon past experience, that additional fees and expenses to be incurred will amount to at least $150,000, if not considerably more.  *Id.*

[16] Based upon the lodestar of Class Counsel to date in the case, the requested fee and expense award results in Class Counsel receiving approximately 65% of their collective lodestar, all of which, along with a recitation of counsel's experience, is detailed in the Miller Decl.  *See* Miller Decl. at ¶¶ 35-39.  Although Class Counsel respectfully believe that the result obtained justifies a substantial multiplier on their time, they have agreed for purposes of the Settlement to limit the fee and expense request to the amount sought and also have agreed that they would not accept any more than the amount sought.  Pursuant to the terms of the Settlement, Defendant takes no position regarding an award of fees and expenses up to the amount requested.  *See id.* at ¶ 24.

law.  *See* Miller Decl. at ¶ 35.

In this Circuit, courts have traditionally relied upon two (2) methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier.  *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).  The lodestar approach multiplies the reasonable hours spent in litigating the case by the reasonable hourly rates of those who spent time on the case, subject to a multiplier or discount for special circumstances.  *Id.* at 305 (citing *Blum v. Stenson*, 465 U.S. 886 (1984)); *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).  Under the percentage-of-the-fund analysis, the court fashions the fee award based on a reasonable percentage of the fund recovered for those benefitted by the litigation.  *In re Thirteen Appeals*, 56 F.3d at 305.

As the record reflects and as discussed above, Plaintiff's request for an award of attorneys' fees and costs is obviously fair and reasonable under applicable law, since it only requests a fractional multiplier when compared to lodestar and a modest percentage of the minimum value of the Settlement.  *See Relafen*, 231 F.R.D. at 79 (adopting the use of factors identified by the Second and Third Circuits to evaluate the reasonableness of a fee request, which include "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases"); and *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (articulating additional factors, including "the risk of the litigation," "the requested fee in relation to the settlement," and "public policy

considerations")); *see also* Miller Decl. at ¶¶ 31-39.[17]

Finally, Plaintiff requests that the Court approve a case contribution fee of $15,000 to

Plaintiff, in recognition of its invaluable contributions to the prosecution of this action.  Such

awards are regularly recognized as appropriate in litigation of this kind:  "Because a named

---

[17]Here, as discussed above, Class Counsel seek a common fund fee award of one-third of the monetary amount of the Settlement and between 12% and 25% of the minimum value of the Settlement.  Such amount is consistent with (or below) the percentages approved in other cases involving a common fund.  *See Relafen*, 231 F.R.D. at 82 (awarding fees of one-third percentage of the fund, representing a lodestar multiplier of 2.02); *Mazola v. May Dept. Stores Co.*, No. 97CV10872-NG, 1999 WL 1261312, *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund.  This approach mirrors that taken by the federal courts in other jurisdictions.").  It has been noted by some courts that the percentage of the fund determined to be reasonable tends to decrease as the size of the fund increases.  *See, e.g. Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 188 (D. Mass. 1998); *In re Tyco*, 535 F. Supp. 2d at 269.  This is because standard or benchmark percentages applied to very large funds may result in excessively large fees that may be disproportionate to the time expended on the case and would be considered a windfall to counsel, particularly in cases that are settled early in the litigation but, because of the size of the class, result in a very large settlement fund.  *Conley*, 222 B.R. at 188; *In re Tyco*, 535 F. Supp. 2d at 269.  That is not the case here, where settlement was achieved very late in the case, after considerable time and effort was expended by Class Counsel.  No "windfall" for the attorneys will be realized by awarding the requested attorneys' fee.  Indeed, an award of one third of Monetary Fund is substantially less than Class Counsel's lodestar and actually results in a substantial discount in the amount that would likely be awarded under the lodestar approach. While the First Circuit does not require that district courts use the lodestar calculation when awarding fees based upon the percentage of the fund method, many courts engage in a lodestar "cross-check" to ensure that the fees are reasonable in light of the actual amount of work performed.  *In re Tyco*, 535 F.Supp.2d at 265, 270 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)) (noting that when the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.").  Here, a comparison of Class Counsel's request for an award of fees based upon a percentage of the fund approach with the lodestar in this case confirms the reasonableness of the requested fee.  The combined lodestar of all Class Counsel is $4,865,756.50.  Thus, the fee request is actually significantly less than the combined lodestar, resulting in no multiplier.  Ultimately, the question at the heart of all attorneys' fee determinations is whether the proposed fee fairly and reasonably compensates counsel for what they have accomplished, not which method, percentage, or multiplier to apply.  *See Branch v. FDIC*, No. Civ. A. 91-CV-1327ORGS, 1998 WL 151249, at *4 (D. Mass. Mar. 24, 1998).  Accordingly, whether considered as a percentage of the class recovery or as a lodestar calculation, the $3,158,334 attorneys' fee request is manifestly reasonable and should be approved by the Court.

plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *In re Compact Disc*, 292 F.Supp. at 189. "Courts 'routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *In re Lupron Mktg. & Sales Practices Litig.*, No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *7 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002)). Moreover, in this case, GSI made extremely valuable contributions on behalf of the Class and conservatively devoted more than one hundred (100) hours of time to fulfilling its duties as a class representative in this case. *See* Miller Decl. at ¶ 40; *see also* Gradinger Decl. at ¶¶ 3-6. In some revenue sharing cases like this, defendants have chosen to bring counterclaims for contribution and indemnity under ERISA, which heightens the risk faced by the named Plaintiff. Plaintiff thereby took a direct and foreseeable financial risk in pursuing the action. *See* Miller Decl. at ¶ 40.[18] Importantly, Plaintiff took an active and invaluable role in the litigation, frequently communicating and meeting with Class Counsel and providing its input regarding the litigation. *See* Miller Decl. at ¶ 40; *see also* Gradinger Decl. at ¶¶ 3-6. As a result of the litigation, Plaintiff spent a significant amount of time working on the case, including gathering documents, participating in conference and other telephone calls, as well as in-person meetings, regarding case strategy and status. *See* Miller Decl. at ¶ 40; *see also* Gradinger Decl. at

---

[18]To its credit, MassMutual never once suggested that it would file suit against Plaintiff or any of its other retirement plan customers. Furthermore, it also bears noting that, under the plan of allocation, certain of the Class members will receive distributions greater than the amount of the recovery to be obtained by Plaintiff (even when any case contribution fees are added to the recovery), based upon the size of the retirement plan and the estimated damages incurred. *See* Miller Decl. at ¶ 18. Thus, the amount of the requested case contribution fee reflects no conflict between the Plaintiff and the Class members. *Id.*

¶ 4.  In addition, as noted above, two (2) representatives of GSI (Earl C. Julo and Raymond Julo), who are trustees of the GSI retirement plans at issue, were deposed by Defendant's counsel in this case.  *See* Miller Decl. at ¶ 40; *see also* Gradinger Decl. at ¶ 4.  In similar cases, in recognition of the appropriateness of case contribution fees, courts have awarded class representatives case contribution fees of $50,000 and $25,000 to individual plaintiffs (where the case proceeded to trial) and collective case contribution fees of $15,000 (with $5,000 paid to each plaintiff where, unlike here, no formal discovery occurred and no plaintiffs were deposed), thereby confirming the inherent reasonableness of the case contribution fee requested in this case. *See* Miller Decl. at ¶ 40.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (a) grant

Plaintiff's unopposed Motion for Final Approval of the Settlement, and (b) enter the proposed

Final Approval Order.

Dated: February 23, 2015                     Respectfully submitted,


                                             /s/ Laurie Rubinow
                                             James E. Miller (*admitted pro hac vice*)
                                             Laurie Rubinow (*admitted pro hac vice*)
                                             Karen M. Leser-Grenon (*admitted pro hac vice*)
                                             Shepherd Finkelman Miller & Shah, LLP
                                             65 Main Street
                                             Chester, CT 06412
                                             Telephone: (860) 526-1100
                                             Facsimile: (866) 300-7367
                                             Email: jmiller@sfmslaw.com
                                                       lrubinow@sfmslaw.com
                                                       kleser@sfmslaw.com

                                             Ronald S. Kravitz
                                             Shepherd Finkelman Miller & Shah, LLP
                                             One California St., Suite 900
                                             San Francisco, CA  94111
                                             Telephone: (415) 429-5272
                                             Facsimile:  (866) 300-7367
                                             Email: rkravitz@sfmslaw.com

                                             John M. Edgar
                                             John F. Edgar
                                             Edgar Law Firm LLC
                                             1032 Pennsylvania Avenue
                                             Kansas City, MO 64105
                                             Telephone: (816) 531-0033
                                             Facsimile:  (816) 531-3322
                                             Email: jme@edgarlawfirm.com
                                                       jfe@edgarlawfirm.com

-20-

Michelle H. Blauner, BBO #549049
Shapiro Haber & Urmy LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone:  (617) 439-3939
Facsimile:  (617) 439-0134
Email: mblauner@shulaw.com

**Attorneys for Plaintiff
and the Proposed Settlement Classes**