# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GOLDEN STAR, INC.,<br>Plan Administrator of the Golden Star<br>Administrative Associates' 401(k) Plan and<br>Golden Star Bargaining Associates' 401(k)<br>Plan, on Behalf of Itself and All Others<br>Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MASSACHUSETTS MUTUAL LIFE<br>INSURANCE CO.,<br><br>　　　　　Defendant. | Case No: 3:11-CV-30235-MGM<br><br>Hon. Mark G. Mastroianni |

## FINAL APPROVAL ORDER AND JUDGMENT

WHEREAS, on ~~_____~~ May 14, 2015, and June 25, 2015, this Court conducted ~~a hearing~~hearings (1) to determine whether to finally certify the Monetary Relief Class pursuant to Fed. R. Civ. P. 23(b)(3) and the Structural Changes Class pursuant to Fed. R. Civ. P. 23(b)(1); (2) to determine whether the terms of the Settlement Agreement and the proposed Settlement provided for therein are fair, reasonable, adequate and in the best interests of the Settlement Classes and should be approved by the Court; (3) to determine whether the proposed Plan of Allocation for distributing the Settlement proceeds among Monetary Relief Class Members should be approved by the Court; (4) to consider the applications for Attorneys' Fees and Expenses, and Case Contribution Fees; and (5) to hear and rule upon such other matters as the Court may deem appropriate (both hearings are collectively referred to as the "Final Approval Hearing");

WHEREAS, the Court was advised at the Final Approval Hearing that the Class Notice in the form approved by the Court was provided to all Settlement Class Members pursuant to the terms of the Parties' Settlement Agreement and posted on the Settlement Website; and

WHEREAS, the Court, having considered all matters submitted to it at the Final Approval Hearing, including all written submissions and the arguments of counsel for the Parties and counsel for any objectors;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Settlement Agreement (as modified in paragraph 16 below), including the definitions contained therein, is incorporated by reference in this Final Approval Order and Judgment.

2. The Court has jurisdiction over the subject matter of the Action, Plaintiff, all the Members of the Settlement Classes, and Defendant.

3. Pursuant to Fed. R. Civ. P. 23(b)(3), the Court hereby finally certifies, for purposes of effectuating the Settlement only, a Monetary Relief Class consisting of all current and former retirement plans that are or were serviced by MassMutual pursuant to a group annuity contract from October 19, 2005 through [date of the Preliminary Approval Order]December 8, 2014.

4. Pursuant to Fed. R. Civ. P. 23(b)(1), the Court hereby certifies, for purposes of effectuating the Settlement only, a Structural Changes Class consisting of all plans that receive services from MassMutual pursuant to a group annuity contract on or after [date of Preliminary Approval Order]December 8, 2014.

5. Excluded from both the Monetary Relief Class and the Structural Changes Class are (1) Defendant; (2) any administrators of the Plans for which Defendant's directors, officers

2

or employees are beneficiaries; (3) any Plans for which the Judge(s) to whom this case is assigned or any other judicial officer having responsibility for this case is a beneficiary; (4) the Hartford Plans (as defined in the Settlement Agreement) and (5) any retirement plans which are invested entirely through registered products.

6. The Court appoints Golden Star, Inc., the plan administrator of the Golden Star Administrative Associates' 401(k) Plan and Golden Star Bargaining Associates' 401(k) Plan as the Class Representative for both the Monetary Relief Class and the Structural Changes Class (collectively, the "Settlement Classes").

7. The Court appoints the following firms as counsel to the Settlement Classes: (a) Shepherd, Finkelman, Miller & Shah, LLP; (b) Edgar Law Firm, LLC; and (c) Shapiro Haber & Urmy LLP.  The Court appoints Shepherd, Finkelman, Miller & Shah, LLP as Lead Counsel.

8. The Court finds that Defendant has complied with the notice requirements of 28 U.S.C. § 1715 and has previously filed a notice confirming its compliance.

9. The Class Notice was previously provided to all Settlement Class Members who could be identified with reasonable effort, and the Published Notice was published in the *Wall Street Journal*.  The form and method of notifying the Settlement Classes of the terms and conditions of the proposed Settlement met the requirements of Fed. R. Civ. P. 23, due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto of the terms and conditions of the Settlement and the right to object.

The following plans excluded themselves from the Monetary Relief Class: the Kalispel Tribal Economic Authority on behalf of the Kalispel Tribe 401(k) Plan; SeaWorld Parks &

Entertainment on behalf of SeaWorld Parks & Entertainment 401(k) Plan; and the GEO Group, Inc. on behalf of the GEO Save 401(k) Plan.

Only two objections and one joinder in an objection to the Settlement was filed. At the hearing on May 14, 2015, the Court directed the parties to attempt to resolve the issues raised by the one objector and the class member joining in the objection regarding the scope of the release and/or covenant not to sue. The Court has been advised that the objections regarding the scope of the release and/or covenant not to sue have now been resolved through certain clarifications to the Settlement Agreement, which are described in paragraph 16 below. As a result of that resolution, the objections regarding the scope of the release and/or the covenant not to sue have been withdrawn. The Court finds that the objection regarding the requested attorneys' fees and expenses is without merit, and overrules this objection."

~~10. A total of ___ plans opted to exclude themselves from the Monetary Relief Class. A list of the plans that have validly excluded themselves from the Monetary Relief Class is attached as Exhibit A hereto.~~

~~11. A total of ___ objections to the Settlement were filed. The Court finds that none of these objections are well taken, and overrules all of these objections.~~

10. Based on the evidence submitted by the parties, the Court concludes that the Settlement is fair, reasonable and adequate. The Settlement is therefore approved, and the Parties are directed to consummate the Settlement Agreement in accordance with its terms and conditions.

11. The Plan of Allocation is also hereby approved as fair, reasonable and adequate.

12. The Court finds that the members of the Settlement Class are fiduciaries of the ERISA plans they represent, they bring this action on behalf of the plans, their participants and

4

beneficiaries, and that they have the authority to bind the plans and their participants and beneficiaries by participating in this Settlement. Specifically, the Court finds that the members of the Settlement Class have a legal obligation under ERISA to act in the interest of the plans, their participants, and their beneficiaries, that the interests of the members of the Settlement Class are therefore in privity with the interests of the plans, their participants and their beneficiaries, and all private parties authorized to sue under ERISA sections 502(a)(2) and (3), that such private parties are adequately represented by the Class Members, and all parties authorized to sue under ERISA sections 502(a)(2) and (3) are hereby bound by the Settlement and this Order. The Court further finds that the members of the Settlement Class have a legal obligation under ERISA to act in the interest of the plans, their participants and beneficiaries in exercising any discretion in the disposition of any Distributable Settlement Amount received by their Plans. The Court finds that by choosing to participate in the Settlement Class and complete the Instruction Form provided to them so that they can receive their portion of the Distributable Settlement Amount, the Settlement Class Members have acted in the interest of their respective plans, as well as the beneficiaries and participants in those plans, and that the Settlement Class Members have complied with their fiduciary duties under ERISA. Finally, the Court finds that none of the Parties or Settlement Class Members have engaged in any prohibited transaction or other violation of ERISA by entering into this Settlement.

13.     The Action is hereby dismissed with prejudice in its entirety and without an award of costs, except as provided in the Settlement Agreement.

The Settlement Agreement is approved in its entirety, with the following modifications: (1) in Section 1.35(b), deleting the words "or the administration of the plans"; (2) deleting section 1.35(x); (3) at the end of Section 1.35, adding the following sentence: "Future disputes

about market value adjustments are not covered by this Section 1.35."; (4) in Section 6.1, deleting words "whether arising before or after the date of the Final Order and Judgment."

~~16.~~ Defendant is ordered to implement the changes in practices/structural changes set forth in Section IV of the Settlement Agreement.  The Court has been advised that Defendant has already begun to implement the changes in its business practices set forth in Section IV of the Agreement.

~~17.~~ As a result of Defendant's agreement to implement the actions described in Section IV of the Agreement, and for so long as Defendant continues to abide by the practices described in Section IV of the Agreement, the Court makes the following findings of fact:

(a)   Defendant is not a fiduciary with respect to the receipt of Revenue Sharing within the meaning of any of the subsections of 29 U.S.C. § 1002(21)(A);

(b)   Defendant does not exercise any direct or indirect discretionary authority or control over any plan assets with respect to which Defendant receives Revenue Sharing payments nor do Defendant's actions cause it to receive Revenue Sharing.

(c)   With respect to Defendant's future receipt of Revenue:

(i)   Defendant does not exercise any discretionary authority or discretionary control respecting management of any Structural Changes Class Member, and does not exercise any authority or control respecting the management or disposition of any the Structural Changes Class Member's assets;

(ii)   Defendant does not render investment advice for a fee or other compensation, directly or indirectly, with respect to any monies or property of any Structural Changes Class Member, nor does it have any

>authority or responsibility to do so; and
>
>(iii)    Defendant does not have any discretionary authority or discretionary responsibility in the administration of the plan of any Structural Changes Class Member.

~~18.~~ Based on the findings of fact in Paragraph ~~17~~18 above, the Court declares that Defendant is not a fiduciary within the meaning of any subsection of 29 U.S.C. § 1002(21)(A), with respect to the receipt of Revenue Sharing. In addition, the Court declares and finds that Defendant's compliance with the terms of the Agreement shall not constitute a breach of fiduciary duty, in violation of Section 404 of ERISA, 29 U.S.C. § 1104, or a prohibited transaction in violation of Section 406 of ERISA, 29 U.S.C. § 1106. In entering these findings, the Court is not finding or implying that, in the absence of the changes described in Section IV of the Agreement, Defendant was a fiduciary with respect to receipt of Revenue Sharing, breached any fiduciary duty, violated any prohibited transaction rule, or was otherwise in violation of ERISA in any respect.

~~19.~~ (a)  For purposes of this paragraph ~~19~~20 of this Order, the following definitions (which are identical to the definitions contained in the Settlement Agreement, as modified above) shall apply:

>"Defendant's Released Parties" shall mean Defendant and each of its present, past, and future predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries, administrators, actuaries, agents, insurers, representatives, attorneys, retained experts and trustees.
>
>"Released Claims" shall mean any and all claims, liabilities, demands, causes of

action or lawsuits, known or unknown (including Unknown Claims, as defined in paragraph 1.48 of the Settlement Agreement), accrued or unaccrued, whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of or in connection with acts, omissions, facts, statements, matters, transactions, or occurrences that have been alleged or referred to or could have been alleged in the Action by Plaintiff or any Monetary Relief Class Member, including in any court filing or any discovery request or response including, but not limited to (a) matters pertaining to or arising out of the solicitation, negotiation, or receipt of Revenue Sharing (a term which shall be broadly defined); (b) claims of excessive fees, revenue, charges, or compensation (collectively "Fees") of any kind in connection with Mutual Funds; Separate Investment Accounts ("SIAs"), including guaranteed SIA's; bank collective trust funds; asset based fees, including wrap fees and management fees; proprietary funds; the fixed account or the guaranteed interest account ("GIA"); ~~or the administration of the plans~~; (c) matters pertaining to disclosure, receipt or retention of float; (d) disclosures about Revenue Sharing or management or other fees (including but not limited to administrative or investment management fees) paid directly or indirectly by the plans or their sponsors; (e) assembly, substitution, addition, or removal of investment options from any Product or plan menus, including the appropriateness of inclusion of Mutual Funds, SIAs, bank collective trust funds, proprietary funds, the fixed account and the GIA in Product Menus or plan menus; (f) the offering or failure to offer any particular share

classes of any mutual fund; (g) the investment performance of SIAs, Mutual Funds, bank collective trust funds, proprietary funds, the fixed account, and the GIA included in Product Menus or plan menus; (h) Fund Agreements; (i) operation, ownership, administration, management, or control of any SIAs; (j) the reinvestment of dividends paid by any Mutual Fund; (k) the voting of proxies disseminated by any Mutual Fund; (l) sufficiency of the information about investment options, fees, revenue, compensation, and charges that is provided in connection with the operation of Defendant's retirement plan business; (m) contractual arrangements or conduct as a service provider relating to any member of the Settlement Classes, including, but not limited to, any alleged rights, obligations, discretion or conduct by Defendant as a service provider claimed to give rise to fiduciary status on the part of Defendant with respect to Revenue Sharing; (n) the receipt, retention, or setting of SIA Management Fees for any SIA; (o) providing investment advice; (p) setting its own Fees; (q) claims relating to the receipt, retention, or setting of SIA fees or wrap fees of any kind, including any claim that such fees are excessive; (r) any tax deduction or credit in connection with servicing retirement plans, including but not limited to the deduction MassMutual was entitled to or took for dividends received in an SIA or any Tax Credits with respect to SIAs; (s) the amount of any compensation or consideration received by MassMutual from any source as a result of the services MassMutual provided to settlement class member and/or actions MassMutual undertook on behalf of settlement class members; (t) any claims regarding the offering, non-offering, administration, or pricing of plan expense reimbursement

arrangement ("PERA") accounts or ERISA budget accounts ("EBAs"), including but not limited to any claim that MassMutual served as a fiduciary as a result of offering, not offering, administering, or pricing PERA accounts or EBAs; (u) fund fee adjustments or the need to create level revenue among the investment options selected by any plan; (v) the pricing of any plan, including the use of target revenue and the pricing of a plan on a per capita or pro-rata basis; (w) claims involving the spread earned on any GIA product, regardless of whether it concerns the target or actual spread; (~~x) market value adjustments in any facet of a group contract; (~~y) creating the platform of investments or menus of investments; (z) payment of revenue to any third parties; (aa) the manner in which revenue is credited to any plans, including but not limited to any claims regarding whether MassMutual credits monies received from funds on a dollar-for-dollar basis; (bb) any reserved discretion that is not exercised; (cc) any actions arising out of or related to the negotiation or performance of the Agreement or matters relating thereto; and (dd) all Class Members' decisions related to the allocation of any proceeds of the Distributable Settlement Amount. <ins>Future disputes about market value adjustments are not covered by this Section 1.35.</ins>

(b)  Upon the occurrence of the Effective Date, all Monetary Relief Class Members and their successors and assignees are permanently enjoined, either directly, representatively, or in any other capacity, from prosecuting, instituting, or commencing any individual, class, or other action with respect to the Released Claims against any of the Defendant's Released Parties.

~~20.~~ The terms of the Settlement Agreement and of this Final Approval Order and Judgment shall be forever binding on the Class Representative, Structural Change Class Members, Monetary Relief Class Members, and all of their successors and assigns, who did not timely opt out or exclude themselves from the Settlement, and the Settlement shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings involving the same or similar claims as those asserted in this Action, or that are otherwise encompassed by the Release and Covenant Not to Sue set forth in the Settlement Agreement, and the Settlement Agreement may be pled as a full and complete defense to any such claims, lawsuits, or proceedings.

~~21.~~ For as long as Defendant and its successors and assignees continue to comply with Section IV of the Agreement, all Structural Changes Class Members and their successors and assigns are permanently enjoined from instituting, maintaining, prosecuting, suing, or asserting in any action or proceeding in any federal or state forum any claim with respect to any claim, based on conduct subsequent to, or any liability or damages claimed to arise or occur after, the date of Preliminary Approval, with respect to any of the Released Claims.

~~22.~~ In recognition of their work, the time and expenses incurred on behalf of the Members of the Settlement Classes and the value of the results achieved on behalf of the Members of the Settlement Classes, pursuant to the terms of the Settlement Agreement, Plaintiff shall be entitled to receive out of the Settlement Amount a Case Contribution Fee in the amount of $~~―――――~~[$15,000], and Lead Counsel shall be entitled to receive out of the Settlement Amount reasonable attorneys' fees in the amount of $~~―――――~~[$3,158,334.00] plus reasonable costs and other expenses in the amount of ~~―――――~~[$307,820.94].

~~23.~~ Without affecting the finality of this Final Approval Order and Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of the Settlement and any award or distribution of the Distributable Settlement Amount, including interest earned thereon; and (b) the Parties and the Members of the Settlement Classes for purposes of construing, enforcing and administering the Agreement.

DATED: _____          _____
                                  THE HONORABLE MARK G. MASTROIANNI
                                  UNITED STATES DISTRICT JUDGE